## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

EARL S. WAGNER, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

SPECTRUM BRANDS LEGACY, INC. f/k/a SPECTRUM BRANDS HOLDINGS, INC., et al.,

                    Defendants.

Civil No. 3:19-cv-00178-jdp

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

1560465_1

## I.    INTRODUCTION

Presently pending before the Court is a securities class action lawsuit brought on behalf of purchasers of Spectrum Brands Legacy, Inc. f/k/a Spectrum Brands Holdings, Inc. ("Spectrum" or the "Company") securities between June 14, 2016 and April 25, 2018 (the "Class Period") against Spectrum and two of its officers for violations of §10(b) and §20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  Just last week, on April 30, 2019, a second securities class action was filed on behalf of all investors who purchased or otherwise acquired Spectrum securities between June 14, 2016 and November 16, 2018, *West Palm Beach Firefighters' Pension Fund v. Spectrum Brands Legacy, Inc.*, No. 3:19-cv-00347 (W.D. Wis.) ("*West Palm Beach* Action").

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), the Court must appoint as lead plaintiff the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust (the "Retirement Trust") should be appointed lead plaintiff because it: (1) timely filed this motion; (2) has the largest financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Retirement Trust's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the putative class is reasonable and should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

Spectrum is a diversified global branded consumer products company manufacturing, marketing, and distributing a variety of products in approximately 160 countries.  Spectrum operates different segments, including the Hardware & Home Improvement segment ("HHI") and the Global

- 1 -

Auto Care segment ("GAC"). For the fiscal year ended September 30, 2017, together, HHI and GAC represented 34% of Spectrum's net sales.

The complaint alleges that throughout the Class Period, defendants made false and/or misleading statements and/or failed to disclose that: (1) Spectrum was facing operational issues with the development of its Ohio and Kansas facilities; (2) these issues were self-inflicted and recurring; (3) these issues were and would continue to negatively impact production, shipping levels, and sales; and (4) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

On July 27, 2017, Spectrum issued a press release, attached as exhibit 99.1 to its Form 8-K filed with the SEC, announcing the Company's financial and operating results for the third fiscal quarter ended July 2, 2017. Therein, defendant Andreas R. Rouvé, Spectrum's Director and Chief Executive Officer ("CEO") at all relevant times, stated in part that the Company "experienced temporary, transitional supply chain challenges with our HHI U.S. distribution center consolidation in Kansas and the GAC U.S. operating consolidation in Ohio that affected shipping levels in the short-term and impacted sales by approximately $24 million." ECF No. 1 at ¶26. On this news, Spectrum's share price fell from a close on July 26, 2017 of $122.97 per share of Spectrum common stock to a close of $117.95 per share on July 27, 2017, a drop of approximately 4.08%.

Thereafter, on April 26, 2018, Spectrum announced that defendant Rouvé had stepped down as the Company's Director and CEO and that David M. Maura had been named CEO. Spectrum also issued a press release, attached as exhibit 99.1 to its Form 8-K filed with the SEC, announcing the Company's financial and operating results for the second fiscal quarter ended April 1, 2018. Therein, Spectrum stated in relevant part as follows:

> "While our second quarter performance was very disappointing, we believe it is in no way reflective of the underlying earnings power of our continuing operations," said David Maura, Chief Executive Officer of Spectrum Brands Holdings.

- 2 -

1560465_1

"The challenges related to our two greenfield manufacturing and distribution projects were meaningfully greater than we expected. As we brought our East Coast distribution center into our new [HHI] facility in Edgerton, Kansas at the end of February, we experienced facility-wide disruptions which hampered distribution capabilities materially in March," Maura said. "Our Global Auto Care facility in Dayton struggled at higher production levels in March, which led to significant inefficiencies and shipping challenges.

"Given these issues, sales of about $30 million from in-house orders could not be shipped by quarter-end due to higher customer order backlogs at our HHI and GAC facilities, and we are working to return them to normal efficiency levels," he said. "In addition, cold and wet weather in March hurt Home & Garden revenues by about $10 million as POS declined and retailers delayed orders into April."

ECF No. 1 at ¶33.

On this news, Spectrum's share price fell from a close on April 25, 2018 of $94.23 per share of Spectrum common stock to a close of $75.01 per share on April 26, 2018, a drop of approximately 20.40%.

As a result of defendants' alleged wrongful acts and omissions and the decline in Spectrum's stock value, class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    The Retirement Trust Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

- 3 -

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  The Retirement Trust meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1.    The Motion Is Timely

On March 7, 2019, the statutory notice was published on *Globe Newswire* advising class members of the pendency of the action, the alleged claims, the class definition for the shorter Class Period – June 14, 2016 to April 25, 2018 – and the option of moving the Court to be appointed as lead plaintiff by May 6, 2019.  *See* Declaration of Anne M. Plichta in Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Plichta Decl."), Ex. A. Because the Retirement Trust's motion was filed by the statutory deadline, the Retirement Trust is eligible for appointment as lead plaintiff.

### 2.    The Retirement Trust Has the Largest Financial Interest in the Relief Sought by the Class

In the shorter Class Period alleged in the above-captioned action, the Retirement Trust purchased 24,400 total shares of Spectrum stock and suffered approximately $430,377 in losses under both the first-in, first-out ("FIFO") and last-in, first-out ("LIFO") calculations.  The Retirement Trust held all 24,400 shares through the disclosure of the fraud at the end of the Class Period.[1]  *See* Plichta Decl., Ex. C.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest during this class period.  Therefore, the Retirement Trust satisfies the PSLRA's prerequisite of having the largest financial interest.

---

[1]    In the longer class period filed in the *West Palm Beach* Action, the Retirement Trust purchased 43,203 total shares of Spectrum stock, suffered approximately $1,508,337 in losses under both FIFO and LIFO calculations, and  the Retirement Trust held all 43,203 shares through the disclosure of the fraud at the end of the class period.  *See* Plichta Decl., Ex. C.

- 4 -

1560465_1

### 3.    The Retirement Trust Is Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "At this stage of the proceedings, only the typicality and adequacy of representation factors are considered under Rule 23." *Maiden v. Merge Techs., Inc.*, No. 06-C-349, 2006 WL 3404777, at *2 (E.D. Wis. Nov. 21, 2006).

The typicality "standard is met when a plaintiff's claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members.'" *Id.* at *4 (citation omitted).  The adequacy requirement is met when there are no conflicts between the representative's and class's interests and where the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4). The Retirement Trust satisfies these requirements at this stage of the litigation.

The Retirement Trust submitted a sworn Certification confirming its willingness and ability to serve as lead plaintiff.  *See* Plichta Decl., Ex. B.  Like all class members, the Retirement Trust held Spectrum stock at all relevant times.  *Id.*  Further, the Retirement Trust is not subject to unique defenses and is not aware of any conflicts between its claims and those asserted by the class. Finally, as discussed below, the Retirement Trust selected qualified counsel experienced in securities litigation to serve as lead counsel in this action.

As such, the Court should find that the Retirement Trust satisfies the Rule 23 inquiry at this stage, a holding that would be consistent with the PSLRA's "'presumption that institutional investors be appointed lead plaintiff.'"  *Maiden*, 2006 WL 3404777, at *2 (citation omitted).

- 5 -

1560465_1

**B.     The Court Should Approve the Retirement Trust's Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The Retirement Trust has selected Robbins Geller to serve as lead counsel.

With more than 200 attorneys in offices nationwide, Robbins Geller possesses substantial experience litigating complex securities litigation like this case.  District courts throughout the nation have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of complex securities class action cases.  *See, e.g.*, *Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502 at 42-43 (S.D.N.Y. Aug. 10, 2015) (commending Robbins Geller for its work in achieving $400 million settlement on the eve of trial: "Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well . . . . You did a really good job. Congratulations."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); *Maiden*, 2006 WL 3404777, at *4 (approving movant's selection of attorneys with Robbins Geller as lead counsel) Plichta Decl., Ex. D.  Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve the Retirement Trust's selection of Robbins Geller as lead counsel for the putative class.

- 6 -

1560465_1

## IV.    CONCLUSION

The Retirement Trust has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Retirement Trust respectfully requests that the Court grant its motion for appointment as lead plaintiff and approve its selection of counsel.

DATED: May 6, 2019

Respectfully submitted,

MALLERY & ZIMMERMAN S.C.
K. SCOTT WAGNER (SBN 1004668)
ANNE M. PLICHTA


s/ Anne M. Plichta
ANNE M. PLICHTA

731 North Jackson Street, Suite 900
Milwaukee, WI 53202
Telephone: 414/271-2424
414/271-8678 (fax)
swagner@mzmilw.com
aplichta@mzmilw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
TRICIA L. McCORMICK
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 7 -

1560465_1