# Supplemental Exhibit 5B

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

_____/

This Order Relates To:
*City of St. Clair Shores*, 15-6167
*Travalio*, 15-6168
*George Leon Family Trust*, 15-6168
*Charter Twp. of Clinton*, 16-190
*Wolfenbarger*, 16-184

_____/

MDL No. 2672 CRB (JSC)

**ORDER GRANTING (I) MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND (II) MOTION FOR ATTORNEYS'
FEES AND EXPENSES**

MDL Dkt. Nos. 6110, 6111

In November 2018, the Court preliminarily approved a class settlement between the parties in the American Depository Receipts ("ADRs") class action. (*See* Preliminary Approval Order, MDL Dkt. No. 5593; *see also* Settlement Agreement, MDL Dkt. No. 5267-1.)[1] The claims administrator subsequently mailed notice of the settlement to potential class members, and the deadline for potential class members to file claims, opt out, or object to the settlement has now passed. On May 10, 2019, the Court held a hearing on Plaintiffs' motion for final approval of the settlement and on Lead Counsel's motion for attorneys' fees and costs. With the benefit of that hearing, and having considered the parties submissions and the class's feedback, the Court GRANTS the motions.

_____

[1] The parties are lead plaintiff Arkansas State Highway Employees' Retirement System ("ASHERS"), named plaintiff Miami Police Relief and Pension Fund ("Miami Police," and together with ASHERS, "Plaintiffs" or "Class Representatives"), and defendants Volkswagen AG ("VW AG"), Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen Group of America, Inc. d/b/a/ Volkswagen of America, Inc. ("VWoA"), Audi of America, Inc. ("AoA"), Martin Winterkorn, Michael Horn, and Herbert Diess (together "Defendants").

United States District Court
Northern District of California

## I.    CLASS CERTIFICATION

In the Preliminary Approval Order, the Court conditionally certified the class.  (*See* MDL Dkt. No. 5593 at 2-4.)  The class definition has not changed and the Rule 23(a) and (b)(3) requirements remain satisfied.  The Court accordingly certifies the class for purposes of the settlement and appoints ASHERS and Miami Police as Class Representatives and James A. Harrod of Bernstein Litowitz Berger & Grossmann LLP as Class Counsel.

## II.    FAIRNESS REVIEW

When a district court reviews a proposed class action settlement, its "central concern" is whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendment.  In making that assessment here, the Court considers the Rule 23(e)(2) factors, which became effective on December 1, 2018, and the factors identified in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946-47 (9th Cir. 2011).  The Court divides its analysis into three subsections: procedural fairness, substantive fairness, and administrative fairness.

### A.    Procedural Fairness

A fair class settlement is the product of arm's-length negotiations by competent and zealous advocates.  *See* Fed. R. Civ. P. 23(e)(2)(A), (B).  The record supports that these ingredients were present here.  Lead Counsel has significant experience in securities litigation and a successful track record of representing investors in cases of this kind.  (*See* Harrod's Fees Decl., Ex. 2, MDL Dkt. No. 6112-5.)  Lead Counsel also attests that both sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle. (Harrod's Approval Decl. ¶ 61, MDL Dkt. No. 6112.)  There is no reason to doubt the veracity of Lead Counsel's representations.  Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations.

As the Court explained in the Preliminary Approval Order, the structure of the settlement is also consistent with arm's-length bargaining and does not suggest collusion:

> [T]he  parties  have  not  negotiated  a  "clear  sailing"  arrangement,

2

whereby class counsel would receive attorneys' fees separate and apart from class funds; unused funds in the settlement fund will not revert to Defendants; and, as discussed below, class counsel will not receive a disproportionate share of the settlement funds. The absence of these characteristics is strong evidence of noncollusive negotiations. *See In re Bluetooth*, 654 F.3d at 947.

(MDL Dkt. No. 5593 at 9.)

Consistent with Rule 23(e)(3), Lead Counsel has identified one, and only one, agreement that was "made in connection with the proposal": an agreement that would have permitted VW AG to terminate the settlement if the number of class members who opted out had reached an identified threshold. (*See* Mot., MDL Dkt. No. 6110 at 22-23.) An agreement of this kind is not irregular.

The Court is satisfied that the settlement was negotiated and reached in a fair and reasonable manner.

## B.    Substantive Fairness

A reasonable class settlement provides class members with a recovery that is adequate given the strengths and weaknesses of their claims and given the costs, risks, and delays of continuing to litigate. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *In re Bluetooth*, 654 F.3d at 946.

The parties here agreed to settle for $48 million. Based on Plaintiffs' expert's estimates, that amount represents approximately 33 percent of what Plaintiffs could have recovered if they prevailed at trial. (*See* Harrod's Approval Decl. ¶¶ 6, 91-92.) The size of this settlement discount strikes the Court as reasonable. Plaintiffs have identified several elements of their claims (materiality, scienter, and loss causation) that Defendants were likely to vigorously contest and that may have been challenging to prove. (*See id.* ¶¶ 71-85.) And even if Plaintiffs had prevailed, their recovery—after class certification, trial, and appeals—would have come years in the future. Taking $48 million now, instead of holding out for the chance of $147 million at some point in the future, is a sensible decision.[2]

---

[2] The record supports that the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions with estimated damages between $75 and $149 million. (*See id.*, Ex. 6, Cornerstone Research, *Securities Class Action Settlements 2018 Review and Analysis* (2019), MDL Dkt. No. 6112-8 at 10.) That amounts to a 95 percent discount. The

United States District Court
Northern District of California

The settlement amount is reasonable. So too is the plan of allocation. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii), (D). As proposed, Plaintiffs' Counsel[3] will receive 25 percent of the settlement fund, net of expenses, and the remainder, after administrative costs and taxes, will be distributed to class members. More will be said about attorneys' fees below, *see infra* Part III, but the proposed allocation between Plaintiffs' Counsel and the class is not unreasonable: 25 percent is the benchmark for fee awards in common fund class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). After attorneys' fees and other costs and expenses are paid, the settlement funds will be allocated among class members on a pro rata basis based on the relative size of each claimant's recognized claim. (*See* Settlement ¶ 22.) Unclaimed funds will not revert to Defendants (*see id.* ¶ 14), which is a feature that, if present, would have required additional scrutiny. *See In re Bluetooth*, 654 F.3d at 947.

The settlement treats certain class members differently in two respects. (*See* Preliminary Approval Order at 10-11 (explaining that the evidence of scienter was weaker earlier in the class period, so class members who purchased ADRs then will receive smaller relative awards, and explaining that the Class Representatives will seek an additional award to compensate them for their expenses in representing the class).) As explained in the Preliminary Approval Order, both of these differences are appropriate.

Also counseling in favor of the settlement's substantive fairness is the positive reaction of the class. *See In re Bluetooth*, 654 F.3d at 946. A total of 217,589 notice packets were mailed to potential class members. (*See* Villanova Supp. Decl. ¶ 5, MDL Dkt. No. 6256.) Only one class member objected to the settlement and only 16 potential class members opted out of the settlement. (*See id.* ¶ 8 (identifying the opt-out requests); MDL Dkt. No. 6208 (objection).) The small number of objections and opt outs supports that the settlement and plan of allocation are fair, reasonable, and adequate. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of a settlement with higher opt-out and objection rates

___

discount here, of 67 percent, is much less.

[3] Plaintiffs' Counsel includes Lead Counsel and also the law firm Klausner, Kaufman, Jensen & Levinson, which represents Miami Police.

United States District Court
Northern District of California

than here).[4]

Jason Kerpelman, the sole objector, has taken issue with two components of the settlement and with Lead Counsel's request for attorneys' fees. (*See* Kerpelman Objection, MDL Dkt. No. 6208.) With respect to the structure of the settlement, he argues that the settlement was designed to minimize the number of people who would make claims, so as to increase Plaintiffs' Counsel's fee award.

Mr. Kerpelman mischaracterizes the settlement's mechanics and the Court overrules his objection. Under the settlement, Plaintiffs' Counsel's fees are tied to the size of the settlement fund, not to the number of claims filed. Plaintiffs' Counsel therefore did not stand to gain if fewer claims were filed. The fee structure, whereby Plaintiffs' Counsel's fees are paid from the settlement fund, is also consistent with Ninth Circuit law, *see Staton*, 327 F.3d at 967-70, and is not unreasonable. The Court will address Mr. Kerpelman's other two objections below.

The Court is satisfied that the settlement is substantively fair, reasonable, and adequate.

## C.   Administrative Fairness

The Court previously concluded that the class notice—both its content and the proposed distribution method—satisfied Rule 23(c)(2). (*See* Preliminary Approval Order at 13-14.) With their motion for final approval, Plaintiffs included a declaration from the claims administrator, Epiq Class Action & Claims Solutions, Inc., which details how and to whom the notice packets were distributed. (*See* Villanova Decl., MDL Dkt. No. 6112-3.) Having reviewed that declaration, the Court is satisfied that the claims administrator distributed the notice in the approved manner. The response rate, approximately 29 percent, is also reasonable for a case of this kind. (*See* Reply, MDL Dkt. No. 6254 at 9 (identifying similar response rates in other securities class settlements, including settlements by ADR purchasers).)

Mr. Kerpelman, the sole objector to the settlement, has also taken issue with the format of the notice. He contends that the notice did not identify the claim filing deadline prominently

---

[4] A second class member filed a statement that could have been construed as an objection. (*See* MDL Dkt. No. 6177.) However he later withdrew his statement and has agreed to participate in the settlement. (*See* MDL Dkt. No. 6278.)

United States District Court
Northern District of California

enough, which caused him to miss the deadline.  The Court overrules Mr. Kerpelman's objection.  The claim filing deadline was displayed in bold font in a large gray box on page four of the notice, and the deadline also appeared, again in bold, on the top of the first page of the claim form.  (*See* Notice, MDL Dkt. No. 5267-1 at 59, 86.)  The notice displayed the claim filing deadline clearly and in plain language, as required.  *See* Fed. R. Civ. P. 23(c)(2)(B).[5]

The proposed methods for processing claims and for distributing payments to claimants are also adequate.  *See id.* 23(e)(2)(C)(ii).  The claims administrator, an independent company with extensive experience administering securities class actions, has started to (and will continue to) process and review class members' claim forms, under Lead Counsel's supervision, and will then distribute payments to claimants.  (*See* Settlement ¶¶ 19, 22.)  Only if subsequent distributions to eligible claimants are not cost effective will a donation to the *cy pres* recipient, the Investor Protection Trust, be made.  (*See* Notice ¶ 70.)  The Court is satisfied that this processing and distribution plan will lead to the timely payment of class members' claims.  And as previously noted, the settlement's *cy pres* provisions are consistent with Ninth Circuit law.  (*See* Preliminary Approval Order at 10.)

* * *

In light of the above analysis, as well as the Court's analysis in the Preliminary Approval Order, the Court concludes that final approval of the settlement is appropriate.  The settlement is fair, adequate, and reasonable.

### III.   ATTORNEYS' FEES AND EXPENSES

Lead Counsel seeks an attorneys' fees award equal to 25 percent of the settlement fund, net of expenses, which equates to approximately $11.92 million.

As noted above, 25 percent is the benchmark for fee awards in common fund class actions in this circuit.  *See Staton*, 327 F.3d at 968.  While the benchmark can "be adjusted upward or downward to account for any unusual circumstances," *Paul, Johnson, Alston & Hunt v. Graulty*,

United States District Court
Northern District of California

---

[5] Mr. Kerpelman did not file a claim with his objection, but after he objected the claims administrator contacted him and informed him that if he promptly filed a late claim, Lead Counsel would recommend that it be paid.  (*See* Reply, MDL Dkt. No. 6254 at 13.)

886 F.2d 268, 272 (9th Cir. 1989), none are present here.  As a cross check, the Court also notes that a 25 percent fee award is equivalent to 1.59 times Plaintiffs' Counsel's lodestar (*see* Harrod's Approval Decl. ¶¶ 13, 120), which is a reasonable multiplier in a case of this kind.  *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at \*4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Plaintiffs' Counsel vigorously litigated this action, and the requested award reflects their effort, the contingency risks they assumed, and the results they achieved.  For the same reasons, the Court overrules Mr. Kerpelman's final objection that a 25 percent fee is unreasonably high.

Lead Counsel also seeks reimbursement of $296,879.86 in litigation expenses.  Lead Counsel has sufficiently documented and explained these expenses (*see* Harrod's Approval Decl. ¶¶ 133-40, Ex. 5), and the Court concludes that reimbursement of them is appropriate.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Finally, Lead Counsel seeks reimbursement of $4,940.49 for ASHERS's and $2,387.50 for Miami Police's costs and expenses related to their representation of the settlement class.  The PSLRA expressly permits an award of "reasonable costs and expenses" to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  The Court has reviewed ASHERS's and Miami Police's declarations and their expense records (*see* Smith Decl., MDL Dkt. No. 6112-1; Kerr Decl., MDL Dkt. No. 6112-2), and is satisfied that their reimbursement requests are reasonable.

Lead Counsel's motion for attorneys' fees and expenses is GRANTED.

\\

\\

\\

\\

\\

United States District Court
Northern District of California

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS the following:

1. The Court GRANTS Plaintiffs' motion for final approval of the settlement agreement.

2. The Court CONFIRMS the appointment of James A. Harrod of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel.

3. The Court CONFIRMS the appointment of Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator.

4. The Court CONFIRMS the appointment of Arkansas State Highway Employees' Retirement System and Miami Police Relief and Pension Fund as Class Representatives.

5. The Court GRANTS Lead Counsel's motion for attorneys' fees and expenses.

6. The Court hereby discharges and releases all Released Claims, as that term is used and defined in the settlement agreement.

7. The Court hereby (a) permanently bars and enjoins Plaintiffs and each of the other Settlement Class Members from filing or prosecuting any Released Plaintiffs' Claim against Defendants and the Defendants' Releasees, and (b) permanently bars and enjoins Defendants from filing or prosecuting any Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees.

8. The Court retains the exclusive jurisdiction to enforce, administer, and ensure compliance with all terms of the settlement in accordance with the settlement and this Order.

A separate judgment consistent with this Order, and an attached list of the persons and entities that have requested exclusion from the settlement class, will be issued.

**IT IS SO ORDERED.**

Dated: May 10, 2019

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

8