# Supplemental Exhibit 6A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SCHERING-PLOUGH CORPORATION / ENHANCE SECURITIES LITIGATION | Civil Action No. 08-397 (DMC) (JAD) |

**NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION;
(II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**If you purchased or acquired Schering-Plough Corporation common stock, 6% mandatory convertible preferred stock maturing August 13, 2010 ("Preferred Stock"), or call options, and/or sold Schering put options, during the period between January 3, 2007 through and including March 28, 2008 (the "Class Period"), and did not sell all of those shares and/or options on or before December 11, 2007, you might be a member of the class in this action making you eligible for relief in connection with a settlement achieved in the action.[1]**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- This Notice relates to the above-captioned securities class action (the "Action") brought by investors who claim that the prices of Schering-Plough Corporation ("Schering") securities were artificially inflated or depressed as a result of allegedly false statements, non-disclosures, and fraudulent conduct in violation of the federal securities laws.

- Lead Plaintiffs the Arkansas Teacher Retirement System, the Public Employees' Retirement System of Mississippi, the Louisiana Municipal Police Employees' Retirement System, and the Massachusetts Pension Reserves Investment Management Board (collectively, "Lead Plaintiffs") have reached a proposed Settlement that, if approved, will resolve all claims in the Action on behalf of Lead Plaintiffs and the other members of the Class (as defined in the response to Question 5 below) against Defendants Schering, Merck/Schering-Plough Pharmaceuticals ("M/S-P"), the Individual Defendants[2], and the Underwriter Defendants[3] (collectively, "Defendants").

- The Settlement provides for the payment of $473,000,000 in cash (the "Settlement Amount") by or on behalf of Merck & Co., Inc. ("Merck") for the benefit of the Class.  The Settlement Amount will be deposited into an escrow account (the "Settlement Fund").

- After payment of Taxes, the costs of providing notice and administering the Settlement, and any attorneys' fees and Litigation Expenses awarded by the Court, the remainder of the Settlement Fund (the "Net Settlement Fund") will be distributed in accordance with a plan of allocation that is approved by the Court to Class Members who submit Claim Forms that are valid and approved for payment by the Court.  The plan of allocation that is being proposed by Lead Plaintiffs (the "Plan of Allocation") is set forth on pages 7-14 below.

- Lead Plaintiffs' damages expert estimates that approximately 1.05 billion shares of Schering common stock, 13.5 million shares of Preferred Stock, and 142.4 million Schering call options[4]  purchased, and 74.5 million Schering put options sold, during the Class Period may have been affected by the conduct at issue in the Action.  If all eligible Class Members elect to participate in the Settlement, the estimated average recovery would be approximately $0.39 per affected share of common stock, $3.82 per affected share of Preferred Stock, $0.03 per affected call option, and $0.08 per affected put option, before deduction of Court-awarded attorneys' fees and expenses, Taxes, and the costs of providing notice and administering the Settlement.  Class Members should note, however, that these are only estimates based on the overall number of potentially affected shares and options.  Some Class Members may recover more or less than these estimated amounts.

---

[1] All capitalized terms that are not defined in this Notice have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated June 3, 2013 (the "Stipulation"), which is available on the website established for this Action, www.scheringvytorinsecuritieslitigation.com, or on Co-Lead Counsel's respective websites, www.blbglaw.com and www.labaton.com.

[2] The "Individual Defendants" are Fred Hassan, Carrie S. Cox, Robert J. Bertolini, Steven H. Koehler, Susan Ellen Wolf, and the Director Defendants. The "Director Defendants" are Hans W. Becherer, Thomas J. Colligan, C. Robert Kidder, Philip Leder, M.D., Eugene R. McGrath, Carl E. Mundy, Jr., Antonio M. Perez, Patricia F. Russo, Jack L. Stahl, Kathryn C. Turner, Robert F.W. van Oordt, and Arthur F. Weinbach.

[3] The "Underwriter Defendants" are ABN AMRO Rothschild LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated (as successor by merger to Banc of America Securities LLC), Banca IMI SpA, BBVA Securities Inc., Bear, Stearns & Co. Inc. (now J.P. Morgan Securities LLC), BNP Paribas Securities Corp., BNY Capital Markets, Inc. (now BNY Mellon Capital Markets LLC), Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Daiwa Securities America Inc. (now Daiwa Capital Markets America Inc.), Goldman, Sachs & Co., ING Financial Markets LLC, J.P. Morgan Securities Inc. (now J.P. Morgan Securities LLC), Mizuho Securities USA Inc., Morgan Stanley & Co. Incorporated (now Morgan Stanley & Co. LLC), Santander Investment Securities Inc., Utendahl Capital Partners, L.P., and The Williams Capital Group L.P.

[4] All options-related amounts in this paragraph are per share of the underlying security (*i.e.*, 1/100 of a contract).

L2931 v22 06.12.2013                                    **1**

- Only Class Members are eligible to share in the proceeds of the Settlement.  If you excluded yourself from the Class, pursuant to the Notice of Pendency of Class Action ("Class Notice") that was previously sent, you will not be eligible to share in the proceeds of the Settlement unless you opt-back into the Class in accordance with the requirements set forth in the response to Question 18 below.

- Lead Plaintiffs and Defendants disagree as to both liability and damages, and do not agree on the average amount of damages per share of common stock and Preferred Stock and per call option and put option that would be recoverable if Lead Plaintiffs were to have prevailed on each claim alleged.  The issues on which the Parties disagree include, among others:  (i) whether Defendants engaged in conduct that would give rise to liability under the federal securities laws; (ii) whether Defendants have valid defenses to any of the claims against them; (iii) the amount, if any, by which the prices of Schering's common stock, Preferred Stock, and call options were artificially inflated and the amount, if any, that the price of Schering's put options was artificially depressed, as a result of Defendants' alleged violations of the federal securities laws; (iv) the appropriate economic model for measuring damages; and (v) the extent to which confounding news influenced the trading price of Schering's common stock, Preferred Stock, or options at various times during the Class Period.

- Plaintiffs' Counsel, which collectively is Co-Lead Counsel, Liaison Counsel, and all other counsel who, at the direction and under the control of Co-Lead Counsel, performed services on behalf of or for the benefit of the Class, have prosecuted this Action on a wholly contingent basis since its inception in 2008.  Co-Lead Counsel (defined below), on behalf of Plaintiffs' Counsel, will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel in an amount not to exceed 17% of the Settlement Fund (which includes accrued interest).  In addition, Co-Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $5,250,000, plus accrued interest (which will include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class in an amount not to exceed $150,000).  Any fees and expenses awarded by the Court will be paid from the Settlement Fund.  If the Court approves Co-Lead Counsel's fee and expense application, the average cost of fees and expenses, assuming claims are filed for all affected shares of common stock and Preferred Stock and all affected call options and put options, will be approximately $0.07 per affected share of Schering common stock, $0.69 per affected share of Preferred Stock, $0.005 per affected call option, and $0.01 per affected put option.

- Lead Plaintiffs and the Class are being represented by Salvatore J. Graziano, Esq., of Bernstein Litowitz Berger & Grossmann LLP and Christopher J. McDonald, Esq., of Labaton Sucharow LLP, the Court-appointed Lead Counsel ("Co-Lead Counsel").  Any questions regarding the Settlement should be directed to Mr. Graziano, at Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com, or Mr. McDonald, at Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 543-3218, settlementquestions@labaton.com.

- **If you are a member of the Class and the Settlement is approved, your legal rights will be affected whether you act or do not act.  Read this Notice carefully and in its entirety to see what your options are in connection with the Settlement.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM BY NOVEMBER 18, 2013. | The only way to get a payment is if you are a Class Member, as set forth in the response to Question 14 below. |
| OPT-BACK INTO THE CLASS BY SUBMITTING A WRITTEN REQUEST TO WITHDRAW YOUR PREVIOUSLY SUBMITTED REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN AUGUST 5, 2013. | If you previously submitted a request for exclusion from the Class in connection with the Class Notice and now want to be part of the Class in order to be eligible to receive a payment from the Settlement Fund, you must follow the steps for "Opting-Back Into the Class" as set forth in the response to Question 18 below.  If you previously submitted a request for exclusion from the Class in connection with the Class Notice and wish to remain excluded from the Class, no further action is necessary. |
| OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN AUGUST 5, 2013. | If you did not exclude yourself, but you wish to object to any part of the Settlement, the proposed Plan of Allocation, and/or Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court about your objections. |

| ATTEND THE HEARING ON OCTOBER 1, 2013 AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN AUGUST 5, 2013. | Filing a written objection and notice of intention to appear by August 5, 2013, allows you to speak in Court at the discretion of the Court about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but do not have to) attend the hearing and speak to the Court about your objection. |
|---|---|
| DO NOTHING. | If you are a member of the Class and you do not submit a Claim Form by November 18, 2013, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Class, which means that you gave up your right to sue about the claims that are resolved by the Settlement, and you are bound by any judgments or orders entered by the Court in the Action. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  The Net Settlement Fund will be available for distribution only if the Settlement is approved and that approval is upheld following any appeals.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**................................................................................................................... **Page 4**
    1.  Why did I get this Notice?
    2.  What is a class action?
    3.  What is this lawsuit about?
    4.  What should I do if my address changes, or if this Notice was sent to the wrong address?

**WHO IS IN THE CLASS** ................................................................................................................ **Page 5**
    5.  How do I know whether I am part of the Class?
    6.  Are there exceptions to being included in the Class?
    7.  What should I do if I am still not sure whether I am included?

**SUMMARY OF THE SETTLEMENT**.................................................................................................. **Page 6**
    8.  How and when was the Settlement reached?
    9.  What does the Settlement provide?
    10.  What are the reasons for the Settlement?
    11.  What is the potential outcome of the lawsuit without the Settlement?

**THE BENEFITS OF THE SETTLEMENT - WHAT YOU GET** ..................................................................... **Page 7**
    12.  How much will be distributed to investors?
    13.  How much will my payment be?

**HOW TO GET A PAYMENT**............................................................................................................. **Page 14**
    14.  What do I have to do to receive a share of the Settlement?
    15.  When will I receive my payment?
    16.  As a Class Member, what am I giving up in the Settlement?

**REQUESTING EXCLUSION FROM THE CLASS** .................................................................................. **Page 16**
    17.  May I now request exclusion from the Class?

**"OPTING-BACK" INTO THE CLASS**................................................................................................ **Page 16**
    18.  What if I previously requested exclusion from the Class and now
        want to be eligible to receive a payment from the Settlement Fund.
        How do I opt-back into the Class?
    19.  If I am a Class Member and didn't exclude myself, can I sue Defendants
        or the Other Defendants' Releasees for the same thing later?
    20.  If I excluded myself, can I get money from the Settlement?

**THE LAWYERS REPRESENTING YOU**................................................................................................ **Page 17**
    21.  Do I have a lawyer in this case?
    22.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION .. Page 17**
      23.  How do I tell the Court that I don't like the Settlement?
      24.  What's the difference between objecting and requesting exclusion?
      25.  When and where will the Court decide whether to approve the Settlement?
      26.  Do I have to come to the Settlement Hearing?
      27.  May I speak at the Settlement Hearing?

**IF YOU DO NOTHING** ................................................................................................ **Page 18**
      28.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** .............................................................................. **Page 19**
      29.  Are there more details about the Settlement?
      30.  How do I get more information?

**SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES** ............................................. **Page 19**

**BASIC INFORMATION**

| **1.  Why did I get this Notice?** |
|---|

You or someone in your family or an investment account for which you serve as a custodian may have purchased or acquired Schering common stock, 6% mandatory convertible preferred stock maturing August 13, 2010, or call options on Schering common stock, or sold put options on Schering common stock during the period January 3, 2007 through and including March 28, 2008.  The Court ordered that this Notice be sent to you because, as a potential Class Member, you have a right to know about the proposed Settlement and about all of your options before the Court decides whether to approve the Settlement.

This Notice describes the Settlement, the lawsuit, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the District of New Jersey.  The case is known as *In re Schering-Plough Corp. / ENHANCE Securities Litigation*, Civil Action No. 08-397 (DMC) (JAD).

| **2.  What is a class action?** |
|---|

In a class action, one or more persons, called "plaintiffs" sue on behalf of people who have similar claims.  The court must certify the action to proceed as a class action and it will appoint the "class representatives."  All of the individuals and entities on whose behalf the class representatives are suing are known as class members.  One court resolves the issues in the case for all class members, except for those who choose to exclude themselves from the class if exclusion is permitted by applicable rules of procedure.  In this Action, the Court has appointed Lead Plaintiffs to serve as the class representatives and has appointed Co-Lead Counsel to serve as class counsel.

| **3.  What is this lawsuit about?** |
|---|

This Action is a class action alleging that Schering, M/S-P and certain of Schering's officers violated the federal securities laws, for among other reasons, failing to disclose material information concerning the commercial prospects of Vytorin (a cholesterol-lowering drug that is a combination of a drug developed by Merck (Zocor) and a drug developed by Schering (Zetia)), the commercial prospects of Zetia, and the results of a clinical trial known as ENHANCE that tested whether Vytorin was more effective than Zocor alone in reducing the intima-media thickness of the carotid arteries.  The Action also alleges that Schering, certain of Schering's officers, the Director Defendants, and the Underwriter Defendants are statutorily responsible for false or misleading statements made in connection with offerings of Schering common stock and Preferred Stock in August 2007.

Specifically, Lead Plaintiffs alleged that beginning in 2002, Merck and Schering undertook the ENHANCE trial, which was designed as double-blinded to prevent Schering and the other sponsors from learning the results before their publication.  Lead Plaintiffs alleged, however, that beginning in the fall of 2006, Schering began to improperly use a series of statistical analyses to discover the results of the ENHANCE trial, and learned that the trial results would show that Vytorin was no better than generic simvastatin in reducing the intima-media thickness of the carotid arteries.  Lead Plaintiffs alleged that, thereafter, Schering, M/S-P and certain of Schering's officers improperly delayed releasing the results of the ENHANCE trial so that they could continue to sell larger amounts of Vytorin than they would have been able to sell had the truth about the drug's efficacy been known.  Lead Plaintiffs further alleged that, during this delay, those Defendants knowingly or recklessly made public statements that were false and misleading.  When the results of the ENHANCE trial were ultimately disclosed to the public, the price of Schering common stock, Preferred Stock, and call options dropped and the price of Schering put options increased significantly, causing substantial investor losses.

L2934 v22 06.12.2013

**4**

On September 15, 2008, Lead Plaintiffs filed their Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims under Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). The Complaint also alleges that Carrie S. Cox violated federal securities laws against insider trading by selling Schering common stock while in possession of material, non-public information. The Complaint further alleges that Schering, Hassan, Bertolini, Koehler, Wolf, the Director Defendants, and the Underwriter Defendants are statutorily responsible for false or misleading statements made in offering documents in connection with August 2007 offerings of Schering common stock and/or Preferred Stock.

In December 2008, Defendants moved to dismiss the claims asserted against them. By Opinion and Order dated September 2, 2009, the Court denied Defendants' motions to dismiss. On September 17, 2009, Defendants moved for reconsideration of the Court's Opinion and Order denying their motions to dismiss. The motion for reconsideration was denied by the Court on June 21, 2010. On November 18, 2009, Defendants answered the Complaint. Defendants denied any violations of the securities laws and asserted affirmative defenses to Lead Plaintiffs' allegations.

On February 7, 2011, Lead Plaintiffs filed their motion for class certification and, on September 22, 2011, amended that motion. Following class certification discovery, on September 25, 2012, the Court issued an Opinion and entered an Order granting Lead Plaintiffs' motion certifying the Class, appointing Lead Plaintiffs as class representatives, and appointing Co-Lead Counsel as class counsel. On October 11, 2012, the Court entered an Amended Order clarifying the definition of the Class. The Class Notice mailed to potential Class Members informed Class Members of their right to be excluded from the Class, the requirements for requesting exclusion, and the deadline by which requests for exclusion must have been received.

On March 1, 2012, Defendants moved for summary judgment, seeking dismissal of Lead Plaintiffs' claims. The Court denied Defendants' motions by Order dated September 25, 2012.

The trial in this Action was scheduled by the Court to begin on March 4, 2013.

Defendants continue to deny any allegations of fault, wrongdoing, or liability with respect to the allegations in the Complaint, and the Court has not ruled on the merits of the allegations.

| 4. What should I do if my address changes, or if this Notice was sent to the wrong address? |
|---|

If this Notice was sent to you at the wrong address, or if your address changes in the future, please send prompt written notification of your correct address to the Claims Administrator, Epiq Systems, Inc. ("Epiq"), at the following address:

*In re Schering-Plough Corporation / ENHANCE Securities Litigation*
c/o Epiq Systems, Inc.
Claims Administrator
P.O. Box 3127
Portland, OR 97208-3127

**WHO IS IN THE CLASS**

| 5. How do I know whether I am part of the Class? |
|---|

The Court has certified a Class, subject to certain exceptions identified below, of the following individuals and entities:

> *All persons and entities that purchased or acquired Schering common stock, 6% mandatory convertible preferred stock maturing August 13, 2010, or call options, and/or sold Schering put options, during the period between January 3, 2007 through and including March 28, 2008, and who did not sell their stock and/or options on or before December 11, 2007, and who were damaged thereby.*

| 6. Are there exceptions to being included in the Class? |
|---|

Even if a person or entity falls within the Class, they may be excluded from the Class by definition. Persons and entities excluded from the Class by definition are (a) Defendants; (b) members of the Immediate Families of the Individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person or entity who was a partner, executive officer, director, or controlling person of Schering, M/S-P or Merck & Co., Inc. (including any of their subsidiaries or affiliates), or any other Defendants; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers'

liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors and assigns of any such excluded party.  For purposes of clarification, any Investment Vehicle (as defined in the Stipulation) shall not be deemed an excluded Person by definition.

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU ARE A CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN NOVEMBER 18, 2013.**

| **7.  What should I do if I am still not sure whether I am included?** |
| --- |

If you are still not sure whether you are included, you can ask for help, which will be provided to you at no cost. You can call the Claims Administrator toll-free at (877) 854-4458, or write to the Claims Administrator at the address stated in the answer to Question 4 above.  Please note that the Claims Administrator does not have access to your trading records, but will be happy to explain the requirements for membership in the Class.

## SUMMARY OF THE SETTLEMENT

| **8.  How and when was the Settlement reached?** |
| --- |

Lead Plaintiffs reached an agreement-in-principle to settle with Defendants on February 25, 2013.  Thereafter, the terms and conditions of the Settlement were formalized in the Stipulation.

The Settlement was reached only after arm's-length negotiations between Co-Lead Counsel and Defendants' Counsel.  The Settlement was reached after Plaintiffs' Counsel had:  (a) completed fact discovery during which they obtained access to, and reviewed more than twelve million pages of documents pertinent to the claims and Defendants' defenses to those claims, and took or participated in approximately ninety (90) depositions, including depositions of Defendants and other employees of Merck, M/S-P, and Schering and of numerous expert witnesses; (b) fully briefed Defendants' motions for summary judgment; (c) conducted numerous mediations with Defendants before the Hon. Layn R. Phillips, a retired judge, and before Stephen Greenberg and Jonathan Lerner; (d) investigated and analyzed all available evidence; and (e) researched the applicable law with respect to the claims against Defendants and the potential defenses thereto.  At the time the agreement-in-principle to settle was reached, on February 25, 2013, the case was essentially trial ready.  As noted above, the trial had been scheduled to begin on March 4, 2013.  When the agreement was reached, the Pretrial Order, which included the stipulated and contested facts, deposition transcript designations, witness lists, exhibit lists, and several thousand exhibits, had been submitted to the Court, and Daubert motions and motions *in limine* had been filed.

| **9.  What does the Settlement provide?** |
| --- |

The Settlement provides for Merck to cause a total of $473,000,000 in cash to be paid to the Class.  If the Settlement is approved by the Court, then as of the Effective Date, all members of the Class will be deemed to have released all Released Plaintiffs' Claims (as defined in the response to Question 16 below) against Defendants and the other Defendants' Releasees (as defined in the response to Question 16 below).  This means, among other things, that, upon the Effective Date, all Class Members will be permanently barred from asserting any of the Released Plaintiffs' Claims against Defendants and other Defendants' Releasees.  In addition, upon the Effective Date, Defendants will be precluded from suing Lead Plaintiffs, the other members of the Class, or Plaintiffs' Counsel in connection with the institution, prosecution, or resolution of the Action.

If the Settlement is approved by the Court and becomes effective, the Action will be over.

| **10.  What are the reasons for the Settlement?** |
| --- |

Lead Plaintiffs agreed to the Settlement because of the certain, substantial, and immediate monetary benefit it will provide to the Class, compared to the risk that a lesser or no recovery might be achieved after a contested trial and likely appeals, possibly years into the future.  If the Action were to proceed to trial, Lead Plaintiffs would have to overcome significant defenses asserted by multiple defendants.  Among other things, Defendants contended that:  (a) they did not make any misrepresentations or omissions, did not engage in any wrongful conduct, and did not violate the securities laws; (b) the alleged misrepresentations and omissions were immaterial as a matter of law; (c) Defendants alleged to have violated the Exchange Act did not act with the requisite state of mind; (d) Lead Plaintiffs and the other members of the Class did not rely on the alleged misrepresentations or omissions; (e) the price of Schering common stock, Preferred Stock, and call options was not artificially inflated, and the price of Schering put options was not artificially deflated, as a result of the

alleged misrepresentations or omissions; (f) Lead Plaintiffs and the other members of the Class did not suffer any damages caused by the alleged misrepresentations or omissions; (g) Lead Plaintiffs did not have standing to bring Section 11 claims on behalf of common stock and Preferred Stock purchasers; (h) Lead Plaintiffs did not have standing to bring Section 12(a)(2) claims on behalf of common stock and Preferred Stock purchasers; (i) the Underwriter Defendants, Individual Defendants, and Director Defendants conducted a reasonable due diligence investigation prior to the August 2007 offering of Schering-Plough securities; and (j) the alleged misinformation was publicly disclosed more than two months before the end of the Class Period, and did not cause investor loss when it was disclosed.  While Lead Plaintiffs believe that the claims asserted against Defendants have merit, they recognize that the expense, uncertainty, and risks inherent in every action was heightened here because of the numerous complex legal and factual issues requiring extensive expert medical and statistical testimony.  There is no way to predict whether a jury would find liability in a "battle of experts."  Even after conducting an extensive investigation and completing expert and fact discovery, Lead Plaintiffs recognize that risks remain with respect to establishing Defendants' liability.  Additionally, Lead Plaintiffs are confident that even if they were to prevail at trial, Defendants would appeal such a verdict and this could lead to further delays at best, and at worst, no recovery at all.

Defendants deny any wrongdoing, maintain that the claims in the Action are without merit, and believe that they would ultimately prevail.  Nevertheless, Defendants also recognize the uncertainty, risks, and costs of complex securities litigation.  Defendants agreed to resolve the matter solely to eliminate the burden and expense of further litigation, including imminent trial.

| 11. | What is the potential outcome of the lawsuit without the Settlement? |
|---|---|

If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims, neither Lead Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, the members of the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## THE BENEFITS OF THE SETTLEMENT — WHAT YOU GET

| 12. | How much will be distributed to investors? |
|---|---|

The Settlement will create a cash Settlement Fund in the aggregate principal amount of $473,000,000.  If the Settlement is approved by the Court and the Effective Date occurs, after deduction of Notice and Administration Costs, Taxes, and any attorneys' fees and expenses that are approved by the Court, the balance of the Settlement Fund plus accrued interest – the Net Settlement Fund – will be available for distribution to members of the Class.

Class Members who submit timely and valid Claim Forms will be eligible to receive a distribution from the Net Settlement Fund.

| 13. | How much will my payment be? |
|---|---|

At this time, it is not possible to make any determination as to how much any individual Class Member may receive from the Settlement.  The amounts to be distributed to individual Class Members will depend on a variety of factors, including:  the number of other Class Members who submit valid Claim Forms; the number of shares of common stock or Preferred Stock or number of call options purchased or put options sold; the prices and dates of those purchases; and the prices and dates of any sales of the stock or options.  The Net Settlement Fund will be distributed in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

No entity that paid any portion of the Settlement Amount is entitled to get back any portion of the Settlement Fund if the Court approves the Settlement and the Court's order or judgment approving the Settlement becomes Final.

## PROPOSED PLAN OF ALLOCATION

1.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

2.    In developing the Plan of Allocation, Lead Plaintiffs' damages expert reviewed publicly available information regarding Schering and performed statistical analyses of the price movements of Schering common stock ("Common

Stock"), preferred stock ("Preferred Stock"), and put and call options ("Put Options" and "Call Options," collectively "Options") (Schering Common Stock, Preferred Stock and Options are collectively referred to as "Schering Securities") and the price performance of relevant market and peer indices during the Class Period in order to allocate the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws as opposed to losses caused by market factors, industry factors, or Company-specific factors unrelated to the alleged violations of law.  The Plan of Allocation, however, is not a formal damage analysis.

3.    For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price or value of the security.  Lead Plaintiffs' damages expert has determined that allegedly corrective information released to the market potentially impacted the market prices of Schering Securities on December 12, 2007, January 14, 2008, January 15, 2008, January 17, 2008, January 25, 2008, January 29, 2008, and March 31, 2008.  However, not all of the Schering Securities exhibited statistically significant changes in market price in response to each of those disclosures.  In order to have a "Recognized Loss Amount" under the Plan of Allocation, with respect to Common Stock, Preferred Stock and Call Options, the stock or call options must have been purchased during the Class Period and held through at least one corrective disclosure that resulted in a statistically significant change in market price, and with respect to Put Options, those options must have been sold (written) during the Class Period and not closed through at least one corrective disclosure that resulted in a statistically significant change in market price.  Based on Lead Plaintiffs' damages expert's analysis, the following are the dates that will support a Recognized Loss Amount under the Plan of Allocation for each of the respective securities:

- Common Stock:  The disclosures had a statistically significant impact on the price on each of the dates listed above.

- Preferred Stock:  The disclosures had a statistically significant impact on the price on December 12, 2007, January 14, 2008, January 15, 2008, January 17, 2008, and March 31, 2008.

- Call Options:  The disclosures had a statistically significant impact on the price on December 12, 2007, January 14, 2008, January 15, 2008, January 17, 2008, January 29, 2008, and March 31, 2008.

- Put Options:  The disclosures had a statistically significant impact on the price on December 12, 2007, January 14, 2008, January 15, 2008, January 17, 2008, and March 31, 2008.

4.    Recognized Loss Amounts under Section 10(b) of the Exchange Act are based primarily on the change in the level of alleged artificial inflation (or deflation in the case of Schering Put Options) in the respective prices of the Schering Securities at the time of purchase or acquisition and at the time of sale.  Accordingly, in order to have a Recognized Loss Amount under Section 10(b), a Class Member who purchased Schering Common Stock or Call Options or sold Schering Put Options prior to December 12, 2007 (the first corrective disclosure), must have held his, her, or its respective Schering Securities through at least the opening of trading on December 12, 2007.  With respect to Common Stock, Preferred Stock, or Call Options contracts purchased and Put Options contracts sold on December 12, 2007 through the close of trading on March 28, 2008, in order to have a Recognized Loss Amount, those securities must have been held through at least one of the subsequent statistically significant corrective disclosures as specified in paragraph 3 above.

### CALCULATION OF RECOGNIZED LOSS OR GAIN AMOUNTS

5.    For purposes of determining whether a Claimant has a Recognized Claim, purchases, acquisitions, and sales of like securities will first be matched on a First In, First Out basis as set forth in paragraph 18 below.

### SECTION 10(b) CLAIMS

6.    With respect to shares of Schering Common Stock, Preferred Stock, and Call and Put Options, a "Recognized Loss Amount" or a "Recognized Gain Amount" will be calculated as set forth below for each purchase or other acquisition of Schering Common Stock, Preferred Stock, and Call Option contracts and each sale of Schering Put Option contracts from January 3, 2007 through and including March 28, 2008, that is listed in the Claim Form and for which adequate documentation is provided. To the extent that a calculation of a Recognized Loss Amount or a Recognized Gain Amount results in a negative number, that number shall be set to zero.

7.    The Recognized Loss and Gain Amounts calculated under paragraphs 8-13 below are referred to as the Claimant's "Section 10(b) Recognized Loss and Gain Amounts."

## COMMON STOCK CALCULATIONS

8. For each share of Schering Common Stock purchased or otherwise acquired from January 3, 2007 through and including March 28, 2008, and:

A. sold before the opening of trading on December 12, 2007,

(i) the Recognized Loss Amount for each such share shall be zero; and

(ii) the Recognized Gain Amount for each such share shall be the dollar artificial inflation applicable to each such share on the date of sale as set forth in Table 1 below *minus* the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 1 below.

B. sold after the opening of trading on December 12, 2007 and before the close of trading on March 28, 2008,

(i) the Recognized Loss Amount for each such share shall be the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 1 below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in Table 1 below; and

(ii) the Recognized Gain Amount for each such share shall be zero.

C. sold after the opening of trading on March 31, 2008 and before the close of trading on June 27, 2008,

(i) the Recognized Loss Amount for each such share shall be *the lesser of*:

(a) the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 1 below; or

(b) the actual purchase price of each such share (excluding all fees, taxes, and commissions) *minus* the average closing price from March 31, 2008, up to the date of sale as set forth in Table 2 below; and

(ii) the Recognized Gain Amount for each such share shall be zero.

D. held as of the close of trading on June 27, 2008,

(i) the Recognized Loss Amount for each such share shall be *the lesser of*:

(a) the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 1 below; or

(b) the actual purchase price of each such share (excluding all fees, taxes, and commissions) *minus* $18.45[5]; and

(ii) the Recognized Gain Amount for each such share shall be zero.

## PREFERRED STOCK CALCULATIONS

9. For each share of Schering Preferred Stock purchased or otherwise acquired in the offering on or about August 15, 2007 through and including March 28, 2008, and:

A. sold before the opening of trading on December 12, 2007,

(i) the Recognized Loss Amount for each such share shall be zero; and

(ii) the Recognized Gain Amount for each such share shall be zero.

---

[5] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day look-back period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the PSLRA, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Schering Common Stock during the 90-day look-back period beginning on the date of the last corrective disclosure. The mean (average) closing price for Schering Common Stock during this 90-day look-back period was $18.45.

L2939 v22 06.12.2013

**9**

B.  sold after the opening of trading on December 12, 2007 and before the close of trading on March 28, 2008,

    (i)  the Recognized Loss Amount for each such share shall be the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 3 below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in Table 3 below; and

    (ii)  the Recognized Gain Amount for each such share shall be zero.

C.  sold after the opening of trading on March 31, 2008 and before the close of trading on June 27, 2008,

    (i)  the Recognized Loss Amount for each such share shall be ***the lesser of***:

        (a)  the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 3 below; or

        (b)  the actual purchase price of each such share (excluding all fees, taxes, and commissions) *minus* the average closing price from March 31, 2008, up to the date of sale as set forth in Table 4 below; and

    (ii)  the Recognized Gain Amount for each such share shall be zero.

D.  held as of the close of trading on June 27, 2008,

    (i)  the Recognized Loss Amount for each such share shall be ***the lesser of***:

        (a)  the dollar artificial inflation applicable to each such share on the date of purchase as set forth in Table 3 below; or

        (b)  the actual purchase price of each such share (excluding all fees, taxes, and commissions) *minus* $182.02[6]; and

    (ii)  the Recognized Gain Amount for each such share shall be zero.

## CALL AND PUT OPTION CALCULATIONS

10.  Exchange-traded options are traded in units called "contracts" which entitle the holder to buy (in the case of a call) or sell (in the case of a put) 100 shares of the underlying security, which in this case is Schering Common Stock. Throughout this Plan of Allocation, all price quotations are *per share of the underlying security* (*i.e.*, 1/100 of a contract).

11.  Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (*i.e.*, 1/100 of a contract) for each series of Schering Call Options and the dollar artificial deflation per share (*i.e.*, 1/100 of a contract) for each series of Schering Put Options has been calculated by Lead Plaintiffs' damages expert. Table 5 below sets forth the dollar artificial inflation per share in Schering Call Options during the Class Period. Table 6 below sets forth the dollar artificial deflation per share in Schering Put Options during the Class Period.

12.  For each Schering Call Option purchased or otherwise acquired from January 3, 2007 through and including March 28, 2008, and:

A.  closed (through sale, exercise, or expiration) before the opening of trading on December 12, 2007,

    (i)  the Recognized Loss Amount for each such Option shall be zero; and

    (ii)  the Recognized Gain Amount for each such Option shall be zero.

---

[6] Consistent with the requirements of the PSLRA, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Schering Preferred Stock during the 90-day look-back period beginning on the date of the last corrective disclosure. The mean (average) closing price for Schering Preferred Stock during this 90-day look-back period was $182.02.

L29310 v22 06.12.2013

**10**

B.  closed (through sale, exercise, or expiration) after the opening of trading on December 12, 2007 and before the close of trading on March 28, 2008,

   (i)  the Recognized Loss Amount for each such Option shall be the dollar artificial inflation applicable to each such Option on the date of purchase as set forth in Table 5 below *minus* the dollar artificial inflation applicable to each such Option on the date of close as set forth in Table 5 below; and

   (ii)  the Recognized Gain Amount for each such Option shall be zero.

C.  open as of the opening of trading on March 31, 2008,

   (i)  the Recognized Loss Amount for each such Option shall be ***the lesser of***:

      (a)  the dollar artificial inflation applicable to each such Option on the date of purchase as set forth in Table 5 below; or

      (b)  the actual purchase price of each such Option (excluding all fees, taxes, and commissions) *minus* the closing price on March 31, 2008 for each such Option (*i.e.*, the "Holding Price") as set forth in Table 5 below; and

   (ii)  the Recognized Gain Amount for each such Option shall be zero.

13.  For each Schering Put Option sold (written) from January 3, 2007 through and including March 28, 2008 and:

A.  closed (through purchase, exercise, or expiration) before the opening of trading on December 12, 2007,

   (i)  the Recognized Loss Amount for each such Option shall be zero; and

   (ii)  the Recognized Gain Amount for each such Option shall be zero.

B.  closed (through purchase, exercise, or expiration) after the opening of trading on December 12, 2007 and before the close of trading on March 28, 2008,

   (i)  the Recognized Loss Amount for each such Option shall be the dollar artificial deflation applicable to each such Option on the date of sale as set forth in Table 6 below *minus* the dollar artificial deflation applicable to each such Option on the date of close as set forth in Table 6 below; and

   (ii)  the Recognized Gain Amount for each such Option shall be zero.

C.  open as of the opening of trading on March 31, 2008,

   (i)  the Recognized Loss Amount for each such Option shall be ***the lesser of***:

      (a)  the dollar artificial deflation applicable to each such Option on the date of sale as set forth in Table 6 below; or

      (b)  the closing price on March 31, 2008 for each such Option (*i.e.*, the "Holding Price") as set forth in Table 6 below *minus* the actual sale price of each such Option (excluding all fees, taxes, and commissions); and

   (ii)  the Recognized Gain Amount for each such Option shall be zero.

14.  The Settlement proceeds available for Schering Call Options purchased during the Class Period and Schering Put Options sold (written) during the Class Period shall be limited to a total amount equal to two percent (2%) of the Net Settlement Fund.

### ADJUSTMENT TO RECOGNIZED LOSS AMOUNT FOR SECTION 11 CLAIMS

15.  Investors who purchase securities in an offering pursuant or traceable to a registration statement that contained material misrepresentations have a right to assert a claim under Section 11 of the Securities Act.  Where the offering is an initial offering of the security, there is no issue as to traceability; all purchasers of that security have a right to assert a Section 11 claim.  There were two offerings by Schering that are covered by this Action.  A secondary offering of Common Stock that occurred on or about August 15, 2007 and an initial offering of Preferred Stock that occurred on or about August 15, 2007.  Class Members who can establish that they purchased Schering Common Stock in or traceable to the secondary offering and all Class Members who purchased Schering Preferred Stock have claims under Section 11.

16. In consideration of the difference in the burden in establishing a Section 11 claim as compared to the burden in establishing a Section 10(b) claim[7], with respect to Schering Common Stock and Preferred Stock that have a Section 11 claim, the Claimant's "Section 11 Recognized Loss Amount" shall be calculated by multiplying the Claimant's Section 10(b) Recognized Loss Amount on those shares by 1.25.[8]

17. With respect to shares that have both Section 10(b) and Section 11 Recognized Loss Amounts, for purposes of calculating the Claimant's Recognized Claim, only the Section 11 Recognized Loss Amount calculated as set forth in paragraph 16 above shall be used.

**ADDITIONAL PROVISIONS**

18. **FIFO Matching:** If a Class Member has more than one purchase/acquisition or sale of any Schering Security during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis. With respect to Schering Common Stock, Preferred Stock, and Call Options, Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. For Schering Put Options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period, and then against Put Options sold (written) during the Class Period in chronological order.

19. **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Schering Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Schering Securities during the Class Period shall not be deemed a purchase, acquisition, or sale of these Schering Securities for the calculation of a Claimant's Recognized Loss or Gain Amounts, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Schering Securities unless (i) the donor or decedent purchased or otherwise acquired such Schering Securities during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Schering Securities.

20. **Short Sales:** With respect to Schering Common and Preferred Stock, the date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Common or Preferred Stock. The date of a "short sale" is deemed to be the date of sale of the respective Schering Common or Preferred Stock. In accordance with the Plan of Allocation, however, the Recognized Loss and Gain Amounts on "short sales" during the Class Period is zero.

21. In the event that a Claimant has an opening short position in Schering Common or Preferred Stock, the earliest Class Period purchases or acquisitions shall be matched against such opening short position, and shall not be entitled to a recovery, until that short position is fully covered.

22. If a Class Member has "written" Call Options, thereby having a short position in the Call Options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the Call Option. The date on which the Call Option was written is deemed to be the date of sale of the Call Option. In accordance with the Plan of Allocation, however, the Recognized Loss and Gain Amounts on "written" Call Options is zero. In the event that a Claimant has an opening written position in Call Options, the earliest Class Period purchases or acquisitions of like Call Options shall be matched against such opening written position, and not be entitled to a recovery, until that written position is fully covered.

23. If a Class Member has purchased or acquired Put Options, thereby having a long position in the Put Options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the Put Option. The date on which the Put Option was sold, exercised, or expired is deemed to be the date of sale of the Put Option. In accordance with the Plan of Allocation, however, the Recognized Loss and Gain Amounts on purchased/acquired Put Options is zero. In the event that a Claimant has an opening long position in Put Options, the earliest Class Period sales or dispositions of like Put Options shall be matched against such opening position, and not be entitled to a recovery, until that long position is fully covered.

24. **Common Stock Acquired/Sold Through the Exercise of Options:** With respect to Schering Common Stock purchased or sold through the exercise of an option, the purchase/sale date of the Common Stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

25. **Netting Gains and Losses:** Gains and losses in Schering Securities trades will be netted for purposes of calculating whether a Claimant had an overall gain or loss on his, her, or its transactions. The netting will occur both

---

[7] The burden of proof under Section 11 of the Securities Act is less than the burden under Section 10(b) of the Exchange Act. For example, under Section 11, plaintiffs need not prove intent to defraud; such proof is required under Section 10(b). Additionally, under Section 11, defendants have the burden to prove that they did not cause the losses complained of, while under Section 10(b) the burden is on plaintiffs to prove that defendants did cause the losses.

[8] The Claim Form that accompanies this Notice provides more information on what documentation is required for a Class Member to establish that he, she, or it has a claim under Section 11.

**12**

with respect to the Claimant's calculated Section 10(b) and Section 11 Recognized Gain and Loss Amounts as set forth in paragraphs 5-17 above as well as with respect to the Claimant's gains or losses based on his, her, or its market transactions.

(a) **Netting of Calculated Recognized Gains and Loss Amounts:** With respect to the calculations made pursuant to the Section 10(b) and Section 11 Recognized Claim calculations, the Claimant's Recognized Common Stock, Preferred Stock, and Options Loss Amounts will be totaled (the "Total Loss Amount") and the Claimant's Recognized Common Stock, Preferred Stock, and Options Gains will be totaled (the "Total Gain Amount"). If the Claimant's Total Loss Amount *minus* the Claimant's Total Gain Amount is a positive number, that will be the Claimant's Recognized Loss Amount; if the number is a negative number or zero, that will be the Claimant's Recognized Gain Amount.

(b) **Netting of Market Gains and Losses:** With respect to all Schering Common Stock, Preferred Stock, and Call Options purchased or acquired or Put Options sold during the Class Period, the Claims Administrator will also determine if the Claimant had a Market Gain or a Market Loss with respect to his, her, or its overall transactions during the Class Period in those shares and options. For purposes of making this calculation, with respect to Schering Common Stock, Preferred Stock, and Call Options, the Claims Administrator shall determine the difference between (i) the Claimant's Total Purchase Amount[9] and (ii) the sum of the Claimant's Sales Proceeds[10] and the Claimant's Holding Value.[11] For Schering Common Stock, Preferred Stock, and Call Options, if the Claimant's Total Purchase Amount *minus* the sum of the Claimant's Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain. With respect to Schering Put Options, the Claims Administrator shall determine the difference between (i) the sum of the Claimant's Total Purchase Amount[12] and the Claimant's Holding Value;[13] and (ii) the Claimant's Sale Proceeds.[14] For Schering Put Options, if the sum of the Claimant's Total Purchase Amount and the Claimant's Holding Value *minus* the Claimant's Sales Proceeds is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

26. **Calculation of Claimant's "Recognized Claim":** If a Claimant has a Recognized Gain Amount *or* a Market Gain, the Claimant's "Recognized Claim" will be zero. If the Claimant has a Recognized Loss Amount *and* a Market Loss, the Claimant's "Recognized Claim" will be the lesser of those two amounts.

27. **Determination of Distribution Amount:** If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

28. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

---

[9] For Schering Common Stock, Preferred Stock, and Call Options, the "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes, and commissions) for all such Schering securities purchased or acquired during the Class Period.

[10] For Schering Common Stock, Preferred Stock, and Call Options, the Claims Administrator shall match any sales of such Schering securities during the Class Period first against the Claimant's opening position in the like Schering securities (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding all fees, taxes, and commissions) for sales of the remaining like Schering securities sold during the Class Period is the "Sales Proceeds."

[11] The Claims Administrator shall ascribe a "Holding Value" of $14.41 to each share of Schering Common Stock purchased or acquired during the Class Period that was still held as of the close of trading on March 28, 2008 and a "Holding Value" of $153.18 to each share of Schering Preferred Stock purchased or acquired during the Class Period that was still held as of the close of trading on March 28, 2008. For each Schering Call Option purchased or acquired during the Class Period that was still held as of the close of trading on March 28, 2008, the Claims Administrator shall ascribe a "Holding Value" for that option which shall be the Holding Price set forth in Table 5 below.

[12] For Schering Put Options, the Claims Administrator shall match any purchases during the Class Period to close out positions in Put Options first against the Claimant's opening position in Put Options (the total amount paid with respect to those purchases will not be considered for purposes of calculating market gains or losses). The total amount paid (excluding all fees, taxes, and commissions) for the remaining purchases during the Class Period to close out positions in Put Options is the "Total Purchase Amount."

[13] For each Schering Put Option sold (written) during the Class Period that was still outstanding as of the close of trading on March 28, 2008, the Claims Administrator shall ascribe a "Holding Value" for that option which shall be the Holding Price set forth in Table 6 below.

[14] For Schering Put Options, the total amount received (excluding all fees, taxes, and commissions) for Put Options sold (written) during the Class Period is the "Sales Proceeds."

L29313 v22 06.12.2013

**13**

29.   The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation (*i.e.*, the Recognized Claim will be deemed to be zero) and no distribution will be made to that Authorized Claimant.

30.   To the extent that any monies remain in the Net Settlement Fund after the Claims Administrator, Epiq, has caused distributions to be made to all Authorized Claimants, whether by reason of un-cashed distributions or otherwise, then, after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Net Settlement Fund at least one (1) year after the initial distribution of such funds shall be re-distributed to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund, including for such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Co-Lead Counsel and Lead Plaintiffs, in consultation with Epiq, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the funds, including for such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance in the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Co-Lead Counsel and Lead Plaintiffs and approved by the Court.

31.   Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, Defendants, Defendants' Counsel or any of the other Releasees, or the Claims Administrator, Epiq, or other agent designated by Co-Lead Counsel arising from the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim or any actions taken (or not taken) by Epiq, the payment or withholding of taxes owed by the Settlement Fund made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court.

32.   The Plan of Allocation set forth herein is the plan that is being proposed by Lead Plaintiffs and Co-Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class.  Any orders regarding a modification of the Plan of Allocation will be posted to the website for this Action, www.scheringvytorinsecuritieslitigation.com.

### HOW TO GET A PAYMENT

| 14.   What do I have to do to receive a share of the Settlement? |
| --- |

To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Class and timely complete and return a valid Claim Form with adequate supporting documentation **postmarked no later than November 18, 2013**.  A Claim Form is included with this Notice, or you may obtain one on the Internet at www.scheringvytorinsecuritieslitigation.com or by calling the Claims Administrator at (877) 854-4458.  Please retain all records of your transactions in Schering common stock, Preferred Stock, call options, and put options, as they may be needed to document your Claim.

Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before November 18, 2013 shall be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Class Member releases the Released Plaintiffs' Claims (as defined in the response to Question 16 below) against the Defendants and the other Defendants' Releasees (as defined in the response to Question 16 below) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendants or any of the other Defendants' Releasees, whether or not such Class Member submits a Claim Form.

The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.  Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

Persons and entities that either are excluded from the Class by definition or whose names appear on Appendix 1 to the Stipulation because they previously submitted a request for exclusion in connection with the Class Notice who do not elect to opt-back into the Class (*see* response to Question 18 below), will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.

| 15.   When will I receive my payment? |
| --- |

Lead Plaintiffs cannot, at this time, say when they will be able to distribute the proceeds of the Settlement to

members of the Class.  Any payments from the Settlement proceeds are contingent upon the Court approving the Settlement and on such approval becoming final and no longer subject to any appeals.  Even if the Court approves the Settlement, there still might be appeals, which can take more than a year to resolve.

The Settlement Amount will be kept in an escrow account until it is ready for distribution, and any accrued interest will be added to the funds available for distribution to the Class.

---

**16.  As a Class Member, what am I giving up in the Settlement?**

---

If you are a member of the Class, you will be bound by the orders and judgments entered by the Court in the Action, whether or not you submit a Claim Form.  If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that Lead Plaintiffs and all other Class Members, by operation of the Judgment, shall release and forever discharge each and every one of the Defendants and the other Defendants' Releasees (as defined below) from any and all of the Released Plaintiffs' Claims (as defined below). Class Members will not be able to sue, continue to sue, or be part of any other lawsuit involving any claims released in the Settlement.  Class Members will be bound by the orders of the Court whether or not they submit a Claim Form and/or receive a payment.

"Defendants' Releasees" means the Defendants and their respective present and former parents, subsidiaries, divisions, joint ventures and affiliates, and each of their respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, auditors, and insurers (but only in such insurers' capacity as insurers of the foregoing); and the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, fiduciaries, consultants, representatives and assigns of each of them, in their capacity as such.

"Released Plaintiffs' Claims" means any and all claims, actions, causes of action, controversies, demands, duties, debts, damages, obligations, contracts, agreements, promises, issues, judgments, liabilities, losses, sums of money, matters, suits, proceedings, and rights of every nature and description, whether known claims or Unknown Claims, suspected or unsuspected, concealed or unconcealed, foreseen or unforeseen, fixed or contingent, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether based on federal, state, local or foreign statutory law, rule, regulation, common law, or equity, and whether direct, representative, class, or individual, to the fullest extent permitted by law, that Class Representatives or any other member of the Class:  (i) asserted in the Action, including in the Complaint; or (ii) could have asserted in any forum arising out of, related to, or based in whole or in part upon, in connection with, or in any way involving any of the occurrences, causes, breaches of duty, neglect, error, misstatements, misleading statements, representations, omissions, acts, or facts, circumstances, situations, events, or transactions alleged, involved, set forth, contained, or referred to in the Action, including in the Complaint, and arise out of the purchase, acquisition, or holding of Schering common stock, Preferred Stock, or call options, or sale of Schering put options during the Class Period.  Released Plaintiffs' Claims do not release, bar, or waive:  (i) claims which were asserted in the actions entitled *Cain v. Hassan*, Civil Action No. 2:08-cv-01022 (D.N.J.), *In re Schering-Plough Corp. ENHANCE ERISA Litigation,* Civil Action No. 08-CV-1432 (D.N.J.), *In re Vytorin/Zetia Marketing Sales Practices and Products Liability Litigation*, 08-cv-0285 (DMC) (D.N.J.), *In re Merck & Co. Inc., Vytorin/Zetia Securities Litigation,* 08-cv-02177 (DMC) (D.N.J.), *Local No. 38 International Brotherhood Of Electrical Workers Pension Fund v. Clark, et al.*, 09-cv-05668 (DMC) (D.N.J.), or *In re Merck & Co. Inc. Vytorin ERISA Litigation*, 08-cv-1974 (DMC) (D.N.J.) that are not already released, barred or waived by the orders or judgments therein, or by operation of law; (ii) any claims of any Person listed in Appendix 1 to the Stipulation that submitted a valid or Court-approved request for exclusion and who does not opt back into the Class; or (iii) if and only if the Court affords a second opportunity to request exclusion from the Class, any claims of any Person that submits a valid or Court-approved request for exclusion in connection with the Settlement Notice who does not withdraw his, her, or its request for exclusion and whose request is accepted by the Court (collectively, the "Excluded Claims").  Additionally, Released Plaintiffs' Claims do not include claims relating to the enforcement of the Settlement.

"Unknown Claims" means any Released Claims which Class Representatives, any other Class Member, or each of the Defendants or any of the other Releasees, does not know or suspect to exist in his, her, or its favor at the time of the release of each or any of the other Releasees, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Class Representatives and each of the Defendants expressly waive, and each of the other Class Members and each of the other Releasees shall be deemed to have waived, and by operation of the Judgment, or, if applicable, the Alternative Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

L29315 v22 06.12.2013                                                      **15**

Class Representatives, any other Class Member, Defendants, and their respective Releasees may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Parties stipulate and agree that, upon the Effective Date of the Settlement, Class Representatives and each of the Defendants shall expressly waive, and each of the other Class Members and Releasees shall be deemed to have waived, and by operation of the Judgment, or if applicable, the Alternative Judgment, shall have expressly waived any and all Released Claims without regard to the subsequent discovery or existence of such different or additional facts.

## REQUESTING EXCLUSION FROM THE CLASS

**17.  May I now request exclusion from the Class?**

No.  As set forth in the Class Notice, the Court-ordered deadline to request exclusion from the Class expired on March 1, 2013.  The Class Notice also advised you that it was within the Court's discretion as to whether a second opt-out would be permitted if there were a settlement in the Action. The Court has exercised its discretion and ruled that there will not be a second opportunity to request exclusion from the Class.

## "OPTING-BACK" INTO THE CLASS

**18.  What if I previously requested exclusion from the Class and now want to be eligible to receive a payment from the Settlement Fund?  How do I opt-back into the Class?**

If you previously submitted a request for exclusion from the Class in connection with the Class Notice (*see* Appendix 1 to the Stipulation, available online at www.scheringvytorinsecuritieslitigation.com, which is the list of all persons and entities who requested exclusion), you may elect to opt-back into the Class and be eligible to receive a payment from the Settlement.

If you believe that you previously submitted a request for exclusion but your name does not appear on Appendix 1 to the Stipulation, you can contact the Claims Administrator, Epiq, at (877) 854-4458 for assistance.

In order to opt-back into the Class, you, individually, or through counsel, must submit a written Request to Opt-Back Into the Class to Epiq, addressed as follows:  *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, "Opt-In Request," P.O. Box 3127, Portland, OR 97208-3127.  This request must be *received* no later than August 5, 2013.  Your Request to Opt-Back Into the Class must (a) state the name, address, and telephone number of the person or entity requesting to opt-back into the Class; (b) state that such person or entity "requests to opt-back into the Class in the *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, Civil Action No. 08-397 (DMC)(JAD)"; and (c) be signed by the person or entity requesting to opt-back into the Class or an authorized representative.

You may not opt-back into the Class for the purpose of objecting to any aspect of the Settlement, the Plan of Allocation, or Co-Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses.

**PLEASE NOTE:  OPTING-BACK INTO THE CLASS IN ACCORDANCE WITH THE REQUIREMENTS SET FORTH ABOVE DOES NOT MEAN THAT YOU WILL AUTOMATICALLY BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU OPT-BACK INTO THE CLASS AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE ALSO REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN NOVEMBER 18, 2013.**

**19.  If I am a Class Member and didn't exclude myself, can I sue Defendants or the Other Defendants' Releasees for the same thing later?**

No.  Unless you followed the procedure outlined in the Class Notice, you have given up any right to sue Defendants or the other Defendants' Releasees for the claims that the Settlement resolves.  If you have a pending lawsuit against any of the Defendants or any of the other Defendants' Releasees, speak to your lawyer in that case immediately.  You must have excluded yourself from the Settlement to continue your own lawsuit against the Defendants or the other Defendants' Releasees.

**20.  If I excluded myself, can I get money from the Settlement?**

No.  Only Class Members who did not exclude themselves, or who opt-back into the Class, will be eligible to recover money in the Settlement.

**THE LAWYERS REPRESENTING YOU**

| 21.  Do I have a lawyer in this case? |
|---|

The Court has appointed the law firms of Bernstein Litowitz Berger & Grossmann LLP and Labaton Sucharow LLP as Co-Lead Counsel to represent Lead Plaintiffs and all other Class Members in the Action.  If you have any questions about the proposed Settlement, you may contact Co-Lead Counsel as follows:  Salvatore J. Graziano, Esq., Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496; or Christopher J. McDonald, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 543-3218.

If you want to be represented by your own lawyer, you may hire one at your own expense.

| 22.  How will the lawyers be paid? |
|---|

You will be not charged directly for the fees or expenses of Plaintiffs' Counsel.  Instead, Co-Lead Counsel will apply to the Court for payment of Plaintiffs' Counsel's fees and expenses out of the proceeds of the recovery achieved in the Action.  The Court has appointed Mr. Greenberg and Mr. Lerner as Special Masters to review the fee and expense application.

Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Class, nor have they been reimbursed for their Litigation Expenses.  Before final approval of the Settlement, Co-Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 17% of the Settlement Fund, which will include accrued interest.  At the same time, Co-Lead Counsel also intend to apply for reimbursement of Litigation Expenses in an amount not to exceed $5,250,000, plus accrued interest, which will include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class in an amount not to exceed $150,000.  The Court will determine the amount of any award of attorneys' fees and reimbursement of expenses.

**OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION,
OR THE FEE AND EXPENSE APPLICATION**

| 23.  How do I tell the Court that I don't like the Settlement? |
|---|

Any Class Member who did not submit a request for exclusion from the Class in connection with the Class Notice can object to the Settlement or any part of it, the proposed Plan of Allocation, and/or Co-Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and give reasons why the Court should not approve them.  To object, you must send a letter or other filing saying that you object to the proposed Settlement, the Plan of Allocation, and/or Co-Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses in *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, Civil Action No. 08-397 (DMC)(JAD).  Any objection (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Class Member's objection or objections, and the specific reason(s) for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove the objector's membership in the Class such as the number of shares of Schering common stock, shares of Preferred Stock, Schering call options, and/or Schering put options purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale.  The written objection must be filed with the clerk of the United States District Court for the District of New Jersey and sent to Co-Lead Counsel and Representative Defendants' Counsel at the addresses set forth below so that the papers are *received* by the clerk of the Court and counsel **no later than August 5, 2013:**

| **Clerk of the Court** | **Co-Lead Counsel** | **Representative Defendants' Counsel** |
|---|---|---|
| Clerk of the U.S. District   Court for the District of New Jersey Martin Luther King Building   & U.S. Courthouse 50 Walnut Street Room 4015 Newark, NJ 07101 | Salvatore J. Graziano, Esq. BERNSTEIN LITOWITZ BERGER   & GROSSMANN LLP 1285 Avenue of the Americas New York, NY 10019                 and Christopher J. McDonald, Esq. LABATON SUCHAROW LLP 140 Broadway New York, NY 10005 | Daniel J. Kramer, Esq. PAUL, WEISS, RIFKIND,   WHARTON & GARRISON, LLP 1285 Avenue of the Americas New York, NY 10019 |

Persons who intend to object and present evidence at the Settlement Hearing must include in their written objection the identity of any witnesses they may call to testify, and any exhibits they intend to introduce into evidence at the hearing.

You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you have first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

Any member of the Class who does not object in the manner provided above will be deemed to have waived all objections to the Settlement, the Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses.

### 24. What's the difference between objecting and requesting exclusion?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you are a Class Member.

Excluding yourself is telling the Court that you do not want to be part of the Class. If you excluded yourself, you have no basis to object, because the case no longer affects you. If you did not exclude yourself, you will be bound by the Settlement and all orders and judgments entered by the Court regarding the Settlement, regardless of whether the Court accepts or denies your objection.

### 25. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a hearing on the proposed Settlement for October 1, 2013 at 10:00 a.m., before the Honorable Dennis M. Cavanaugh in the U.S. District Court for the District of New Jersey, in Courtroom PO 04 of the United States Post Office and Courthouse Building, Newark, NJ 07101. At the Settlement Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, whether the proposed Plan of Allocation is fair and reasonable, and whether Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses (and any recommendation by the Special Masters with respect to the fee and expense motion) should be approved. If there are objections, the Court will consider them. At or after the Settlement Hearing, the Court will decide whether to approve the Settlement, the Plan of Allocation, and the motion for attorneys' fees and reimbursement of Litigation Expenses.

Please note that the date of the Settlement Hearing is subject to change without further notice. If you plan to attend the hearing, you should check with Co-Lead Counsel to be sure that no change to the date and time of the hearing has been made.

### 26. Do I have to come to the Settlement Hearing?

No. Co-Lead Counsel will answer any questions the Court might have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection so that it was received by the deadline, it will be before the Court when the Court considers whether to approve the Settlement, the Plan of Allocation, and Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. You may also pay your own lawyer to attend the hearing, but attendance is not necessary.

### 27. May I speak at the Settlement Hearing?

If you are a Class Member, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *In re Schering-Plough Corporation / ENHANCE Securities Litigation*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be filed with the Clerk of the Court and sent to the counsel listed above in the answer to Question 23 so that it is *received* by the Court and counsel **no later than August 5, 2013**. You cannot speak at the hearing if you have asked to be excluded from the Class.

### IF YOU DO NOTHING

### 28. What happens if I do nothing at all?

If you are a member of the Class and do nothing in response to this Notice, you will not be eligible to participate in the distribution of the proceeds of the Settlement, if it is approved, but you will be bound by the Settlement which means that you will not be able to start, continue, or be part of any other lawsuit or arbitration against Defendants or the other Defendants' Releasees based on the Released Plaintiffs' Claims in the Action.

L29318 v22 06.12.2013                                                                18

In order for a Class Member to be eligible to receive a payment from the Settlement, a properly completed and documented Claim Form postmarked **on or before November 18, 2013**, must be submitted.

## GETTING MORE INFORMATION

| 29. Are there more details about the Settlement? |
|---|

This Notice contains only a summary of the proposed Settlement.  The complete terms of the Settlement are set out in the Stipulation and Agreement of Settlement dated June 3, 2013.  You may request a copy of the Stipulation by writing to *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, P.O. Box 3127, Portland, OR 97208-3127.  There may be a charge for copying and mailing the Stipulation.  Copies of the Stipulation may be obtained for free at www. scheringvytorinsecuritieslitigation.com.

| 30. How do I get more information? |
|---|

You can also call the Claims Administrator toll-free at (877) 854-4458, write to the Claims Administrator at the above address, or visit the website at www.scheringvytorinsecuritieslitigation.com, where you will find copies of the Stipulation, the Complaint, and certain other documents relating to the Action and the Settlement.  Anyone interested in more detail regarding the Action is invited to visit the Office of the Clerk of the United States District Court for the District of New Jersey at the Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101, during regular business hours, to inspect the Stipulation, the pleadings, and the other papers maintained there in Civil Action No. 08-397 (DMC) (JAD).

**PLEASE DO NOT CALL OR WRITE THE COURT OR
THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

**SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES**

The Class Notice advised you that if, for the beneficial interest of any person or entity other than yourself, you purchased or otherwise acquired Schering common stock, Preferred Stock, or call options, and/or sold Schering put options during the period between January 3, 2007 through and including March 28, 2008, you must either (a) within seven (7) calendar days of receipt of the Class Notice, request from the Claims Administrator, Epiq, sufficient copies of the Class Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notices forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Class Notice, provide a list of the names and addresses of all such beneficial owners to Epiq, at *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, P.O. Box 3127, Portland, OR 97208-3127 or via email to info@scheringvytorinsecuritieslitigation.com, in which event Epiq would mail the Class Notice to such beneficial owners.

If you chose the first option, *i.e.*, you elected to mail the Class Notice directly to beneficial owners, you were advised that you must retain the mailing records for use in connection with any further notices that may be provided in the Action. If you elected that option, Epiq will forward the same number of this Notice and Claim Form (together, the "Notice Packet") to you to send to the beneficial owners.  If you require more copies than you previously requested, please contact Epiq toll-free at (877) 854-4458 and let them know how many additional Notice Packets you require.  You must mail the Notice Packets to the beneficial owners within seven (7) calendar days of your receipt of the Notice Packets.  Upon mailing of the Notice Packets, you may seek reimbursement of your reasonable expenses actually incurred, by providing Epiq with proper documentation supporting the expenses for which reimbursement is sought.

If you chose the second option, Epiq will send a copy of the Notice and the Claim Form to the beneficial owners whose names and addresses you previously supplied.  Unless you believe that you purchased or acquired Schering common stock, Preferred Stock, or call options and/or sold Schering put options during the Class Period for beneficial owners whose names you did not previously provide to Epiq, you need do nothing further at this time.  If you believe that you did purchase or acquire Schering common stock, Preferred Stock, or call options and/or did sell Schering put options during the Class Period for beneficial owners whose names you did not previously provide to Epiq, you must within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to Epiq at *In re Schering-Plough Corporation / ENHANCE Securities Litigation*, P.O. Box 3127, Portland, OR 97208-3127, or via email to info@scheringvytorinsecuritieslitigation.com.  Upon full compliance with these directions, you may seek reimbursement of your reasonable expenses actually incurred, by providing Epiq with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may also be obtained from the website for this Action, www.scheringvytorinsecuritieslitigation.com, or by calling Epiq toll-free at (877) 854-4458.

Dated:  June 21, 2013

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**19**

**TABLE 1**

**Common Stock Daily Artificial Inflation**

| Date | Daily Artificial Inflation |
|---|---|
| January 3, 2007-April 18, 2007 | $12.52 |
| April 19, 2007-December 11, 2007 | $12.68 |
| December 12, 2007-January 13, 2008 | $11.50 |
| January 14, 2008 | $9.22 |
| January 15, 2008-January 16, 2008 | $7.97 |
| January 17, 2008-January 24, 2008 | $6.70 |
| January 25, 2008-January 28, 2008 | $6.02 |
| January 29, 2008-March 30, 2008 | $5.41 |

**TABLE 2**

**Schering Common Stock Price and Rolling Average Closing Price
from March 31, 2008 through June 27, 2008**

| Date | Schering Common Stock Price | Average Closing Price from March 31, 2008 through June 27, 2008 | Date | Schering Common Stock Price | Average Closing Price from March 31, 2008 through June 27, 2008 |
|---|---|---|---|---|---|
| 3/31/2008 | $14.41 | $14.41 | 5/14/2008 | $19.59 | $17.40 |
| 4/1/2008 | $14.75 | $14.58 | 5/15/2008 | $19.42 | $17.46 |
| 4/2/2008 | $13.86 | $14.34 | 5/16/2008 | $19.38 | $17.52 |
| 4/3/2008 | $15.38 | $14.60 | 5/19/2008 | $19.04 | $17.56 |
| 4/4/2008 | $16.12 | $14.90 | 5/20/2008 | $19.26 | $17.61 |
| 4/7/2008 | $16.76 | $15.21 | 5/21/2008 | $19.31 | $17.65 |
| 4/8/2008 | $16.15 | $15.35 | 5/22/2008 | $19.75 | $17.70 |
| 4/9/2008 | $16.60 | $15.50 | 5/23/2008 | $19.23 | $17.74 |
| 4/10/2008 | $17.01 | $15.67 | 5/27/2008 | $20.08 | $17.80 |
| 4/11/2008 | $17.21 | $15.83 | 5/28/2008 | $20.09 | $17.85 |
| 4/14/2008 | $16.55 | $15.89 | 5/29/2008 | $19.84 | $17.90 |
| 4/15/2008 | $16.41 | $15.93 | 5/30/2008 | $20.40 | $17.96 |
| 4/16/2008 | $16.38 | $15.97 | 6/2/2008 | $19.86 | $18.00 |
| 4/17/2008 | $16.48 | $16.01 | 6/3/2008 | $20.50 | $18.05 |
| 4/18/2008 | $16.87 | $16.06 | 6/4/2008 | $20.41 | $18.10 |
| 4/21/2008 | $17.27 | $16.14 | 6/5/2008 | $20.72 | $18.16 |
| 4/22/2008 | $17.14 | $16.20 | 6/6/2008 | $19.88 | $18.19 |
| 4/23/2008 | $18.27 | $16.31 | 6/9/2008 | $19.66 | $18.22 |
| 4/24/2008 | $18.12 | $16.41 | 6/10/2008 | $19.61 | $18.25 |
| 4/25/2008 | $18.64 | $16.52 | 6/11/2008 | $19.48 | $18.27 |
| 4/28/2008 | $18.75 | $16.63 | 6/12/2008 | $19.50 | $18.30 |
| 4/29/2008 | $18.76 | $16.72 | 6/13/2008 | $19.24 | $18.31 |
| 4/30/2008 | $18.41 | $16.80 | 6/16/2008 | $19.20 | $18.33 |
| 5/1/2008 | $18.85 | $16.88 | 6/17/2008 | $19.26 | $18.35 |
| 5/2/2008 | $18.90 | $16.96 | 6/18/2008 | $19.28 | $18.36 |
| 5/5/2008 | $18.75 | $17.03 | 6/19/2008 | $19.25 | $18.38 |
| 5/6/2008 | $18.69 | $17.09 | 6/20/2008 | $18.57 | $18.38 |
| 5/7/2008 | $18.18 | $17.13 | 6/23/2008 | $18.62 | $18.39 |
| 5/8/2008 | $18.71 | $17.19 | 6/24/2008 | $19.33 | $18.40 |
| 5/9/2008 | $18.65 | $17.23 | 6/25/2008 | $19.73 | $18.42 |
| 5/12/2008 | $18.75 | $17.28 | 6/26/2008 | $18.98 | $18.43 |
| 5/13/2008 | $18.94 | $17.34 | 6/27/2008 | $19.64 | $18.45 |

L29321 v22 06.12.2013

**TABLE 3**

**Preferred Stock Daily Artificial Inflation**

| Date | Daily Artificial Inflation |
|---|---|
| From the offering-December 11, 2007 | $82.12 |
| December 12, 2007-January 13, 2008 | $75.06 |
| January 14, 2008 | $60.99 |
| January 15, 2008-January 16, 2008 | $53.01 |
| January 17, 2008-March 30, 2008 | $42.73 |

**TABLE 4**

**Schering Preferred Stock Price and Rolling Average Closing Price**
**from March 31, 2008 through June 27, 2008**

| Date | Schering Preferred Stock Price | Average Closing Price from March 31, 2008 through June 27, 2008 | Date | Schering Preferred Stock Price | Average Closing Price from March 31, 2008 through June 27, 2008 |
|---|---|---|---|---|---|
| 3/31/2008 | $153.18 | $153.18 | 5/14/2008 | $189.03 | $174.92 |
| 4/1/2008 | $156.88 | $155.03 | 5/15/2008 | $187.50 | $175.29 |
| 4/2/2008 | $148.70 | $152.92 | 5/16/2008 | $187.58 | $175.65 |
| 4/3/2008 | $159.91 | $154.67 | 5/19/2008 | $185.02 | $175.91 |
| 4/4/2008 | $166.50 | $157.03 | 5/20/2008 | $186.75 | $176.20 |
| 4/7/2008 | $171.20 | $159.40 | 5/21/2008 | $187.55 | $176.50 |
| 4/8/2008 | $167.75 | $160.59 | 5/22/2008 | $190.67 | $176.86 |
| 4/9/2008 | $170.70 | $161.85 | 5/23/2008 | $187.18 | $177.12 |
| 4/10/2008 | $173.58 | $163.16 | 5/27/2008 | $192.64 | $177.50 |
| 4/11/2008 | $174.55 | $164.30 | 5/28/2008 | $192.44 | $177.85 |
| 4/14/2008 | $169.50 | $164.77 | 5/29/2008 | $191.18 | $178.16 |
| 4/15/2008 | $168.56 | $165.08 | 5/30/2008 | $196.00 | $178.57 |
| 4/16/2008 | $168.99 | $165.38 | 6/2/2008 | $191.65 | $178.86 |
| 4/17/2008 | $169.50 | $165.68 | 6/3/2008 | $195.93 | $179.23 |
| 4/18/2008 | $172.25 | $166.12 | 6/4/2008 | $194.17 | $179.55 |
| 4/21/2008 | $175.25 | $166.69 | 6/5/2008 | $197.75 | $179.93 |
| 4/22/2008 | $174.25 | $167.13 | 6/6/2008 | $192.48 | $180.18 |
| 4/23/2008 | $181.31 | $167.92 | 6/9/2008 | $188.91 | $180.36 |
| 4/24/2008 | $181.84 | $168.65 | 6/10/2008 | $190.04 | $180.55 |
| 4/25/2008 | $185.74 | $169.51 | 6/11/2008 | $189.00 | $180.71 |
| 4/28/2008 | $186.00 | $170.29 | 6/12/2008 | $188.44 | $180.86 |
| 4/29/2008 | $181.57 | $170.81 | 6/13/2008 | $187.24 | $180.97 |
| 4/30/2008 | $180.53 | $171.23 | 6/16/2008 | $186.64 | $181.08 |
| 5/1/2008 | $183.35 | $171.73 | 6/17/2008 | $188.15 | $181.20 |
| 5/2/2008 | $183.52 | $172.20 | 6/18/2008 | $188.66 | $181.33 |
| 5/5/2008 | $183.60 | $172.64 | 6/19/2008 | $188.33 | $181.46 |
| 5/6/2008 | $183.05 | $173.03 | 6/20/2008 | $183.54 | $181.49 |
| 5/7/2008 | $179.44 | $173.26 | 6/23/2008 | $183.75 | $181.53 |
| 5/8/2008 | $183.08 | $173.60 | 6/24/2008 | $189.34 | $181.66 |
| 5/9/2008 | $181.79 | $173.87 | 6/25/2008 | $191.22 | $181.81 |
| 5/12/2008 | $182.98 | $174.16 | 6/26/2008 | $186.03 | $181.88 |
| 5/13/2008 | $184.42 | $174.48 | 6/27/2008 | $190.97 | $182.02 |

L29323 v22 06.12.2013

**TABLE 5**

**Call Option Daily Artificial Inflation and Holding Prices**

| Expiration Date | Strike Price | Artificial Inflation | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 1/28/08 | 1/29/08 through 3/30/08 | |
| 12/22/2007 | $20.00 | $1.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $22.50 | $1.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $25.00 | $1.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $30.00 | $0.11 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $40.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $45.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $10.00 | $6.12 | $4.98 | $2.65 | $1.36 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $12.50 | $6.12 | $4.98 | $2.65 | $1.36 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $15.00 | $6.14 | $5.00 | $2.62 | $1.33 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $20.00 | $6.07 | $4.87 | $2.55 | $1.29 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $22.50 | $5.38 | $4.24 | $1.92 | $0.68 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $25.00 | $3.56 | $2.64 | $0.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $30.00 | $0.31 | $0.11 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $35.00 | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $40.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $45.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $17.50 | $0.56 | $0.56 | $0.56 | $0.56 | $0.56 | $0.00 | $0.00 |
| 2/16/2008 | $20.00 | $5.89 | $4.81 | $2.54 | $1.32 | $0.24 | $0.00 | $0.00 |
| 2/16/2008 | $22.50 | $4.95 | $3.92 | $1.70 | $0.69 | $0.06 | $0.00 | $0.00 |
| 2/16/2008 | $25.00 | $3.50 | $2.70 | $0.91 | $0.28 | $0.09 | $0.00 | $0.00 |
| 2/16/2008 | $30.00 | $0.61 | $0.38 | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $40.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $45.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $17.50 | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 | $0.00 | $0.00 |
| 3/22/2008 | $20.00 | $0.27 | $0.27 | $0.27 | $0.27 | $0.27 | $0.00 | $0.00 |
| 3/22/2008 | $22.50 | $0.15 | $0.15 | $0.15 | $0.15 | $0.15 | $0.00 | $0.00 |
| 3/22/2008 | $25.00 | $0.06 | $0.06 | $0.06 | $0.06 | $0.06 | $0.00 | $0.00 |
| 3/22/2008 | $30.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $40.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $12.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $15.00 | $4.34 | $4.34 | $4.34 | $4.34 | $4.34 | $4.34 | $0.53 |
| 4/19/2008 | $17.50 | $2.38 | $2.38 | $2.38 | $2.38 | $2.38 | $2.38 | $0.13 |

L29324 v22 06.12.2013

24

| Expiration Date | Strike Price | Artificial Inflation | | | | | | Holding Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 1/28/08 | 1/29/08 through 3/30/08 | |
| 4/19/2008 | $20.00 | $0.87 | $0.87 | $0.87 | $0.87 | $0.87 | $0.87 | $0.00 |
| 4/19/2008 | $22.50 | $0.19 | $0.19 | $0.19 | $0.19 | $0.19 | $0.19 | $0.00 |
| 4/19/2008 | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $30.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $12.50 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $2.43 |
| 5/17/2008 | $15.00 | $4.52 | $4.52 | $4.52 | $4.52 | $4.52 | $3.99 | $0.95 |
| 5/17/2008 | $17.50 | $2.98 | $2.98 | $2.98 | $2.98 | $2.98 | $2.51 | $0.33 |
| 5/17/2008 | $20.00 | $6.85 | $5.82 | $3.60 | $2.49 | $1.59 | $1.20 | $0.13 |
| 5/17/2008 | $22.50 | $5.20 | $4.34 | $2.23 | $1.33 | $0.70 | $0.52 | $0.00 |
| 5/17/2008 | $25.00 | $3.79 | $3.16 | $1.37 | $0.65 | $0.28 | $0.19 | $0.00 |
| 5/17/2008 | $30.00 | $1.47 | $1.27 | $0.29 | $0.07 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $35.00 | $0.44 | $0.38 | $0.09 | $0.05 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $40.00 | $0.08 | $0.06 | $0.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $45.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/16/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/16/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/16/2008 | $12.50 | $4.70 | $4.70 | $4.70 | $4.70 | $4.70 | $4.70 | $2.90 |
| 8/16/2008 | $15.00 | $4.50 | $4.50 | $4.50 | $4.50 | $4.50 | $3.85 | $1.58 |
| 8/16/2008 | $17.50 | $7.86 | $7.86 | $5.58 | $4.40 | $3.32 | $2.73 | $0.80 |
| 8/16/2008 | $20.00 | $6.25 | $6.25 | $4.03 | $3.00 | $2.16 | $1.72 | $0.38 |
| 8/16/2008 | $22.50 | $4.92 | $4.92 | $2.91 | $1.99 | $1.36 | $1.04 | $0.18 |
| 8/16/2008 | $25.00 | $3.62 | $3.62 | $1.88 | $1.16 | $0.73 | $0.52 | $0.08 |
| 8/16/2008 | $30.00 | $1.81 | $1.81 | $0.70 | $0.36 | $0.23 | $0.14 | $0.00 |
| 8/16/2008 | $35.00 | $0.72 | $0.72 | $0.24 | $0.11 | $0.06 | $0.00 | $0.00 |
| 8/16/2008 | $40.00 | $0.21 | $0.21 | $0.07 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2008 | $12.50 | $4.59 | $4.59 | $4.59 | $4.59 | $4.59 | $4.59 | $3.25 |
| 11/22/2008 | $15.00 | $3.82 | $3.82 | $3.82 | $3.82 | $3.82 | $3.82 | $2.05 |
| 11/22/2008 | $17.50 | $2.95 | $2.95 | $2.95 | $2.95 | $2.95 | $2.95 | $1.20 |
| 11/22/2008 | $20.00 | $2.08 | $2.08 | $2.08 | $2.08 | $2.08 | $2.08 | $0.73 |
| 11/22/2008 | $22.50 | $1.42 | $1.42 | $1.42 | $1.42 | $1.42 | $1.42 | $0.40 |
| 11/22/2008 | $25.00 | $0.93 | $0.93 | $0.93 | $0.93 | $0.93 | $0.93 | $0.20 |
| 11/22/2008 | $30.00 | $0.44 | $0.44 | $0.44 | $0.44 | $0.44 | $0.44 | $0.00 |
| 1/17/2009 | $10.00 | $11.42 | $10.21 | $7.89 | $6.60 | $5.45 | $4.92 | $5.25 |
| 1/17/2009 | $15.00 | $10.27 | $9.07 | $6.74 | $5.49 | $4.34 | $3.69 | $2.43 |
| 1/17/2009 | $20.00 | $7.96 | $6.93 | $4.72 | $3.61 | $2.77 | $2.24 | $0.98 |
| 1/17/2009 | $25.00 | $5.10 | $4.41 | $2.61 | $1.80 | $1.33 | $1.07 | $0.40 |

**25**

| Expiration Date | Strike Price | Artificial Inflation | | | | | | Holding Price |
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 1/28/08 | 1/29/08 through 3/30/08 | |
|---|---|---|---|---|---|---|---|---|
| 1/17/2009 | $30.00 | $3.07 | $2.55 | $1.29 | $0.81 | $0.53 | $0.41 | $0.18 |
| 1/17/2009 | $35.00 | $1.45 | $1.34 | $0.55 | $0.29 | $0.17 | $0.14 | $0.08 |
| 1/17/2009 | $40.00 | $0.68 | $0.68 | $0.31 | $0.16 | $0.11 | $0.11 | $0.00 |
| 1/17/2009 | $45.00 | $0.38 | $0.32 | $0.16 | $0.07 | $0.00 | $0.00 | $0.00 |
| 1/16/2010 | $5.00 | $5.30 | $5.30 | $5.30 | $5.30 | $5.30 | $5.30 | $9.80 |
| 1/16/2010 | $10.00 | $4.82 | $4.82 | $4.82 | $4.82 | $4.82 | $4.59 | $6.25 |
| 1/16/2010 | $15.00 | $4.13 | $4.13 | $4.13 | $4.13 | $4.13 | $3.66 | $3.80 |
| 1/16/2010 | $20.00 | $7.51 | $6.65 | $4.59 | $3.56 | $3.00 | $2.70 | $2.23 |
| 1/16/2010 | $25.00 | $5.79 | $5.16 | $3.37 | $2.52 | $1.99 | $1.64 | $1.38 |
| 1/16/2010 | $30.00 | $4.02 | $3.62 | $1.88 | $1.41 | $1.24 | $1.09 | $0.80 |
| 1/16/2010 | $35.00 | $2.51 | $2.37 | $1.21 | $0.84 | $0.77 | $0.71 | $0.48 |
| 1/16/2010 | $40.00 | $1.62 | $1.30 | $0.64 | $0.38 | $0.38 | $0.36 | $0.28 |

**TABLE 6**

**Put Option Daily Artificial Deflation and Holding Prices**

| Expiration Date | Strike Price | Artificial Deflation | | | | | Holding Price |
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 3/30/08 | |
|---|---|---|---|---|---|---|---|
| 12/22/2007 | $20.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $22.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $25.00 | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $30.00 | $1.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $35.00 | $1.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $40.00 | $1.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/22/2007 | $45.00 | $1.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $12.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/19/2008 | $20.00 | $0.07 | $0.07 | $0.07 | $0.07 | $0.00 | $0.00 |
| 1/19/2008 | $22.50 | $0.83 | $0.72 | $0.72 | $0.65 | $0.00 | $0.00 |
| 1/19/2008 | $25.00 | $2.51 | $2.26 | $1.99 | $1.31 | $0.00 | $0.00 |
| 1/19/2008 | $30.00 | $5.89 | $4.86 | $2.62 | $1.33 | $0.00 | $0.00 |
| 1/19/2008 | $35.00 | $6.12 | $4.98 | $2.65 | $1.36 | $0.00 | $0.00 |
| 1/19/2008 | $40.00 | $6.12 | $4.98 | $2.65 | $1.36 | $0.00 | $0.00 |
| 1/19/2008 | $45.00 | $6.12 | $4.98 | $2.65 | $1.36 | $0.00 | $0.00 |
| 2/16/2008 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $17.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/16/2008 | $20.00 | $0.52 | $0.41 | $0.41 | $0.30 | $0.00 | $0.00 |
| 2/16/2008 | $22.50 | $1.39 | $1.11 | $0.98 | $0.70 | $0.00 | $0.00 |
| 2/16/2008 | $25.00 | $2.76 | $2.36 | $1.78 | $1.12 | $0.00 | $0.00 |

| Expiration Date | Strike Price | Artificial Deflation | | | | | Holding Price |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 3/30/08 | |
| 2/16/2008 | $30.00 | $5.51 | $4.60 | $2.62 | $1.36 | $0.00 | $0.00 |
| 2/16/2008 | $35.00 | $6.05 | $4.91 | $2.58 | $1.29 | $0.00 | $0.00 |
| 2/16/2008 | $40.00 | $6.21 | $4.89 | $2.62 | $1.29 | $0.00 | $0.00 |
| 2/16/2008 | $45.00 | $6.21 | $4.89 | $2.62 | $1.29 | $0.00 | $0.00 |
| 3/22/2008 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $17.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $20.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $22.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $30.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/22/2008 | $40.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $12.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/19/2008 | $15.00 | $1.15 | $1.15 | $1.15 | $1.15 | $1.15 | $1.05 |
| 4/19/2008 | $17.50 | $3.09 | $3.09 | $3.09 | $3.09 | $3.09 | $3.15 |
| 4/19/2008 | $20.00 | $4.73 | $4.73 | $4.73 | $4.73 | $4.73 | $5.60 |
| 4/19/2008 | $22.50 | $5.30 | $5.30 | $5.30 | $5.30 | $5.30 | $8.05 |
| 4/19/2008 | $25.00 | $5.46 | $5.46 | $5.46 | $5.46 | $5.46 | $10.55 |
| 4/19/2008 | $30.00 | $5.52 | $5.52 | $5.52 | $5.52 | $5.52 | $15.55 |
| 4/19/2008 | $35.00 | $5.52 | $5.52 | $5.52 | $5.52 | $5.52 | $20.55 |
| 5/17/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/17/2008 | $12.50 | $0.52 | $0.52 | $0.52 | $0.52 | $0.52 | $0.48 |
| 5/17/2008 | $15.00 | $1.48 | $1.48 | $1.48 | $1.48 | $1.48 | $1.53 |
| 5/17/2008 | $17.50 | $3.00 | $3.00 | $3.00 | $3.00 | $3.00 | $3.40 |
| 5/17/2008 | $20.00 | $5.24 | $5.04 | $4.94 | $4.74 | $4.32 | $5.70 |
| 5/17/2008 | $22.50 | $6.75 | $6.41 | $6.15 | $5.76 | $5.03 | $8.10 |
| 5/17/2008 | $25.00 | $8.16 | $7.56 | $6.98 | $6.35 | $5.35 | $10.60 |
| 5/17/2008 | $30.00 | $10.27 | $9.27 | $7.90 | $6.76 | $5.46 | $15.55 |
| 5/17/2008 | $35.00 | $11.18 | $10.03 | $7.92 | $6.78 | $5.52 | $20.55 |
| 5/17/2008 | $40.00 | $11.73 | $10.35 | $8.03 | $6.85 | $5.63 | $25.55 |
| 5/17/2008 | $45.00 | $11.61 | $10.36 | $8.14 | $6.92 | $5.63 | $30.55 |
| 8/16/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/16/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/16/2008 | $12.50 | $0.85 | $0.85 | $0.85 | $0.85 | $0.85 | $0.95 |
| 8/16/2008 | $15.00 | $1.69 | $1.69 | $1.69 | $1.69 | $1.69 | $2.10 |
| 8/16/2008 | $17.50 | $3.21 | $3.21 | $3.13 | $3.02 | $2.76 | $3.80 |
| 8/16/2008 | $20.00 | $4.65 | $4.65 | $4.46 | $4.24 | $3.77 | $5.90 |
| 8/16/2008 | $22.50 | $5.92 | $5.92 | $5.60 | $5.20 | $4.48 | $8.20 |

Case 2:08-cv-00397-ES-JAD   Document 423-5   Filed 07/02/13   Page 36 of 192 PageID: 25665

| Expiration Date | Strike Price | Artificial Deflation | | | | | Holding Price |
| | | Prior to 12/12/07 | 12/12/07 through 1/13/08 | 1/14/08 | 1/15/08 through 1/16/08 | 1/17/08 through 3/30/08 | |
|---|---|---|---|---|---|---|---|
| 8/16/2008 | $25.00 | $7.11 | $7.11 | $6.52 | $5.93 | $5.03 | $10.60 |
| 8/16/2008 | $30.00 | $8.95 | $8.95 | $7.63 | $6.67 | $5.41 | $15.55 |
| 8/16/2008 | $35.00 | $10.00 | $10.00 | $7.99 | $6.78 | $5.52 | $20.55 |
| 8/16/2008 | $40.00 | $10.35 | $10.35 | $8.03 | $6.85 | $5.63 | $25.55 |
| 11/22/2008 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2008 | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/22/2008 | $12.50 | $0.93 | $0.93 | $0.93 | $0.93 | $0.93 | $1.28 |
| 11/22/2008 | $15.00 | $1.64 | $1.64 | $1.64 | $1.64 | $1.64 | $2.50 |
| 11/22/2008 | $17.50 | $2.57 | $2.57 | $2.57 | $2.57 | $2.57 | $4.20 |
| 11/22/2008 | $20.00 | $3.44 | $3.44 | $3.44 | $3.44 | $3.44 | $6.20 |
| 11/22/2008 | $22.50 | $4.15 | $4.15 | $4.15 | $4.15 | $4.15 | $8.40 |
| 11/22/2008 | $25.00 | $4.64 | $4.64 | $4.64 | $4.64 | $4.64 | $10.70 |
| 11/22/2008 | $30.00 | $5.35 | $5.35 | $5.35 | $5.35 | $5.35 | $15.55 |
| 1/17/2009 | $10.00 | $0.58 | $0.58 | $0.58 | $0.58 | $0.55 | $0.70 |
| 1/17/2009 | $15.00 | $2.08 | $2.00 | $2.00 | $1.94 | $1.75 | $2.80 |
| 1/17/2009 | $20.00 | $4.57 | $4.32 | $4.13 | $3.93 | $3.39 | $6.40 |
| 1/17/2009 | $25.00 | $6.89 | $6.37 | $5.87 | $5.35 | $4.48 | $10.80 |
| 1/17/2009 | $30.00 | $9.07 | $8.21 | $7.16 | $6.31 | $5.19 | $15.50 |
| 1/17/2009 | $35.00 | $10.61 | $9.52 | $7.88 | $6.70 | $5.41 | $20.45 |
| 1/17/2009 | $40.00 | $11.47 | $10.21 | $8.05 | $6.83 | $5.57 | $25.50 |
| 1/17/2009 | $45.00 | $11.52 | $10.27 | $8.05 | $6.83 | $5.57 | $30.50 |
| 1/16/2010 | $5.00 | $0.27 | $0.27 | $0.27 | $0.27 | $0.27 | $0.25 |
| 1/16/2010 | $10.00 | $0.79 | $0.79 | $0.79 | $0.79 | $0.79 | $1.43 |
| 1/16/2010 | $15.00 | $1.78 | $1.78 | $1.78 | $1.78 | $1.78 | $3.85 |
| 1/16/2010 | $20.00 | $4.56 | $4.13 | $3.89 | $3.56 | $2.95 | $7.25 |
| 1/16/2010 | $25.00 | $6.80 | $5.97 | $5.55 | $5.00 | $3.88 | $11.40 |
| 1/16/2010 | $30.00 | $8.48 | $7.51 | $6.66 | $5.89 | $4.70 | $15.85 |
| 1/16/2010 | $35.00 | $9.66 | $8.57 | $7.35 | $6.36 | $5.14 | $20.55 |
| 1/16/2010 | $40.00 | $10.90 | $9.64 | $7.80 | $6.62 | $5.46 | $25.50 |