# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
| | ) | |
| | ) | |

**SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PROPOSED INTERVENORS JET CAPITAL MASTER FUND LP, JET CAPITAL SRM MASTER FUND LP, AND WALLEYE INVESTMENTS FUND'S PETITION TO INTERVENE**

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the*
*Public School Teachers' Pension and*
*Retirement Fund of Chicago and the*
*Cambridge Retirement System*
*and the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Katherine M. Sinderson
Jai Chandrasekhar
Matthew Traylor
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com
Matthew.Traylor@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public*
*School Teachers' Pension and Retirement*
*Fund of Chicago and the Cambridge*
*Retirement System and the Settlement Class*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...............................................................................................1

II.   THE SETTLEMENT AND CLASS NOTICE MORE THAN SATISFIES ALL
      DUE PROCESS CONCERNS...................................................................................................3

III.  CONCLUSION.........................................................................................................................8

## TABLE OF AUTHORITIES

CASES                                                                   PAGE(S)

*All Am. Airways, Inc. v. Elderd*,
    209 F.2d 247 (2d Cir. 1954)............................................................................3

*Dickinson v. Burnham*,
    197 F.2d 973 (2d Cir. 1952)............................................................................3

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................................4

*Gart v. Cole*,
    263 F.2d 244 (2d Cir. 1959), *cert. denied*, 359 U.S. 978 (1959)...............3

*Hansberry v. Lee*,
    311 U.S. 32 (1940)..........................................................................................3

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)........................................................................................3

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................................6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)........................................................................................6

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ............................................4

*In re Sys. Software Assocs. Inc. Sec. Litig.*,
    2000 WL 1810085 (N.D. Ill. Dec. 8, 2000)................................................7

*Williams v. Rohm-and-Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .....................................................................6, 7

*Ziemack v. Centel Corp.*,
    164 F.R.D. 477 (N.D. Ill. 1995)...................................................................7

STATUTES AND RULES

15 U.S.C. § 78u-4(a)(7) ...................................................................................4

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................4

Fed. R. Civ. P. 23(d)(2)....................................................................................3

Lead Plaintiffs, the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers") and the Cambridge Retirement System ("Cambridge," and collectively with Chicago Teachers, "Lead Plaintiffs"), on behalf of themselves and the other members of the Settlement Class,[1] respectfully submit this sur-reply memorandum of law in further opposition to the motion by Jet Capital Funds ("Jet Capital" or the "Objector") to intervene in this Action (Dkt. 57).

## I.    PRELIMINARY STATEMENT

Despite raising, for the first time, purported "due process concerns" with the Settlement (Jet Reply at 1), Jet Capital continues to support the Settlement itself and raises no objections to the certification of the Settlement Class—including investors with HRG claims—or the release of the HRG claims.  Jet Capital's support of the Settlement and silence about the release of the HRG claims speak volumes.  In reality, Jet Capital's only objection is to the proportionate share of the admittedly satisfactory Settlement it is to receive as a Class Member under the proposed Plan of Allocation, which is separate from the Settlement and does not affect approval of the Settlement. Lead Plaintiffs have fully addressed the arguments about the fairness and reasonableness of the Plan of Allocation in their Reply in support of the Settlement.  *See* Dkt. 63 at 2-4, 7-25.  However, Jet Capital's new attacks on the Plan of Allocation regarding Jet Capital's "due process rights" are improper and also should be rejected.

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 10, 2020, Dkt. 44-1 (the "Stipulation") or in the Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, Dkt. 53.  Citations to "Jet Reply" refers to Jet Capital's Reply Memorandum of Law in Support of Petition to Intervene and Associated Objection filed on January 19, 2021, Dkt. 68.  Also, unless otherwise defined, any citation to "Dkt. __" within this memorandum is to the docket in *In re Spectrum Brands Securities Litigation*, No. 3:19-cv-347-jdp.

Jet Capital cannot reasonably believe that there are due-process issues with the Settlement or the Plan of Allocation—because there are none.  The Settlement Class Members' due-process rights were well protected by the thorough Notice plan submitted to and approved by this Court, which informed Class Members of their rights and benefits under the Settlement, notified them of their right to be heard through counsel, and gave them the option to opt out.  If Jet Capital believed that the Notice to the Settlement Class was inadequate, the remedy for such inadequacy would be to reissue the Settlement Class notice.  Tellingly, Jet Capital does not ask for that remedy.  The Court should consider and resolve Lead Plaintiffs' and Jet Capital's arguments about the discount for HRG claims in the Plan of Allocation on their own merits—for which intervention is completely unnecessary—and should reject Jet Capital's attempts to cloud the issue with vague accusations of impropriety.[2]

In its reply, Jet Capital makes much of the fact that it purportedly did not receive notice of the claims on behalf of HRG shareholders in March 2019 when the first complaints were filed, and that it would undoubtedly have sought to represent such shareholders at the lead-plaintiff stage if it had received such notice.  Jet Reply at 2-3.  But this is pure revisionist history on Jet Capital's part.  There is no dispute that Jet Capital and other Spectrum shareholders received adequate PSLRA notice of the claims of Spectrum shareholders—but Jet Capital, with approximately $25 million in losses on its Spectrum stock, made no attempt to move for a leadership role in this case.

---

[2] Many of Jet Capital's assertions are simply nonsensical.  For example, Jet Capital's claim that "the Court was never even apprised that Lead Plaintiffs intended to represent HRG shareholders until the settlement was submitted for approval" (Jet Reply at 3) ignores the existence of the operative pleading in this Action (Dkt. 14), Defendants' motion to dismiss that raises this issue squarely (Dkt. 21 at 43-52), Lead Plaintiffs' opposition to Defendants' motion to dismiss (Dkt. 26 at 51-59), and Defendants' reply on the motion to dismiss (Dkt. 30 at 29-34).  It is no exaggeration to say that, before Lead Plaintiffs submitted the Settlement for Preliminary Approval and the Court approved the Notice, virtually every substantive submission to the Court contained material allegations and briefing concerning Lead Plaintiffs' representation of HRG shareholders.

Jet Capital also <u>never</u> identified or sought to bring claims on behalf of HRG shareholders, inaction that would have arguably allowed the statute of limitations on the HRG claims to expire (but for Lead Plaintiffs' diligence). The only explanations for Jet Capital's failure to take action to assert and preserve the HRG claims are that Jet Capital (i) knew that those claims were being adequately represented by Lead Plaintiffs here and/or (ii) believed that those claims were tenuous and not worth litigating. Notwithstanding its claims today, the history of this Action demonstrates that Jet Capital recognized the value of Lead Plaintiffs' representation here and, like all HRG shareholders, has benefited from it tremendously.

In sum, the Court-ordered Notice plan for the Settlement protected Class Members', including Jet Capital's, due-process rights. The Court is well within its abilities to evaluate Jet Capital's objection to the Plan of Allocation without the obstruction and delay that would follow intervention. Jet Capital's motion to intervene should be denied.

## II.    THE SETTLEMENT AND CLASS NOTICE MORE THAN SATISFIES ALL DUE PROCESS CONCERNS

In this class-action context, constitutional due process is satisfied by meeting the requirements of Rule 23(c)(2) and providing absent class members with notice, an opportunity to be heard, and an opportunity to exclude themselves from the class. *See* Fed. R. Civ. P. 23(d)(2) advisory committee notes to 1966 amendment ("This mandatory notice pursuant to subdivision [Rule 23](c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.") (citing *Hansberry v. Lee*, 311 U.S. 32 (1940); *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306 (1950); *cf. Dickinson v. Burnham*, 197 F.2d 973, 979 (2d Cir. 1952), and studies cited at 979 n. 4; *see also All Am. Airways, Inc. v. Elderd*, 209 F.2d 247, 249 (2d Cir. 1954); *Gart v. Cole*, 263 F.2d 244, 248–49 (2d Cir. 1959), *cert. denied*, 359 U.S. 978 (1959)). As Lead Plaintiffs demonstrated in their motion for Preliminary Approval—after which

3

the Court considered and approved the form of Notice provided to the Class—and in their motion for Final Approval, the Settlement here more than meets these standards.

As directed by the Court, Lead Counsel provided "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *Shah v. Zimmer Biomet Holdings, Inc*., 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020). In accordance with the Court's Preliminary Approval Order, the Court-approved Claims Administrator (i) mailed over 83,000 copies of the Notice directly to potential Class Members and to nominees, including the largest U.S. banks and brokerage firms, to facilitate dissemination of the Notice to beneficial owners; (ii) caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the PR Newswire; (iii) established a dedicated Settlement website, www.SpectrumBrandsSecuritiesLitigation.com, to provide potential Class Members with information about the proposed Settlement and access to copies of the Notice, Claim Form, and other Court documents; and (iv) established a toll-free telephone helpline to assist Class Members with questions about the Action and the Settlement. Dkt. 53-4 ¶¶ 2-10; Dkt. 65 ¶¶ 2, 3.

Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice apprised all Class Members of the nature of the Action; the definition of the Settlement Class; the claims and issues involved; that Class Members' right to be heard with respect to any objections they may have with respect to the proposed Settlement, Plan of Allocation, or the fee-and-expense application; Class Members' right to be excluded from the Settlement Class upon request; and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The Notice also satisfied the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice stated the amount of the Settlement on an absolute and per-share basis; provided a statement concerning the issues

4

about which the parties disagree; stated the amount of attorneys' fees and litigation expenses that Lead Counsel would seek; provided the name, address, and telephone number of Lead Counsel, who are available to answer questions from Class Members; and briefly explained why the parties are proposing the Settlement. By providing the best notice practicable and providing Class Members with an opportunity to be heard and to opt out of the Class, the Notice program fully protected all Class Members' due-process rights.

Notwithstanding this broad Notice program, Jet Capital has attacked the Plan of Allocation by claiming that somehow its due-process rights have been violated. These attacks are without merit.

First, Jet Capital claims that the PSLRA notice—not the Class Settlement Notice—was inadequate to protect its due-process rights, because it purportedly did not inform HRG shareholders that the pending action would be prosecuted on their behalf. Jet Reply at 1-3, 8-9, 15-16. But the PSLRA notice is irrelevant to whether the Settlement and the Class Settlement Notice satisfy Class Members' due-process interests in connection with the Settlement. To be clear, as Lead Plaintiffs have demonstrated, the PSLRA notice was adequate (Dkt. 26 at 57-58) and, in any event, Lead Plaintiffs are empowered to bring all appropriate claims, which they did (*id*. at 58). Most importantly, however, these concerns are immaterial to whether HRG shareholders members received adequate notice that their claims would be extinguished if the Settlement here were approved and they did not opt out. Moreover, Jet Capital does not cite a single case where purported infirmities in a PSLRA notice—which do not exist here—were cited to alter a plan of allocation where adequate notice of the settlement was provided to the class, and Lead Plaintiffs are aware of none. In sum, Jet Capital does not actually object to the adequacy of the Court-ordered Notice. Instead, Jet Capital is seeking to provide a reason for why it is the only

Class Member to object and why there were no opt-outs from the Class.[3]  Jet Reply at 12-13.  The

reason is simple: the Settlement is an excellent result for all Class Members.

Second, Jet Capital now claims that its due-process rights were violated by the fact that

Lead Plaintiffs purchased a greater number of Spectrum shares than HRG shares.  Jet Reply at 4-

6.  This is wrong.  The Seventh Circuit and courts nationwide routinely find as adequate and typical

and approve as class representatives plaintiffs that have a much greater interest in some of a class's

claims than in others.  For example, in *Williams v. Rohm-and-Haas Pension Plan*, 658 F.3d 629

(7th Cir. 2011), the Seventh Circuit approved the imposition of discounts on the claims of a section

of a class that was subject to greater risks, even though the class representatives were not members

of that section:

> The only issue for the district court to decide . . . was whether the early retirees'
> litigation risks justified the compromise embodied by the proposed settlement.
>
> The district court was well suited to decide that issue, and—having already heard
> the parties' arguments on the merits—it recognized that the early retirees' claims
> rested on unsettled law.  The district court also knew that an appellate court would
> ultimately decide the relevant legal issues.  The prospect of appellate review affects
> the risk and costs (in time and money) of the litigation.  Based on the evidence and
> arguments before it, the district court concluded that the early retirees' success was
> uncertain and that the settlement reasonably compensated them for their claims.
> That conclusion was not so clearly erroneous as to make approval of the proposed
> settlement an abuse of discretion.
>
> Nor did the district court abuse its discretion by not creating a separately
> represented subclass of early retirees. . . .  "[I]f subclassing is required for each
> material legal or economic difference that distinguishes class members, the

---

[3] Jet Capital relies on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), for the proposition that Jet
Capital "must be allowed to step forward for HRG claimants, otherwise their due process rights
are significantly impaired."  Jet Reply at 15.  But *Ortiz* is simply consistent with Rule 23(c)(2)
(and the Notice program here), which allows absent Class members to object and opt out to protect
their rights.  *Ortiz* does not stand for the proposition that absent class members must be allowed to
intervene and to carve out a greater portion of the negotiated settlement for themselves.  Instead,
*Ortiz* cites approvingly a class-action procedure "where a fully descriptive notice is sent first-class
mail to each class member, with an explanation of the right to 'opt out,'" which "satisfie[d] due
process."  527 U.S. at 847-48; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

> Balkanization of the class action is threatened."  The . . . Objectors have not convinced us that the district court abused its discretion by finding that Class counsel had adequately represented the early retirees . . . .

*Id.* at 634-35;[4] *see also In re Sys. Software Assocs. Inc. Sec. Litig.*, 2000 WL 1810085, at \*2-3 (N.D. Ill. Dec. 8, 2000) ("Defendants allege that the named plaintiffs have interests that are antagonistic to those of absent class members because of the different time and price at which plaintiffs purchased their stocks.  Defendants' argument . . . ha[s] been rejected by the courts.  The courts acknowledge that a conflict of interest between early and late purchasers is theoretically possible; however, the theoretical conflict is outweighed by the practical considerations of securities litigation."); *Ziemack v. Centel Corp.*, 164 F.R.D. 477, 483 (N.D. Ill. 1995) (certifying investor class that included both current shareholders and investors who had sold their shares, and rejecting argument that their interests conflicted since current shareholders might lose some value if the company paid damages; "[s]ome antagonism of interests within a plaintiff class is tolerable and inevitable.").

Third, Jet Capital quibbles with the Court-approved Notice, including whether the discount to HRG shares was sufficiently highlighted in the Notice, but Jet Capital does not actually argue that the Notice was inadequate to satisfy due process.  Indeed, as the Court found in approving the Notice, the Notice sufficiently and clearly advised Class Members of their benefits in the Settlement and their rights.  Dkt. 48 at 6.[5]  As set forth in Lead Plaintiffs' reply brief, Class Members received more than adequate notice that the HRG claims were encompassed in the Class

---

[4] The Seventh Circuit's approval of such discounts—along with the multitude of readily available examples of discounts provided by Lead Plaintiffs in their reply brief (Dkt. 63 at 9-12) belies Jet Capital's claim that such discounts are "exceptionally rare."  Jet Reply at 8.  To the contrary, such discounts are quite common and are routinely approved by courts nationwide.

[5] Notably, while Jet Capital's principal complaint is that the discount is not discussed on Page 1 of the Notice (Jet Reply at 13), the Notice states on its face that all potential Class Members should "PLEASE READ THIS NOTICE CAREFULLY."

7

and that those claims were being discounted to account for litigation risks that, in Lead Counsel's judgment, were much greater than the risks to the rest of the Settlement Class's claims. Dkt. 63 at 16-19, 24-25. Nothing more is required.[6]

## III.   CONCLUSION

Jet Capital is seeking extraordinary and unprecedented relief here: to permit an absentee class member to intervene in a negotiated settlement in order to negotiate a larger piece of the common fund for itself. In an attempt to justify this extraordinary relief, Jet Capital has sought to paint this as an unprecedented case. But this is a routine securities-class-action settlement with a strong and thorough Notice Program that protected all Class Members' rights. Jet Capital's request for intervention and its objection should be rejected.

Dated: January 22, 2021                    Respectfully submitted,

                                           */s/ Katherine M. Sinderson*
                                           **BERNSTEIN LITOWITZ BERGER
                                             & GROSSMANN LLP**
                                           Katherine M. Sinderson, admitted *pro hac vice*
                                           Jai Chandrasekhar, admitted *pro hac vice*
                                           Matthew Traylor, admitted *pro hac vice*
                                           1251 Avenue of the Americas
                                           New York, NY 10020
                                           Telephone:  (212) 554-1400
                                           Facsimile:  (212) 554-1444
                                           KatieM@blbglaw.com
                                           Jai@blbglaw.com
                                           Matthew.Traylor@blbglaw.com

---

[6] Jet Capital also misreads the Notice. The tables that Jet Capital claims are the "usual and customary place to find one's 'Recognized Loss'" (Jet Reply at 13) are anything but. As the tables themselves make clear, they provide information concerning "artificial inflation" and "Spectrum Brands common stock closing price and average closing price." This information is then used as part of the several formulas for "Recognized Loss Amounts" set forth in the Proposed Plan of Allocation (Notice at 15-20). No potential claimant could reasonably believe that these tables are meant to provide Recognized Loss figures.

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public School
Teachers' Pension & Retirement Fund of Chicago
and the Cambridge Retirement System and the
Settlement Class*

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the Public
School Teachers' Pension & Retirement Fund of
Chicago and the Cambridge Retirement System and
the Settlement Class*

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sur-Reply Memorandum of Law in Further Opposition to Proposed Intervenors Jet Capital Master Fund LP, Jet Capital SRM Master Fund LP, and Walleye Investments Fund's Petition to Intervene was served on counsel for all parties electronically via the CM/ECF system on January 22, 2021.


Dated: January 22, 2021                    By: */s/ Katherine M. Sinderson*
                                                       Katherine M. Sinderson