**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
|  | ) |  |
|  | ) |  |

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING
CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION
OF NOTICE OF SETTLEMENT**

---

RATHJE WOODWARD LLC
Douglas M. Poland
State Bar No. 1055189
10 E. Doty Street, Suite 507
Madison, Wisconsin 53703
Telephone: (608) 960-7430
Facsimile: (608) 960-7460
dpoland@rathjewoodward.com

*Liaison Counsel for Lead Plaintiffs The
Public School Teachers' Pension and
Retirement Fund of Chicago and the
Cambridge Retirement System
and the Class*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
Katherine M. Sinderson
Jai Chandrasekhar
Matthew Traylor
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com
Matthew.Traylor@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs The Public
School Teachers' Pension and Retirement
Fund of Chicago and the Cambridge
Retirement System and the Class*

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    FACTUAL BACKGROUND ......................................................................................2

       A.    The Amended Complaint .................................................................................3

       B.    Defendants' Motion to Dismiss the Amended Complaint .....................................3

       C.    Settlement Negotiations and Due Diligence Discovery .........................................4

       D.    Terms of the Proposed Settlement .....................................................................5

III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............7

       A.    Standards Governing Approval Of Class Action Settlements ................................7

       B.    The Court "Will Likely Be Able To" Approve The Proposed Settlement
             Under Rule 23(e)(2) .......................................................................................9

             1.    "Procedural" Aspects Of The Settlement Satisfy Rule 23(e)(2) .................9

             2.    The Settlement's Terms Are Adequate and Equitable .............................12

IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................18

       A.    The Settlement Class Satisfies the Requirements of Rule 23(a)............................19

       B.    The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3) .....................................21

V.     THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
       AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS.................22

VI.    PROPOSED SCHEDULE OF EVENTS .....................................................................24

VII.   CONCLUSION .......................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................................18, 22

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ...............................................................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................................12

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009).........................................................................................19

*Beesley v. Int'l Paper Co.*,
    2014 WL 375432 (S.D. Ill. Jan. 31, 2014).........................................................................17

*In re Career Educ. Corp. Sec. Litig.*,
    2008 WL 8666579 (N.D. Ill. June 26, 2008) ...................................................................9, 24

*City of Greenville v. Syngenta Crop Protection, Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012)..................................................................................17

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
    No. 11-cv-08332-AJS, slip op. (N.D. Ill. Aug. 5, 2014), Dkt. 207.........................................17

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2015 WL 753946 (N.D. Ill. Feb. 20, 2015) ........................................................................17

*De La Fuente v. Stokely–Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ............................................................................................20

*Flood v. Dominguez*,
    270 F.R.D. 413 (N.D. Ind. 2010).......................................................................................19

*Gaspar v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996)...........................................................................................20

*Goldsmith v. Tech. Solutions Co.*,
    1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)......................................................................7

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ..............................................................................9, 11, 12

*Heekin v. Anthem, Inc.*,
    2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ...................................................................17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..................................................................................7

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
2015 WL 13546111 (W.D. Wis. Jan. 5, 2015) .........................................................17

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) .................................................................................20

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
244 F.R.D. 469 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009) ....................22

*Langendorf v. Skinnygirl Cocktails, LLC*,
306 F.R.D. 574 (N.D. Ill. 2014)..............................................................................20

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ...............................................................................9

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009)..................................................................7, 12

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) .................................................................................20

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
314 F.R.D. 580 (N.D. Ill. Jan. 26, 2016) ..................................................................8

*In re NeoPharm, Inc. Sec. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004)..........................................................................19, 22

*Oplchenski v. Parfums Givenchy, Inc.*,
254 F.R.D. 489 (N.D. Ill. 2008)..............................................................................19

*Pederson v. Airport Terminal Servs.*,
2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) .............................................................9

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
No. 09 C 7666, slip op. (N.D. Ill. Jan. 22, 2014), Dkt. 693.....................................17

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................11

*Retired Chicago Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) .....................................................................................21

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)........................................................12, 13

*Roberti v. OSI Sys. Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ..................................................................10

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ......................................................................................19

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...............................................................10

*Schulte v. Fifth Third Bank*,
    805 F.Supp.2d 560 (N.D. Ill. 2011) ..............................................................................11

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
    2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...................................................................12

*Sec'y of Labor v. Fitzsimmons*,
    805 F.2d 682 (7th Cir. 1986) (en banc) ........................................................................21

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................................17

*Smoot v. Wieser Bros. Gen. Contr.*,
    No. 15-cv-424-jdp, 2016 WL 1736498 (W.D. Wis. April 28, 2016) ............................12

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................................................12

*Standard Iron Works v. ArcelorMittal*,
    2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)..................................................................17

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................................................20

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ........................................................................................18

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..................................................................11

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...............................................................................8, 9, 12

**STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(7) ........................................................................................................23

15 U.S.C. § 78u-4(e)..............................................................................................................16

Class Action Fairness Act, 28 U.S.C. § 1715 (2005) ...........................................................24

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

**OTHER AUTHORITIES**

3B Moore's Federal Practice ¶ 23.80[4] (2d ed. 1978) .................................................................. 8

William B. Rubenstein, Newberg on Class Actions (5th ed. 2017) ............................................... 18

Lead Plaintiffs, the Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System (collectively, "Lead Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below), respectfully submit this unopposed motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order" or "PAO"), which is filed herewith.[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs have reached an agreement with Defendants[2] to settle all claims in this securities class action (the "Action") for a total of $39,000,000 in cash (the "Settlement"). The proposed Settlement warrants the Court's preliminary approval because it is the product of extensive arm's-length negotiations overseen by a well-respected Mediator, and represents an excellent result for the Settlement Class in light of the risks associated with the continued litigation of the Action.

Entry of the proposed Preliminary Approval Order will begin the final approval process relating to the proposed Settlement by authorizing the dissemination of notice of the Settlement to investors who are believed to be members of the Settlement Class. The PAO also contemplates scheduling a final approval hearing (the "Settlement Fairness Hearing") for the Parties and

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated August 10, 2020 (the "Stipulation"), which is attached as Exhibit 1 to the present motion (the "Preliminary Approval Motion"). The proposed Preliminary Approval Order is attached as Exhibit 2 to the Preliminary Approval Motion.

[2] Defendants are Spectrum Brands Holdings, Inc. ("Spectrum" or the "Company"), Spectrum Brands Legacy, Inc. ("Old Spectrum"), HRG Group, Inc. ("HRG"), and Andreas R. Rouvé, David M. Maura, and Douglas L. Martin (collectively, the "Individual Defendants").

Settlement Class Members to present arguments for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order: (i) preliminarily approves the Settlement on the terms set forth in the Stipulation; (ii) approves the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) finds that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice provided in the Preliminary Approval Order comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) sets a date and time for the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including any request for reimbursement of Lead Plaintiffs' costs and expenses under the PSLRA.

## II.      FACTUAL BACKGROUND

This Action was commenced in March 2019 with the filing of certain related class actions (*Earl S. Wagner v. Spectrum Brands Legacy, Inc., et al.*, No. 19-cv-178-jdp and *West Palm Beach Firefighters' Pension Fund v. Spectrum Brands Legacy, Inc., et al.*, No. 19-cv-347-jdp) in the United States District Court for the Western District of Wisconsin (the "Court") alleging violations of the federal securities laws.   On June 12, 2019, pursuant to the PSLRA, the Court: (i) consolidated the related actions; (ii) appointed the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers") and the Cambridge Retirement System ("Cambridge Retirement") to serve as lead plaintiffs; and (iii) approved lead plaintiffs' choice of Bernstein Litowitz Berger & Grossmann LLP as lead counsel and Rathje Woodward LLC as liaison counsel.   As discussed below, following Lead Plaintiffs' filing of an amended complaint,

the Parties engaged in briefing on Defendants' motions to dismiss, extensive mediation negotiations, and due diligence discovery before finalizing their agreement to settle the Action.

### A.    The Amended Complaint

On July 12, 2019, Lead Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint" or "Complaint"). Dkt. 14. Among other things, the Amended Complaint alleges that, during a class period that ran from January 26, 2017 through November 19, 2018, inclusive, Defendants made a series of falsely and misleading statements about the success of two major supply-chain consolidation projects in Spectrum's Global Auto Care ("GAC") Hardware and Home Improvement ("HHI") divisions, when in fact the GAC and HHI consolidations were suffering from fundamental logistical, operational, and technical problems that were far more serious than those disclosed to investors. The Amended Complaint further alleges that the prices of Spectrum's, Old Spectrum's, and HRG's common stock were artificially inflated during the Class Period as a result of these allegedly false and misleading statements, and declined when the truth was revealed. The Complaint asserts claims against Defendants Spectrum, Old Spectrum, and the Individual Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants and Defendant HRG under Section 20(a) of the Exchange Act.

### B.    Defendants' Motion to Dismiss the Amended Complaint

On August 26, 2019, Defendants filed their motion to dismiss the Amended Complaint (the "Motion to Dismiss"). Dkt. 19. On October 10, 2019, Lead Plaintiffs filed their memorandum of law in opposition to Defendants' Motion to Dismiss, Dkt. 26, and, on November 6, 2019, Defendants filed their reply papers in further support of the Motion to Dismiss. Dkt. 30. Defendants' principal arguments in their Motion to Dismiss are that Lead Plaintiffs failed to allege

actionable misstatements or omissions; that Lead Plaintiffs failed to allege that Defendants acted with fraudulent intent (or "scienter"); and that Lead Plaintiffs cannot bring claims on behalf of pre-merger HRG shareholders against Spectrum Brands Holdings.

### C.     Settlement Negotiations and Due Diligence Discovery

While Defendants' Motion to Dismiss was pending before the Court, on January 7, 2020 the Parties filed a letter notifying the Court that they had agreed to a mediation of the Action before a private mediator and jointly requested that the Court defer decision on the pending motion to dismiss until the Parties could report to the Court on the result of the mediation.  Dkt. 33.  That same day, the Court entered an order denying without prejudice the Motion to Dismiss and directing the Parties to file a status report no later than April 1, 2020 advising the Court of the status of the mediation and whether Defendants wished to renew their Motion to Dismiss.

On January 10, 2020, the Parties filed a joint motion requesting that the Court extend the April 1, 2020 deadline for filing the post-mediation status report to April 15, 2020, based on the fact that the Parties had scheduled their mediation session for April 6, 2020.  Dkt. 36.  That same day, the Court granted the Parties' motion.  After agreeing to postpone the mediation session to June 3, 2020 due to COVID19-related hardships, on April 9, 2020, the Parties filed a joint status report requesting that the Court extend the deadline for the joint status report on the results of the mediation to June 15, 2020.  Dkt. 37.

On June 3, 2020, the Parties conducted a full-day mediation under the auspices of Jed Melnick, Esq. of JAMS (the "Mediator").  In advance of that session, the Parties exchanged detailed mediation statements, which addressed the issues of liability and damages.  The session ended without any agreement being reached.

On June 15, 2020, the Parties filed another joint status report advising the Court that, while they did not reach a resolution of the Action at the June 3, 2020 mediation session, the Parties were

4

continuing to work with the Mediator, and in view of their ongoing settlement negotiations, requested that the Court extend the deadline for filing a status report by two weeks, to June 29, 2020.  Dkt. 38.

The Parties then reached an agreement in principle to settle the Action that was pursuant to the Mediator's recommendation and memorialized in a term sheet executed on June 24, 2020 (the "Term Sheet").  The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims against Defendants in the Action in return for a cash payment of $39,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.  The agreement to settle was further conditioned on Lead Plaintiffs confirming the fairness, reasonableness, and adequacy of the proposed Settlement based on due diligence discovery to be provided by Defendants.

Lead Counsel has completed its due diligence discovery regarding the strengths and weaknesses of Lead Plaintiffs' claims.  In due diligence discovery, Defendants produced nearly 2,000 pages of documents, including board and financial materials, which Lead Counsel reviewed. This due diligence discovery confirmed Lead Plaintiffs' and Lead Counsel's understanding that the Settlement is fair, reasonable, and adequate to the Settlement Class.

### D.    Terms of the Proposed Settlement

On August 6, 2020, the Parties executed the Stipulation setting forth the full terms of the Settlement.  The Settlement provides that Spectrum will pay or cause to be paid $39 million in cash (the "Settlement Amount") into an interest-bearing escrow account.  The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among eligible Settlement Class Members who

submit valid Claim Forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).

Under the Settlement, the Parties have agreed to the certification of the Settlement Class for settlement purposes only. The proposed Settlement Class consists of all persons and entities that: (i) purchased common stock of HRG from January 26, 2017 to July 13, 2018; (ii) purchased common stock of Old Spectrum from January 26, 2017 to July 13, 2018; and (iii) purchased common stock of Spectrum from July 13, 2018 to November 19, 2018, and were damaged thereby.[3] *See* Stipulation ¶ 1(tt). As discussed below, the proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3), and it is likely that the Court will ultimately decide, at or after the Settlement Fairness Hearing, that the Settlement Class should be certified for purposes of the proposed Settlement.

If the Settlement receives the Court's final approval, Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount. *See* Stipulation ¶ 1(oo). The release's scope is reasonable as it is limited to claims related to the purchase, acquisition, holding, or sale of Spectrum common stock, Old Spectrum common stock, or HRG common stock during the Class Period *and* to the Complaint's factual allegations. Further, the proposed Settlement does not release claims asserted in a related state court action brought under

---

[3] Excluded from the Settlement Class are: (i) Defendants (including Spectrum); (ii) the Immediate Family members of the Individual Defendants; (iii) the Officers and directors of Old Spectrum, Spectrum, and HRG currently and during the Class Period and their Immediate Family members; (iv) any entity in which any of the foregoing excluded persons or entities has or had a controlling interest; and (v) the legal representatives, heirs, successors or assigns of any such excluded person or entity. *See* Stipulation ¶ 1(tt). Also excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

Section 11 of the Securities Act (*Plymouth Cnty. Ret. Ass'n v. Spectrum Brands Holdings, Inc. et al.*, 2019CV000982 (Wis. Cir. Ct., Dane Cty.), nor does it release any ERISA or derivative claims.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement warrants preliminary approval because of the significant benefit achieved for the Settlement Class, the substantial costs and risks that would otherwise be associated with continued prosecution of the Action, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by an experienced mediator.

### A.    Standards Governing Approval Of Class Action Settlements

There is a well-established, overriding public interest in favor of settling litigation, particularly in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009) (same). In *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995), the court stated:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id*. at *6 (citations and quotation marks omitted).

Rule 23(e) requires judicial approval of a compromise of claims brought on a classwide basis. *See* Fed. R. Civ. P. 23(e). Judicial approval of a class action settlement is a two-step process—*first*, the Court performs a preliminary review of the terms to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice and a hearing, the Court determines whether to grant final approval, *see* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). This standard was

7

established by amendments to Rule 23(e) effective as of December 1, 2018.  Prior to those amendments, courts had developed a standard for preliminary approval that was substantively similar to the current standard.  A common formulation was that the court should grant preliminary approval to a proposed settlement if it is "within range of possible approval."  *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (the question at the preliminary approval stage is "whether the proposed settlement is within the range of possible approval"); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. Jan. 26, 2016) ("the district court must determine whether the proposed settlement is 'within the range of possible approval'") (internal quotation marks omitted).

In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4]  Because each of these factors is satisfied here, preliminary approval is appropriate.

---

[4]  At final approval, the Court may also consider the Seventh Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2):  (1) the strength of the case, balanced against the settlement amount; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the opinion of competent counsel; and (7) the stage of the proceedings. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

**B.    The Court "Will Likely Be Able To" Approve The Proposed Settlement Under Rule 23(e)(2)**

### 1.    "Procedural" Aspects Of The Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

The proposed Settlement embodies the hallmarks of a procedurally fair resolution under Rule 23(e)(2). First, as detailed above, the Settlement is the product arm's-length negotiations between experienced counsel, which creates a presumption of its fairness. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's-length] negotiation."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate) (citation omitted).

Second, the involvement of an experienced mediator—here, Jed Melnick, Esq. of JAMS— further supports that the Settlement is fair and that the Parties achieved it free of collusion. *See In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (settlement "resulted from arms-length negotiations and voluntary mediation between experienced counsel"); *Wong*, 773 F.3d at 864 (7th Cir. 2014) (settlement "was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated"); *Pederson v. Airport Terminal Servs.,* 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) ("'[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive'" and "weighs in favor of preliminary

9

approval.") (quoting *Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Mr. Melnick is an experienced mediator in complex litigation. The Parties conducted a formal, all-day, remote mediation session before Mr. Melnick in June 2020. In advance of the mediation, the Parties made lengthy and substantive submissions. The mediation itself involved exchanges of the Parties' respective views on the merits of the claims, Defendant's defenses, and issues related to damages. Although the Parties were unable to reach a settlement at the end of the mediation session, they continued to engage in additional subsequent negotiations under the supervision of the Mediator. These negotiations ultimately culminated in a Mediator's "double-blind" recommendation that the Parties settle the Action for $39 million, which the Parties accepted. *See Roberti v. OSI Sys. Inc.,* 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (approving settlement reached through mediator's "double-blind Mediator's Recommendation"). Mr. Melnick has authorized the following statement to be included in the proposed Notice to be disseminated to Settlement Class Members:

> "The proposed Settlement is the result of good-faith, arm's-length negotiations among the Parties. The Parties participated in an all-day, remote mediation session before me on June 3, 2020. Both sides made presentations addressing key issues in the case, and advancing aggressive positions on behalf of their clients. While I am bound by confidentiality with regard to the content of the discussions at the mediation, I can say that the arguments and positions asserted by all involved were plainly the result of detailed analysis and hard work, by competent counsel who are highly experienced in the field of securities litigation. Over the course of the negotiations, I encouraged each side to take a hard look at the merits and value of the claims and defenses in the case. While the negotiations were professional, they were also highly adversarial. In the end, the Settlement Amount itself is the product of a proposal by me that both sides accepted, and that I believe to be fair, reasonable, and adequate under all of the circumstances."

Moreover, while Lead Plaintiffs were unable to conduct formal discovery in the Action due to the mandatory PSLRA discovery stay pending Defendants' motion to dismiss, the due diligence discovery undertaken by Lead Counsel before entering into the Stipulation allowed Lead

10

Plaintiffs and Lead Counsel to confirm that the $39 million Settlement was fair, reasonable, and adequate given the risks of the case. Lead Counsel's review of confidential Spectrum documents provided a more thorough understanding of the facts and risks of the case and Defendants' arguments, and further supports that the Settlement is fair and reasonable. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 587-589 (N.D. Ill. 2011) (approving settlement where settlement agreement entitled class counsel to conduct confirmatory discovery that confirmed the fairness of the settlement).

Finally, we note that other factors further demonstrate the procedural fairness of the proposed Settlement. Lead Plaintiffs' claims are typical of and coextensive with those of other Class Members, and they lack any interests that are antagonistic to the interest of other members of the Settlement. Therefore, Lead Plaintiffs—like all other Class Members—have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Lead Plaintiffs are sophisticated institutional investors of the type favored by Congress when it passed the PSLRA, closely supervised all aspects of this litigation, and recommend that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness….'"). In addition, the judgment of Lead Counsel, which is experienced in securities class-action litigation, that the Settlement is in the best interests of the Class weighs in favor of approval of the Settlement. *Great Neck Capital,* 212 F.R.D. at 410 ("[o]pinion of competent counsel" weighs in favor of approval of a settlement);

11

*Smoot v. Wieser Bros. Gen. Contr.,* No. 15-cv-424-jdp, 2016 WL 1736498, \*5 (W.D. Wis. April 28, 2016) ("the court accepts counsel's opinion in favor of approval").

### 2.    The Settlement's Terms Are Adequate and Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D).   Here, the Settlement represents a very favorable result for the Class.   Further, the proposed plan for allocating the Settlement treats Class Members equitably.

### (a)    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing the approval of a class action settlement is "the strength of plaintiff's case on the merits balanced against the amount offered in settlement." *Snyder v. Ocwen Loan Servicing, LLC,* 2019 WL 2103379, at \*6 (N.D. Ill. May 14, 2019) (citing *Wong,* 773 F.3d at 864); *see also McKinnie,* 678 F. Supp. 2d at 814 (E.D. Wis. 2009).   Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation.  *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 959, 961, 963-64 (N.D. Ill. 2011); *see also In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.,* 2016 WL 772785, at \*7 (N.D. Ill. Feb. 29, 2016) (finding that approval does not require that a settlement be "the 'best possible deal' for plaintiffs" or that "the class has received the same benefit from the settlement as they would have recovered from a trial"); *Great Neck Captial*, 212 F.R.D. at 409-10 ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.  If the case were fully litigated there is also a possibility plaintiffs could receive less.").

The proposed Settlement, which provides for a cash payment of $39 million, is an excellent result for Class Members considering the significant risks of continued litigation.  *See Retsky*

12

*Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at \*2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain.").

At the time that the Parties agreed in principle to settle the Action, the Court had not yet decided Defendants' motion to dismiss. Although Lead Plaintiffs believe that they had compelling arguments in response to Defendants' motion, there was a serious risk that the Court would have ruled in Defendants' favor, which would have dramatically reduced, or eliminated altogether, Settlement Class Members' potential recovery.

First, Lead Plaintiffs faced significant risks that a large section of the proposed class, the shareholders of HRG Group, Inc. ("HRG"), would be dismissed from the case or excluded from the potentially certified class. Defendants would have continued to argue that HRG shareholders did not have standing to bring a claim against Spectrum because Spectrum's alleged false and misleading statements did not directly implicate HRG stock. If the Court were to rule in favor of Defendants on the issue of HRG shareholders' standing, Settlement Class Members' potential recovery would be substantially reduced.

Second, Lead Plaintiffs faced significant risks that it would not be able to establish that Defendants' statements about the progress of Spectrum's consolidations were actionable under the federal securities laws. For example, Defendants would have continued to argue that their statements about the progress of its consolidation efforts, including the "transitory" nature of the consolidation issues affecting the Company, were not false. Defendants made credible arguments that the consolidations were progressing adequately during much of the Class Period. Similarly, Defendants made credible arguments that the issues facing the consolidations were in fact transitory, because the issues were significantly resolved by the end of the Class Period. These

13

arguments, if found persuasive by the Court or later by the jury, would have made certain of Defendants' statements regarding the consolidations true and inactionable.

Third, Lead Plaintiffs would have faced challenges in proving that Defendants made the alleged false statements with scienter: that they acted with intent or recklessness. For example, Defendants would have continued to argue that the Company was making adequate progress in consolidating its distribution networks, and that Defendants were only made aware of any deeper issues later in the Class Period—directly before Defendants informed the market of these issues. Under those circumstances, Defendants have argued, Lead Plaintiffs could not establish the requisite scienter to support a securities fraud claim.

Even if Lead Plaintiffs established liability, it would have faced significant hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages. For example, Defendants would have argued that a significant portion of the declines in Spectrum's stock price on the corrective disclosure dates reflect investors' reaction to poor Company-wide financial performance, predicated on a number of factors wholly unrelated to the financial impact caused by issues related to the consolidations. If Defendants prevailed on their loss-causation and damages arguments, recoverable damages would be eliminated or significantly reduced.

Further, even if Lead Plaintiffs successfully defeated Defendants' motion to dismiss, which was far from certain, Defendants would likely make the same arguments at summary judgment and trial. The Settlement avoids these risks and will provide a prompt and certain benefit to the Settlement Class rather than the mere possibility of a recovery after additional years of litigation and appeals.

14

The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Lead Plaintiff prevailed at trial, which was far from certain for the reasons noted above. Lead Plaintiff's expert estimates, after giving effect to certain (but not all) of Defendants' arguments, that the maximum potential damages that could be realistically established at trial were approximately $320 million. Accordingly, the $39,000,000 Settlement represents approximately 12% of the realistic maximum recoverable damages for the Settlement Class. This is an outstanding result for Class Members given the risks of the litigation.

### (b)    The Proposed Settlement Does Not Unjustly Favor Any Class Member

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. Rather, all Settlement Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Fairness Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," set forth in full in the Notice). Lead Plaintiffs' damages expert, in consultation with Lead Counsel, developed the Plan, which is comparable to plans of allocation that courts have approved in numerous other securities class actions. The Plan is based on Lead Plaintiffs' allegations that Defendants' alleged materially false and misleading statements and omissions artificially inflated the prices of Spectrum, Old Spectrum, and HRG common stock during the Class Period, and that a series of public disclosures that partially corrected the alleged misrepresentations and omissions removed the inflation.

The Plan calculates a "Recognized Loss Amount" for each purchase or acquisition of Spectrum, Old Spectrum, and HRG common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. The calculation of Recognized Loss Amounts under the proposed Plan will depend on when the claimant

15

purchased and/or sold the shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them.  Also, under the proposed Plan, Recognized Loss Amounts arising out of purchases of HRG common stock during the Class Period will be discounted by 75% to account for the risks related to establishing Defendants' liability for claims arising out of purchases of this security.  Under the Plan, the sum of a claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Claims Administrator will calculate claimants' Recognized Loss Amounts using the transaction information that claimants provide to the Claims Administrator in their Proof of Claim and Release Forms.  Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers.  If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost effective.  At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Settlement Class Members and merits approval at the Settlement Fairness Hearing.

### (c)  The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel.  The Settlement does not contemplate ***any*** specific award to Lead Counsel and Lead Counsel will be compensated out of the Settlement Fund pursuant to the approval of the Court.

16

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek no more than 16% of the Settlement Fund, an amount that is well within the percentages that courts in the Seventh Circuit approve in securities class actions with comparable recoveries.  *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), Dkt. 693 (awarding 33 1/3% of $64 million settlement fund); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 753946, at \*16 (N.D. Ill. Feb. 20, 2015) (awarding one-third of $46 million common fund); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, No. 11-cv-08332-AJS, slip op. at 1 (N.D. Ill. Aug. 5, 2014), Dkt. 207 (awarding 30% of $60 million settlement fund); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at \*1, \*4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery).[5]  Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $400,000.

Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order, and Class Members will have an opportunity to weigh in on the fee request before the Settlement Fairness Hearing, where the Court will decide what that fee should be.  By granting preliminary approval, the Court ***does not in any way pass upon the reasonableness of any subsequent fee or expense application***, which will be decided *de novo* at the Settlement Fairness Hearing.

---

[5] *See also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (finding attorney fee award of 27.5% of $200 million settlement not excessive); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at \*1, \*3 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million total common fund, finding the amount "a fair and reasonable attorneys' fee"); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908-909 (S.D. Ill. 2012) (awarding one-third of $105 million common fund); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at \*1 (S.D. Ind. Nov. 20, 2012) (awarding 33.3% of $90 million common fund); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 2015 WL 13546111, at \*6 (W.D. Wis. Jan. 5, 2015) (awarding 27.5% of $84 million common fund).

**(d)      Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement**

In connection with the Settlement, the Parties also entered into the confidential Supplemental Agreement, dated August 10, 2020 (the "Supplemental Agreement"). *See* Stipulation ¶ 36. The Supplemental Agreement sets forth the conditions under which Spectrum has the option to terminate the Settlement if requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental Agreement (the "Opt-Out Threshold"). As is standard practice in securities class actions, the Supplemental Agreement is not made public in order to avoid incentivizing a group of opt-outs for the sole purpose of leveraging the Opt-Out Thresholds to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## IV.     THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

At the Settlement Fairness Hearing, Lead Plaintiffs will ask the Court to grant final approval of the Settlement. Pursuant to the recent amendments to Rule 23(e), at the preliminary approval stage the Court may consider whether certification of the Settlement Class is appropriate.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Indeed, "actions under the federal securities laws are particularly well suited for representative litigation under Rule 23." William B. Rubenstein, Newberg on Class Actions § 22:82 (5th ed. 2017).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem*, 521 U.S. at 593. As demonstrated below, certification of the proposed Settlement Class for purposes of the Settlement is appropriate here.

18

**A.      The Settlement Class Satisfies the Requirements of Rule 23(a)**

Certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical []; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**1.      The Settlement Class Is So Numerous that Joinder Is Impracticable**

The "numerosity" requirement is usually met if there are more than forty class members. *See, e.g.*, *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010) ("[g]enerally speaking, when the putative class consists of more than 40 members, numerosity is met"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) (same).

Here, as of December 30, 2018, Spectrum had over 53 million shares of common stock outstanding, owned by hundreds, if not thousands, of investors worldwide. Similarly, prior to the HRG Merger, HRG had 203 million shares of common stock outstanding, owned by hundreds, if not thousands, of investors worldwide. Accordingly, the proposed Settlement Class consists of hundreds, if not thousands, of investors worldwide. *See In re NeoPharm, Inc. Sec. Litig.,* 225 F.R.D. 563, 565 (N.D. Ill. 2004) ("NeoPharm stock trades on NASDAQ and more than 16 million shares are outstanding. It can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class."). Therefore, numerosity is met here.

**2.      There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017.

19

The common questions of fact and law here include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and misrepresented material facts; (iii) whether Defendants made materially false statements; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the prices of Spectrum, Old Spectrum, and HRG common stock were artificially inflated; (vi) whether Defendants' misconduct caused the members of the Settlement Class to sustain damages; and (vii) the extent of damage sustained by Settlement Class Members.

These common questions are fundamental to the resolution of the claims asserted against Defendants and, therefore, readily satisfy the commonality requirement. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 580 (N.D. Ill. 2014) ("To satisfy . . . commonality . . ., a single common question will do.").

### 3.    Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). "Typical" does not mean "identical." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). "'[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Lead Plaintiffs' claims are typical of the claims of the Settlement Class because all claims are based on Defendants' alleged wrongful conduct and all members of the Settlement Class were similarly affected by such alleged conduct.  Similar to other Settlement Class Members, Lead Plaintiffs Chicago Teachers and Cambridge Retirement both purchased shares of Spectrum common stock during the Class Period, and Chicago Teachers also purchased shares of HRG common stock during the Class Period.  Both Lead Plaintiffs claim to have suffered damages when Defendants' misstatements and omissions were revealed.

### 4.   Lead Plaintiffs Will Adequately Represent the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  The adequacy determination is two-pronged: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)).  Here, Lead Plaintiffs are sophisticated institutional investors that have and will continue to represent the interests of the Settlement Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Settlement Class Members.  Also, Lead Plaintiffs have retained counsel highly experienced in securities litigation who have successfully prosecuted many securities and other complex class actions throughout the United States.  Lead Plaintiffs are thus adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.

### B.   The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)

To certify a class under Rule 23(b)(3): (1) common questions of law or fact must "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3),

and the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

As the Supreme Court has found, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625. Indeed, as the above analysis of Lead Plaintiffs' allegations under Rule 23(a)(2)'s commonality standard demonstrates, there are numerous questions of law and fact common to Lead Plaintiffs and the proposed Settlement Class, including whether Defendants' statements and omissions about Spectrum's business during the Class Period were false and misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages. *See NeoPharm,* 225 F.R.D. at 568 ("main question involved in this case is whether defendants' alleged false and misleading statements and material omissions violated §§ 10(b) and (20)(a) of the Act").

A class action is also "superior to other available methods for fairly and efficiently adjudicating" the claims. Indeed, the geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. *See, e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009). The Settlement Class thus satisfies all the requirements of Rules 23(a) and 23(b).

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

The Court should approve the form and content of the proposed Notice and Summary Notice. *See* Stipulation, Exs. A-1 and A-3. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class Members of (among many other disclosures) the nature of the Action;

22

the definition of the Settlement Class; the claims and issues involved; that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so); and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the name, address, and telephone number of Lead Counsel, who will be available to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*.

The proposed notice program, which is set forth in the proposed Preliminary Approval Order submitted herewith, readily meets the standards under the Federal Rules of Civil Procedure and due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B).

Lead Plaintiffs propose that JND Legal Administration ("JND") administer the notice and claims process. JND is an independent settlement and claims administrator that Lead Counsel selected as the proposed claims administrator after a competitive bidding process. If the Court preliminarily approves the Settlement, Spectrum will provide contact information of potential Settlement Class Members to JND for the purpose of identifying and giving notice to the Settlement

Class and JND will disseminate the Notice and Claim Form (the "Notice Packet") to all identified potential Settlement Class Members.  JND will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased or acquired Spectrum common stock, Old Spectrum common stock, and HRG common stock during the Class Period on behalf of other beneficial owners. These nominee purchasers will either forward the Notice Packet or provide the names, mailing addresses, and, if available, email addresses of the beneficial owners to JND, which will then mail or email the Notice Packet to such identified beneficial owners.[6] JND will also cause the Summary Notice to be published once in *Investor's Business Daily* and transmitted over the *PR Newswire*, and will publish the Notice and other materials on a website to be developed for the Settlement.[7]

Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably be identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *See, e.g., Career Educ.*, 2008 WL 8666579, at *5 (authorizing notice by first-class mail and publication in *Investors' Business Daily* and over *PR Newswire*).

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement or requesting exclusion from the

---

[6] Because of the availability of name and address data for potential Settlement Class Members from the Company and third-parties, and the Claims Administrator's ability to reach class members through individual mailed notice, and as available, email addresses provided to the Claims Administrator, Lead Counsel and the Claims Administrator have conferred and determined that using social media outreach would not be necessary here.

[7] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA").  *See* Stipulation ¶ 20.

Settlement Class.[8]    The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing of the Notice and Proof of Claim to potential Settlement Class Members ("Notice Date") | 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after Notice Date |
| Deadline for filing final approval papers | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Fairness Hearing |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Fairness Hearing |
| Settlement Fairness Hearing | 105 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 120 calendar days after Notice Date |

If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Fairness Hearing for a **date 105 calendar days** after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  Lead Plaintiffs request that the hearing be scheduled, if possible, during the week of **Monday, November 30, 2020**, which is consistent with the proposed schedule if the Court enters the Preliminary Approval Order within the next week, or by Monday, August 17, 2020.

VII.    **CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will:  (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Settlement Class

---

[8]  The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

Members; (iii) approve JND as the Claims Administrator; and (iv) set a date and time for the

Settlement Fairness Hearing to consider final approval of the Settlement and related matters.

Dated:  August 10, 2020                    Respectfully submitted,


                                           */s/ Katherine M. Sinderson*
                                           **BERNSTEIN LITOWITZ BERGER
                                             & GROSSMANN LLP**
                                           Katherine M. Sinderson, admitted *pro hac vice*
                                           Jai Chandrasekhar, admitted *pro hac vice*
                                           Matthew Traylor, admitted *pro hac vice*
                                           1251 Avenue of the Americas
                                           New York, NY 10020
                                           Telephone:  (212) 554-1400
                                           Facsimile:  (212) 554-1444
                                           KatieM@blbglaw.com
                                           Jai@blbglaw.com
                                           Matthew.Traylor@blbglaw.com

                                           -and-

                                           Avi Josefson
                                           875 North Michigan Avenue, Suite 3100
                                           Chicago, Illinois 60611
                                           Telephone: (312) 373-3880
                                           Facsimile: (312) 794-7801
                                           avi@blbglaw.com

                                           *Lead Counsel for Lead Plaintiffs the Public School
                                           Teachers' Pension & Retirement Fund of Chicago
                                           and the Cambridge Retirement System and the
                                           Settlement Class*

                                           **RATHJE WOODWARD LLC**
                                           Douglas M. Poland
                                           State Bar No. 1055189
                                           Alison E. Stites
                                           State Bar No. 1104819
                                           10 E. Doty Street, Suite 507
                                           Madison, WI 53703
                                           Telephone:  (608) 960-7430
                                           Facsimile:  (608) 960-7460
                                           dpoland@rathjewoodward.com
                                           astites@rathjewoodward.com

26

*Liaison Counsel for Lead Plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Cambridge Retirement System and the Settlement Class*