# EXHIBIT 1

<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE VALEANT
PHARMACEUTICALS
INTERNATIONAL, INC. SECURITIES
LITIGATION

Civil Action No. 15-7658 (MAS) (LHG)

**MEMORANDUM OPINION**

<u>SHIPP, District Judge</u>

This matter comes before the Court upon Lead Plaintiff TIAA's ("Lead Plaintiff") Motion to Adopt the Special Master's Report and Recommendation Granting Final Approval of: (1) the Class Action Settlement and Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses to Plaintiffs ("Motion to Adopt"). (ECF No. 576.) Class Members Timber Hill LLC ("Timber Hill") and Cathy Lochridge ("Lochridge") opposed Lead Plaintiff's Motion to Adopt and objected to the Special Master's Report and Recommendation. (ECF Nos. 592, 596.) Lead Plaintiff opposed Timber Hill and Lochridge's objections and replied to their oppositions. (ECF Nos. 595, 601.) Timber Hill and Lochridge replied. (ECF Nos. 599, 603, 604.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Lead Plaintiff's Motion to Adopt is granted.

## I.    BACKGROUND

The Court previously summarized many of the factual allegations at issue in this matter and the Court assumes the parties' familiarity with those allegations. *See, e.g., In re Valeant Pharms. Int'l, Inc. Sec. Litig.* ("*In re Valeant*"), No. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28,

2017), *recons. denied,* No. 15-7658, 2017 WL 3880657 (D.N.J. Sept. 5, 2017). The Court, therefore, only recounts those facts necessary to resolve the instant Motion.

On October 22, 2015, Laura Potter, on "behalf of all persons who purchased or otherwise acquired Valeant stock between February 23, 2015 and October 20, 2015," brought a putative class action "against Valeant and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934[.]" (*In re Valeant Pharms. Int'l, Inc. Sec. Litig.* ("*Valeant Class Action*"), No. 15-7658 (D.N.J.), Compl. ¶ 1, ECF No. 1.) On May 31, 2016, the Court consolidated Ms. Potter's action with several other actions, and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, the Court appointed Lead Plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel in the consolidated action.[1] (*Valeant Class Action,* Order, ECF No. 67.)

On June 24, 2016, Lead Plaintiff filed a Consolidated Complaint (*Valeant Class Action,* Consol. Compl., ECF No. 80.) On April 28, 2017, the Court decided six motions to dismiss filed by various groups of defendants in the *Valeant Class Action. See In re Valeant,* 2017 WL 1658822, at *1. On September 20, 2018, Lead Plaintiff filed the First Amended Class Complaint naming additional defendants and bringing additional claims. (*Valeant Class Action,* First Am. Class Compl., ECF No. 352.) Meanwhile, on June 6, 2018, Timber Hill filed a class action complaint on behalf of all "persons and entities that purchased call options on Valeant . . . common stock and/or sold put options on Valeant common stock[.]" (*Timber Hill LLC v. Valeant Pharms. Int'l, Inc.,* No. 18-10246 (D.N.J.), Compl., ECF No. 1.) The Court consolidated Timber Hill's complaint with the *Valeant Class Action* for pretrial purposes. (ECF No. 318.) On September 10, 2019, the Court

---

[1] Lead Plaintiff retained Robbins Geller as counsel "and negotiated a fee agreement with Robbins Geller at the outset of the case." (Gomez Decl. ¶ 5, ECF No. 539-21.) Under Lead Plaintiff's "agreement with Lead Counsel, there is also an overall fee cap of 13%." (*Id.*)

entered an Order referring this matter to Special Master Dennis M. Cavanaugh, U.S.D.J. (ret.) ("Special Master"). (ECF No. 484.)

During the course of this litigation, the settling parties engaged in two mediation sessions with Professor Eric D. Green, Esq. ("Dr. Green"). On November 22, 2019, the settling parties accepted Professor Green's mediator's proposal "agreeing to settle the claims against all Defendants and Former Defendants, except PwC, in the amount of $1,210,000,000." (Barz Decl. ¶ 9, ECF No. 539-3.) On December 15, 2019, Lead Plaintiff, on behalf of itself and the Class, and the settling defendants entered into a Stipulation of Settlement.

On December 17, 2019, Lead Plaintiff moved for preliminary approval of the *Valeant Class Action.* On January 24, 2020, the Special Master entered an order granting preliminary approval. (ECF No. 510.) On February 5, 2020, the Court adopted the Special Master's order granting preliminary approval of the settlement. (ECF No. 515.)

Notice of the proposed class was then performed in accordance with the preliminary approval order. According to the Declaration of Ross D. Murray submitted by Lead Counsel, as of April 20, 2020, a total of 431,576 packages consisting of the Notice of Proof of Claim and Release Form ("Notice Package") were mailed to potential class members and nominees. (Murray Decl. ¶ 11, ECF No. 539-24.) Notice was also transmitted over Business Wire and published in The Wall Street Journal. (*Id.* ¶ 12.) The Notice Package, Stipulation of Settlement, Preliminary Approval Order, and other relevant documents were also posted on a website dedicated to the litigation and settlement. (*Id.* ¶¶ 13–14.) Four objections to settlement were received by the Court: two relating to the Attorneys' Fee Request, including Lochridge's objection; one to the amount of settlement; and Timber Hill's objection to the settlement and Plan of Allocation ("POA").

3

On June 15, 2020, the Special Master issued a report recommending approval of the settlement and POA, and an award of attorneys' fees and expenses. (*see generally* June 2020 Report and Recommendation ("June 2020 R&R"), ECF No. 575.) Lochridge objects to the requested fee award and Timber Hill objects to the settlement and POA. The other two individuals have not objected.

## II.   LEGAL STANDARD

The Court reviews objections to the Special Master's findings of fact and conclusions of law *de novo*. (Order 4, ECF No. 484); Fed. R. Civ. P. 53(f)(3)-(4). The Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1); (Order 4, ECF No. 484.)

## III.   DISCUSSION

### A.   Settlement and Plan of Allocation

Timber Hill objects to the Special Master's recommendation to approve the settlement and POA. (Timber Hill's Objection to Report & Recommendation ("OR&R") 6, ECF No. 592.) Despite previously approving of an allocation in the 5.35% range, Timber Hill now argues that the POA imposes an arbitrary 5% recovery cap on options investors while common stock and debt investors are permitted to recover from the remaining 95% on a *pro rata* basis. (*Id.* at 1–2, 15.) According to Timber Hill, the "options cap reflects a fundamental conflict concerning the allocation of [s]ettlement proceeds and demonstrates that [o]ptions [i]nvestors were inadequately represented." (*Id.* at 2–3.) Timber Hill asserts that the POA should be amended to remove the 5%

4

cap or, alternatively, to increase the cap to 9.49%.[2] (*Id.*) The Court disagrees with Timber Hill's arguments and, for the following reasons, overrules its objection.

### 1.    The POA is Fair, Reasonable, and Adequate

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Demmick v. Cellco P'Ship*, No. 06-2163, 2015 WL 13643682, at *10 (D.N.J. May 1, 2015) (internal quotation marks omitted) (collecting cases); *see Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The [C]ourt's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

"In determining whether a [p]lan of [a]llocation is fair, reasonable, and adequate, courts give great weight to the opinion of qualified counsel." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012). A "[p]lan of [a]llocation need not be, and cannot be, perfect. The Court will not invalidate the [p]lan of [a]llocation where certain shareholders, seeking advantageous treatment, fail to demonstrate that on the whole the plan is unreasonable." *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel" (alteration in original)).

---

[2] Timber Hill claims its expert "calculated [(i)] total options damages of $3,765,590,117; (ii) total debt damages of $3,857,171,767; and (iii) total common stock damages of $32,064,194,203, with total aggregate Class-wide damages under the [POA] for all three groups of investors summing to $39,686,956,087." (Timber Hill's OR&R 18, ECF No. 592.)

Here, Timber Hill argues "the Special Master erred in concluding that the 'treatment of options in the [POA] is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the differentiating factors affecting damages.'" (Timber Hill's OR&R 14 (citing June 2020 R&R at 23).) In doing so, however, Timber Hill (1) acknowledges that over twenty other cases have accepted use of an options cap, and (2) still cites no legal authority to the contrary. (*See id.*) Instead, Timber Hill relies on its expert's "empirical analysis" to support its theory that the 5% options cap is improper and should be increased to 9.49%. (*Id.* at 18–19.) Timber Hill, however, does not deny that its expert originally supported an options cap in the 5.35% range in this case. (Jan. 10, 2020 E-Mail Correspondence ("EC") (Timber Hill's "expert analysis showed an appropriate allocation in the 5.35% range"), ECF No. 559-15). Rather, Timber Hill incorrectly maintains that those statements are protected by Federal Rule of Evidence 408. (Timber Hill's OR&R 18 n.11); *see In re Ocean Power Tech., Inc.*, No. 14-3815, 2016 WL 6778218, at *16 (D.N.J. Nov. 15, 2016) (Wolfson, J.) (asserting that even if the correspondence at issue were considered "settlement communications[,] . . . this [c]ourt would be permitted to consider them in evaluating the reasonableness of the settlement in this case").

After review, the Court finds that the POA is fair, reasonable, and adequate. Here, Professor Steven P. Feinstein Ph.D., CFA ("Dr. Feinstein"), Lead Plaintiff's expert who assisted counsel in developing the POA, identified three factors that support the options cap: (1) "the damage computation formula used to compute [r]ecognized [l]osses for option[s] investors relative to the formulas used for Valeant common stock and note investors"; (2) "the numerous significant non-fraud causes of the declines in call options prices (or increases in the prices of written puts)"; and (3) "potentially offsetting gains for option[s] investors deriving from commonly used option hedging and combination strategies[.]" (Feinstein Decl. ¶ 7, ECF No. 559-3.) Notably, as Dr.

6

Feinstein indicates, Timber Hill's expert has also previously applied a 50% discount to the recognized losses of options investors because, according to the expert, (1) "option prices include a time premium that diminishes over time," and (2) "the expected additional volatility of derivative securities such as common stock options makes it more difficult to prove that all losses sustained on the purchase or sale on such securities are causally related to the alleged wrongdoing, as opposed to non-actionable causes." (*Id.* ¶ 31 (citing Marek Decl. ¶ 12, ECF No. 559-17).) As discussed, Timber Hill's expert originally supported an options cap in the 5.35% range in this matter based on his "expert analysis." (Jan. 10, 2020 EC.) Timber Hill, therefore, cannot persuasively claim that the POA is unfair, unreasonable, or inadequate. The Court, accordingly, overrules the sole objection to the POA. *See Cendant*, 109 F. Supp. 2d at 272 (overruling objection to a plan of allocation and finding it "[c]ompelling" that only two individuals objected even though "a large number of" shareholders were impacted).

### 2. Adequate Representation

Timber Hill also argues that the "Special Master erred in holding that Lead Plaintiff and Named Plaintiffs adequately represented [c]ommon [s]tock, [d]ebt, and [o]ptions [i]nvestors." (Timber Hill's OR&R 3.) According to Timber Hill, the POA "creates antagonism within the Class, directly impacting the question of adequate representation." (*Id.* at 20.) Timber Hill's argument concerning adequate representation is premised on its faulty assumption that the POA provides preferential treatment to common stock and debt investors to the detriment of options investors. (*Id.* at 18–22.) The Court, however, has already concluded otherwise and therefore rejects Timber Hill's argument on this issue.

### B. Award of Attorneys' Fees

Lochridge alone objects to the Special Master's recommendation of granting Lead Counsel's request for 13% of the $1.21 billion settlement fund: $157.3 million. (Lochridge's

Objection to Report & Recommendation ("Lochridge's OR&R") 1–2, ECF No. 596.) Based on the new and inconsistent position offered by Timber Hill's expert (*see id.* at 3 n.2) discussed above, Lochridge claims that the "settlement captures just 3% of class damages[,]" "the lowest return in the history of these large-scale securities settlements" (*id.* at 2). And despite originally objecting to a "mere 11.5%" return on damages in this matter (Lochridge's Obj. to Requested Att'ys' Fees 1, 8, ECF No. 546),[3] Lochridge now acknowledges that the "median fee" awarded in ten other billion dollar securities cases was 11.7% (Lochridge's OR&R 10–11). To remedy the purported 3% return, Lochridge proposes modifying the fee award to "a reasonable amount, no more than 6%," or $72.6 million. (*Id.* at 2, 25.) For the following reasons, the Court overrules Lochridge's objection.

"In assessing attorneys' fees, courts typically apply either the percentage-of-recovery method or the lodestar method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). "[C]ounsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001). The Third Circuit has "identified several factors to consider in determining whether attorneys' fees are reasonable under the percentage-of-recovery approach, including,"

> (1) the size of the fund created and the number of [persons benefitted], (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, . . . (7) the awards in similar cases, . . . (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have

---

[3] Lochridge indicates she "initially believed the $1.21 [billion] settlement represented 11.5% of the damages based on class counsel's expert's preliminary estimate of damages." (Lochridge's OR&R 3 n.2.)

8

been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336–40 (3d Cir. 1998)).

"The fee award reasonableness factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006) (internal quotation marks and citation omitted). "In cases involving extremely large settlement awards, district courts may give some of these factors less weight in evaluating a fee award." *Id.* "What is important is that in all cases, the district court engage in robust assessments of the fee award reasonableness factors, recognizing an especially acute need for close judicial scrutiny of fee arrangements in class action settlements." *Id.* (internal quotation marks and citation omitted).

"[U]nder the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *In re Cendant*, 264 F.3d at 282. Lochridge does not dispute that the 13% fee request is accorded a presumption of reasonableness.

### 1.    Size of the Fund Created and the Number of Persons Benefitted

"The size of the fund is indicative of the success obtained through a settlement, and, accordingly, a significant consideration in evaluating the reasonableness of an award for attorneys' fees." *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, No. 08-285, 2016 WL 11686450, at *8 (D.N.J. June 3, 2016) (citations omitted).

9

Here, Lochridge argues that since "this is the lowest ever return on class damages for a billion-dollar securities settlement," factor one should have "weighed heavily" against awarding the requested fees. (Lochridge's OR&R 5.) The Court disagrees. Lochridge's argument is premised on the purported 3% return on damages, based on the calculations offered by Timber Hill's expert. (*See id.* at 5.) Lochridge also speculates that Valeant could have withstood a greater settlement amount despite Valeant's uncertain financial condition. (*See id.* at 6–7.) As Lochridge correctly notes, "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefitted the class." (*Id.* at 7 (quoting *In re AT&T Corp.*, 455 F.3d at 165–66).) Here, Lead Counsel obtained a $1.21 billion all-cash recovery for the benefit of over 400,000 members. The settlement amount is the ninth largest PSLRA class action ever recovered. (*See* ISS Report 5, ECF No. 539-6.) On these facts, the Court finds that factor one weighs in favor of approving the requested fee award.

### 2.    Reaction of the Class to the Settlement

"In determining the reaction of the class to the settlement, this second factor attempts to gauge whether members of the class support the settlement." *Lincoln Adventures LLC v. Certain Underwriters at Lloyd's*, No. 08-0235, 2019 WL 4877563, at *4 (D.N.J. Oct. 3, 2019) (internal quotation marks and citation omitted).

Here, of the more than 400,000 members, only four objected to the settlement. Lochridge was one of two, and now is the only, individual who objects to the requested fee award. Lochridge speculates that the "remaining class members were unlikely to invest funds to object to what they perceive as a preordained approval." (Lochridge's OR&R 18.) Lochridge also unpersuasively notes that of the more than 400,000 members, only 311 members opted out. (*Id.* at 17–18.) Given the low number of objections and opt outs, the Court finds that factor two weighs in favor of

10

approving the requested fee award. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305 (finding class's reaction to the fee request supports approval where of the more than 300,000 members, only two objected, noting that "such a low level of objection is a 'rare phenomenon'").

### 3. Skill and Efficiency of Attorneys

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Demmick*, 2015 WL 13643682, at *3 (internal quotation marks and citation omitted).

Here, Lochridge does not address, much less question, the skill and efficiency of Lead Counsel. (*See* Lochridge OR&R 10–11.) Rather, Lochridge repeats the same 3%-return-of-damages argument already rejected for the above-stated reasons. (*See id.*) As the Special Master noted, "Lead Counsel has a successful track record of prosecuting securities class actions." (June 2020 R&R 27; *see generally* Robbins Geller's Firm Resume (achieving three other settlements in excess of a $1 billion, including a $7.2 billion settlement in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.)), Ex. G to Final Motion for Settlement, ECF No. 539-36); *see also Heed v. Miller*, 2018 WL 1532955, at *2 (E.D. Pa. Mar. 29, 2018) (noting that Robbins Geller "has been appointed as lead counsel in several shareholder actions and has successfully prosecuted numerous derivative actions on behalf of injured companies"); *In re AT&T Corp. Sec. Litig.*, No. 00-5364, 2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) (stating that Robbins Geller is comprised of "highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization"), *aff'd*, 455 F.3d 160 (3d Cir. 2006). This case is no exception. Here, Lead Counsel litigated this case against "experienced lawyers from seven of the largest and most well-

11

known defense firms." (Barz Decl. ¶ 27 (listing defense firms).) Furthermore, despite Valeant's deteriorating financial condition, Lead Counsel achieved a $1.21 billion settlement—the ninth largest PSLRA class action ever recovered—for the benefit of the class. Based on the foregoing, the Court easily finds that factor three weighs in favor of approving the requested fee award.

### 4. Complexity and Duration of the Litigation

The factors that increase the complexity of a class action include: "complex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 741 (3d Cir. 2001).

Lochridge does not deny that this matter has been litigated for over four years or that this case involves sophisticated securities claims. Instead, Lochridge merely asserts that "class counsel did not take a single deposition, and settlement was achieved before class certification and having to overcome a summary judgment motion." (Lochridge's OR&R 17.) As the Special Master noted, however, Lead Counsel secured the settlement only after: (1) "conduct[ing] an extensive investigation that developed the factual basis for the claims asserted in the litigation"; (2) "interview[ing] witnesses concerning the subject matter of the [l]itigation"; (3) "research[ing] applicable law governing the claims alleged and potential defenses thereto"; (4) "prepar[ing] and fil[ing] the nearly 300-page complaint and then amend[ing] the complaint to successfully assert an insider trading claim against additional parities"; (5) "successfully oppos[ing] Defendants' seven motions to dismiss as well as motions to reconsider and to appeal the denial of those motions"; (6) "draft[ing], retain[ing] experts for, and submitt[ing] Plaintiffs' detailed motion for class certification"; (7) "engag[ing] in document and written discovery that included analysis of nearly 11.5 million pages of documents produced from [twenty five] Defendants and 150 third parties, as well as interrogatories and requests for admission"; (8) "analyz[ing] witness testimony from the review of deposition transcripts from related proceedings, Congressional testimony, trial and

12

sentencing testimony from the criminal case against Philidor's former CEO and former Valeant executive, and over [fifty] public videos consisting of media interviews, all of which provided the factual accounts of several defendants and key Valeant employees and directors regarding issues relevant to this case"; (9) "retain[ing] five experts to opine on accounting, auditing, industry practices, corporate governance, and loss causation and damages"; and (10) "engag[ing] in extensive arm's-length settlement negotiations, including preparing detailed mediation briefs with more than 125 exhibits, and participating in two in-person mediations." (June 2020 R&R 28–29.) Lochridge fails to acknowledge all but one of the findings set forth by the Special Master, which supports a finding that factor four weighs in favor of approving the requested fee award. (June 2020 R&R 28–29.) As to the one finding that Lochridge does address—a review of over 11.5 million pages of documents—Lochridge speculates that contract attorneys "would have likely been responsible for reviewing the lion's share of this material." (Lochridge's OR&R 17.) Lochridge's unsupported assertion is meritless. The Court, therefore, finds that factor four weighs in favor of approving the requested fee award.

### 5. Risk of Nonpayment

Lochridge claims that "[w]ith $825 million cash on hand at the time of settlement and a market capitalization of around $10 billion, there was zero risk of nonpayment." (*Id.* at 11.) Lochridge, however, fails to mention that Valeant—in addition to the $825 million in cash and $10 billion market capitalization—also had approximately $25 billion in debt. (June 2020 R&R 19.) Apart from continuing to disregard Valeant's uncertain financial condition, she also fails to acknowledge that Lead Counsel undertook this action on a contingency fee, Lochridge which weighs in favor of approval. *See In re Schering-Plough Corp.*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis

militates in favor of approval." (collecting cases)). The Court, therefore, finds that factor five weighs in favor of approving the requested fee award.

### 6. Amount of Time Devoted to the Case by Plaintiffs' Counsel

Lochridge does not dispute that Lead Counsel devoted over four years and 75,000 hours to this matter for the benefit of the class. Instead, Lochridge argues the Special Master erred in finding that "Lead Counsel and their attorneys and paraprofessionals expended over 75,000 hours" in prosecuting this matter because "24,436.75 hours were billed by contract attorneys." (*Id.*) The Court disagrees with Lochridge's suggestion that 50,563.25 hours is not a significant amount of time. *See In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) (finding factor six weighed in favor of the requested fee award where "class counsel spent more than 40,000 hours over the course of more than four years litigating th[e] case"). The Court also disagrees with Lochridge's suggestion that the contract attorneys did not meaningfully contribute to this matter. The Court, therefore, finds that factor six weighs in favor of approving the requested fee award.

### 7. Awards in Similar Cases

Lead Counsel requests an award of attorneys' fees equal to 13% of the $1.21 billion settlement amount: $157.3 million. As the Special Master correctly noted, "Lead Counsel's 13% fee request falls at or below fees awarded in similar class action settlements in this District and elsewhere." (June 2020 R&R 30 (citing *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, 2016 WL 11686450 (awarding 20% fee on $1.062 billion recovery); *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (awarding 17% fee on $517 million recovery); *Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019) (affirming 13% fee on $2.3 billion settlement); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) (approving 14.5% fee on $3.2 billion settlement.)).) In opposition, Lochridge only acknowledges *Merck* and *Tyco* and unpersuasively attempts to distinguish them by repeating the same faulty

14

return-of-damages argument already rejected by the Court. (Lochridge's OR&R 8–9.) The Court, accordingly, finds that factor seven weighs in favor of approving the requested 13% fee award.

8.   **Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Government Agencies Conducting Investigations**

Lochridge claims that Lead Counsel "benefitted considerably" from the work performed by government agencies. (*Id.* at 15–16.) Contrary to Lochridge's suggestion, however, the government investigation did not produce an admission of fault by any defendant. In fact, as Lochridge appears to acknowledge, Lead Counsel and the government have advanced different theories of the case, including the government's theory that Valeant was the victim of a rogue employee. (*Id.* at 16.) While the Court is mindful that Lead Counsel reviewed materials generated by the government investigations, it cannot agree that the value of benefits attained by Lead Counsel is attributable to the government. As discussed above, Lead Counsel vigorously litigated this matter over the course of four years, which included efforts to disprove the government's theory in the criminal case. The Court, therefore, finds that factor eight weighs in favor of approving the requested fee award.

9.   **Percentage Fee that would have been Negotiated had the Case been Subject to Private Contingent Fee Arrangement at the Time Counsel was Retained**

Lochridge acknowledges that Lead Plaintiff negotiated an agreement for the 13% fee but maintains that "the fee substantially overcompensates class counsel for the 3% return on damages and minimal lodestar invested." (*Id.* at 19.) The Court rejects Lochridge's 3%-return-on-damages argument for the above-stated reasons. The Court also rejects Lochridge's lodestar argument for the reasons discussed in the following section. The Court, therefore, finds that factor nine weighs in favor of approving the requested fee award.

15

In sum, the Court finds that all nine *Gunter/Prudential* factors overwhelmingly weigh in favor of approving Lead Counsel's requested fee award.[4]

### 10.    Lodestar Cross-Check

The Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid*, 396 F.3d at 305 (citation omitted). The lodestar cross-check, however, "does not trump the primary reliance on the percentage of common fund method." *Id.* at 307. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306–07.

As the Special Master noted, Lead Counsel devoted 75,873.82 hours to this action, resulting in a lodestar award of $42,012,621.25, producing a multiplier of approximately 3.6. (*See* Robbins Geller Decl. ¶ 5, ECF No. 539-29.) Contrary to Lochridge's assertion (Lochridge's OR&R 23), a 3.6 lodestar falls within the range "frequently awarded in common fund cases when the lodestar method is applied." *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010). Lochridge posits that the lodestar multiplier is 4.4 based on her own calculations. (*See* Lochridge's OR&R 22 ("Since class counsel failed to proffer a reasonable rate for contract attorneys, Lochridge submitted that $75/hour would be on the high end for market rate. . . . As Lochridge explained, if the contract attorney hours are billed at $75/hour, the real number is 4.4"). Even if the lodestar multiplier was 4.4, however, it would still fall within the common range. *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16, noting that "multiples ranging from 1 to 8 are often used in common

---

[4] Lochridge does not address factor ten—innovative terms of settlement.

fund cases" to "compensate counsel for the risk of the assuming representation on a contingency fee basis"). The Court, therefore, overrules Lochridge's objection on this issue.

Having considered the *Gunter/Prudential* factors and having performed the lodestar cross-check, the Court finds that Lead Counsel's requested 13% fee award is reasonable and therefore approves the request.

## IV.    CONCLUSION

For the reasons set forth above, Lead Plaintiff's Motion to Adopt is granted. Timber Hill and Lochridge's objections to the Report and Recommendation are overruled. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

17