# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
|  | ) |  |
|  | ) |  |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF (A) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND (B) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System and the Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Katherine M. Sinderson
Jai Chandrasekhar
Matthew Traylor
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com
Matthew.Traylor@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System and the Settlement Class*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...............................................................................................1

II.   THE SETTLEMENT CLASS'S REACTION STRONGLY SUPPORTS APPROVAL
      OF THE SETTLEMENT AND THE REQUESTED ATTORNEYS' FEES AND
      LITIGATION EXPENSES ......................................................................................................4

      A.    The Settlement Class's Reaction Strongly Supports Approval of the
            Settlement ...................................................................................................................6

      B.    The Settlement Class's Reaction Strongly Supports Approval of the
            Fee-and-Expense Request............................................................................................6

III.  THE OBJECTION TO THE PLAN OF ALLOCATION SHOULD BE REJECTED........7

      A.    The Plan of Allocation Is Fair and Reasonable ........................................................12

      B.    The Discount for the HRG Claims Is Fair ................................................................14

      C.    The HRG Claims Faced Much Greater Risk Than the Other Claims....................17

      D.    The Discount for HRG Claims Is Not Arbitrary.......................................................19

      E.    The Discount for HRG Claims Is Fair and Reasonable Given the Status
            of the Litigation.........................................................................................................23

      F.    The Settlement Notice to Class Members Clearly Explained the Value
            of HRG Claimants' Claims.......................................................................................25

IV.   THE OBJECTOR'S REQUEST FOR LEAD COUNSEL'S WORK PRODUCT AND
      THE PARTIES' CONFIDENTIAL MEDIATION STATEMENTS AND FOR
      APPOINTMENT AS "LIAISON PLAINTIFF" SHOULD BE DENIED ........................29

V.    CONCLUSION.....................................................................................................................32

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*In re Agent Orange Prod. Liab. Litig.*,
   611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................................10

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
   235 F. Supp. 2d 816 (N.D. Ill. 2002) ...................................................................................6

*In re Am. Apparel, Inc. S'holder Litigation*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................................23

*Asare v. Change Grp. of N.Y., Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......................................................................7

*In re BankAmerica Corp. Sec. Litig.*,
   263 F.3d 795 (8th Cir. 2001) ...............................................................................................30

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
   390 F. Supp. 3d 432 (S.D.N.Y. 2019) ..................................................................................18

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ..............................................................................................................17

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ..............................................................................................................17

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .....................................................................................8, 13

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ...............................................................................................10

*Day v. Persels Assocs. LLC*,
   729 F.3d 1309 (11th Cir. 2013) ...........................................................................................30

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ..................................................................................................................30

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) .................................................................................................30

*Duane & Virginia Lanier Tr. v. Sandridge Mississippian Tr. I*,
   361 F. Supp. 3d 1162 (W.D. Okla. 2019) ............................................................................19

*Epstein v. Wittig*,
   2005 WL 3276390 (D. Kan. Dec. 2, 2005) .........................................................................30

*Franks v. Kroger Co.*,
670 F.2d 71, 72-73 (6th Cir. 1982) ...................................................................................15

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) ........................................................................................15

*Goldsmith v. Tech. Solutions Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)...................................................................6

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,*
*L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) .....................................................................................8

*Hering v. Rite Aid Corp.*,
331 F. Supp. 3d 412 (M.D. Pa. 2013) .............................................................................19

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................8, 10

*Holmes v. Continental Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ......................................................................................15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................8, 13

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..............................................................................13

*Jaffe v. Morgan Stanley & Co.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .....................................................................29

*In re Lithotripsy Antitrust Litig.*,
2000 WL 765086 (N.D. Ill. June 12, 2000) ......................................................................7

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
222 F.3d 1142 (9th Cir. 2000) ........................................................................................29

*Lucas v. Vee Pak, Inc.*,
2017 WL 6733688 (N.D. Ill. Dec. 20, 2017).................................................................13

*In re Lupron Mktg. & Sales Prac. Litig.*,
2005 WL 613492 (D. Mass. Mar. 16, 2005)..............................................................29, 30

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ...................................................................10

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*,
834 F.2d 677 (7th Cir. 1987) .....................................................................................19, 29

*Myszka v. Nat'l Collegiate Scouting Ass'n, Inc.*,
   2014 WL 1364468 (N.D. Ill. Mar. 19, 2014) ...........................................................................6

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ....................................................................................................18

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (C.D. Cal. 2008) .................................................................................10

*Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks
   Corp.*,
   369 F.3d 27 (2d Cir. 2004) ....................................................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................................9, 22

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .................................................................................................9

*Plummer v. Chemical Bank*,
   91 F.R.D. 434 (S.D.N.Y. 1981) .............................................................................................15

*Pope v. Harvard Bancshares, Inc.*,
   240 F.R.D. 383 (N.D. Ill. 2006) ............................................................................................15

*In re Portal Software Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) .........................................................................9

*In re Portal Software Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......................................................................6, 8

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................................9, 10

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
   157 F. Supp. 2d 561 (E.D. Pa. 2001) ......................................................................................9

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) .............................................................................................18, 19

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) .......................................................................8

*In re Southwest Airlines Voucher Litig.*,
   799 F.3d 701 (7th Cir. 2015) .................................................................................................15

*Standard Iron Works v. ArcelorMittal*,
  2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)..................................................................7

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)........................................................................................................17

*Swift v. Direct Buy, Inc.*,
  2013 WL 5770633 (N.D. Ind. Oct. 24, 2013)..................................................................6

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................................7

*Vaughn v. Am. Honda Motor Co.*,
  2007 WL 2220924 (E.D. Tex. July 31, 2007) ................................................................29

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ...............................................................22

*Wagner v. Lehman Bros. Kuhn Loeb Inc.*,
  646 F. Supp. 643 (N.D. Ill. 1986)..................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)....................................10

*Williams v. Gen. Elec. Capital Auto Lease, Inc.*,
  159 F.3d 266 (7th Cir. 1998) .........................................................................................30

*In re WorldCom, Inc. Sec. Litig.*,
  2005 WL 78807 (S.D.N.Y. Jan. 11, 2005) ......................................................................7

*Wyly v. Milberg Weiss Bershad & Schulman LLP*,
  850 N.Y.S.2d 14 (N.Y. App. Div. 2007) .......................................................................29

*Young v. City of Chicago*,
  2013 WL 9947387 (N.D. Ill. Dec. 16, 2013)....................................................................6

*Zelman v. JDS Uniphase Corp.*,
  376 F. Supp. 2d 956 (N.D. Cal. 2005) ...........................................................................19

**STATUTES**

15 U.S.C. § 78u–4(a)(7)(A) ...............................................................................................25

15 U.S.C. § 78u-4(a)(4) .....................................................................................................14

15 U.S.C. § 78u-4(e) ............................................................................................................8

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth §21.643 (2004)................................................................30

Lead Plaintiffs, the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers") and the Cambridge Retirement System ("Cambridge," and collectively with Chicago Teachers, "Lead Plaintiffs"), on behalf of themselves and the other members of the Settlement Class,[1] respectfully submit this memorandum of law in further support of (i) Lead Plaintiffs' motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation (Dkt. 49) and (ii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (Dkt. 51).[2]

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs and Lead Counsel are pleased to advise the Court that, following an extensive Court-ordered notice program including the mailing of the Notice to 83,014 potential Class Members and nominees, <u>no</u> Class Members have objected to the adequacy of the Settlement or to Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses. Furthermore, not one Class Member has requested exclusion from the Settlement Class. Accordingly, Class Members' favorable reaction strongly confirms the fairness and

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 10, 2020, Dkt. 44-1 (the "Stipulation") or in the Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, Dkt. 53 (the "Sinderson Declaration" or "Sinderson Decl."). Citations to "Objection" refer to Jet Capital's Objection to Plan of Allocation filed on January 8, 2021, Dkt. 54. Citations to "Supp. Ex. __" refer to the exhibits attached to the Supplemental Declaration of Katherine M. Sinderson ("Supp. Sinderson Decl."), filed with this memorandum. Also, unless otherwise defined, any citation to "Dkt. __" within this declaration is to the docket in *In re Spectrum Brands Securities Litigation*, No. 3:19-cv-347-jdp.

[2] Copies of the (i) proposed Judgment Approving Class Action Settlement; (ii) proposed Order Approving Plan of Allocation of Net Settlement Fund; and (iii) proposed Order Awarding Attorneys' Fees and Litigation Expenses are attached to the Supp. Sinderson Decl. as Exhibits 1, 2 and 3, respectively.

reasonableness of the proposed Settlement, the Plan of Allocation, and the request for attorneys' fees and expenses.

The sole objection, filed by the Jet Capital Funds ("Jet Capital" or the "Objector"), relates only to the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation" or "Plan"). Importantly, Jet Capital does not object to the Settlement Amount, nor does it object to Lead Plaintiffs' expert's damages model, calculation of damaged shares, or calculation of artificial inflation, all of which are the principal bases for the Plan. Instead, the objection relates only to the discount applied to loss amounts attributable to purchases of HRG common stock. Discounts of this kind are common in securities-class-action settlements to account for the greater risks associated with prosecuting certain claims. *See* cases cited at pp. 9-12 below. Under Rule 23 and applicable case law, the Plan should be approved if the Court finds that Lead Counsel's design of the Plan is fair and reasonable. As discussed below, the Plan more than meets this standard.

Under the Stipulation, the Plan is to be evaluated and approved by the Court separate and apart from the Settlement itself:

> The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.

Dkt. 44-1 ¶ 22. The Stipulation also provides that "[a]ny decision or proceeding, whether in this Court or any appellate court, . . . with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not be grounds for termination of the Settlement." Dkt. 44-1 ¶ 00335. The Notice informed Settlement Class Members that approval of the Settlement and approval of the Plan of Allocation are separate from

each other and that the Court can modify the Plan without further notice other than on the Settlement website.[3]

Remarkably, Jet Capital originally opted out of the Settlement Class, presumably to litigate its HRG claims against Defendants on an individual basis—but, recognizing the strength of the Settlement and the serious litigation risks facing the HRG claims, Jet Capital opted back in and requested to <u>rejoin</u> the Class, notwithstanding its awareness of the discount applied to the HRG claims. *See* Supplemental Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form and (B) Report on Requests for Exclusion Received ("Supp. Segura Decl."), filed with this memorandum, at ¶¶ 4-5 & Ex. 1. Jet Capital's decision not to pursue an individual action, despite its experience in pursuing individual securities-fraud claims and claimed market loss of $14 million on HRG stock, belies its argument that the HRG claims have greater value than the Plan attributes to those claims. Furthermore, Jet Capital's endorsement of the Settlement and lack of objection to the adequacy and typicality of Lead Plaintiffs as Class representatives indicate that Jet Capital agrees that the Settlement is a strong result for all Class Members and that Lead Plaintiffs are appropriately representing the Class. As discussed below, Jet Capital's objection should be rejected by the Court, and the proposed Plan should be approved.

The Objector's totally unsupported request for Lead Counsel's work product and the parties' confidential mediation briefs and for appointment as "liaison plaintiff" to renegotiate the Plan's discount for HRG claims should also be rejected. Lead Counsel is aware of zero precedent

---

[3] *See* Dkt. 53-4 ¶ 45 ("Approval of the Settlement is independent from approval of a plan of allocation. Any determination with respect to a plan of allocation will not affect the Settlement, if approved."); Dkt. 53-4 ¶ 74 ("The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiffs after consultation with its damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the Settlement website, www.SpectrumBrandsSecuritiesLitigation.com.").

for such a request in a securities class action, and Jet Capital cites none. Lead Counsel respectfully submits that its assessment of the claims' strength is entitled to weight under applicable law and the facts of this case and that the proposed Plan should be approved.

## II.  THE SETTLEMENT CLASS'S REACTION STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT AND THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES

Lead Plaintiffs and Lead Counsel respectfully submit that their opening papers demonstrate that approval of their motions is warranted. Now that the time for objecting to the Settlement or requesting exclusion from the Settlement Class has passed, the Settlement Class's reaction to the Court-ordered notice program and to the filings by Lead Plaintiffs and Lead Counsel provides strong additional support for approval of the motions.

In accordance with the Court's September 28, 2020 Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (the "Preliminary Approval Order"), the Court-approved Claims Administrator, JND, has mailed 83,014 copies of the Notice and Claim Form to potential Class Members and nominees. *See* Supp. Segura Decl. ¶ 2. The Notice informed Class Members of the terms of the proposed Settlement and Plan of Allocation, and that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 16% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $400,000. *See* Notice, Dkt. 53-4, ¶¶ 5, 75.

The Notice also apprised Class Members of their right to object to the proposed Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; their right to exclude

4

themselves from the Settlement Class; and the January 8, 2021 deadline for filing objections and for receipt of requests for exclusion. *See* Notice, Dkt. 53-4, at 4 & ¶¶ 76-90.[4]

On December 24, 2020, Lead Plaintiffs and Lead Counsel filed their opening papers in support of the Settlement, Plan of Allocation, and fee and expense request ("Final Approval Papers"). The motions are supported by declarations of Lead Plaintiffs, Plaintiffs' Counsel, the Mediator, and the Claims Administrator. The Final Approval Papers are available on the public docket (*see* Dkts. 49-53), the Settlement website, and Lead Counsel's website. *See* Supp. Segura Decl. ¶ 3.

As noted above, following this extensive notice program, not one Class Member objected to the Settlement or to Lead Counsel's application for fees and expenses. In addition, only two requests for exclusion have been received—both from individuals, not from institutional investors.[5] *See* Supp. Segura Decl. ¶¶ 5-6 & Ex. 1. Of those opt-out requests, one was submitted jointly by two individuals who indicate in their request that they did not purchase any shares of Spectrum, Old Spectrum, or HRG common stock during the Class Period, so these individuals are not members of the Settlement Class. The other opt-out request was submitted by an individual who purchased shares of Spectrum stock during the Class Period but did not hold them over a

---

[4] On November 9, 2020, JND caused the Summary Notice, which informed readers of the proposed Settlement, of how to obtain copies of the Notice and Claim Form, and of the deadline for objections and requests for exclusion, to be published in the *Investor's Business Daily* and to be transmitted over the PR Newswire. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received To Date and Estimated Notice and Administration Costs ¶ 8 (Dkt. 53-4). In addition, copies of the Notice, Stipulation, Preliminary Approval Order, and Complaint were posted on the Settlement website. *See id.* ¶ 10.

[5] As noted above, an additional request for exclusion was submitted by Jet Capital, but withdrawn.

corrective disclosure and, therefore, is also not a member of the Class because she was not damaged by the alleged fraud.[6]

### A. The Settlement Class's Reaction Strongly Supports Approval of the Settlement

The lack of any objections to the Settlement and the small number of opt-outs strongly support a finding that the Settlement is fair, reasonable, and adequate. Courts in this Circuit view the absence of objections as a strong factor supporting approval of a class-action settlement. *See, e.g.*, *Myszka v. Nat'l Collegiate Scouting Ass'n, Inc.*, 2014 WL 1364468, at *1 (N.D. Ill. Mar. 19, 2014) ("No objections to the Settlement were made by the Class Members, and this fact . . . supports approval"); *Swift v. Direct Buy, Inc.*, 2013 WL 5770633, at *6 (N.D. Ind. Oct. 24, 2013) (noting that "limited opposition to the Settlement Agreement among affected parties . . . also favors settlement") (citation omitted); *Young v. City of Chicago*, 2013 WL 9947387, at *2 (N.D. Ill. Dec. 16, 2013) (same); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002) (same); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ("The absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"); *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995) (same).

### B. The Settlement Class's Reaction Strongly Supports Approval of the Fee-and-Expense Request

The Settlement Class's uniformly positive reaction also supports Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. Not a single Class member has objected

---

[6] Although the individuals who have opted out of the Settlement Class are not Class Members based on the information provided in their requests for exclusion, in order to allay any concerns by these individuals, Lead Plaintiffs are, with Defendants' consent, asking to have them excluded from the Settlement Class.

to the request. The absence of objections from a Settlement Class that includes sophisticated institutional investors strongly supports a finding that the fee-and-expense request is fair and reasonable. *See, e.g.*, *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) (finding that absence of objections to fee request from class that included sophisticated businesses "indicates that the fee is fair and reasonable and consistent with prevailing market rates"); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (considering lack of objection to attorneys'-fees request in approving request); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) ("The fact that no class members have explicitly objected to these attorneys' fees supports their award."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *16 (S.D.N.Y. Nov. 18, 2013) ("not one potential class member has made an objection, a factor held by courts as supporting approval of an attorneys' fees award").

## III. THE OBJECTION TO THE PLAN OF ALLOCATION SHOULD BE REJECTED

The only Class Member to have filed an objection is Jet Capital, and its objection is limited to one aspect of the proposed Plan of Allocation: the discount applied under the Plan to loss amounts attributable to purchases of HRG common stock to account for the greater litigation risks associated with these claims. To be clear, Jet Capital does not object to the adequacy of the $39 million Settlement or the fees and expenses requested by Lead Counsel. *See* Objection at 1 n.2 ("Jet . . . does not object to: (a) the fact of the settlement or that settlement was entered into at this stage of the proceedings; (b) the amount of the settlement *in toto*; or (c) the amount or percentage of attorney's fees *in toto*. . . "). Furthermore, this Court's consideration and resolution of Jet Capital's objection is independent of the Court's consideration of the Settlement and the fee-and-expense request. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 78807, at *7 (S.D.N.Y.

Jan. 11, 2005); *see also* Stipulation, Dkt. No. 44-1 ¶¶ 22, 35 (approval of the Settlement does not depend on approval of any particular plan of allocation).

A plan for allocating the proceeds of a settlement should be approved if it is fair and reasonable. *See, e.g.*, *Retsky*, 2001 WL 1568856, at *3; *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). "As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and on whether the proposed apportionment is fair and reasonable in light of that information." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, Lead Plaintiffs' damages expert, in consultation with Lead Counsel, developed the Plan of Allocation by calculating the estimated amount of artificial inflation in the per-share closing prices of Spectrum, Old Spectrum, and HRG common stock during the Class Period that was allegedly caused by Defendants' alleged materially false and misleading statements and omissions. The Recognized Loss Amounts of Class Members who submit valid claims will be calculated based on when the claimants purchased and sold the shares, the value of the shares when the claimants purchased or sold them, and whether the claimants held the shares through the statutory 90-day look-back period (*see* 15 U.S.C. § 78u-4(e)). Class Members must have held shares through one of the two alleged corrective-disclosure dates to have Recognized Loss Amounts (because otherwise they did not incur losses caused by the alleged fraud).

Lead Counsel determined that losses on HRG shares should be discounted by 75% because of the much greater risk that claims based on HRG share purchases would be unsuccessful if the Action were further litigated. This discount is fair and reasonable in light of these claims' unique tenuousness, as discussed further in Section III.A. Lead Counsel believes that there was a reasonable basis for asserting these claims and that they should be asserted on behalf of the Class, and Lead Plaintiffs' opposition to the motion to dismiss argued vigorously against dismissing them. But Lead Counsel also recognizes that these claims faced a much greater risk of dismissal than Old Spectrum and Spectrum shareholders' claims.

Discounts of this kind are routine in securities class actions like this one. In fact, "[c]ourts frequently endorse distributing settlement proceeds according to the relative strengths and weaknesses of the various claims." *In re Portal Software Inc. Sec. Litig.*, 2007 WL 1991529, at \*6 (N.D. Cal. June 30, 2007) (preliminarily approving plan that discounted dismissed claims by awarding them only 5% of settlement fund); *see also In re Portal Software Inc. Sec. Litig.*, 2007 WL 4171201, at \*6 (N.D. Cal. Nov. 26, 2007) (finally approving plan with discounts for weaker claims because "the court cannot conclude that the plan of allocation is obviously deficient or is not 'within the range of possible approval'" (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011) ("'when real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed'") (quoting *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y. 1997));

9

*id.* at 590 ("What would be 'arbitrary, unreasonable, and unfair[]' (Objector Kannapel's words) would be to distribute 72% of the settlement fund to the 7% of Class Members who have the weakest claims.") (alteration in original); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *6, *17 (C.D. Cal. Dec. 5, 2013) (approving allocation of only 10% of settlement fund to claims that were "dismissed or, as Plaintiffs believe, subject to dismissal based on . . . standing and tolling"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *Heritage Bond*, 2005 WL 1594403, at *11 ("A plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Clamant, [even as it] sensibly makes interclass distinctions based upon, *inter alia,* the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985) (approving plan of allocation providing for recovery of up to 5%, up to 25%, or up to 75% of claims depending on time of purchase in relation to amount of undisclosed information available to defendants at different times), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Agent Orange Prod. Liab. Litig.,* 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) ("[I]f one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed.") (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)).

More recently, courts have continued to approve discounts proposed by class counsel based on the relative weakness of certain claims, similar to the discount here. For example, in *In re Henry Schein, Inc. Securities Litigation*, the court granted final approval of a plan that discounted losses

on a particular corrective disclosure by 90%. *See* Notice, No. 18-cv-01428 (E.D.N.Y. Aug. 12, 2020), Dkt. 81-3 at ¶ 53; Final Approval Order, Dkt. 89 (E.D.N.Y. Sept. 16, 2020), attached as Supp. Exs. 4A and 4B. There, even though the court had already sustained claims related to that disclosure and sustained the complaint, the court approved the discount where defendants continued to assert loss-causation arguments for that disclosure. *See id.* Similarly, in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Product Liability Litigation*, the court approved a 50% discount to a portion of the class period even where the court had already sustained claims based on alleged false statements during that part of the class period. *See* Notice, No. 15-md-02672, Dkt. 6112-3 (N.D. Cal. Apr. 5, 2019) at ¶ 59; Final Approval Order, Dkt. 6285 (N.D. Cal. May 10, 2019), attached as Supp. Exs. 5A and 5B.[7]

Similarly, premiums for some claims based on the relative strength of the claims, as determined by lead counsel, have also been approved in many securities class actions. Courts have approved premiums for claims under the Securities Act (which do not require evidence of

---

[7] As discussed below in Section III.D., Jet Capital's arguments concerning *Volkswagen* (Objection at 15-16) demonstrate a misreading of the case.

fraudulent intent) where lead counsel determined those claims were stronger than fraud claims under the Exchange Act ranging from, e.g., 25%,[8] to 20%,[9] to 15%,[10] to 10%.[11]

### A.    The Plan of Allocation Is Fair and Reasonable

By electing to actively rejoin the Class—after previously opting out, presumably to pursue an individual action—Jet Capital has demonstrated its desire to share in the excellent recovery Lead Plaintiffs have obtained for Class Members. However, Jet Capital objects to the Plan's 75% discount on Class members' recognized losses related to HRG stock. *See* Objection at 1.

As an initial matter, the only reason HRG shareholders are receiving any compensation at all for their claims is that Lead Plaintiffs stepped forward to assert them. Neither Jet Capital, notwithstanding its substantial losses on HRG shares, nor any other HRG investor, saw fit to do so. In fact, Jet Capital never took <u>any</u> steps to preserve these claims in the face of the statute of limitations, which arguably would have expired and rendered the HRG claims worthless but for Lead Plaintiffs' assertion of those claims. When Jet Capital initially opted out of the Class— presumably to pursue an individual claim, as it has in connection with at least one other securities

---

[8] *See* Notice, *In re Schering-Plough Corp./ENHANCE Sec. Litig*, No. 08-cv-397-DMC-JAD (D.N.J. July 2, 2013), Dkt. 423-5 at ¶ 16; Plan of Allocation Order, Dkt. 438 (D.N.J. Oct. 1, 2013), attached as Supp. Exs. 6A and 6B.

[9] *See* Notice, *In re CTI BioPharma Corp. Sec. Litig.*, No. 16-cv-00216 (W.D. Wash. Dec. 28, 2017), Dkt. 110-3 at ¶¶ 48, 54, 55; Plan of Allocation Order, Dkt. 117 (W.D. Wash. Feb. 1, 2018), attached as Supp. Exs. 7A and 7B.

[10] *See* Notice, *Medina v. Clovis Oncology, Inc.*, No. 15-cv-02546 (D. Colo. Sept. 21, 2017), Dkt. 170-5 at ¶ 63; Plan of Allocation Order, Dkt. 179 (D. Colo. Mar. 8, 2018), attached as Supp. Exs. 8A and 8B; Notice, *Hill v. State Street Corp.*, No. 09-cv-12146 (D. Mass. Sept. 22, 2014), Dkt. 496-1 at ¶ 51; Plan of Allocation Order, Dkt. 519 (D. Mass. Jan. 8, 2015), attached as Supp. Exs. 9A and 9B; Notice, *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, No. 16-cv-01820 (S.D.N.Y. May 3, 2018), Dkt. 268-4 at ¶ 64; Plan of Allocation Order, Dkt. 272 (S.D.N.Y. June 7, 2018), attached as Supp. Exs. 10A and 10B.

[11] *See* Notice, *In re Impinj, Inc. Sec. Litig.*, No. 18-cv-05704 (W.D. Wash. Sept. 25, 2020), Dkt. 99-4 at 14, ¶ 7; Plan of Allocation Order, Dkt. 105 (W.D. Wash. Nov. 20, 2020), attached as Supp. Exs. 11A and Ex. 11B.

class action[12]—it apparently realized that it could not achieve a better result in an individual suit given the serious hurdles facing the HRG claims. With full knowledge of the 75% discount in the Plan, Jet Capital quickly opted back into the Class.

Jet Capital decided to opt into the Class despite the discount applied to the HRG claims for good reason: the HRG claims face heightened and unique risks. Lead Counsel was fully informed of these risks based on the motion-to-dismiss briefing and further debates conducted during mediation.[13] Courts have repeatedly held that, where a plan of allocation is formulated by competent and experienced counsel, it "need have only a reasonable, rational basis." *Citigroup Bond*, 2013 WL 4427195, at *10; *see also IMAX*, 283 F.R.D. at 192; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Here, Lead Counsel determined that, based on the unique risks of the HRG claims relative to the other claims, it would be both fair and reasonable to discount those claims. Lead Counsel's assessment of these claims' value is entitled to great weight.

As discussed below, the arguments Jet Capital offers to undermine Lead Counsel's judgment should be rejected.[14]

---

[12] *See Jet Cap. Master Fund, L.P., et al. v. Am. Realty Cap. Prop., Inc., et al.*, No. 15-cv-00307, Dkt. 15 (S.D.N.Y. Apr. 17, 2015), attached as Supp. Ex. 12.

[13] Jet Capital's claim that this issue was "barely briefed" (Objection at 15) simply disregards the fifteen pages of briefing on this issue at the motion-to-dismiss stage. *See* Dkt. 21 at 52-56; Dkt. 26 at 61-67; Dkt. 30 at 36-38.

[14] Jet Capital cites *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017), for the uncontroversial principle that the Court must assess the Plan's fairness, reasonableness, and adequacy. *See* Objection at 8. *Lucas* actually supports the proposed Plan here, because the court held that "[a] weighted allocation plan that accounts for those Class members who suffered greater injury would be more fair and reasonable than providing every Class member with the same payment without regard to the extent to which they were stymied by the (alleged) discriminatory policy." *Id.* at *15.

### B.      The Discount for the HRG Claims Is Fair

Jet Capital argues that the discount is unfair because (1) it benefits certain Class Members over others (Objection at 10-14); and (2) Lead Plaintiffs' motions for preliminary and final approval somehow misrepresented the discount (Objection at 14-15). Each argument is without merit.

First, Jet Capital's argument that Lead Counsel and its expert constructed the Plan solely to benefit Lead Plaintiffs and other Spectrum and Old Spectrum shareholders over HRG shareholders is without basis in fact or law. As the numerous cases cited above in which courts approved discounts for weaker claims or premiums for stronger claims demonstrate, there is no conflict of interest in having Lead Plaintiffs here, who have all the claims, represent the entire Class. Chicago Teachers has claims on HRG stock, as well as Old Spectrum and Spectrum stock, and fairly and adequately represented all Class members' claims, as did the Cambridge Retirement System. While Old Spectrum and Spectrum common stockholders do not have an additional discount applied to their claim (more than the discount already applied to all Class Members' claims negotiated through the Settlement with Defendants), their claims did not face the unique and heightened risk that applied to the claims of HRG shareholders. In Lead Counsel's judgment, it is far more fair and equitable to weight the Plan in line with the relative risks of the claims.

The Plan also complies with the PSLRA's provision that "[t]he share of any . . . settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the . . . settlement awarded to all other members of the class." 15 U.S.C. § 78u-4(a)(4). Here, Lead Plaintiffs will recover on the same per-share basis as all other Class members for their Old Spectrum, HRG, and Spectrum shares, and contrary to the Objector's assertion, this provision of the PSLRA permits plans of allocation that discount weaker claims, as in the numerous cases cited above.

14

The cases that Jet Capital cites do not support its position.[15] Jet Capital cites the statement in *Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981), that "the 'preferred positions' of the named plaintiffs should have signaled the district court of potential inequities in this proposed settlement." *Id.* at 1226. The *Franks* court, however, initially rejected a proposed settlement of employment-discrimination claims because the named plaintiffs were to receive payments and employment advantages, while the court thought that other class members were to receive only defendant's promise to comply with the law. *See id.* at 1226. There is no such favored treatment of Lead Plaintiffs here. And contrary to Jet Capital's assertion that *Franks* was "vac[a]ted . . . on other grounds" (Objection at 11), the court ultimately approved the same settlement—leaving in place the extra benefits for the named plaintiffs. *See* 670 F.2d 71, 72-73 (6th Cir. 1982).[16]

---

[15] Jet Capital cites several cases for the uncontroversial principle that Lead Plaintiffs are fiduciaries for the entire Settlement Class. *See* Objection at 11-12. But the facts in those cases that gave rise to conflicts of interest or credibility problems for plaintiffs are starkly different from the facts here. In *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015), the court amended a settlement to eliminate an incentive payment to a plaintiff and reduce counsel's fee because the plaintiff and counsel had an undisclosed financial and professional relationship that created a conflict of interest. *See id.* at 704. In *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383 (N.D. Ill. 2006), the court rejected a proposed class representative because her son-in-law, who had her power of attorney and a "significant influence" on her handling of the case, had been convicted of tax fraud. *See id.* at 390. In *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F. Supp. 643 (N.D. Ill. 1986), the court rejected a proposed class representative because he had induced a witness to testify against defendant with a promise of money. *See id.* at 661. There are no such conflicts of interest or credibility concerns here.

[16] Jet Capital also cites *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983), and *Plummer v. Chemical Bank*, 91 F.R.D. 434 (S.D.N.Y. 1981), for the proposition that unique benefits to the representative plaintiffs should raise concerns with the court. *See* Objection at 11. But in both of those cases, the representative plaintiffs were receiving extraordinary benefits that far exceeded those offered to any absent class member, and no explanation was provided for why the representative plaintiffs' claims were stronger. Here, neither Chicago Teachers nor Cambridge will receive outsized benefits from the Plan allocation, and the parties have fully briefed why the HRG claims are at higher risk of dismissal than the other claims. *See* Dkt. 21 at 52-56; Dkt. 26 at 61-69; Dkt. 30 at 36-41; Dkt. 45 at 19; Dkt. 50 at 7, 17-18; Dkt. 53 at 13-15, 25-27, 40 (notably, "the claims by shareholders of HRG were subject to uniquely strong arguments by Defendants as to their standing.").

Second, Jet Capital's claim that the Motion for Final Approval is misleading is simply false. *See* Objection at 14-15. Specifically, Jet Capital claims that Lead Plaintiffs' statement in the Motion for Final Approval that "[t]he Plan provides for the distribution of the Net Settlement Fund to Class Members on a pro rata basis based on the extent of their injuries attributable to the alleged fraud" (Dkt. 76 at 4) is misleading because of the discount applied to losses on HRG stock (Objection at 14). In making this argument, Jet Capital ignores the phrase "attributable to the alleged fraud." Given that the HRG claims were at much greater risk of dismissal than the other claims, the likelihood that HRG investors could demonstrate that their losses on HRG stock were attributable to the fraud was much lower, making the extent of injuries appropriately attributable to the fraud in the Plan much lower. Thus, Lead Plaintiffs' statement is correct. Furthermore, both Lead Plaintiffs' Memorandum of Law ("Final Approval Memorandum") and the Sinderson Declaration expressly disclose the discount applied to purchases of HRG shares, and the reasons for that discount, in the sections of those filings describing the Plan of Allocation. *See* Dkt. 50 at 27-28 ("[u]nder the proposed Plan, Recognized Loss Amounts arising out of purchases of HRG common stock during the Class Period will be discounted by 75% to account for the risks related to establishing Defendants' liability for claims arising out of purchases of this security."); Dkt. 53 at 37 ("[u]nder the proposed Plan, Recognized Loss Amounts arising out of purchases of HRG common stock during the Class Period will be discounted by 75% to account for the risks related to establishing Defendants' liability for claims arising out of purchases of this security. . . As discussed above, the claims by shareholders of HRG were subject to uniquely strong arguments by Defendants as to their standing."). Moreover, the Motion for Final Approval expressly references and incorporates the Notice (including the Plan of Allocation), which also expressly discloses the discount applied to HRG claims. There is simply no basis for saying that Lead

Counsel have somehow misled the Class, as evidenced by Jet Capital's clear understanding of the discount at issue.

**C.      The HRG Claims Faced Much Greater Risk Than the Other Claims**

Jet Capital also asserts that, contrary to Lead Counsel's conclusion, the HRG claims did not face any heightened risks and therefore should not be discounted at all. *See* Objection at 22-23. However, while Lead Plaintiffs and Lead Counsel believed that they had credible arguments for asserting these claims and should do so as fiduciaries for the entire Class, Defendants had powerful arguments that HRG investors had no standing to sue Spectrum for false statements by HRG about its own business. *See* Dkt. 21 at 44-48, 52-56; Dkt. 30 at 36-38. Thus, as discussed further below, Lead Counsel's determination that the HRG claims faced much greater risk of being dismissed on the pleadings or at a later stage of continued litigation and that those claims should be substantially discounted is reasonable.

In Defendants' motion to dismiss the Action, they argued forcefully that, under Supreme Court precedent in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), and Court of Appeals precedent in *Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004), courts have rejected the same argument Lead Plaintiffs made here: that shareholders of one company have standing to sue an entirely different company for false and misleading statements about the latter company that affected the stock price of the first company. *See* Dkt. 21 at 44-48.

In opposing Defendants' motion to dismiss, Lead Plaintiffs relied on *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), and *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), for the proposition that investors in one company may bring securities-fraud claims against a different company. *See* Dkt. 26 at 63-65, 67. Defendants had a strong response, however, that those cases hold only "that investors in a

17

securities issuer can sue anyone who makes false statements about that issuer." Dkt. 30 at 30. Thus, the application of those cases to HRG investors' claims against Spectrum for false statements about Spectrum is uncertain. Lead Plaintiffs also relied on *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000), Dkt. 26 at 55-56, which held that a corporation's statements about a merger could relate to securities in a merger target even though the merger never occurred, but Defendants had a strong response that no other court has cited *Semerenko* to sustain claims like the HRG claims. *See* Dkt. 30 at 30.

Defendants also had a strong argument that the HRG claims were barred by *Nortel*. Jet Capital notes (as Lead Plaintiffs did in opposing the motion to dismiss) the Second Circuit's clarification of *Nortel* in *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007), but the latter case held only that *Nortel* did not bar claims by purchasers of a company's securities against the stock exchange for false statements about its market's integrity or against "underwriters, brokers, bankers, and non-issuer sellers" for false statements about the company. *Id.* at 102. The *NYSE* court distinguished these viable claims from those that *Nortel* bars by purchasers of stock in one company against "a different company . . . [that] knowingly made falsely optimistic public statements about its own financial prospects." *Id.*

The other cases that Jet Capital offers in support of its argument that the HRG claims should not be subject to any discount (Objection at 22-23) do not alter Lead Counsel's conclusion. For example, Jet Capital cites *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432 (S.D.N.Y. 2019), but like *NYSE*, that case involved manipulation claims against an exchange, not claims by purchasers of one company's stock against another company based on the latter company's statements about itself. *See id.* at 439.

Jet Capital also cites *Hering v. Rite Aid Corp.*, 331 F. Supp. 3d 412 (M.D. Pa. 2013), where claims by Rite Aid investors against Walgreens were sustained, but those claims (like those in *Semerenko*) were based on Walgreens' statements about a proposed merger with Rite Aid—that is, statements about both companies, not just about Walgreens. *See id.* at 416-20. Moreover, *Rite Aid* does not discuss the standing question pressed by Defendants here in their motion to dismiss. Finally, Jet Capital cites *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005), but *Zelman* concerned purchases of equity-linked debt securities whose redemption value was directly based on the value of JDS Uniphase stock. *See id.* at 958, 965. Here, HRG had assets other than its holdings of Old Spectrum stock, and its stock's value was not contractually linked to Old Spectrum stock's value. *See Duane & Virginia Lanier Tr. v. Sandridge Mississippian Tr. I*, 361 F. Supp. 3d 1162, 1170 (W.D. Okla. 2019) (distinguishing *Zelman* as limited to contractually linked securities and dismissing claims by purchasers of one issuer's securities against different issuer).

Thus, Lead Counsel's assessment that these claims were subject to heightened risks and should be substantially discounted is reasonable, and Jet Capital's speculation that the claims would have been sustained is not a sound basis for altering the proposed Plan. Indeed, Jet Capital admits that "approval proceedings should not be transformed into an abbreviated trial on the merits." Objection at 22 (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.,* 834 F.2d 677, 684 (7th Cir. 1987)).

### D.    The Discount for HRG Claims Is Not Arbitrary

Jet Capital further argues that the 75% discount applied under the Plan of Allocation to HRG claims is "arbitrary, and rests on no disclosed analysis or quantification of risk," claiming that the "Notice discloses *no basis* for the 75% discount beyond undefined and unspecified 'litigation risk.'" Objection at 15 (emphasis in original). Contrary to Jet Capital's assertions, the

Notice provides a detailed explanation of the litigation risks associated with the prosecution of the HRG claims.

In the section entitled "What are Lead Plaintiffs' Reasons for the Settlement?," the Notice explains to Class Members the significant risk that all claims on behalf of purchasers of HRG stock could be dismissed by the Court in response to Defendants' arguments in their motion to dismiss. *See* Notice, Dkt. 53-4 at ¶ 24 (explaining the "very substantial risks Lead Plaintiffs would face in establishing liability and damages," including Defendants' argument that "HRG shareholders did not have standing to bring a claim against Spectrum because Spectrum's alleged false and misleading statements did not directly implicate HRG stock," and further noting that "[i]f the Court were to rule in favor of Defendants on the issue of HRG shareholders' standing, purchasers of HRG stock—which represent a large section of the proposed class—would be dismissed from the case or excluded from the potentially certified class, which would have substantially reduced the potential recovery in the Action").

Also, Lead Plaintiffs' Final Approval Papers, which are available for review by Class Members on the Settlement website and Lead Counsel's website, provide an even more detailed analysis of the risks related to the HRG claims, both in the Final Approval Memorandum and in the Sinderson Declaration. *See* Dkt 50 at 12-13; Dkt. 53 at 22-24. Jet Capital is clearly aware of the discussion of this unique risk, since it points to the thorough discussion of class-wide risks in furtherance of its other arguments. *See* Objection at 22-24.

Jet Capital further argues that the discount applied to HRG shares is arbitrary because "[n]either the preliminary approval nor final approval memoranda of law attempt to justify the specific 75% discount (as opposed to a 10%, 25%, 50% discount or otherwise)." Objection at 15. Yet Jet Capital itself does not provide any suggestion for what an appropriate discount would be—

20

other than 0%. *See* Objection at 19. Jet Capital's proposal of a 0% discount is neither reasonable nor fair to Old Spectrum and Spectrum shareholders, given the unique and serious arguments made by Defendants against the HRG claims. Conversely, Lead Counsel, being fully informed of the risks associated with the claims asserted in the Action based on the motion-to-dismiss briefing, has closely analyzed the likelihood that the HRG claims would be dismissed by the Court, either at the motion-to-dismiss stage or later. Lead Counsel determined in its experienced judgment that a significant discount to the HRG claims of the magnitude proposed in the Plan of Allocation is appropriate to achieve a fair and equitable allocation of the Settlement proceeds. Jet Capital does not cite a single case to support its argument that Lead Counsel are required to provide a scientific formula to justify the discount being applied, and no such formulas are provided in the cases upon which Jet Capital relies.

Jet Capital also cites the plans of allocation in *In re: Volkswagen "Clean Diesel" Marketing Sales Practices, & Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), and *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.), suggesting that because those plans applied a 50% discount to claims that were already dismissed by the district court, a 75% discount here for claims settled before a ruling on the motion to dismiss is inappropriate. *See* Objection at 15-16. However, in *Volkswagen*, while the district court dismissed some claims for an early portion of the class period, it sustained other claims for that time period, and the 50% discount was applied to account for "the more generalized risk to Plaintiffs' ability to prove scienter for [that] portion of the Class Period . . . on all of their remaining claims." *Volkswagen* Notice, at 12-13. Thus, the discount in that case was in fact applied to viable claims that had survived the motion to dismiss, not to dismissed claims as Jet Capital contends.

21

Moreover, the plans of allocation in *Volkswagen* and *Wells Fargo* did not provide an explanation for why that specific 50% discount, as opposed to some higher or lower discount, was utilized by counsel to account for the weakness of the claims at issue. As is the situation here, based on their familiarity with the particular facts of the case and their experienced judgment, counsel in those cases fashioned plans of allocation that applied a discount commensurate with counsel's evaluation of the likelihood of success on those claims. *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 2018 WL 6198311, at *4 (N.D. Cal. Nov. 28, 2018) (finding that the 50% discount applied to securities purchased in early portion of class period "reflects class counsel's belief that it will be 'much more difficult' to prove Defendants' liability for [that] period").

Finally, Jet Capital argues that Lead Plaintiffs have identified a number of other risks of further litigation of this Action, some of which apply to portions of the Class Period and others to the entire Class Period, but have not discounted those claims. *See* Objection at 16-20. However, these are the types of risks that affect all Class Members and were cited by Lead Plaintiffs to explain why settling the Action for $39 million at this stage of the litigation is an excellent result for the entire Class. The risk that the HRG claims would be dismissed for lack of standing was orders of magnitude greater and was unique to those claims.[17]

---

[17] The Objectors cite *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), but there the court affirmed lead counsel's plan of allocation and rejected an objection that it should give some claims a premium, because "it was reasonable for Class Counsel to conclude that all plaintiffs would have generally comparable odds of prevailing at trial and that any differences between their claims are not appreciable compared to their similarities." *Id.* at 134. Here, Lead Counsel's conclusion that the HRG claims were unlikely to survive to trial is similarly reasonable.

**E.      The Discount for HRG Claims Is Fair and Reasonable Given the Status of the Litigation**

Jet Capital also argues that the discount applied under the Plan of Allocation to HRG claims is unfair and unreasonable because of the status of the litigation at the time the Settlement was reached. *See* Objection at 20-21. In support of this argument, Jet Capital once again cites *Volkswagen* and repeats its argument that because the plan of allocation in that case applied a 50% discount to claims that were already dismissed, a 75% discount for the HRG claims is per se unreasonable. However, as noted above, Jet Capital mischaracterizes *Volkswagen*, where the 50% discount was applied to claims during a portion of the class period that had actually survived the motion to dismiss but, in lead counsel's judgment, those claims faced continued litigation risks based on weaker evidence of Defendants' scienter during that time period. *See supra* pp. 21.

Jet Capital also cites *In re Am. Apparel, Inc. S'holder Litigation*, 2014 WL 10212865, at *4 (C.D. Cal. July 28, 2014), in support of its argument here. Jet Capital argues that because the court-approved plan of allocation in that case applied only a 10% discount for dismissed claims, even a 50% discount applied for dismissed claims is not standard. However, while the court's holding in that case suggests that a 10% discount was applied to the dismissed claims under the plan of allocation, the discount there was actually <u>90%</u>. *See* Notice, *In re Am. Apparel, Inc. S'holder Litig*., No. 10-cv-6352 (N.D. Cal.) at ¶ 3 ("10% of the total estimated artificial inflation for the period July 1, 2009 through March 30, 2010 is used . . . to reflect the lesser likelihood of success on the dismissed claims.") and 13 n.3 ("The total estimated price inflation . . . for the period July 1, 2009 through March 25, 2010, inclusive, is *$2.35 (10% of which is $0.24)*. The total estimated price inflation for the period March 26, 2010 through March 30, 2010, inclusive, is *$1.69 (10% of which is $0.17)*.") (emphasis added), attached as Supp. Ex. 13, *American Apparel*

23

Notice.[18]Lead Plaintiffs Complied with the PSLRA's Lead-Plaintiff Notice Provisions and Did Not Discount the HRG Claims Based on Defendants' Argument to the Contrary

Jet Capital incorrectly contends that the Plan discounts the claims of HRG shareholders due to Defendants' argument that the Class received inadequate PSLRA notice. *See* Objection at 27. This is not the case. Defendants argued in their motion to dismiss the Action that Lead Plaintiffs lacked standing to pursue the HRG claims because no notice of this Action was given to HRG investors to enable them to move for appointment as lead plaintiff, as required by the PSLRA. *See* Dkt. 21 at 56-60. As discussed below and in Lead Plaintiffs' opposition to the motion to dismiss (*see* Dkt. 26 at 67-70), the PSLRA notices in this Action did give notice to HRG investors. The Plan of Allocation therefore does not discount the HRG claims based on this argument by Defendants, contrary to Jet Capital's assertions.

During the Class Period, Old Spectrum merged with HRG, forming the current Spectrum. Thus, as Lead Plaintiffs argued in opposition to Defendants' motion to dismiss the Action, the notices issued in this Action under the PSLRA referring to purchases of Spectrum stock included purchases of HRG stock during the part of the Class Period preceding the merger. *See* Dkt. 26 at 57-59. The Objector itself admits that "Spectrum stock, of course, was previously HRG stock that was simply renamed following the merger." Objection at 4. Thus, the PSLRA notices here adequately notified purchasers of HRG stock during the Class Period of their right to seek appointment as lead plaintiff. The fact that the only HRG investor to do so was Lead Plaintiff Chicago Teachers—like the fact that Jet Capital chose to revoke its opt-out notice and participate in the Settlement Class—amply confirms Class Counsel's judgment that the HRG claims are much

---

[18] The Notice for *In re Am. Apparel* was obtained from the settlement website for that action: http://www.americanapparelsharehoder settlement.com/media/73832/ameraprl_notice.pdf.

riskier because of Defendants' arguments concerning standing discussed above, and the HRG claims are therefore worth much less than claims based on purchases of Old Spectrum and post-merger Spectrum stock. Indeed, Jet Capital explicitly supports the Settlement, which includes certification of the Settlement Class and appointment of Lead Plaintiffs to represent the entire Settlement Class, including Class Members who have HRG claims. Thus, the Objector's arguments based on the lead-plaintiff notice are a red herring.

**F.        The Settlement Notice to Class Members Clearly Explained the Value of HRG Claimants' Claims**

Finally, there is no merit to Jet Capital's claims that the Notice does not comply with the requirements of the PSLRA. *See* Objection at 24-25. The PSLRA requires that a class-settlement notice disclose "[t]he amount of the settlement proposed to be distributed . . . on an average per share basis." 15 U.S.C. § 78u–4(a)(7)(A). In full compliance with the PSLRA, the estimated average recovery per share of HRG, Old Spectrum, and Spectrum common stock under the Settlement is clearly stated on page 3 of the Notice and, therefore, is "readily ascertainable" to all Class Members. *See* Notice, Dkt. 43-4, ¶ 3 ("the estimated average recovery (before the deduction of any Court-approved fees, expenses, and costs as described herein) is $0.33 per affected share of HRG common stock, $1.27 per affected share of Old Spectrum common stock, and $0.49 per affected share of Spectrum common stock."). Jet Capital attacks the sufficiency of the Notice on several grounds. As set forth below, if anything, Jet Capital's meritless attacks demonstrate the care with which the Plan was created and strengthen the conclusion that the Plan is both fair and reasonable.

First, Jet Capital claims that, because the estimated average recovery per share of HRG stock is expressed in terms of the number of post-Merger shares rather than pre-Merger shares, the Notice supposedly "manipulates the way it expresses the amount an HRG claimant can expect to

25

recover" under the Settlement in order "obfuscate[] the value of HRG shares." Objection at 24. Jet Capital's attempt to imply some nefarious motive by Lead Counsel is without merit. Whenever a settlement includes a merger-related stock conversion or stock split during the class period, it is always necessary to express share counts and prices in either pre-merger/split terms or post-merger/split terms. This is necessary for an "apples to apples" comparison between share values pre- and post-merger.[19] While it is possible to fashion a plan of allocation using either pre- or post-merger/split share values, in Lead Counsel's experience, plans are typically expressed in post-merger, or post-split, terms.[20] In most cases and certainly here, this is the more logical way to express share values, since a significant percentage of claimants will have purchased shares that were held through the Merger. Therefore, claimants' most recent information regarding their investments in these securities (such as their account statements) will be in post-merger terms. Moreover, some of the information in the Plan of Allocation, such as the per-share closing prices during the PSLRA's 90-day look-back period, was only ever expressed in post-Merger values.

---

[19] By way of example, based on the 1 to 0.16125 conversion of HRG stock to post-Merger Spectrum stock, a Class Member who bought 100 shares of HRG stock on the first day of the Class Period would have held 16.125 shares of Spectrum common stock at the end of the Class Period (assuming no shares were sold). To balance this Class Member's claim under the Settlement, the plan of allocation must either convert the 100 shares of HRG stock to 16.125 shares (with an appropriate adjustment to the per-share purchase price) so that the HRG share count aligns with the 16.125 shares of post-Merger Spectrum stock held at the end of the Class Period, or convert the 16.125 shares of Spectrum stock to 100 shares so that the Spectrum share count matches up with the 100 shares of pre-Merger HRG stock purchased on the first day of the Class Period.

[20] *See, e.g.*, Notice, *In re Tower Grp. Int'l, Ltd., Sec. Litig.*, No. 13-cv-5852 (S.D.N.Y. Oct. 14, 2015), Dkt. 163-5 at 8 n.2; Plan of Allocation Order (S.D.N.Y. Nov. 23, 2015), Dkt. 177, attached as Supp. Exs. 14A and 14B; Notice, *In Re Banco Bradesco, S.A. Sec. Litig.*, No. 16-cv-04155 (S.D.N.Y. Oct. 8, 2019), Dkt. 205-3 at 14 n. 3 & 16; Plan of Allocation Order (S.D.N.Y. Nov. 21, 2019), Dkt. 215, attached as Supp. Exs. 15A and 15B; Notice for *Isolde v. Trinity Indus., Inc.*, No. 3:15-cv-02093-K (N.D. Tex. Feb. 25, 2020), Dkt. 170-10 at VIII.C n. 1; Plan of Allocation Order (N.D. Tex. Mar. 31, 2020), Dkt. 178, attached as Supp. Exs. 16A and 16B; Supp. Ex. 4A.

Accordingly, it is far more convenient to Class Members for the Plan to utilize those prices rather than convert them to pre-Merger values.

Furthermore, by using a consistent definition of "shares" in the Plan of Allocation and reporting all recovery-per-share figures in post-Merger terms, the numbers reported in the Notice are comparable to each other. Indeed, it is Jet Capital that is manipulating the numbers by reverting to pre-Merger terms and comparing the "$0.05 per share of pre-merger HRG common stock" to the $1.27 per share of pre-merger Old Spectrum common stock. This comparison misleadingly incorporates the effect of the Merger conversion and does not provide Class Members with any useful information about the fairness of the proposed Settlement or the relative allocation of the Settlement proceeds among the Class's securities. To the contrary, by expressing the estimated recovery per share of HRG stock in post-Merger terms—$0.33 per affected share—the Plan of Allocation removes the impact of the Merger and provides the only proper and meaningful comparison of the recoveries per share.

Finally, whether the proposed Plan of Allocation in this case utilizes pre- or post-Merger share counts has zero impact on a claimant's estimated recovery under the Settlement. Because the estimated total damages for each security are constant, the estimated recovery for HRG claims under the proposed Plan of Allocation is the same regardless of whether the Plan uses pre- or post-Merger HRG share counts. To put recovery-per-share numbers in pre-Merger HRG terms, a claimant would simply have to adjust the post-Merger Spectrum recovery based on the 1 to 0.16125 conversion of HRG stock—a conversion rate that is prominently discussed and provided on Page 1 of the Notice.

Second, there is no merit to Jet Capital's claim that the Notice fails to properly disclose the 75% discount's impact on the expected recovery per share of HRG stock. *See* Objection at 24. Far

27

from "burying" the discount to HRG shares in the "Additional Provisions" section as Jet Capital complains, the discount is listed as the very first provision in the section. Moreover, it cannot be that a Notice is per se defective for providing material information in the "Additional Provisions" section, as Jet Capital claims, when the section includes such key Plan provisions as, *inter alia*, the imposition of FIFO matching (Notice ¶ 62), the key provisions guiding the choice of trade dates (*id.* ¶ 63), and the fact that the Court may alter the Plan at its discretion and without further notice to the Class (*id.* ¶ 74). Further, contrary to Jet Capital's suggestion (Objection at 24-25), the PSLRA does not require that the Notice also provide information regarding the estimated per-share recovery for HRG stock in the absence of this discount, or any alternate, hypothetical per-share recovery that may result from some other discount that could possibly be ordered by the Court. Indeed, <u>none</u> of the settlement notices cited by Jet Capital provide any information about what the expected per-share recovery would have been without the discount applied in those cases. *See* Supp. Ex. 5A, *Volkswagen* Notice; Notice, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-1376 (N.D. Cal. Sept. 22, 2011), Dkt. 453-3, attached as Supp. Ex. 17; Notice, *Shanawaz v. Intellipharmaceutics Int'l Inc., et al.*, No. 17-cv-05761 (S.D.N.Y Aug. 28, 2020), Dkt. 63-2, attached as Supp. Ex. 18; Supp. Ex. 13, *American Apparel* Notice.

<u>Finally</u>, there is no merit to Jet Capital's objection that a claimant taking a "quick look" at the Notice would be misled because the inflation tables at Table A-2—which are a single factor in a multi-step formula to calculate Recognized Claims under the Plan of Allocation (*see* Notice ¶¶ 57-67)—do not incorporate the discount for HRG shares. *See* Objection at 25. The calculations of Recognized Claims under the Plan are based on a comparison of inflation losses with accounting or "market" losses. *See* Notice ¶ 58. If the Plan were to apply the discount for HRG shares to the inflation ribbon first, then the formula for calculating Recognized Loss Amounts would need to

28

add an additional instruction for multiplying the accounting losses by the same 0.25 factor; otherwise the calculations would be comparing a discounted inflation loss with a full accounting loss for each purchase transaction. The Plan is set up so that all calculations are performed together in one step, and a single discount to the calculated Recognized Loss Amounts for HRG shares is applied at the end. This more streamlined process for performing the calculations under the Plan of Allocation is far easier for claimants to implement.

## IV. THE OBJECTOR'S REQUEST FOR LEAD COUNSEL'S WORK PRODUCT AND THE PARTIES' CONFIDENTIAL MEDIATION STATEMENTS AND FOR APPOINTMENT AS "LIAISON PLAINTIFF" SHOULD BE DENIED

Jet Capital asks the Court to order Lead Counsel to turn over Lead Counsel's and their expert's work product concerning the Plan of Allocation and the parties' confidential mediation statements to Jet Capital and Objector's counsel, but the Objector cites not one shred of authority for this extraordinary request. *See* Objection at 5, 25. Its failure to do so is not surprising, because an objector's request for "'discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'" *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (quoting *Mars Steel Corp.*, 834 F.2d at 684; alteration in original); *see also Wyly v. Milberg Weiss Bershad & Schulman LLP*, 850 N.Y.S.2d 14, 19 (N.Y. App. Div. 2007) (denying absent class member's request for class counsel's work product, absent showing of special need). There is no hint, let alone evidence, of collusion or any other special need for discovery of work product here. The Objector's request for privileged and confidential material should be rejected.[21]

---

[21] *See also Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, at \*2 (N.D. Cal. Feb. 7, 2008) ("the Court has sufficient facts before it to intelligently evaluate the settlement, and discovery [by objectors] would cause unnecessary delay"); *Vaughn v. Am. Honda Motor Co.*, 2007 WL 2220924, at \*2 (E.D. Tex. July 31, 2007) (objector did not make a showing that "additional discovery is required or that the Court lacks vital information to determine fairness in this case"); *In re Lupron*
*(Cont'd)*

Jet Capital also asks the Court to appoint it and its counsel as "liaison plaintiff" to renegotiate the Plan of Allocation on behalf of purchasers of HRG stock during the Class Period. Objection at 5. Here too, Jet Capital cites no authority for its request, and there is no good reason to grant it. As a nonnamed Class Member, Jet Capital has no right to renegotiate the Plan. The Court appointed Lead Plaintiffs to represent the Class in accordance with the PSLRA. Under the PSLRA and Rule 23, lead plaintiffs, not absent class members, conduct the litigation; absent class members have the right to object to any settlement but do not have the right to renegotiate a proposed settlement. "Generally speaking, absent class members are not 'parties' before the court in the sense of being able to direct the litigation." *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998).[22] This applies with special force to securities class actions, because under the PSLRA, "[t]he lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack." *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001). Here, the HRG claims were represented in the negotiation of the Settlement and the determination of the Plan by Chicago Teachers, which has standing to assert those HRG claims, as well as claims based on Old

---

*Mktg. & Sales Prac. Litig.*, 2005 WL 613492, at *2 (D. Mass. Mar. 16, 2005) (discovery by objectors must be "conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel") (quoting Manual for Complex Litigation, Fourth §21.643 (2004)) (emphasis added); *id.* (The "fundamental question is whether the district judge has sufficient facts before him [or her] to intelligently approve or disapprove the settlement."); *Epstein v. Wittig*, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (same).

[22] The Supreme Court's decision in *Devlin* v. *Scardelletti*, 536 U.S. 1 (2002), which held that class members who object to a settlement may appeal approval of the settlement without intervening, does not alter the Seventh Circuit's holding in *Williams* that absent class members lack the power to control other aspects of the litigation. *See Day v. Persels Assocs. LLC*, 729 F.3d 1309, 1319 (11th Cir. 2013); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

Spectrum and post-merger Spectrum stock. Moreover, the ultimate relief sought by Jet Capital is only the elimination or modification of the Plan's discount for HRG claims—Jet Capital expressly endorses the Settlement Amount and all other terms of the Settlement.[23] Jet Capital does not object to the certification of the Class for settlement purposes, including the certification of Chicago Teachers and Cambridge as adequate and typical class representatives under Rule 23.

Jet Capital is also fundamentally confused about how a Plan of Allocation is developed in a securities class action, as demonstrated by its request for the parties' confidential mediation statements and for appointment of Jet Capital and its counsel "to negotiate with Defendants, Lead Counsel and Lead Plaintiffs for a fair and reasonable treatment of HRG claims." Objection at 5. As the Stipulation and Lead Plaintiffs' opening papers make clear, and as is usual in securities class actions (as the Objector admits, *see* Objection at 8), the Plan of Allocation was developed by Lead Plaintiffs' expert in consultation with Lead Counsel—Defendants had nothing to do with it, and it was not addressed in the mediation. Thus, granting Jet Capital's request to insert itself into renewed negotiations between the parties would not even address the crux of its purported grievance, as there would be nothing to negotiate with Defendants, and would only create unnecessary complications, delay, and expense, to the detriment of the Settlement Class.

---

[23] If the Court deems reduction of the HRG discount appropriate, no renegotiation of the Settlement or the Plan of Allocation is needed to grant it—the Court has discretion under the Stipulation to alter the discount based on the Court's assessment of the strength of the HRG claims relative to the other claims. Defendants' motion to dismiss all claims was fully briefed, so the Court has all the information necessary to assess the claims' relative strength. Pursuant to the Stipulation and the Notice to the Class, the Court may alter the Plan without further notice, and the final Plan will be posted to the website created for the purpose of this Settlement and to provide information to potential claimants. *See* Stipulation ¶¶ 22, 35; Notice ¶¶ 74, 83.

## V.    CONCLUSION

Lead Plaintiffs and Lead Counsel respectfully request that the Court (i) approve the Settlement and the request for attorneys' fees and reimbursement of litigation expenses, which are not challenged by Jet Capital or any other Settlement Class Member. Lead Plaintiffs and Lead Counsel also respectfully request that the Court, (ii) deny Jet Capital's request for Lead Counsel's and their expert's work product and the parties' confidential mediation statements and for appointment of Jet Capital and its counsel as "liaison plaintiff," and (iii) approve the proposed Plan of Allocation. The Plan's 75% discount for the HRG claims is fair and reasonable in light of the greater risk that these claims would have been dismissed and the lack of appetite of holders of these claims—including Jet Capital—to litigate them.

Dated: January 15, 2021                          Respectfully submitted,

                                                 */s/ Katherine M. Sinderson*
                                                 **BERNSTEIN LITOWITZ BERGER**
                                                 **   & GROSSMANN LLP**
                                                 Katherine M. Sinderson, admitted *pro hac vice*
                                                 Jai Chandrasekhar, admitted *pro hac vice*
                                                 Matthew Traylor, admitted *pro hac vice*
                                                 1251 Avenue of the Americas
                                                 New York, NY 10020
                                                 Telephone:  (212) 554-1400
                                                 Facsimile:  (212) 554-1444
                                                 KatieM@blbglaw.com
                                                 Jai@blbglaw.com
                                                 Matthew.Traylor@blbglaw.com

                                                 -and-

                                                 Avi Josefson
                                                 875 North Michigan Avenue, Suite 3100
                                                 Chicago, Illinois 60611
                                                 Telephone: (312) 373-3880
                                                 Facsimile: (312) 794-7801
                                                 avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Cambridge Retirement System and the Settlement Class*

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Cambridge Retirement System and the Settlement Class*

33

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Reply Memorandum of Law in Further Support of (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses** was served on counsel for all parties electronically via the CM/ECF system on January 15, 2021.

Dated: January 15, 2021                    By: */s/ Katherine M. Sinderson*
                                                Katherine M. Sinderson