**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) ) ) ) ) | No. 19-cv-347-jdp |

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION TO INTERVENE
AND ASSOCIATED OBJECTION**

---

**ROLNICK KRAMER SADIGHI LLP**
Lawrence M. Rolnick (*admitted pro hac vice*)
Marc B. Kramer (*admitted pro hac vice*)
Richard A. Bodnar
Jarett Sena
1251 Avenue of the Americas
New York, New York 10020
Tel. 212-597-2800

*-and-*

Sheila A. Sadighi
300 Executive Drive, Suite 275
West Orange, New Jersey 07052
Tel. 212-597-2800

**BASSFORD REMELE**
David M. Dahlmeier
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Tel. 612-333-3000

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………………..1

ARGUMENT………………………………………………………………………………………...3

    I.       Jet is a Class Member with a Conceded Right to Object…………………………………3

    II.     The HRG Discount Will Benefit Lead Plaintiffs While Harming HRG Class Members……………………………………………………………………………………4

        a.   Lead Plaintiffs Have Crafted a Plan of Allocation that Benefits Them at the Expense of HRG Claimants………………………………………………………..4

        b.   Lead Plaintiffs' Claim that the Discount Is Justified Is Unsupported……………..6

    III.    The 75% Discount is Arbitrary, Unfair, and Unreasonable……………………………8

        a.   The 75% Discount is Arbitrary……………………………………………………9

        b.   The 75% Discount is Unfair…………………………………………………...11

    IV.    The 75% Discount is Not Supported by the Arguments Made on the Motion to Dismiss…………………………………………………………………………………11

    V.     The Notice Obfuscates the Discount and Explains the Lack of Additional Objection…………………………………………………………………………..12

    VI.    Jet's Intervention is Proper and Should be Granted…………………………………13

CONCLUSION & RELIEF REQUESTED……………………………………………………...17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................... 19

*Crawford v. Equifax Payment Servs., Inc.*,
   201 F.3d 877 (7th Cir. 2000) ................................................................................... 18

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011) .................................................................... 20

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) .................................................................................................... 18

*E.E.O.C. v. Regis Corp.*,
   No. 99 C 8270, 2001 WL 1911025 (N.D. Ill. Jan. 17, 2001) ................................... 21

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) ................................................................................. 10

*Franks v. Kroger Co.*,
   670 F.2d 71 (6th Cir. 1982) ..................................................................................... 10

*Griffith v. Univ. Hosp., L.L.C.*,
   249 F.3d 658 (7th Cir. 2001) ................................................................................... 20

*Holmes v. Continental Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ................................................................................. 9

*In re Discovery Zone Sec. Litig.*,
   181 F.R.D. 589 ........................................................................................................ 18

*In re Wells Fargo Mortgage-Backed Certificates Litigation*,
   No. 09-cv-1376 (N.D. Cal.) ..................................................................................... 15

*Newman v. Metro. Life Ins. Co.*,
   No. 16 C 3530, 2018 WL 3239722 (N.D. Ill. July 3, 2018) ..................................... 18

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ................................................................................................. 19

*Pearson v. NBTY, Inc.*,
   No. 11 C 7972, 2015 WL 5781517 (N.D. Ill. Oct. 1, 2015) ..................................... 19

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
942 F.3d 793 (7th Cir. 2019) ................................................................................ 20

*Plummer v. Chemical Bank*,
91 F.R.D. 434 (S.D.N.Y. 1981) ................................................................................ 9

*Robert F. Booth Tr. v. Crowley*,
687 F.3d 314 (7th Cir. 2012) ................................................................................ 18

*Smith v. SEECO, Inc.*,
865 F.3d 1021 (8th Cir. 2017) ................................................................................ 19

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
874 F.3d 692 (11th Cir. 2017) ................................................................................ 19

*Vollmer v. Publishers Clearing House*,
248 F.3d 698 (7th Cir. 2001) ................................................................................ 18

*Vollmer v. Selden*,
350 F.3d 656 (7th Cir. 2003) ................................................................................ 18

*Zimmerman v. Zwicker & Assocs.*, P.C.,
09-cv-3905, 2011 WL 65912 (D.N.J. Jan. 10, 2011).................................................. 19

**Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................................ 8

**Other Authorities**

3 William B. Rubenstein, Newberg on Class Actions § 9:34 (5th ed. 2013 & Supp. 2017)........ 19

Jet Capital Master Fund LP, Jet Capital SRM Master Fund LP, and Walleye Investments Fund (collectively, the "Jet Capital Funds," and hereinafter, "Jet") respectfully submit this reply memorandum of law in further support of their petition to intervene and associated objection, pursuant to the Court's January 8, 2021 briefing deadline.[1]

Jet should now be allowed to intervene to protect the rights of HRG claimants and ensure that the unfair discount imposed on the HRG class be struck in its entirety through the exercise of this Court's broad supervisory power to ensure fairness in class action settlements. Should the Court conclude that *some* discount may be appropriate, the Court should authorize intervention and empower Jet and its Counsel to represent the HRG class members in the Plan of Allocation, as well as make available associated, highly relevant, discovery.

## PRELIMINARY STATEMENT

The very arguments made by class counsel illustrate clearly the fundamental due process concerns that have been so compromised by this class action settlement. Despite being given the chance to do so, Lead Plaintiffs failed to refute that they will benefit from the discount of HRG claims; failed to provide any reasoned basis for the use of a 75% discount for HRG claims, as opposed to any other amount; failed to justify why no other claims bear *any* discount, at all; and failed to refute that it was their own non-compliance with the notice procedures of the PSLRA – as opposed to any specific threat to the HRG claims – that is the genesis of the discount here. Indeed, Lead Plaintiffs essentially admit the foundational arguments that support the objection: that HRG shareholders alone suffer a 75% discount on their claims, that HRG shareholders were

---

[1] This objection incorporates by reference (i) the previously filed Declaration of Richard A. Bodnar, Esq. and accompanying exhibits; and (ii) all other papers and proceedings herein. Undefined capitalized references herein refer to Jet's Objection to the Plan of Allocation, filed on January 8, 2021 (the "Objection"). Reference is also made to Lead Plaintiffs' Reply Memorandum of Law in Further Support of (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses [Dkt. No. 63] ("Reply Mem.") as well as to Lead Plaintiffs' Brief in Opposition to Proposed Intervenors Jet Capital Master Fund LP, Jet Capital SRM Master Fund LP, and Walleye Investments Fund's Petition to Intervene [Dkt. No. 66] ("Intervention Opp.").

never advised that a class action would be brought on their behalf and that Lead Plaintiffs never established in compliance with this Court's supervision, that they could adequately represent HRG shareholders whose claims (they now say) are fundamentally different from the claims they were approved to prosecute.

Rather than address the fundamental due process deficiency—that they were never approved by the Court to represent the HRG shareholders in a class action— Lead Plaintiffs *assume the legitimacy of their power* and assert that lead plaintiffs, properly appointed pursuant to the Court's supervisory powers have nearly absolute power to fashion settlements and compel absent class members to accept whatever they decide. While there is no question that the class representatives and their counsel enjoy wide latitude over the conduct of the litigation and the settlement process, it is *because* these very rights are so vast, and *because* they are acting on behalf of myriad investors, that the conduct of class litigation requires close supervision by the Court and compliance with lead counsel appointment procedures. They are given broad latitude only *after* the Court has approved their bona fides to act as the lead plaintiff for the proposed class and even then, their decisions—especially the terms of a settlement—are subject to a searching review not a rubber-stamp. It is precisely because they can wield enormous power on behalf of absent class members that their decisions are subject to careful judicial scrutiny. Here, Lead Plaintiffs admittedly never advised HRG shareholders that they intended to represent them in a class action and never advised this Court that they intended to represent HRG shareholders in this class action. They never allowed competing HRG shareholders to come forward to lead the class and never allowed this Court to decide if they were the most appropriate class representatives.

Critical to the Court's supervision of a class action is its ability to ensure that the class is properly represented by a plaintiff and counsel whose claims are typical of the class and whose ability to act on behalf of the class has been carefully scrutinized. Here that essential vetting never took place—neither the Court nor any HRG shareholder was ever informed that an action would be brought on behalf of HRG shareholders, and the Court never vetted lead counsel for its adequacy to carry out that role. This deficiency has now ripened into a settlement that discounts

2

the claims of HRG shareholders by 75% on the ground that their claims are *not typical* and are subject to unique legal and factual defenses that predominate over questions common to the claims of other class members. The Court was never even apprised that Lead Plaintiffs intended to represent HRG shareholders until the settlement was submitted for approval. Thus, HRG claimants are now faced with a Plan of Allocation that arbitrarily discriminates against them with a 75% discount. The result is a disturbing shift in value in favor of Lead Plaintiffs to the detriment of HRG claimants uniquely.

Had Lead Plaintiff notified HRG shareholders that it intended to represent them in the class, an adequate HRG shareholder would have stepped forward to protect the due process rights of absent class members. It is simply ridiculous to assert—as class counsel does here—that the Court should allow them to cram down a 75% discount on absent class members simply because only Jet has come forward to object. It is precisely because absent class members lack the financial wherewithal to engage independent counsel and to litigate on their own behalf that due process requires class representatives to treat them fairly and then subjects their settlements to close scrutiny by the supervising court for fairness. That absent class members rarely come forward to object is the very reason the Court is required to review the proposed settlement for fairness.

Jet's objection should be granted and the 75% discount struck in its entirety—something Lead Plaintiffs concede is well within the Court's supervisory power. Should the Court seek an alternative means of relief, the Court should deny the Plan of Allocation as written, grant Jet's petition to intervene, appoint Jet's Counsel as liaison counsel in favor of HRG claimants, and order certain relevant and limited discovery.

## ARGUMENT

### I.   Jet Is a Class Member with a Conceded Right to Object.

As Jet explained in its Objection, Jet is a class member by virtue of its purchase of over 4,200,000 shares of pre-merger HRG stock—which is over five hundred (500) times more HRG stock than Lead Plaintiffs purchased. That Jet is an extant Class member is conceded by Lead Plaintiffs. (Reply Mem. at 1.) And that Jet has a right to object is conceded by Lead Plaintiffs as

3

they make no argument to the contrary.  That Jet originally sought to avoid the impact of the 75% discount by excluding itself from the settlement to pursue an individual claim does not constitute evidence that the discount is fair.  Jet withdrew its request for exclusion, remained in the Class, and filed a lawful objection.  Jet's decision to remain in the Class is an effort to benefit *all HRG class members* by appealing to the supervisory powers of the Court.

## II.    The HRG Discount Will Benefit Lead Plaintiffs While Harming HRG Class Members.

Lead Plaintiffs, one of whom purchased no HRG shares and the other of whom purchased only an insignificant amount, have crafted a settlement that discounts the recovery of HRG shareholders by a staggering 75%.  It is mathematically certain, and undisputed, that the imposition of such a discount on HRG claimants results in a greater portion of the settlement "pie" for Lead Plaintiffs.

The arguments Lead Plaintiffs raise to justify this shift of value— (1) that Lead Plaintiff is taking from a Plan of Allocation the same as every other class member, and (2) that the discount is justified— are incorrect.

### a.    Lead Plaintiffs Have Crafted a Plan of Allocation that Benefits Them at the Expense of HRG Claimants.

Knowing that by virtue of the discount imposed on HRG shareholders they will receive a greater recovery for every dollar lost, Lead Plaintiffs incorrectly assert that they are nonetheless complying with the PSLRA's requirement "that "[t]he share of any . . . settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the . . . settlement awarded to all other members of the class." (Reply Mem. at 14 (citing 15 U.S.C. § 78u-4(a)(4)).).  The shares purchased by one of the Lead Plaintiffs are not treated equally with the shares purchased by HRG shareholders because they are not subject to a 75% discount.  With respect to the other Lead Plaintiff, although its purchases of HRG shares are subject to the same 75% discount, it overwhelmingly invested in securities that were not subject to any

4

discount, thus recovering vastly more "on a per share basis" than HRG shareholders.[2]  HRG shareholders suffered 50% of the damage and are being awarded only 12.5% of the settlement. Moreover, even if Lead Plaintiffs complied with this provision of the PSLRA—and they did not— the PSLRA assumes that the investor appointed to represent the class is an adequate and typical investor with the largest financial interest at stake.  That essential check never took place here with respect to the HRG shareholders.

This sort of chicanery can be prevented by close supervision and scrutiny by the Court at the class action settlement hearing.  It can also be prevented by *the lead plaintiff process itself*. However, in this case, this Court was presented with motions for lead plaintiff that *did not even mention* purchases of HRG stock.  As of the appointment of lead plaintiff in this case, neither candidate had demonstrated standing to represent a class of HRG shareholders, as there was *no* record evidence they ever purchased pre-merger HRG stock.

Even if they were properly appointed to represent the HRG class—and they were not— Lead Plaintiffs should not be allowed to engineer the payment of an incentive award to themselves. Having only a smattering of HRG shares, the current Plan reduces all HRG claimants' share of the settlement by a massive amount, with the value being transferred to Lead Plaintiffs (among others). Lead Plaintiffs thus awarded themselves an incentive payment, which raises serious fairness concerns.  *See Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148-49 (11th Cir. 1983); *Plummer v. Chemical Bank*, 91 F.R.D. 434, 442 (S.D.N.Y. 1981).[3]

---

[2] Lead Plaintiffs' argument that a Plan complies with the PSLRA so long as all claimants are treated the same on a "per-share" basis (Reply Mem. at 25) would open the door to the most extreme of plans of allocation.  For example, it would justify a scenario where, if lead plaintiffs purchased securities later than some subset of class members, they could apply a discount of 99% to all earlier purchases.  Or, as here, lead plaintiffs could apply a discount to some securities but not others, despite owning a *de minimis* amount of the discounted security and a comparatively large amount of the non-discounted security.

[3] In a footnote, Lead Plaintiffs seek to distinguish these cases by arguing that they involved "representative plaintiffs . . . . receiving extraordinary benefits that far exceeded those offered to any absent class member, and no explanation was provided for why the representative plaintiffs' claims were stronger." (Reply Mem. at 15 n. 16.)  But that is *exactly* what is occurring here.  Lead

The inadequacy of the lead plaintiff appointment process in this case is not the only reason for the Court to be skeptical that Lead Plaintiffs' motives in applying the discount are not self-serving.[4]  The fact *no other discounts* are applied to other claims or shares is another reason.  As detailed in Jet's Objection, Lead Counsel identified multiple legal and factual risks to certain claimant populations—in particular, for purchases after April 28, 2018, and for those relying on the November 2018 disclosure—and yet no discount is applied to those shares *at all* (not less 75%).  The lack of other discounts, which is addressed more fully below, is further evidence that the Plan unfairly benefits Lead Plaintiffs.

Finally, as discussed further below, the efforts of Lead Plaintiffs to bury the discount in the Notice are plain and further point to the Plan being an unfair shift of value.  The first appearance of the discount (stated as a multiple, not as a discount) is deep into the Notice under "Additional Provisions" — the 61st paragraph of the Notice.  This is part of several obfuscations in which the Notice and approval papers engage with respect to the discount.

### b.  Lead Plaintiffs' Claim that the Discount Is Justified Is Unsupported.

Lead Plaintiffs erroneously argue that the HRG discount is "justified" because it transfers value from class members to their fiduciaries. To be clear, Lead Plaintiffs do not contest that they

---

Plaintiffs claim that they will receive no "outsized" benefit from the Plan of Allocation—but their settlement entitlement will certainly be outsized when compared to Jet's on a market loss or damages basis—this is just mathematics.  (*See* Objection at 11-14.)  Then, shockingly, Lead Plaintiffs cite their *own statements* as the "explanation" for why the HRG claims are weaker. (Reply Mem. at 15 n. 16.)  Jet does not contest that Lead Counsel *now* says the claims are weaker; Jet contests that there is any established connection between this *ipse dixit* and a 75% discount.

[4] Jet cited *Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) for the proposition that a settlement that gives named plaintiffs a preferred position should alert the Court to potential inequities—and that remains true.  The Sixth Circuit would later vacate the *Franks* opinion on other grounds because the appeal was heard without proper notice to the lead plaintiffs in that case.  After a further round of briefing, *Franks* vacated the prior order and approved the settlement, after the appellate court was convinced that class members were receiving sufficient benefits.  *Franks v. Kroger Co.*, 670 F.2d 71, 72 (6th Cir. 1982) ("Previously we were unconvinced that the settlement provided any significant benefit to any class members other than the named plaintiffs and their attorneys.").  The vacatur does nothing to suggest this Court should not carefully review a settlement that shifts value from HRG claimants to Lead Plaintiffs.

are fiduciaries *for the entire class*.  (Reply Mem. at 15 n.15.)  But they seek to distinguish cases Jet cites for this proposition, which they call "uncontroversial" by claiming that they have no conflicts of interest.  This misses the point.  The discount *creates* the conflict of interest.  The conflict at hand is that now, having achieved a settlement, the existence and size of which certainly considers the existence of HRG, Lead Plaintiffs now seek to dimmish HRG claims entitlement and appropriate a larger portion of that settlement pot.  In the usual course, when a proper lead plaintiff process occurs, this is nearly impossible to actualize because there is no clear group of claims that Lead Plaintiff does not possess and that they can arbitrarily discount.  But the case at bar is the unique case where that exact setup has occurred as a result of the procedural failures.

Lead Plaintiffs turn the entire nature of class action representation on its head by arguing that the claims of HRG shareholders are not typical of those of Spectrum and Spectrum Legacy shareholders because they are subject to unique legal and factual defenses.  According to Lead Plaintiffs, these unique legal and factual defenses predominate to such an extent that the claims of Spectrum and Spectrum Legacy shareholders are four times more valuable.  But even the claim that HRG claims are dramatically different is at best, paper-thin.  HRG was simply a holding company of Spectrum Legacy shares, and it is beyond cavil that when Defendants made false statements about the value of Spectrum Legacy stock, it had a direct and foreseeable impact on the value of HRG stock.  Indeed, one need not rely on Jet for this observation, but on Lead Plaintiffs themselves, who are effectively running from their own advocacy to achieve this result.

To be clear:  the reason for the extraordinary HRG discount is the claim—first made in seeking approval of this settlement and contrary to the arguments they made on the motion to dismiss—that the claims of HRG shareholders are fundamentally different, for both factual and legal reasons, from the claims of Spectrum shareholders and Spectrum Legacy holders.  Assuming *arguendo* that this is true simply underscores why a plaintiff with little-to-no exposure in HRG shares should never have been appointed as the HRG class representative.  By Lead Plaintiffs' own arguments, the claims of HRG shareholders were not typical of their own and their unique factual and legal questions predominate over any that were common.  Indeed, according to the

7

arguments now advanced, legal and factual differences made the claims of Spectrum shareholders *four* times more valuable.

It takes little speculation to conclude that if Lead Plaintiffs had a meaningful amount of HRG claims, they would be disincentivized to run from their prior advocacy. But, because of the imbalance in their own claims (99% Spectrum) versus those of the class (50% Spectrum/50% HRG), they now make an abrupt about-face and abandon the arguments they made previously.

**III.    <u>The 75% Discount is Arbitrary, Unfair, and Unreasonable.</u>**

Lead Plaintiffs spill much ink to argue that discounts in Plans of Allocation may occur. That may be true, but they are exceptionally rare, are rarely brought to the Court's attention, and have been rarely adjudicated over objection. Moreover, we posit that there has never been a case in which the discount was imposed by Lead Plaintiffs who was never appointed to represent the class of claims proposed to be discounted and whose claims are entirely different on a legal and factual basis. In other words, the unique facts *of this case* make the proposed discount arbitrary, unfair, and unreasonable.

As Defendants discussed in their Reply to the Motion to Dismiss, no party to this action, or Jet, has identified any case in which a lead plaintiff has purported to represent a new class of shareholders by simply filing a complaint on their behalf and taking an "end-run" around the lead plaintiff appointment process and the notice procedures of the PSLRA. Lead Plaintiffs' reply to Jet does not change the *sui generis* nature of this case.

Here, contrary to *every case* on which Lead Plaintiffs rely, the following facts are true:

- The initial notice did not mention HRG, at all.[5] (Bodnar Decl. Ex. B.)

---

[5] Lead Plaintiffs continue to make the rather absurd argument that the original Notice encompassed HRG because HRG is "new" Spectrum. This argument fails to acknowledge that in seeking Lead Plaintiff status, no candidate, including existing lead Plaintiffs, submitted their pre-merger HRG trading information. They acted as if HRG was not included—because it was not at that time.

- Lead Plaintiffs, in seeking lead, did not disclose their HRG trading. [Dkt. No. 5-2.][6]

- Lead Plaintiffs, when appointed, did not publish a new notice advising HRG shareholders that they would be represented in a class action.

- Lead Plaintiffs filed a class action complaint including HRG shareholders for the first time, but did not publish a new notice with respect to HRG shareholders or the expanded definition of the class.

- The Amended Complaint was the first disclosure to the Court or absent class members in which Lead Plaintiffs asserted standing to bring HRG claims.

- The legal right of Lead Plaintiffs to act on behalf of HRG shareholders without compliance with the procedures of the PSLRA was not tested on a motion to dismiss (although it was properly raised by Defendants), and every claim in the case was in the same exact procedural posture at settlement.

- Lead Plaintiff never sought to adjudicate the claims of HRG class members (which they now characterize as subject to unique legal defenses) and instead sought to impose a massive discount on the claimants and claims they added, without prior notice, via the amended complaint.

The Lead Plaintiffs never had the authority to represent the HRG class because they never gave notice and were never properly vetted. Without more, this sounds the death knell to their attempt to saddle HRG class members with a 75% discount on their claims. Moreover, to the extent Lead Plaintiffs now claim HRG shareholders claims are not typical and are subject to unique defenses, it simply further underscores the impropriety of purporting to act (without court approval) as class representative for HRG shareholders. Because the 75% discount is arbitrary, unfair and unreasonable in this case, on these facts, this Court should grant the objection and strike the discount.

   a. **The 75% Discount is Arbitrary.**

---

[6] In fact, Lead Plaintiffs' application indicates they did not include HRG Group's stock's CUSIP 41146A106, in their submission. [Dkt No. 5-2.] They only included the CUSIPs of pre-merger and post-merger Spectrum, 84763R101 and 84790A105. This is no mere oversight; it indicates Lead Plaintiffs *themselves* did not believe they were bringing a case for HRG claimants at this point in time. For reference, a "CUSIP" is a unique identification number associated to a particular security.

Jet objected to the 75% discount, in part, because it rested on no disclosed analysis or quantification of risk.  (Objection at 15.)   In their Reply, Lead Plaintiffs still provide no quantification or support for why 75% (as opposed to any other number) is appropriate.  This is the very definition of "arbitrary."  Instead, they argue (1) that Lead Counsel's subjective view of "very substantial risk" means a 75% discount (*see, e.g.*, Reply Mem. at 20), and (2) that Jet did not propose any discount besides 0%, and that 0% would be unfair to Spectrum shareholders. (*Id.* at 20-21.)  Both arguments lack merit.

Lead Counsel's subjective, conclusory and self-interested *ipse dixit* is not a replacement for actual analysis and quantification.  There were just two unique arguments Defendants raised on the motion to dismiss the claims brought on behalf of HRG shareholders. The first was Lead Plaintiffs' failure to comply with the PSLRA notice procedures.  However, that failure was the fault of Lead Plaintiffs and Lead Counsel—not HRG claimants.[7]  The second argument was that HRG shareholders could not recover for statements made by Spectrum management about Spectrum stock even though HRG was simply a holding company for Spectrum stock.  Although no case has ever made such a ruling, there is no basis for why such an untested legal theory should command a 75% discount as opposed to 66%, 50%, 25%, or 1% discount.  Moreover, there is every reason to believe that a proper class representative—vetted and approved by the Court, and with financial incentives aligned with HRG shareholders—would have obtained a judicial decision on such a theory before tagging HRG shareholders with a 75% discount.

Likewise, the argument that Jet has the burden to justify a discount other than 0% (Reply Mem. at 20-21) is unfair burden-shifting and, in fact, justifies Jet's request for discovery.  Lead Counsel, as fiduciary of the Class, bears the onus of justifying the discount, not the other way around.  Class members do not have to "show cause" why their claims should not be discounted. In the absence of justification for any number—and consistent with the PSLRA requirement of

---

[7] In response, Lead Plaintiffs make the bizarre argument that because there were no notice failures, there is no discount for the notice failures. (Reply Mem. at 24).  But Defendants lodged arguments against Lead Plaintiffs on this exact basis.  [Dkt. No. 21 at 48-52.]

10

"per share" equality— a 0% discount is appropriate. By definition, equal treatment is not unfair to Lead Plaintiffs or to other Spectrum shareholders, who will receive (as a group) about half the settlement, and who have, as a group, about half of all damages (according to Lead Plaintiffs). That is the very definition of fairness. Finally, Lead Plaintiffs' attempt to shift the burden to Jet, as objector, to determine what number is "appropriate" supports Jet's request to be appointed liaison along with its counsel to negotiate on behalf of the HRG claimants.

### b. The 75% Discount is Unfair.

We are aware of no case in which a discount was imposed by a Lead Plaintiff who did not comply with the PSLRA notice provisions and had no legal right to represent the class members in question. Even where lead plaintiffs were properly appointed, and with the same Lead Counsel as here, a 50% discount was used for securities whose claims were already dismissed by the court. *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.), which had the same Lead Counsel as here, claims were brought on behalf of 28 separate securities (different mortgage-backed securities), and a significant subset of those 28 securities had their claims actually dismissed by the Court. For the rest, their claims continued. At settlement, Lead Counsel, imposed a *50%* discount on the dismissed claims. Here, though, where the claims were not dismissed at all, a 75% discount is somehow warranted.

### IV. The 75% Discount is Not Supported by the Arguments Made on the Motion to Dismiss.

Lead Plaintiffs made compelling arguments at the motion to dismiss stage about the HRG claims —they cannot now run from those arguments. There *is not one case* located that has held that Defendants who make intentionally false statements about the stock of a company cannot be liable to shareholders of a holding company that owned such stock. Without recapping this briefing for yet a sixth time, the following is indisputably true: (1) Defendants relied on one Supreme Court case from 1975 that does not directly address the issue and is not controlling; (2) Lead Plaintiffs relied upon two, more recent, Supreme Court cases, from 1994 and 2008 respectively, which indisputably allowed 10b-5 claims against non-issuers for actionable

11

statements; (3) Defendants cited no in-Circuit precedent controlling this issue; (4) Defendants' citation of out-of-Circuit precedent is distinguishable and subject to subsequent analysis by courts; (5) Defendants' entire argument relies on requiring that liability is limited to speakers who make a false statement about "that issuer" —which indisputably does not appear in the relevant law.

Lead Plaintiffs, and now Jet, have cited a number of cases allowing claims against a speaker for damages attributable to price declines in a stock of which the speaker is not the issuer. This argument was compelling, and Jet believes correct. And Lead Plaintiffs thought so too— assumably—right up until settlement was achieved.

This Court need not adjudicate this issue as a trial on the merits at the settlement stage—it can appoint Jet to work with Lead Plaintiffs to negotiate whether a discount is appropriate at all and, if so, to find a discount that properly reflects both claimant-groups' interests. What the Court should not do is allow Lead Plaintiffs to change their judgment in mid-stream and give massive effect to an argument they themselves handily refuted at the motion to dismiss stage.

### V.   The Notice Obfuscates the Discount and Explains the Lack of Additional Objection.

Lead Plaintiffs make much of the supposed "positive reaction" to the settlement by the settlement class in seeking approval. (Reply Mem. at 6.) If this were relevant, the supervising court would not be directed to conduct searching scrutiny to ensure class action settlements are fair to absent class members. Class action securities settlements rarely attract any significant objections, no matter their fairness or unfairness. This is for numerous reasons, including that individual class members—who often have small stakes in the litigation and lack sufficient resources to assert their own positions—generally go along with whatever settlement class representatives and their counsel achieve, as well as the fact that the lead plaintiff process generally results in a lead plaintiff whose interests are fully aligned with other class members—although not in this case. The selection of a lead plaintiff—and even the certification of a settlement class— uses the criteria of typicality and commonality, among others, to ensure the claims of the lead plaintiff are truly "representative." Otherwise, due process will be compromised.

12

Here, setting aside the more "usual" reasons that mass objections are not expected, there is a far more troubling aspect: the Notice itself obfuscates the discount. However spun by Lead Plaintiffs, this Court can simply review the Notice with the eye of a potential HRG claimant to see the obfuscation:

- An HRG shareholder, on Page 1 of the Notice, is informed of its recovery per-share: $0.33, according to the Class.

- But the $0.33-per-share estimate does not inform HRG shareholders that they are subject to a "0.25" multiplier, or 75% discount.

- Many pages later, after already having been "informed" of their per-share entitlement, an HRG claimant is informed that the numbers they would see on their brokerage statements or in their trading systems for number of HRG shares is ***not*** the number being used for the calculation of per-share entitlement.[8] Instead, it is that number, multiplied by 0.16125 (or about $1/6^{th}$).

- And if a claimant, trying to simply establish the relative value of claims, looks at the Tables (which are the usual and customary place to find one's "Recognized Loss") they would find two remarkably similar tables as between HRG and Spectrum, reflecting "inflation per share" a proxy for class entitlement of almost equivalent numbers, reflecting no discount.

The reality that Jet—a sophisticated investment advisor with a multi-million-dollar stake—figured this out simply does not address the concern. Yes, Jet, an institutional investor and its experienced securities litigation counsel figured out the discount and its impact. But other HRG claimants, whose claims are being diminished, may not have read so closely. They require protection as well

## VI.    Jet's Intervention Is Proper and Should be Granted

The Court should allow Jet to intervene to protect the interests of HRG claimants.

---

[8] This is not idle speculation. Jet's brokerage statements and trading data clearly demonstrate that, in fact, Jet would have and did see HRG shares expressed in pre-merger terms. (Bodnar Decl. Exs. F, G.) Lead Plaintiffs' belated submission of HRG trading information at the complaint stage was also expressed in pre-merger terms. [Dkt. No. 14, Appd'x A, B, C.] The Notice even acknowledges this reality on page 16: "Claimants should report share quantities and prices exactly as reflected in their documentation. That is, transactions in HRG common stock from January 26, 2017 through July 13, 2018 should be listed with the HRG share quantities and prices in effect at the time of those transactions, and the Claims Administrator will make the appropriate adjustments to all reported share prices and quantities so that they are equivalent to the share prices and quantities post-Merger." (Bodnar Decl. Ex. A.)

It is well-established in this Circuit that the law is liberally construed in favor of allowing intervention for absent class members in the class action settlement context. *See Robert F. Booth Tr. v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) ("district courts should grant intervention freely to persons who want to contest settlements in class actions under Fed. R. Civ. P. 23"); *Newman v. Metro. Life Ins. Co.*, No. 16 C 3530, 2018 WL 3239722, at *3 (N.D. Ill. July 3, 2018) ("In the class action context, absent (or unnamed) class members generally can intervene if the class representatives are no longer adequately representing their interests.") (quoting *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998)). Intervention by class members who wish to object to class-wide settlements, as here, has and should continue to be treated in this Circuit as a safeguard against unfair settlements. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 881 (7th Cir. 2000). "While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion . . . . Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the chances that a claim will be settled for its fair value." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).[9]

Contrary to the assertions of Lead Plaintiffs, Jet has satisfied the four prerequisites for mandatory intervention. Jet has (1) made a timely application, (2) has an interest relating to the subject matter of the action, (3) is at risk that that interest will be impaired by the action's disposition, and (4) demonstrates a lack of adequate representation of the interest by the existing parties. *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). Lead Plaintiffs do not dispute that Jet has met the first two elements, and instead challenge the third and fourth prongs.

---

[9] Ignoring the recent case law in this Circuit, Lead Plaintiffs argue that the Court's strong preference for intervention has changed post-*Devlin v. Scardelletti*, 536 U.S. 1 (2002). Not so. *Devlin* stands only for the proposition that intervention is not a **prerequisite to appeal** in a mandatory Rule 23(b)(1) class action, where class members do not have an opportunity to opt out. *Devlin* in no way limits intervention by nonparty class members, and thus has no application here.

14

There is no doubt that Jet and the interests of other HRG claimants may be affected or impaired here by the Plan of Allocation. The proposed settlement extinguishes their HRG claims on significantly worse terms than they would have been had HRG claimants been provided with a notice and opportunity to participate in the consolidation of the action and the appointment of lead counsel. Someone with a significant interest in HRG shares, such as Jet, must be allowed to step forward for HRG claimants, otherwise their due process rights are significantly impaired. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) (due process requires that before right of action of an absent member of a certified class is extinguishable, the member must receive notice plus an opportunity to be heard and participate in the litigation).

In reply, Lead Plaintiffs do not dispute that Jet has a direct, substantial, and legally protectable interest in the Class Action. Instead, they argue Jet's rights are not impaired under Rule 24(a)(2) because Jet can pursue other alternatives, such as opting-out of the settlement.[10] (Intervention Opp. at 3.). However, as the Eighth Circuit and a leading treatise has explained, this proposed reading of Rule 24 "is surely wrong: it would mean a class member could never intervene in a (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24 explicitly envision intervention as a means of securing adequacy of representation." *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024-25 (8th Cir. 2017) (citing 3 William B. Rubenstein, Newberg on Class Actions § 9:34 (5th ed. 2013 & Supp. 2017); *see also Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship,* 874 F.3d 692, 696-97 (11th Cir. 2017) (holding that "the risk that the movants will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third

---

[10] Asking all the other HRG claimants to opt out of the litigation is akin to asking them to give up their ability to pursue the claims at issue. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 572 (9th Cir. 2004) (holding argument that objectors could opt-out of settlement is an "essential impracticability" because "each objector's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief"); *see also Zimmerman v. Zwicker & Assocs.*, P.C., 09-cv-3905, 2011 WL 65912, at *8 (D.N.J. Jan. 10, 2011). ("The fact that disgruntled class members may opt out of the settlement class does not cure the deficiencies in the settlement.").

15

prong"). The cases cited by Lead Plaintiffs are also distinguishable from the facts here, where HRG claimants were not adequately represented and never had the opportunity to be heard.[11]

It is apparent here that Jet meets the "minimal standard" that Jet and other HRG claimants' interests "*may* be inadequately represented" by the proposed settlement. *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 802 (7th Cir. 2019). Lead Plaintiffs declare self-servingly that they are adequate representatives, but no court has ever made that determination, because Lead Plaintiffs never provided the requisite notice. Lead Plaintiffs completely ignore the Plan of Allocation, and yet still somehow claim that they share "the same goal" with Jet, citing *Planned Parenthood*, where the Legislature-Intervenor *accepted* that it and the Attorney General "currently have the same goal." 942 F.3d at 799. (Intervention Opp. At 4.) As discussed above, the Plan of Allocation, puts Lead Plaintiffs and the HRG claimants in substantial conflict.

Should this Court determine that Jet does not meet Rule 24(a)(2)'s standards for intervention as of right, this Court should nevertheless exercise its discretion to allow the Jet to intervene under Rule 24(b)(2). *See Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 661–62 (7th Cir. 2001) ("Rule 24(b) vests district courts with 'considerable discretion' when deciding whether to permit intervention by third parties seeking to protect their interests in a particular action.") (citation omitted).

Lead Plaintiffs argue (without any factual support) that intervention "would prejudice Lead Plaintiffs and the rest of the Settlement Class by causing unnecessary delay and expense." (Intervention Opp. at 6.) This is a strained argument. The deadline for claims is still more than a month away, and the claims administration process in a class action can take years. Allowing Jet

---

[11] For instance, *Pearson v. NBTY, Inc.*, No. 11 C 7972, 2015 WL 5781517, at *1-2 (N.D. Ill. Oct. 1, 2015) (1) involved a consumer fraud settlement, not a securities class action, (2) the final approval of the settlement ended up before the Seventh Circuit and was reversed and remanded to the district court for further proceedings, and (3) the Court found the intervenor did not meet the first element of timeliness, a prong which Lead Plaintiffs do not even contest here. *See also Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (finding that proposed class member intervenors had not overcome the presumption of adequacy of representation, but recognizing that it could be overcome).

the chance to intervene, review certain documents, and engage with Lead Plaintiffs will certainly not cause any actual delay in the disbursement of settlement funds to the class as it will occur in parallel with the administration process. And as to expense, it was the actions of Lead Plaintiffs and Lead Counsel that brought this issue about; Jet would not be objecting if no discount was applied. Finally, the potential prejudice to Jet and other HRG claimants in receiving a 75% discount for their claims requires the exercise of this Court's discretion to allow intervention. *See E.E.O.C. v. Regis Corp.*, No. 99 C 8270, 2001 WL 1911025, at \*2 (N.D. Ill. Jan. 17, 2001) (holding this court should "err on the side of granting intervention" if intervenors would be prejudiced if they were they not given access to relief in a federal court).

## CONCLUSION & RELIEF REQUESTED

For the reasons stated above, and in its petition to intervene and its objection, Jet requests this Court deny approval of the Plan of Allocation as written (but otherwise approve the Settlement), and enter an order:

**GRANTING** Jet's petition to intervene;

**DENYING** approval to the Plan of Allocation and **MODIFYING** the Plan of Allocation to **strike** "multiplied by 0.25" from Paragraph 61, and the corresponding footnote 10; or, *in the alternative*;

**DENYING** approval to the Plan of Allocation and **APPOINTING** the Jet Capital Funds as Liaison Plaintiff and Rolnick Kramer Sadighi LLP as Liaison Counsel to act in favor of the interests of the HRG class members to negotiate with Lead Counsel and Lead Plaintiffs on a fair and reasonable treatment of HRG claims; and in **ORDERING** Lead Plaintiffs to provide to Jet and its counsel the reports and work files of the Class's expert, the mediation statements exchanged (to be shared under a confidentiality stipulation), and (to be shared under an attorneys'-eyes only stipulation) Lead Counsel's work product on a 75% discount for HRG claimants claims and any damages analyses.

Dated: January 19, 2021                    Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**
*/s/ Richard A. Bodnar*
Richard A. Bodnar
Lawrence M. Rolnick *(admitted pro hac vice)*
Marc B. Kramer *(admitted pro hac vice)*
Jarett Sena

1251 Avenue of the Americas
New York, New York 10020
Tel. 212-597-2800

 *-and-*

 Sheila A. Sadighi
 300 Executive Drive, Suite 275
 West Orange, New Jersey 07052
 Tel. 212-597-2800


**BASSFORD REMELE**
David M. Dahlmeier
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Tel. 612-333-3000

18