# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
|  | ) |  |
|  | ) |  |

---

**MEMORANDUM OF LAW IN SUPPORT OF SPECTRUM CLASS LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT OF THE SPECTRUM ACTION**

---

STAFFORD ROSENBAUM LLP
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs The Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System and the Spectrum Class*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
Katherine M. Sinderson
Jai Chandrasekhar
Matthew Traylor
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com
Matthew.Traylor@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs The Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System and the Spectrum Class*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................1

II.     FACTUAL BACKGROUND...............................................................................3

        A.      Terms of the Proposed Settlement ...........................................................5

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............7

        A.      Standards Governing Approval Of Class Action Settlements ................................7

        B.      The Court "Will Likely Be Able To" Approve The Proposed Settlement
                Under Rule 23(e)(2) ...................................................................................9

                1.      "Procedural" Aspects Of The Settlement Satisfy Rule 23(e)(2)..................9

                2.      The Settlement's Terms Are Adequate and Equitable..............................11

IV.     THE PROPOSED SPECTRUM CLASS SATISFIES RULE 23 ....................................17

        A.      The Spectrum Class Satisfies the Requirements of Rule 23(a) ............................18

        B.      The Spectrum Class Satisfies Fed. R. Civ. P. 23(b)(3)..........................................21

V.      THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
        AND PLAN FOR PROVIDING NOTICE TO THE SPECTRUM CLASS ....................22

VI.     PROPOSED SCHEDULE OF EVENTS.......................................................................25

VII.    CONCLUSION....................................................................................................26

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                  **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................17, 18, 22

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ..........................................................................................8, 9

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ...............................................................................12

*Barragan v. Evanger's Dog & Cat Food Co.*,
   259 F.R.D. 330 (N.D. Ill. 2009)........................................................................................19

*Beesley v. Int'l Paper Co.*,
   2014 WL 375432 (S.D. Ill. Jan. 31, 2014)........................................................................16

*In re Career Educ. Corp. Sec. Litig.*,
   2008 WL 8666579 (N.D. Ill. June 26, 2008) ...............................................................10, 24

*City of Greenville v. Syngenta Crop Protection, Inc.*,
   904 F. Supp. 2d 902 (S.D. Ill. 2012)................................................................................16

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
   No. 11-cv-08332-AJS, slip op. (N.D. Ill. Aug. 5, 2014), Dkt. 207...........................................16

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   2015 WL 753946 (N.D. Ill. Feb. 20, 2015) ......................................................................16

*De La Fuente v. Stokely-Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) ...........................................................................................20

*Flood v. Dominguez*,
   270 F.R.D. 413 (N.D. Ind. 2010).......................................................................................18

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996)...........................................................................................20

*Goldsmith v. Tech. Solutions Co.*,
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)......................................................................7

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,
   L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) .............................................................................9, 11, 12

*Heekin v. Anthem, Inc.*,
   2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ...................................................................16

ii

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................................7

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
  2015 WL 13546111 (W.D. Wis. Jan. 5, 2015) ........................................................16

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ...............................................................................20

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
  244 F.R.D. 469 (N.D. Ill. 2007)............................................................................22

*Langendorf v. Skinnygirl Cocktails, LLC*,
  306 F.R.D. 574 (N.D. Ill. 2014)............................................................................20

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................ 9

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009)................................................................7, 12

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009) ...............................................................................20

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
  314 F.R.D. 580 (N.D. Ill. Jan. 26, 2016) .................................................................8

*In re NeoPharm, Inc. Sec. Litig.*,
  225 F.R.D. 563 (N.D. Ill. 2004)........................................................................19, 22

*Oplchenski v. Parfums Givenchy, Inc.*,
  254 F.R.D. 489 (N.D. Ill. 2008)............................................................................18

*Pederson v. Airport Terminal Servs.*,
  2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) ...........................................................10

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09 C 7666, slip op. (N.D. Ill. Jan. 22, 2014), Dkt. 693....................................16

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ...................................................................................21

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).........................................................12

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ..............................................................................19

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................................10

*Schulte v. Fifth Third Bank*,
805 F.Supp.2d 560 (N.D. Ill. 2011) ......................................................................................10

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...........................................................................12

*Sec'y of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ................................................................................................21

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................................16

*Smoot v. Wieser Bros. Gen. Contractors Inc.*,
No. 15-cv-424-jdp, 2016 WL 1736498 (W.D. Wis. April 28, 2016) ......................................11

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019) .........................................................................11

*Standard Iron Works v. ArcelorMittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) .........................................................................16

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ................................................................................................19

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
309 F.3d 978 (7th Cir. 2002) ................................................................................................18

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................................................................11

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .........................................................................................9, 10, 11

## RULES, STATUTES & OTHER AUTHORITIES

15 U.S.C. § 78u-4(a)(7) .......................................................................................................22, 23

15 U.S.C. § 78u-4(e) ...............................................................................................................15

3B Moore's Federal Practice (2d ed. 1978) ................................................................................9

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed. 2017) ......................................18

The Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System (collectively, the "Spectrum Class Lead Plaintiffs" or "Lead Plaintiffs") [1], on behalf of themselves and the other members of the Spectrum Class (defined below), respectfully submit this unopposed motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order"), which is filed herewith.

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs and Defendants[2] (collectively, the "Parties") have negotiated at arms-length a proposed cash settlement of the claims asserted by the Spectrum Class for a total of $32,000,000 (the "Settlement"). If approved, the Settlement will resolve the claims of the Spectrum Class in their entirety and will dismiss the Spectrum Action.[3] By this Motion, Lead Plaintiffs seek entry of an Order: (i) granting preliminary approval of the Settlement of the Spectrum Action; (ii) approving the form and manner of providing notice of the Settlement to the Class; and (iii) scheduling a hearing date for final approval of the Settlement (the "Settlement Hearing") and related events (the "Preliminary Approval Order").

---

[1]  All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated August 27, 2021 (the "Stipulation"), which is attached as Exhibit 1 to the present motion (the "Preliminary Approval Motion"). The proposed Preliminary Approval Order is attached as Exhibit 2 to the Preliminary Approval Motion. Unless otherwise specified, internal citations, quotes and emphasis are omitted.

[2]  Defendants are Spectrum Brands Holdings, Inc. ("Spectrum" or the "Company"), Spectrum Brands Legacy, Inc. ("Old Spectrum"), HRG Group, Inc. ("HRG"), and Andreas R. Rouvé, David M. Maura, and Douglas L. Martin (collectively, the "Individual Defendants").

[3]  By order dated August 27, 2021, the Court severed the claims of HRG shareholders from claims of Spectrum and Old Spectrum shareholders. The action continuing with respect to the claims of Spectrum and Old Spectrum shareholders is referred to in this Memorandum as the "Spectrum Action."

As the Court will recall, in August 2020, Lead Plaintiffs reached a proposed settlement of this securities class action (the "Action") with Defendants for $39 million (the "Prior Settlement"). The Prior Settlement was on behalf of a settlement class consisting of persons and entities who purchased Spectrum common stock, Old Spectrum Common stock, as well as the common stock of HRG, a holding company that possessed principally Spectrum stock. After notice of that proposed settlement was mailed to over 83,000 potential class members, the Prior Settlement received just two minor requests for exclusion (from non-class members) and a single objection to the plan of allocation for HRG investors by Jet Capital Master Fund LP ("Jet Capital"). Dkt. 54. While the Court denied the motion for approval of the Prior Settlement without prejudice on the grounds that HRG stock purchasers required separate representation, investors' reaction to the Prior Settlement strongly indicates that the Settlement should be preliminarily approved for further notice to the Spectrum Class.

The negotiation and documentation of the Settlement also fully protects the rights of the HRG stock purchasers. Pursuant to the Court's February 6, 2021 Order, Lead Plaintiffs chose to publish new notice under the Private Securities Litigation Reform Act ("PSLRA") on April 2, 2021 to solicit an additional lead plaintiff to represent the class of HRG purchasers (the "HRG Class") and to protect those claims from dismissal under the statute of limitations. Dkt. 79-5. On June 10, 2021, the Court appointed Jet Capital as the class representative for the HRG Class. Dkt. 85. Thereafter, Lead Plaintiffs, Jet Capital, and Defendants attempted to negotiate a global resolution of the claims of both classes, including through formal mediation before Jed D. Melnick in July 2021, but were unable to reach an agreement. After those negotiations came to an impasse, the Spectrum Class Lead Plaintiffs and Defendants discussed a separate settlement that would resolve only the claims by the Spectrum Class and would allow Jet Capital to be able to continue

to litigate claims on behalf of the HRG Class.

As discussed below, the proposed Settlement warrants the Court's preliminary approval because it represents an excellent result for the Spectrum Class in light of the risks associated with the continued litigation of the Spectrum Class claims.  Entry of the proposed Preliminary Approval Order will begin the final approval process relating to the proposed Settlement by authorizing the dissemination of notice of the Settlement to investors who are believed to be members of the Spectrum Class.  The Preliminary Approval Order will also schedule a final approval hearing (the "Settlement Fairness Hearing") for the Parties and Spectrum Class Members to present arguments for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## II.    FACTUAL BACKGROUND[4]

On August 10, 2020, Parties entered into the Prior Settlement, which resolved all claims of Spectrum and HRG investors during the period from January 26, 2017 to November 19, 2018, inclusive (the "Class Period") for $39 million in cash.  Notice of the Prior Settlement was mailed to over 83,000 potential settlement class members.  In response to that notice, only two requests for exclusion, submitted by individual investors who were not even members of the settlement class, were received and just one objection was submitted.  Dkt. 63, at 2, 5.  The sole objection to the Prior Settlement, submitted by Jet Capital, was addressed only to the Plan of Allocation and asserted that the 75% discount that it proposed be applied to claims of purchasers of HRG common stock was arbitrary and unfair to HRG claimants, and that the Spectrum Class Lead Plaintiffs were

---

[4] The history of the Action before the Prior Settlement is discussed at length in the preliminary approval brief submitted in connection with the Prior Settlement (Dkt. 45, at 2-5) and the Declaration of Katherine M. Sinderson submitted in connection with the motion for final approval of the Prior Settlement (Dkt. 53, at ¶¶ 20-59), but is omitted here in the interests of brevity.

not properly appointed to represent HRG investors pursuant to the PSLRA.  Dkt. 54.  No investors objected to the Settlement itself or the adequacy of the $39 million recovery.  Dkt. 63, at 1.

On February 6, 2021, the Court entered an Order denying without prejudice Lead Plaintiffs' motion for final approval of the Prior Settlement.  Dkt. 74.  Pursuant to that order, on February 19, 2021, Lead Plaintiffs submitted a proposed plan to the Court to divide the putative settlement class into separate classes of investors in Old Spectrum and Spectrum and HRG investors, and to provide a new PSLRA notice seeking candidates to serve as the lead plaintiff to represent the HRG Class. Dkt. 75.  Lead Plaintiffs proposed this course of action to the Court in order to protect the claims of HRG investors from any arguments by Defendants that those claims had expired due to the statute of limitations period applicable to claims under the Securities Exchange Act of 1934.  *Id*.

On April 2, 2021, the Court approved the proposed notice (Dkt. 76), and on the same day, Lead Plaintiffs issued the PSLRA notice to purchasers of HRG common stock during the asserted Class Period via *PR Newswire*.  Dkt. 79-5.  On May 26, 2021, Jet Capital moved for appointment as lead plaintiff for the HRG Class.  Dkt. 77.  No other persons or entities sought to lead the HRG Class.  On June 10, 2021, the Court granted the motion of Jet Capital to serve as lead plaintiff for the HRG Class.  Dkt. 85.

Lead Plaintiffs, Defendants, and Jet Capital then engaged in a global mediation before Jed D. Melnick, Esq. in an effort to reach a settlement on behalf of both the Spectrum Class and the HRG Class, which included a formal mediation session on July 22, 2021.  The parties were unsuccessful in negotiating a mutually acceptable allocation of the $39 million in settlement consideration that had previously been agreed for both classes or in otherwise reaching a global settlement of claims for both classes.

After those negotiations came to an impasse, the Spectrum Class Lead Plaintiffs and

4

Defendants began discussions to see if they could separately resolve the claims of the Spectrum Class. The Spectrum Class Lead Plaintiffs and Defendants reached an agreement in principle to settle the Action with respect to the Spectrum Class, which was memorialized in a term sheet executed on August 3, 2021 (the "Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims of the Spectrum Class against Defendants in the Action in return for a cash payment of $32,000,000 for the benefit of the Spectrum Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Parties advised the Court of the proposed Settlement in an August 4, 2021 Status Report. Dkt. 88.

On August 27, 2021, the Court entered an order severing the claims of purchasers of HRG common stock and the claims of purchasers of Spectrum and Old Spectrum common stock into separate actions (the "HRG Action" and "Spectrum Action," respectively). Dkt. 95. This Settlement will resolve all claims in the Spectrum Action.

### A.    Terms of the Proposed Settlement

On August 27, 2021, the Parties executed the Stipulation setting forth the full terms of the Settlement. The Settlement provides that Spectrum will pay or cause to be paid $32 million in cash (the "Settlement Amount") into an interest-bearing escrow account for the benefit of the Spectrum Class. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among eligible Spectrum Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).

Spectrum Class Members who previously submitted Claim Forms in connection with the

5

Prior Settlement will not be required to submit another Claim Form.  Their claims in the new Settlement will be calculated based on the information in their prior submission.  Spectrum Class Members will also be provided a new opportunity to submit Claim Forms, if they had not previously done so, as well as the opportunity to object to the Settlement or request exclusion from the Spectrum Class.

Under the Settlement, the Parties have agreed to the certification of the Spectrum Class for settlement purposes only.[5]  The proposed Spectrum Class consists of all persons and entities that: (i) purchased common stock of Old Spectrum from January 26, 2017 to July 13, 2018; and/or (ii) purchased common stock of Spectrum from July 13, 2018 to November 19, 2018, and were damaged thereby.[6]  *See* Stipulation ¶ 1(tt).  As discussed below, the proposed Spectrum Class satisfies the requirements of Rules 23(a) and 23(b)(3), and it is likely that the Court will ultimately decide, at or after the Settlement Fairness Hearing, that the Spectrum Class should be certified for purposes of the proposed Settlement.

If the Settlement receives the Court's final approval, Spectrum Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount.  *See* Stipulation ¶ 1(pp).

---

[5] The Stipulation was negotiated and executed prior to the entry of the Court's severance order on August 27, 2021 and, accordingly, refers to the group of investors on whose behalf the Settlement was reached as the "Spectrum Subclass."  In light of the Court's August 27, 2021 Order (Dkt. 95), the language in the proposed Preliminary Approval Order (attached to the Motion as Exhibit 2) has, with Defendants' consent, been updated to refer to the "Spectrum Class."

[6] Excluded from the Spectrum Class are: (i) Defendants (including Spectrum); (ii) the Immediate Family members of the Individual Defendants; (iii) the Officers and directors of Old Spectrum, Spectrum, and HRG currently and during the Class Period and their Immediate Family members; (iv) any entity in which any of the foregoing excluded persons or entities has or had a controlling interest; and (v) the legal representatives, heirs, successors or assigns of any such excluded person or entity.  *See* Stipulation ¶ 1(tt).  Also excluded from the Spectrum Class are any persons and entities who or which excluded themselves the settlement class in connection with the Prior Settlement, or any persons or entities who exclude themselves from the Spectrum Class in connection with this Settlement by submitting a request for exclusion that is accepted by the Court. *Id.*

6

The release's scope is reasonable as it is limited to claims related to the purchase, acquisition, holding, or sale of Spectrum common stock or Old Spectrum common stock during the Class Period **and** to the Complaint's factual allegations.  Further, the proposed Settlement does not release (i) any claims arising out of purchases of HRG common stock during the Class Period; (ii) any claims asserted in a related state court action brought under Section 11 of the Securities Act, *Plymouth Cnty. Ret. Ass'n v. Spectrum Brands Holdings, Inc. et al.*, 2019CV000982 (Wis. Cir. Ct., Dane Cty.); or (iii) any ERISA or derivative claims.  *See* Stipulation ¶ 1(r).

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement warrants preliminary approval because of the significant benefit achieved for the Spectrum Class, the substantial costs and risks that would otherwise be associated with continued prosecution of the Spectrum Action, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel, following negotiations with an experienced mediator.

### A.   Standards Governing Approval Of Class Action Settlements

There is a well-established, overriding public interest in favor of settling litigation, particularly in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009) (same).  In *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995), the court stated:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id*. at *6 (citations and quotation marks omitted).

Rule 23(e) requires judicial approval of a compromise of claims brought on a classwide basis.  *See* Fed. R. Civ. P. 23(e).  Judicial approval of a class action settlement is a two-step

process—*first*, the Court performs a preliminary review of the terms to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice and a hearing, the Court determines whether to grant final approval, *see* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). This standard was established by amendments to Rule 23(e) effective as of December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval that was substantively similar to the current standard. A common formulation was that the court should grant preliminary approval to a proposed settlement if it is "within range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (the question at the preliminary approval stage is "whether the proposed settlement is 'within the range of possible approval'"); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. Jan. 26, 2016) ("the district court must determine whether the proposed settlement is 'within the range of possible approval'").

In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[7]  Because each of these factors is satisfied here, preliminary approval is appropriate.

> **B.    The Court "Will Likely Be Able To" Approve The Proposed Settlement Under Rule 23(e)(2)**

> **1.    "Procedural" Aspects Of The Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

The proposed Settlement embodies the hallmarks of a procedurally fair resolution under Rule 23(e)(2).  First, as detailed above, the Settlement is the product arm's-length negotiations between experienced counsel, which creates a presumption of its fairness.  *See Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's-length] negotiation."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate).

Second, the involvement of an experienced mediator—here, Jed D. Melnick, Esq. of JAMS—further supports that the Settlement is fair and that the Parties achieved it free of collusion. The Settlement here was achieved following both a mediation with Mr. Melnick in 2020 at which the initial Prior Settlement was reached, based on Mr. Melnick's mediator's recommendation, as

---

[7]  At final approval, the Court may also consider the Seventh Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2):  (1) the strength of the case, balanced against the settlement amount; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the opinion of competent counsel; and (7) the stage of the proceedings. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

well as a global mediation with Mr. Melnick in July 2021. *See In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at \*3 (N.D. Ill. June 26, 2008) (settlement "resulted from arms-length negotiations and voluntary mediation between experienced counsel"); *Wong*, 773 F.3d at 864 (7th Cir. 2014) (settlement "was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated"); *Pederson v. Airport Terminal Servs.,* 2018 WL 2138457, at \*7 (C.D. Cal. Apr. 5, 2018) ("'[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive'" and "weighs in favor of preliminary approval.") (quoting *Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007)).

Moreover, while Lead Plaintiffs were unable to conduct formal discovery in the Action due to the mandatory PSLRA discovery stay pending Defendants' motion to dismiss, the substantial due diligence discovery undertaken by Lead Counsel before entering into the Prior Settlement, including its review of confidential Spectrum documents, provided Lead Plaintiffs and Lead Counsel with sufficient information to confirm that the $32 million Settlement was fair, reasonable, and adequate for the Spectrum Class. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 587-589 (N.D. Ill. 2011) (approving settlement where settlement agreement entitled class counsel to conduct confirmatory discovery that confirmed the fairness of the settlement).

Finally, we note that other factors further demonstrate the procedural fairness of the proposed Settlement. The proposed Settlement settles only claims arising from transactions in Spectrum and Old Spectrum common stock and will not release any claims arising from purchases of HRG common stock, so the issue raised by Jet Capital and the Court concerning Lead Plaintiffs' adequacy to settle the claims of the HRG Class has been eliminated. The claims of Lead Plaintiffs are typical of and coextensive with those of other Spectrum Class Members, and they lack any

interests that are antagonistic to the interest of other members of the Spectrum Class.

Moreover, Lead Plaintiffs are sophisticated institutional investors of the type favored by Congress when it passed the PSLRA, closely supervised all aspects of this litigation, and recommend that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness[.]'"). In addition, the judgment of Lead Counsel, which is experienced in securities class-action litigation, that the Settlement is in the best interests of the Spectrum Class weighs in favor of approval of the Settlement. *Great Neck Cap.,* 212 F.R.D. at 410 ("[o]pinion of competent counsel" weighs in favor of approval of a settlement); *Smoot v. Wieser Bros. Gen. Contractors Inc.,* No. 15-cv-424-jdp, 2016 WL 1736498, *5 (W.D. Wis. April 28, 2016) ("the court accepts counsel's opinion in favor of approval").

### 2.    The Settlement's Terms Are Adequate and Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, the Settlement represents a very favorable result for the Spectrum Class. Further, the proposed plan for allocating the Settlement treats Spectrum Class Members equitably.

### (a)    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing the approval of a class action settlement is "the strength of plaintiff's case on the merits balanced against the amount offered in settlement." *Snyder v. Ocwen Loan Servicing, LLC,* 2019 WL 2103379, at *6 (N.D. Ill. May 14, 2019) (citing *Wong,* 773 F.3d at 864); *see also McKinnie,* 678 F. Supp. 2d at 814 (E.D. Wis. 2009). Under this factor, courts

11

consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 959, 961, 963-64 (N.D. Ill. 2011); *see also In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.,* 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (finding that approval does not require that a settlement be "the 'best possible deal' for plaintiffs" or that "the class has received the same benefit from the settlement as they would have recovered from a trial"); *Great Neck Captial,* 212 F.R.D. at 409-10 ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement. If the case were fully litigated there is also a possibility plaintiffs could receive less.").

The proposed Settlement, which provides for a cash payment of $32 million, is an excellent result for Spectrum Class Members considering the significant risks of continued litigation of those claims. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain.").

At the time that the Parties agreed in principle to settle, the Court had not yet decided Defendants' motion to dismiss. Although Lead Plaintiffs believe that they had compelling arguments in response to Defendants' motion, there was a serious risk that the Court would have ruled in Defendants' favor, which would have dramatically reduced, or eliminated altogether, Spectrum Class Members' potential recovery.

First, Lead Plaintiffs faced significant risks that it would not be able to establish that Defendants' statements about the progress of Spectrum's consolidations were actionable under the federal securities laws. For example, Defendants would have continued to argue that their statements about the progress of its consolidation efforts, including the "transitory" nature of the consolidation issues affecting the Company, were not false. Defendants made credible arguments

12

that the consolidations were progressing adequately during much of the Class Period.  Similarly, Defendants made credible arguments that the issues facing the consolidations were in fact transitory, because the issues were significantly resolved by the end of the Class Period.  These arguments, if found persuasive by the Court or later by the jury, would have made certain of Defendants' statements regarding the consolidations true and inactionable.

Third, Lead Plaintiffs would have faced challenges in proving that Defendants made the alleged false statements with scienter: that they acted with intent or recklessness.  For example, Defendants would have continued to argue that the Company was making adequate progress in consolidating its distribution networks, and that Defendants were only made aware of any deeper issues later in the Class Period—directly before Defendants informed the market of these issues.  Under those circumstances, Defendants have argued, Lead Plaintiffs could not establish the requisite scienter to support a securities fraud claim.

Even if Lead Plaintiffs established liability, it would have faced significant hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages.  For example, Defendants would have argued that a significant portion of the declines in Spectrum's stock price on the corrective disclosure dates reflect investors' reaction to poor Company-wide financial performance, predicated on a number of factors wholly unrelated to the financial impact caused by issues related to the consolidations.  If Defendants prevailed on their loss-causation and damages arguments, recoverable damages would be eliminated or significantly reduced.

Further, even if Lead Plaintiffs successfully defeated Defendants' motion to dismiss, which was far from certain, Defendants would likely make the same arguments at summary judgment and trial.  The Settlement avoids these risks and will provide a prompt and certain benefit to the

Spectrum Class rather than the mere possibility of a recovery after additional years of litigation.

The Settlement is also reasonable when considered in relation to the range of potential recoveries for the Spectrum Class that might be recovered if Lead Plaintiff prevailed at trial, which was far from certain for the reasons noted above. Lead Plaintiff's expert estimates, after giving effect to certain (but not all) of Defendants' arguments, that the maximum potential damages that could be realistically established at trial with respect to the claims of the Spectrum Class were approximately $215 million. Accordingly, the $32,000,000 Settlement represents approximately 15% of the realistic maximum recoverable damages for the Spectrum Class. This is an outstanding result for the class given the risks of the litigation.

### (b)   The Proposed Settlement Does Not Unjustly Favor Any Member of the Spectrum Class

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Spectrum Class. Rather, all Spectrum Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court. The proposed plan of allocation is identical to the plan of allocation proposed in connection with the Prior Settlement with respect to the claims of Spectrum investors.

At the final Settlement Fairness Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," set forth in full in the Notice). Lead Plaintiffs' damages expert, in consultation with Lead Counsel, developed the Plan, which is comparable to plans of allocation that courts have approved in numerous other securities class actions. The Plan is based on Lead Plaintiffs' allegations that Defendants' alleged materially false and misleading statements and omissions artificially inflated the prices of Spectrum and Old Spectrum common stock during the Class Period, and that a series of public disclosures that partially corrected the alleged misrepresentations and omissions removed the inflation.

14

The Plan calculates a "Recognized Loss Amount" for each purchase or acquisition of Spectrum and Old Spectrum common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. The calculation of Recognized Loss Amounts under the proposed Plan will depend on when the claimant purchased and/or sold the shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them. Under the Plan, the sum of a claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. There are no discounts for increased litigation risk applied to the claims of any Spectrum investors in this Settlement.

The Claims Administrator will calculate claimants' Recognized Loss Amounts using the transaction information that claimants provide to the Claims Administrator in their Claim Forms. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost effective. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Spectrum Class Members and merits approval at the Settlement Fairness Hearing.

15

**(c)    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel**

The proposed Settlement does not grant excessive compensation to Lead Counsel. The Settlement does not contemplate *any* specific award to Lead Counsel and Lead Counsel will be compensated out of the Settlement Fund pursuant to the approval of the Court.

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek no more than 15% of the Settlement Fund, an amount that is well within the percentages that courts in the Seventh Circuit approve in securities class actions with comparable recoveries. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), Dkt. 693 (awarding 33 1/3% of $64 million settlement fund); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 753946, at *16 (N.D. Ill. Feb. 20, 2015) (awarding one-third of $46 million common fund); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, No. 11-cv-08332-AJS, slip op. at 1 (N.D. Ill. Aug. 5, 2014), Dkt. 207 (awarding 30% of $60 million settlement fund); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery).[8] Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $400,000.

Lead Counsel's fee and expense application will be fully briefed and justified upon filing

---

[8] *See also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (finding attorney fee award of 27.5% of $200 million settlement not excessive); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1, *3 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million total common fund, finding the amount "a fair and reasonable attorneys' fee"); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908-909 (S.D. Ill. 2012) (awarding one-third of $105 million common fund); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding 33.3% of $90 million common fund); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 2015 WL 13546111, at *6 (W.D. Wis. Jan. 5, 2015) (awarding 27.5% of $82 million common fund).

16

of a formal motion pursuant to the schedule set by the Preliminary Approval Order, and Spectrum Class Members will have an opportunity to weigh in on the fee request before the Settlement Fairness Hearing, where the Court will decide what that fee should be. By granting preliminary approval, the Court ***does not in any way pass upon the reasonableness of any subsequent fee or expense application***, which will be decided *de novo* at the Settlement Fairness Hearing.

**(d)      Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement**

In connection with the Settlement, the Parties also entered into the confidential Supplemental Agreement, dated August 27, 2021 (the "Supplemental Agreement"). *See* Stipulation ¶ 36. The Supplemental Agreement sets forth the conditions under which Spectrum has the option to terminate the Settlement if requests for exclusion from the Spectrum Class exceed certain agreed-upon criteria stated in the Supplemental Agreement (the "Opt-Out Threshold"). As is standard practice in securities class actions, the Supplemental Agreement is not made public in order to avoid incentivizing a group of opt-outs for the sole purpose of leveraging the Opt-Out Thresholds to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## IV.      THE PROPOSED SPECTRUM CLASS SATISFIES RULE 23

At the Settlement Fairness Hearing, Lead Plaintiffs will ask the Court to grant final approval of the Settlement. Pursuant to the recent amendments to Rule 23(e), at the preliminary approval stage the Court may consider whether certification of the Spectrum Class is appropriate.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Indeed, "actions under the federal securities laws are particularly well suited for representative litigation under Rule 23." WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 22:82 (5th ed. 2017).

17

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem*, 521 U.S. at 593. As demonstrated below, certification of the proposed Spectrum Class for purposes of the Settlement is appropriate here. Moreover, the Spectrum Class is simply a subset of the Settlement Class that the Court previously conditionally certified for purposes of the effectuating the Prior Settlement (Dkt. 48, ¶ 2), with a parallel definition, with the only change being that it no longer includes persons and entities who purchased HRG common stock during the Class Period.[9]

### A.     The Spectrum Class Satisfies the Requirements of Rule 23(a)

Certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical []; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.     The Spectrum Class Is So Numerous that Joinder Is Impracticable

The "numerosity" requirement is usually met if there are more than forty class members. *See, e.g.*, *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010) ("[g]enerally speaking, when the putative class consists of more than 40 members, numerosity is met"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) (same).

Here, as of December 30, 2018, Spectrum had over 53 million shares of common stock outstanding, owned by hundreds, if not thousands, of investors worldwide. Accordingly, the

---

[9] Persons who purchased both Spectrum or Old Spectrum common stock *and* HRG common stock during the Class Period will be members of both classes and will be able to participate in both this proposed Settlement *and* in any recovery subsequently obtained for the HRG Class.

18

proposed Spectrum Class consists of hundreds, if not thousands, of investors worldwide. *See In re NeoPharm, Inc. Sec. Litig.,* 225 F.R.D. 563, 565 (N.D. Ill. 2004) ("NeoPharm stock trades on NASDAQ and more than 16 million shares are outstanding.  It can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class.").  Moreover, over 9,400 potentially eligible Claim Forms were submitted by members of the Spectrum Class in connection with the Prior Settlement (which will be analyzed for eligibility under this Settlement). Therefore, numerosity is easily met here.

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017.

The common questions of fact and law here include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and misrepresented material facts; (iii) whether Defendants made materially false statements; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the prices of Spectrum and Old Spectrum common stock were artificially inflated; (vi) whether Defendants' misconduct caused the members of the Spectrum Class to sustain damages; and (vii) the extent of damage sustained by Spectrum Class Members.

These common questions are fundamental to the resolution of the claims asserted against Defendants and, therefore, readily satisfy the commonality requirement. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common

19

question."); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 580 (N.D. Ill. 2014) ("To satisfy . . . commonality . . ., a single common question will do.").

### 3.   Lead Plaintiffs' Claims Are Typical of Those of the Spectrum Class

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). "Typical" does not mean "identical." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). "'[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Lead Plaintiffs' claims are typical of the claims of the Spectrum Class because all claims are based on Defendants' alleged wrongful conduct and all members of the Spectrum Class were similarly affected by such alleged conduct. Similar to other Spectrum Class Members, Lead Plaintiffs Chicago Teachers and Cambridge Retirement both purchased shares of Old Spectrum and Spectrum common stock during the Class Period. Both Lead Plaintiffs claim to have suffered damages when Defendants' misstatements and omissions were revealed.

### 4.   Lead Plaintiffs Will Adequately Represent the Spectrum Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." The adequacy determination is two-pronged: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682,

697 (7th Cir. 1986) (en banc)).  Here, Lead Plaintiffs are sophisticated institutional investors that have and will continue to represent the interests of the Spectrum Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Spectrum Class Members.  As noted above, any concern as to the Lead Plaintiffs' typicality or adequacy with respect to the claims arising from purchases of HRG common stock have been alleviated by the separation of the Spectrum Class and the HRG Class and the fact that the proposed Settlement does not release any claims arising from purchases of HRG common stock.

In addition, Lead Plaintiffs have retained counsel highly experienced in securities litigation who have successfully prosecuted many securities and other complex class actions throughout the United States.[10]  Lead Plaintiffs are thus adequate representatives of the Spectrum Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.

B.      **The Spectrum Class Satisfies Fed. R. Civ. P. 23(b)(3)**

To certify a class under Rule 23(b)(3): (1) common questions of law or fact must "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), and; (2) the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

As the Supreme Court has found, predominance is a test "readily met" in cases alleging

---

[10]   Exhibit 3 to the Motion is a copy of an order in an unrelated action where Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") has been serving as Lead Counsel for a different plaintiff and Class Counsel for the certified Class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021).  As reflected in the order, counsel for a competing lead plaintiff movant (which was not appointed) raised questions about BLB&G's hiring of a former employee of the lead plaintiff in that case.  Following discovery and extensive briefing, the court found that the evidence did not establish any *quid pro quo*, and allowed BLB&G to continue as Class Counsel. *See id*. at *1-2.  The court in *Symantec* nevertheless ordered BLB&G to bring the order to the attention of any court in which BLB&G seeks appointment as class counsel, *see id.* at *2, so we are submitting the order to the Court's attention.  Subsequent to entry of that order, the parties in *Symantec* reached an agreement to resolve that case for $70 million.

21

violations of the securities laws. *Amchem*, 521 U.S. at 625. Indeed, as the above analysis of Lead Plaintiffs' allegations under Rule 23(a)(2)'s commonality standard demonstrates, there are numerous questions of law and fact common to Lead Plaintiffs and the proposed Spectrum Class, including whether Defendants' statements and omissions about Spectrum's business during the Class Period were false and misleading, whether Defendants acted with scienter, and whether, and to what extent, Spectrum Class Members suffered damages. *See NeoPharm,* 225 F.R.D. at 568 ("main question involved in this case is whether defendants' alleged false and misleading statements and material omissions violated §§ 10(b) and (20)(a) of the Act").

A class action is also "superior to other available methods for fairly and efficiently adjudicating" the claims. Fed. R. Civ. P. 23(b)(3). Indeed, the geographically dispersed nature of the Spectrum Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. *See, e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009). The Spectrum Class thus satisfies all the requirements of Rules 23(a) and 23(b).

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SPECTRUM CLASS

The Court should approve the form and content of the proposed Notice and Summary Notice. *See* Stipulation, Exs. A-1 and A-3. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Spectrum Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Spectrum Class Members of (among many other disclosures) the nature of the Action; the definition of the Spectrum Class; the claims and issues involved; that the Court will exclude from the Spectrum Class any Spectrum Class Member who requests exclusion (and sets forth the

procedures and deadlines for doing so); and the binding effect of a class judgment on Spectrum Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the name, address, and telephone number of Lead Counsel, who will be available to answer questions from Spectrum Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*.

The proposed notice program, which is set forth in the proposed Preliminary Approval Order submitted herewith, readily meets the standards under the Federal Rules of Civil Procedure and due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B).

Lead Plaintiffs propose that JND Legal Administration ("JND"), which was approved by the Court to provide notice and receive Claim Forms in connection with the Prior Settlement, continue to serve as administrator of the notice and claims process. JND has already received 9,433 claims in connection with the Prior Settlement that have potentially valid claims in this Settlement. (These claims are still subject to review and audit by JND).

If the Court preliminarily approves the Settlement, JND will disseminate the Notice and Claim Form (the "Notice Packet") to all potential Spectrum Class Members that can be reasonably

23

identified. JND will mail copies of the Notice Packet to all persons and entities that were previously identified as potential settlement class members by Spectrum or by brokers or nominees in connection with the Prior Settlement and all persons who previously submitted Claim Forms in connection with the Prior Settlement. Brokerage firms and other nominees who purchased or acquired Spectrum common stock or Old Spectrum common stock during the Class Period on behalf of other beneficial owners will be instructed to either forward the Notice Packet or provide the names, mailing addresses, and, if available, email addresses of the beneficial owners to JND, which will then mail or email the Notice Packet to such beneficial owner. However, brokers and nominees who previously provided names and addresses in connection with the Prior Settlement will not be required to provide those names and addresses again, unless they have names and addresses were not previously provided, or have any name or address changes. JND will also cause the Summary Notice to be published once in *Investor's Business Daily* and transmitted over the *PR Newswire*, and will publish the Notice and other materials on a website to be developed for the Settlement.[11]

Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably be identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See, e.g., Career Educ.*, 2008 WL 8666579, at *5 (authorizing notice by first-class mail and publication in *Investors' Business Daily* and over *PR Newswire*).

---

[11] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"). *See* Stipulation ¶ 20.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement or requesting exclusion from the Spectrum Class.[12]    The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing of the Notice and Claim Form to potential Spectrum Class Members ("Notice Date") | 15 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after Notice Date |
| Deadline for filing final approval papers | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Fairness Hearing |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Fairness Hearing |
| Settlement Fairness Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 120 calendar days after Notice Date |

If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Fairness Hearing for a **date 100 calendar days** after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  Lead Plaintiffs request that the hearing be scheduled, if possible, for **December 13, 2020, or as soon thereafter as possible**, which is consistent with the proposed schedule if the Court enters the Preliminary Approval Order this week (by Friday, September 3, 2021).

---

[12]  The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Spectrum Class Members.

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Spectrum Class Members; (iii) approve JND as the Claims Administrator; and (iv) set a date and time for the Settlement Fairness Hearing to consider final approval of the Settlement and related matters.

Dated:  August 30, 2021                         Respectfully submitted,


                                                /s/ Katherine M. Sinderson
                                                **BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP**
                                                Katherine M. Sinderson, admitted *pro hac vice*
                                                Jai Chandrasekhar, admitted *pro hac vice*
                                                Matthew Traylor, admitted *pro hac vice*
                                                1251 Avenue of the Americas
                                                New York, NY 10020
                                                Telephone:  (212) 554-1400
                                                Facsimile:  (212) 554-1444
                                                KatieM@blbglaw.com
                                                Jai@blbglaw.com
                                                Matthew.Traylor@blbglaw.com

                                                -and-

                                                Avi Josefson
                                                875 North Michigan Avenue, Suite 3100
                                                Chicago, Illinois 60611
                                                Telephone: (312) 373-3880
                                                Facsimile: (312) 794-7801
                                                avi@blbglaw.com

                                                *Lead Counsel for Lead Plaintiffs the Public School
                                                Teachers' Pension & Retirement Fund of Chicago
                                                and the Cambridge Retirement System and the
                                                Spectrum Class*

                                                **STAFFORD ROSENBAUM LLP**
                                                Douglas M. Poland
                                                State Bar No. 1055189
                                                222 West Washington Avenue, Suite 900
                                                P.O. Box 1784

26

Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the Public
School Teachers' Pension & Retirement Fund of
Chicago and the Cambridge Retirement System and
the Spectrum Class*

27