**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
| | ) | |
| | ) | |

**SUPPLEMENTAL DECLARATION OF KATHERINE M. SINDERSON**
**IN FURTHER SUPPORT OF LEAD COUNSEL'S MOTION FOR**
**AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

Katherine M. Sinderson declares as follows:

## I.    INTRODUCTION

1.    I am a Member of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel"), the Court-appointed Lead Counsel in the Action and counsel for Court-appointed Lead Plaintiffs, the Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System. [1]  I have personal knowledge of the matters stated in this declaration based on my active supervision of and participation in the prosecution and settlement of the Action.

2.    I respectfully submit this declaration in response to the Court's March 3, 2022 Order (dkt. 112) requesting submission of additional material in support of Lead Counsel's motion for attorneys' fees and Litigation Expenses, including detailed time records and more detailed expense information.  This declaration is submitted as a supplement to my February 7, 2022 Declaration in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (dkt. 104) ("Initial Sinderson Decl."), my Declaration in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on Behalf of Bernstein Litowitz Berger & Grossmann LLP (dkt. 109) ("BLB&G Fee Decl."), the Declaration of Douglas M. Poland in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on Behalf of Stafford Rosenbaum LLP (dkt. 110) ("Poland Fee Decl."), and the

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated August 27, 2021 (the "Stipulation" or "Settlement Stipulation"), and previously filed with the Court. *See* dkt. 96-1.  Unless otherwise indicated, all internal quotations and citations are omitted.

Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (dkt. 103) ("Fee Brief").

## II.    MOTION FOR AN AWARD OF ATTORNEYS' FEES

3.    Lead Counsel seeks an award of attorneys' fees on behalf of Plaintiffs' Counsel in the amount of 15% of the Settlement Fund, net of Court-awarded Litigation Expenses and estimated Notice and Administration Costs.  "Plaintiffs' Counsel" consists of Lead Counsel BLB&G and Liaison Counsel Stafford Rosenbaum LLP ("Stafford Rosenbaum").  Stafford Rosenbaum acted as successor counsel to original liaison counsel Rathje Woodward LLC when acting liaison counsel, Douglas M. Poland, changed firms to Stafford Rosenbaum.  No firms or attorneys other than BLB&G and Stafford Rosenbaum will receive any portion of the attorneys' fees awarded in this Action.

4.    As set forth in my Declaration in support of (I) Lead Plaintiffs' Motion For Final Approval Of Settlement And Plan Of Allocation And (II) Lead Counsel's Motion For An Award Of Attorneys' Fees And Litigation Expenses (dkt. 104), the time and labor expended by Plaintiffs' Counsel in pursuing this Action and achieving the Settlement strongly demonstrates the reasonableness of the requested fee.  Plaintiffs' Counsel devoted substantial time to the prosecution of this Action, including among other things and as set forth below: (1) conducting an extensive analysis and investigation into the claims at issue, including interviewing dozens of former Spectrum Brands employees worldwide and employees of Spectrum's customers and vendors, (2) the filing of a detailed amended complaint incorporating the knowledge gained from that investigation; (3) vigorously opposing Defendants' motion to dismiss; (4) reviewing and analyzing internal Spectrum documents concerning the claims at issue; (5) working extensively with an expert in loss causation and damages; and (6) engaging in substantial arms-length settlement negotiations over 2020-2021, in which Plaintiffs' Counsel first negotiated the scope of a settlement

2

of claims by Spectrum and HRG shareholders against Spectrum and HRG, and then negotiated a re-allocation of the settlement between Spectrum and HRG shareholders.

5.      The legal basis for the attorneys' fee request is the "common fund" doctrine, which provides that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund"); *see generally* Fee Brief at 6.

### Plaintiffs' Counsel's Detailed Time Records

6.      Attached hereto as Exhibit 1 is a chart with BLB&G's detailed time records from the inception of the Action through January 31, 2022.  Each entry in Exhibit 1 includes the name of the timekeeper, his or her title, a description of the work performed, the overall project the work related to (or category of work), the number of hours, the timekeeper's hourly rate, and the lodestar for that time entry.  Attached hereto as Exhibit 2 are the detailed time records of Rathje Woodward LLC and Stafford Rosenbaum from the inception of the Action through January 31, 2022.

7.      Exhibit 1 is based on the contemporaneous time records regularly prepared and maintained by BLB&G attorneys and professional staff.  I am one of the partners who oversaw and conducted the day-to-day activities in the litigation, and I and a team working under my supervision reviewed these time records in connection with the original fee application and again in preparing this Declaration.  The purpose of this review was to confirm both the accuracy of the time entries and the necessity for, and reasonableness of, the time committed to the litigation.  To the extent that any specific time entries were unclear as to the specific projects to which they

3

related or appeared to cover multiple projects, my team and I allocated the time entries between specific projects based on our detailed knowledge of and direct involvement in the litigation, review of surrounding time entries, review of the record in this case, and/or through discussions with the relevant timekeeper to the extent necessary.  When my team or I found errors or erroneous time entries, we clarified or corrected them also based on our detailed knowledge of and direct involvement in the litigation, review of surrounding time entries, review of the record in this case, and/or through discussions with the relevant timekeeper to the extent necessary.

8.    For the convenience of the Court, we have subdivided the time expended by BLB&G in the Action into 17 separate categories of work or projects.  A summary table of the hours and lodestar for BLB&G attorneys and professional staff for each category is attached hereto as Exhibit 3.  A summary of the work performed by BLB&G in each category of work follows:

a.    **Project #1, Investigation & Analysis of Claims.**  Plaintiffs' Counsel spent 1,318.50 hours with a lodestar value of $530,935.00 in its analysis and assessment of the claims.  Lead Counsel, including both its attorneys and in-house investigators, conducted an extensive investigation into the factual and legal underpinning of the potential claims in the Action. The investigation also included analysis of Class-wide damages.  The work included legal research and analysis of possible claims, an extensive review of publicly available documents such as analyst reports, SEC filings, new articles, and publicly available Spectrum documents, and extensive efforts to identify, locate, contact, and interview potential witnesses. Lead Counsel's investigators searched multiple sources, and ultimately identified over 8,000 potential leads.  Lead Counsel's investigators then conducted an extensive analysis to winnow that list down to the individuals who appeared to be most likely to have relevant knowledge.  Of that group, Lead Counsel's investigators

ultimately conducted full interviews with 60 individuals. Lead Counsel ultimately relied upon information from 18 of the witnesses who were interviewed in preparing its Consolidated Amended Complaint ("CAC" or the "Complaint"). While the bulk of this investigation was done in connection with preparing the July 12, 2019 CAC, Lead Counsel's investigators renewed their efforts at other stages of the litigation, including the summer of 2021, when it appeared possible that litigation would resume following the Court's denial of the Initial Settlement and the failure of the Parties' mediation efforts in July 2021.

b.      **Project #2, West Palm Beach Complaint.**  BLB&G attorneys and professional staff spent a total of 22.75 hours with a lodestar of $13,481.25 in preparing the initial complaint filed in the Action on behalf of West Palm Beach Firefighters' Pension Fund on April 30, 2019, which expanded the filed Class Period to include the November 19, 2018 corrective disclosure that concluded the Class Period that was ultimately pled in the Amended Complaint.

c.      **Project #3, Lead Plaintiff Application.**  Lead Counsel devoted 61.75 hours with a total lodestar of $33,687.50 in researching, preparing, and filing the motion for appointment of the Public School Teachers' Pension and Retirement Fund of Chicago and the Cambridge Retirement System as Lead Plaintiffs in the Action, including analyzing a competing motion for appointment of lead plaintiff that was originally filed.

d.      **Project #4, Amended Complaint.**  Lead Counsel's attorneys and staff dedicated 775 hours with a total lodestar of $504,668.75 in researching and preparing the detailed 135-page Consolidated Amended Complaint filed in the Action on July 12, 2019. These efforts included (1) additional investigative efforts undertaken by BLB&G attorneys

5

and staff, which included a thorough review of publicly available information such as SEC filings, analyst reports, earnings calls, and news articles, and review of the witness interview memos prepared by Lead Counsel's investigators; (2) interviews with potential witnesses in the Netherlands undertaken by a Dutch-speaking attorney; (3) identifying Defendants' alleged false statements; (4) an extensive investigation into Spectrum's business divisions, industry, and supply chain, as well as an investigation into the permits filed by Spectrum for its distribution centers at the heart of the Complaint; (5) drafting and revising the Complaint and related legal research; (6) consulting with an expert concerning damages and loss causation issues; (7) follow-up work relating to service of the Complaint; and (8) research concerning a potential further amended complaint undertaken in July 2021.

e.      **Project #5, Negotiating The Parties' Joint Rule 26(f) Plan**. Lead Counsel spent a total of 34.50 hours with a total lodestar of $22,068.75 in drafting, negotiating, and finalizing a joint case management plan and appearing before Magistrate Judge Crocker for approval of the plan.

f.      **Project #6, Analysis, Research, and Full Briefing on Defendants' Motions to Dismiss**.  Lead Counsel spent a total of 386 hours with a total lodestar of $253,612.50 in preparing Lead Plaintiffs' opposition to Defendants' motion to dismiss. These efforts included reviewing and analyzing Defendants' motion and its voluminous supporting materials; gathering and reviewing pleadings from related cases; extensive legal and factual research on issues raised in the motion; drafting Lead Plaintiffs' 70-page opposition motion; and finalizing and filing the opposition and supporting exhibits.

6

g.      **Project #7, First Mediation**.  Lead Counsel spent a total of 601.25 hours with a total lodestar of $490,562.50 in participating in extensive settlement mediation negotiations that initially led to the settlement reached in 2020 for $39 million on behalf of a class that included purchasers of both HRG and Spectrum Brands common stock.  These efforts included (1) discussions concerning the selection of a mediator and scheduling the mediation with Jed D. Melnick on June 3, 2020; (2) reviewing material on damages and other authorities in preparation for mediation; (3) preparing memoranda for Lead Plaintiffs concerning the mediation and settlement authority; (4) preparing a detailed initial mediation statement and reply mediation statement, which addressed both liability and damages and were exchanged with Defendants prior to the mediation; (5) participating in the June 3, 2020 mediation and several weeks of further follow-up settlement negotiations when no agreement was initially reached at the mediation; (6) drafting and negotiating a term sheet for the Initial Settlement; and (7) drafting and negotiating with Defendants the Stipulation setting out the full terms of the Initial Settlement, including its exhibits such as proposed orders and notices to settlement class members.

h.      **Project #8, Discovery**.  Lead Counsel spent a total of 288.75 hours with a total lodestar of $122,387.50 in reviewing highly relevant document discovery from Spectrum that Lead Counsel negotiated with Defendants to receive, notwithstanding the mandatory PSLRA stay of discovery pending the resolution of Defendants' motion to dismiss.  In connection with this discovery, Spectrum produced over a thousand pages of internal Company documentation, including board and financial materials, which were reviewed by Lead Counsel.  The documents included (i) monthly steering committee presentations and summaries concerning Spectrum's consolidation of its Hardware and

7

Home Improvement division ("HHI"); (ii) monthly "President's Reports" with consolidated and individual financial reporting for all of Spectrum's divisions; (iii) Monthly Financial Reviews with financial and status reporting for Spectrum's HHI and Global Auto Care ("GAC") divisions, including relevant information concerning the status of the consolidations; (iv) Annualized Operations Plans for GAC, discussing the consolidation of GAC's four distribution centers to a single facility in Dayton, OH; and (v) revised operations plans ("Rev2s") for GAC, which documented management's financial projections for GAC. The time spent on this task included drafting the document requests for this discovery; negotiating the scope of the discovery with Spectrum; negotiating a confidentiality order with Spectrum; reviewing and analyzing the documents produced; meeting to review and discussed the relevance of the documents; and drafting summary memos analyzing and digesting the information obtained as a result of the review.

i.      **Project #9, Initial Settlement Submission**.  Lead Counsel spent a total of 397.75 hours with a total lodestar of $238,875.00 in researching, drafting, and submitting Lead Plaintiffs' motions for preliminary and final approval of the Initial Settlement, and related briefing, declarations, and other documents, which included detailed information on the history and risks of the litigation.  No time spent on Lead Counsel's motion for attorneys' fees and expenses has been included and the time devoted to Jet Capital's objection to the Initial Settlement is listed in a separate category.  These efforts were ultimately incorporated into the submission of the final settlement presently before the Court.

j.      **Project #10, Initial Settlement Administration**.  In addition, Lead Counsel spent 81 hours with a total lodestar of $60,937.50 on matters related to

8

administration of the Initial Settlement, which included, among other things, (1) preparing requests for proposals for potential Claims Administrators, comparing their bids, and selecting a Claims Administrator for the Initial Settlement (which was subsequently retained for the Settlement and HRG Settlement as well); (2) overseeing the Claims Administrator's dissemination of the Notice of the Settlement and the establishment of the Settlement website and telephone helpline; and (3) attending to matters related to Defendants' funding of the Settlement Amount into the Escrow Account and, following the disapproval of the Settlement, the return of the settlement funds to the payors.  These efforts ultimately were incorporated into the administration of the final settlement, which among other things relied on the same claims administrator, as well as accepting the claims submitted by potential class members pursuant to this notice process.

k.      **Project #11, Objection to Plan of Allocation**.  Lead Counsel devoted a total of 292.25 hours with a total lodestar of $207,881.25 to responding to Jet Capital's objection to the Plan of Allocation of the Initial Settlement.  These efforts including (1) reviewing and analyzing Jet Capital's objection, including by working with a damages expert to understand the implications for the class; (2) researching and drafting portions of the reply brief responding the objection; (3) preparing Lead Plaintiffs' opposition to Jet Capital's motion for intervention; and (4) preparing a response to Jet Capital's sur-reply. These efforts contributed directly to the efforts in negotiating in re-allocating the settlement, which the parties undertook in the second mediation in 2021.

l.      **Project #12, Analysis, Research, and Strategy Addressing Court's Order Denying Final Approval**.  Following the Court's February 6, 2021 Order denying approval of the Initial Settlement without prejudice, Lead Counsel spent 111.75 hours with

9

a total lodestar of $98,343.75 in researching and discussing Lead Plaintiffs' options in response to the Order, including extensive legal research, high-level strategic conversations, communications with Lead Plaintiffs, discussions and negotiations with defense counsel and with counsel for the objector, and drafting a negotiated submission to the Court.

      m.     **Project #13, Second Mediation**.  Lead Counsel devoted a total of 407.75 hours with a total lodestar of $344,050.00 in participating in the mediation and subsequent negotiations that more recently led to the current settlement for $32 million on behalf of a class of purchasers of Spectrum Brands common stock.  These efforts included (1) discussions concerning the scheduling the mediation with Jed D. Melnick on June 22, 2021; (2) extensively reviewing material on damages and other authorities in preparation for mediation, including working with an expert in loss causation and damages to assess the impact of various scenarios where the allocation of the settlement was altered between Spectrum and HRG purchasers; (3) preparing updates for Lead Plaintiffs concerning the mediation and settlement authority; (4) preparing a detailed mediation statement addressing the appropriate allocation of the $39 million available settlement funds between Spectrum and HRG purchasers; (5) participating in the June 22, 2021 mediation and further follow-up settlement negotiations when no agreement was initially reached at the mediation; (6) drafting and negotiating a term sheet for the Final Settlement; and (7) drafting and negotiating with Defendants the Stipulation setting out the full terms of the Final Settlement (executed on August 27, 2021), including its exhibits such as proposed orders and notices to settlement class members.

n.      **Project #14, Final Settlement Submission**.  Lead Counsel spent a total of 86.25 hours with a total lodestar of $67,462.50 in researching, drafting, and submitting Lead Plaintiffs' motions of preliminary and final approval of the Second Settlement, and related briefing, declarations, and other documents, which included detailed information concerning the subsequent history of the litigation following the Initial Settlement and was able to rely substantially on the work done in connection with submitting the Initial Settlement to the Court for approval.  No time spent on Lead Counsel's motions for attorneys' fees and expenses has been included.

o.      **Project #15, Final Settlement Administration**.  In addition, Lead Counsel spent 24.25 hours with a total lodestar of $17,593.75 on matters related to administration of the Second Settlement, which included revising the relevant escrow agreement and communications with claimants.

p.      **Project #16, Severing Spectrum & HRG Claims.** Lead Counsel spent 38.25 hours with a total lodestar of $27,606.25 in addressing the Court's August 6, 2021 Order to show cause by the Spectrum and HRG classes should not be severed, which included negotiations with defense counsel and counsel for the HRG subclass concerning a proposed joint response, drafting and negotiating the language of a joint response, and drafting and negotiating the terms of a proposed severance order.

q.      **Project #17, Case Oversight & Administration**: Lead Counsel spent 150 hours with a total lodestar of $65,150.00 in multiple tasks not directly related to the above-listed projects.  These tasks included (1) ongoing daily monitoring of news and events concerning Spectrum Brands to incorporate into case strategy; (2) administrative tasks such calendaring necessary dates, correspondence with court clerks regarding filings,

11

maintaining an organized case file, and review of local rules; (3) obtaining attorney admissions; (4) obtaining relevant materials from related cases; and (5) ongoing communications with potential class members and maintenance of the case website.

9.      My team and I have carefully reviewed our time records and made other reductions in the interests of billing judgment to ensure that the hours presented to the Court reflect meaningful and necessary work that contributed to the resolution of this litigation.

**Hourly Rates**

10.     The hourly rate(s) for the attorney(s) and other personnel involved in the case are set forth in Exhibits 1 and 2.  In addition, a summary of Lead Counsel's and Stafford Rosenbaum time, hourly rates, and lodestar for each timekeeper are set forth in their summary lodestar charts, attached hereto as Exhibits 4 and 5, which are the same as originally submitted to the Court.  *See* dkts. 109-1, 110-1.

11.     The hourly rates for the attorneys and professional support staff of Lead Counsel included in Exhibits 1, 3 and 4 are the usual and customary rates set by the BLB&G for each individual.  These hourly rates are the same as, or comparable to, the rates accepted by courts, including courts in this Circuit, in other contingent-fee securities-class-action litigation or shareholder litigation.  *See, e.g.*, *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-06509 (D.N.J. Dec. 20, 2021), dkt. 184 (awarding fee based on lodestar analysis using BLB&G 2021 rates); *In re Baxter Int'l, Inc. Sec. Litig.*, No. 19-cv-07786 (N.D. Ill. Aug. 13, 2021), dkt. 73 (same); *In re CenturyLink Sales Practices & Sec. Litig.*, No. 18-cv-296 (D. Minn. July 21, 2021), dkt. 380 (same); *In re Willis Towers Watson plc Proxy Litig.*, No. 17-cv-1338 (E.D. Va. May 21, 2021), dkt. 347 (same); *see also Plymouth County Ret. Ass'n v. Spectrum Brands Holdings, Inc.*, Case No. 2019-CV-000982, slip op. at 2 (Wis. Cir. Ct. Dane County Aug. 20, 2020) (*see* dkt. 104-12)

(approving 30% fee award to class counsel in action brought against Spectrum asserting Securities Act claims; lead counsel's hourly rates approved by the court included partner rates ranging from $775 to $1,100 an hour; of counsel rates of $750 and $775 per hour; associate rates from $425 to $500 per hour, and paralegals at $325 per hour).

12.     BLB&G's rates are set based on our annual analysis of rates that are charged by firms performing comparable work and that have been approved by courts (as set forth above) and by a selection of defense firms that we frequently litigate against. We believe, based on this analysis and review of other public data, that these hourly rates are comparable to other firms engaged in comparable securities class action work and are comparable to or less than rates for comparably experienced attorneys at the large defense firms BLB&G typically litigates against. Different timekeepers within the same employment category (e.g., partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (e.g., years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms. For personnel who are no longer employed by my firm, the hourly rate used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm.

## III.     MOTION FOR LITIGATION EXPENSES

13.     Lead Counsel seek payment of $245,438.56 in Litigation Expenses that were reasonably incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Action. Plaintiffs' Counsel advanced these expenses at the risk of not recovering them if the lawsuit was unsuccessful and therefore had incentive to ensure money was spent judiciously. A summary of the categories of expenses for which Plaintiffs' Counsel seek reimbursement is attached hereto as Exhibit 6. A more detailed account of Plaintiffs' Counsel's expenses incurred in this matter from its inception through January 31, 2022 is attached as Exhibit 7.

14.     Pursuant to *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409-10 (7th Cir. 2000), Lead Counsel has removed for its request any request for reimbursement of its Online Factual Research and Online Legal Research from its application for Litigation Expenses and, in an abundance of caution, has removed its request for reimbursement for costs of Special Publications (specialized publications that were purchased related to the subject-matter of this litigation) as well.

15.     The expenses for which Plaintiffs' Counsel seek payment were reasonably and necessarily incurred, and are of the sort of expenses that would typically be billed to paying clients in the marketplace.  It is well established that counsel who create a common fund are entitled to the reimbursement of their reasonable litigation costs and expenses.  *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *14 (S.D. Ill. Dec. 16, 2018).  The types of expenses for which class counsel may be reimbursed are expenses which would be typically billed by counsel to paying clients in addition to the attorneys' fees.  *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) (court should consider what the private market would bear in determining the reasonableness of reimbursement of litigation expenses to class counsel); *Daluge v. Cont'l Cas. Co.*, 2018 WL 6040091, at *4 (W.D. Wis. Oct. 25, 2018) (approving reimbursement to class counsel for "expenses typically billed by attorneys to paying clients"); *Lafayette Life Ins. Co. v. City of Menasha, Wisconsin*, 2011 WL 13268742, at *5 (N.D. Ind. Dec. 1, 2011) (approving reimbursement for "categories of expenses that are customarily charged to clients in the market for legal services, and include rates and amounts that are customary in the market").

16.     Below is a brief discussion of the categories of expenses for which reimbursement is sought and the legal basis for their reimbursement.

(a)      **Expert** ($203,183.75).   Lead Counsel retained Chad Coffman of Global Economics Group LLC to provide expert advice on market efficiency, damages, and loss causation issues.   Lead Counsel consulted with Mr. Coffman throughout the litigation of the Action, including in connection with the investigation and preparation of the Complaint and during both rounds of settlement negotiations.   Lead Counsel also worked with Mr. Coffman and his team in developing the proposed Plan of Allocation.   This expense, which represents to 83% of the total amount of expenses sought, is a type of expenses for which class counsel is entitled to reimbursement.   *See Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs[.]"); *Rysewyk v. Sears Holdings Corp.*, 2019 WL 11553475, at *3 (N.D. Ill. Jan. 29, 2019) (approving class counsel's request for reimbursement of expenses including "expert fees"); *Hale*, 2018 WL 6606079, at *14 (approving class counsel's request for reimbursement of expenses including "expert witness costs").

(b)      **Mediation Fees** ($31,415.52).   Lead Counsel also seeks reimbursement for Lead Plaintiffs' share of fees paid to JAMS ADR for the services of the mediator, Jed D. Melnick, Esq.   Mr. Melnick conducted the remote mediation sessions in June 2020 and July 2021 and participated in follow-up negotiation efforts after both mediations that led to the Initial Settlement and the Settlement of the Action.   These types of fees, which were paid to a highly experienced professional mediator, are reimbursable from the common fund achieved in the Action.   *See Bell*, 2019 WL 4193376, at *6 ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of

15

litigation costs and expenses, which includes such things as . . . mediation" costs.); *Day v. NuCO2 Mgmt., LLC*, 2018 WL 2473472, at *3 (N.D. Ill. May 18, 2018) (approving class counsel's request for reimbursement of expenses including "the mediator's fee"); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *5 (N.D. Ill. Sept. 16, 2016) (approving class counsel's request for reimbursement of expenses including "Plaintiffs' portion of the mediator's fees").

(c) **Court Fees** ($2,359.36)**.** Plaintiffs' Counsel seek reimbursement for $2,359.36 paid in court fees, which include filing fees, W.D. Wis. admission fees for out-of-state counsel, and costs paid to a Wisconsin state court to obtain certain documents filed with the court. These are the types of expenses that are typically billed by attorneys to paying clients and are recoverable by class counsel. *See NuCO2 Mgmt.*, 2018 WL 2473472, at *3 (approving class counsel's request for reimbursement of expenses including "filing fee"); *Koszyk*, 2016 WL 5109196, at *5 (approving class counsel's request for reimbursement of expenses including "court fees"); *Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801, at *4 (N.D. Ill. June 20, 2014) (approving class counsel's request for reimbursement of expenses including "*pro h[a]c vice* admission fees").

(d) **PSLRA Notice Costs** ($4,310.00). Lead Counsel also requests reimbursement for the costs of publishing two PSLRA notices via the *PR Newswire*—at the outset of the case in April 2019, and in April 2021 pursuant the Court's January 6, 2021 and April 2, 2021 Orders, which required Lead Plaintiff to provide a second PSLRA notice to purchasers of HRG shares. Class counsel's costs for publishing PLSRA notices are an expense that has been found to be reimbursable in PLSRA class actions. *See, e.g.*, *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 877 (S.D.N.Y. 2018) (approving reimbursement

16

for costs of "publishing the PSLRA notice"), *aff'd*, 784 F. App'x 10 (2d Cir. 2019); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2004 WL 1900294, at *1, 2 (S.D. Tex. Aug. 5, 2004) (approving "reimbursement for $3,581.00 expended in complying with the PSLRA's notice requirements").

(e)   **Court Reporting & Transcripts** ($109.50).   Lead Counsel seeks reimbursement for costs paid to court reporters to obtain transcripts in a related action in Wisconsin state court.  This type of expense is reimbursable to class counsel.  *See Bell*, 2019 WL 4193376, at *6 ("It is well established that counsel who create a common fund . . . are entitled to the reimbursement of litigation costs and expenses, which includes such things as . . . court reporters[.]"); *Koszyk*, 2016 WL 5109196, at *5 (approving class counsel's request for reimbursement of expenses including "court reporters");

(f)   **Telephone Calls** ($135.82) **and Copying Costs** ($1,115,34).  Lead Counsel seeks reimbursement for $135.82 for costs of telephone calls (including conference calls), $335.70 for Internal Copying/Printing, and $779.64 for Outside Copying (copying performed by outside vendors).  These categories of expenses that are typically billed by counsel to paying clients in addition to their hourly fees and, thus, are recoverable by class counsel.  *See, e.g., Rysewyk*, 2019 WL 11553475, at *3 (approving class counsel's request for reimbursement of expenses including "photocopying"); *NuCO2 Mgmt.*, 2018 WL 2473472, at *3 (approving class counsel's request for reimbursement of expenses including "copying costs"); *Koszyk*, 2016 WL 5109196, at *5 (approving class counsel's request for reimbursement of expenses including "photocopies," and "telephone calls").

(g)   **Local Transportation** ($1,903.39) **and Working Meals (**$905.88**).** BLB&G seeks reimbursement for $1,903.39 for Local Transportation costs and $905.88

17

for Working Meals. The amounts charged for working meals are capped at $20 per person for lunch and $30 per person for dinner. These were expenses incurred when Lead Counsel's attorneys or other staff were required to work late or to work though lunch. These expenses that are also typically billed by counsel to paying clients in addition to their hourly fees and, thus, are recoverable by class counsel. *See Koszyk*, 2016 WL 5109196, at *5 (approving class counsel's request for reimbursement of expenses including "working meals"); *see also O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *19 (D. Colo. Sept. 9, 2019) (find that working meals and "Local Transportation" are "the type [of expenses] typically billed by attorneys to paying clients in the market place"); *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017) (approving class counsel's request for reimbursement of expenses including "working meals").

## IV.    CONCLUSION

17.    For all the reasons discussed herein and its initial submissions, Lead Counsel respectfully submits that the requested fee in the amount of 15% of the Settlement Fund, net of Court-approved Litigation Expenses and estimated Notice and Administration Costs, should be approved as fair and reasonable. The specific fee amount sought—based on Lead Counsel's revised Litigation Expense request of $245,438.56, the estimated Notice and Administration Costs of $400,000, and PLSRA awards sought for Lead Plaintiffs in the amount of $15,672.55—is $4,700,833. Lead Counsel respectfully submits that its request for payment of total Litigation Expenses in the amount of $245,440.56 should also be approved.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Dated: March 9, 2022                                         */s/ Katherine M. Sinderson*
                                                            Katherine M. Sinderson

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine M. Sinderson, an attorney, hereby certify that a copy of the foregoing

**"Supplemental Declaration of Katherine M. Sinderson in Further Support of Lead Counsel's**

**Motion for an Award of Attorneys' Fees and Litigation Expenses"** and its exhibits was served

on counsel for all parties electronically via the CM/ECF system on March 9, 2022.


Dated:  March 9, 2022                          By:    */s/ Katherine M. Sinderson*
                                                              Katherine M. Sinderson