UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

IN RE: SPECTRUM BRANDS SECURITIES     Case No. 19-CV-347-JDP
LITIGATION

                                       Madison, Wisconsin
                                       March 18, 2022
                                       10:06 a.m.

_____

JET CAPITAL MASTER FUND, L.P.,

        Plaintiff,

 -vs-                                  Case No. 21-CV-552-JDP

HRG GROUP, INC., ET AL.

        Defendants.

_____

STENOGRAPHIC TRANSCRIPT OF
VIDEOCONFERENCED SETTLEMENT APPROVAL HEARING
HELD BEFORE CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON

APPEARANCES:

For Plaintiffs West Palm Beach Firefighters' Pension Fund and
The Public School Teachers' Pension and Retirement Fund of
Chicago and the Cambridge Retirement System:

                Bernstein, Litowitz, Berger & Grossman, LLP
                BY:  KATHERINE McCRACKEN SINDERSON
                     SALVATORE GRAZIANO
                1251 Avenue of the Americas
                44th Floor
                New York, New York  10020




                Jennifer L. Dobbratz, RMR, CRR, CRC
                U.S. District Court Federal Reporter
                United States District Court
                120 North Henry Street, Rm. 410
                Madison, Wisconsin  53703
                (608) 261-5709

APPEARANCES (Continued):

                    Stafford Rosenbaum, LLP
                    BY:   DOUGLAS M. POLAND
                          JEFFREY A. MANDELL
                    222 West Washington Avenue
                    Suite 900
                    Madison, Wisconsin  53701

For Plaintiff Jet Capital Master Fund, L.P.:

                    Rolnick, Kramer, Sadighi, LLP
                    BY:   MATTHEW PELLER
                    1251 Avenue of the Americas
                    New York, New York  10020

For Defendants:

                    Paul, Weiss, Rifkind, Wharton & Garrison, LLP
                    BY:   ANDREW EHRLICH
                          RICHARD ROSEN
                    1285 Avenue of the Americas
                    New York, New York  10019

                              ***

(Proceedings called to order at 10:06 a.m.)

THE CLERK:  This Honorable Court is now in session. District Judge James D. Peterson presiding.  Case No. 19-CV-347, *Spectrum Brand v. Securities Litigation* [verbatim], called for a settlement approval hearing.

May we have the appearances, please.

MR. GRAZIANO:  Your Honor, for the Spectrum class-action plaintiffs, you have Salvatore Graziano from Bernstein Litowitz.  Unfortunately, my colleague, Katherine Sinderson, is going to do the argument today, and she said she was booted off.  I just told her to try again.

THE COURT:  All right.  Sounds good.  So it will be

Ms. Sinderson here.

MR. GRAZIANO:  Correct.

THE COURT:  Very good.

Okay.  Go ahead.

MR. MANDELL:  Sorry.  Also for plaintiffs you have Doug Poland and Jeff Mandell as local counsel.

THE COURT:  Very good.  Welcome to you.

MR. PELLER:  Matthew Peller, Your Honor, from Rolnick, Kramer, Sadighi, LLP, for the HRG subclass.

THE COURT:  All right.  Who else?

MR. EHRLICH:  Good morning, Your Honor.  Andrew Ehrlich from the Paul Weiss firm together with my partner, Richard Rosen, on behalf of the defendants.

THE COURT:  Good morning to you.

MR. ROSEN:  Good morning, Your Honor.

MR. EHRLICH:  Morning.

THE COURT:  And anyone else or are we just waiting for Ms. Sinderson now?

(No response.)

THE COURT:  All right.  Sounds like we're waiting for Ms. Sinderson.  We'll give her just a minute here.  And if not, we'll just get started, and she can catch up as best she can.

(Pause in proceedings.)

THE COURT:  Mr. Graziano, do you have any updates on her status?

MR. GRAZIANO: Let me just see what's going on with her. If not, you know, I think I can handle things. I will confess that I did, you know, not prepare to argue, but I think I know the materials well enough, Your Honor. Let me just see if I can quickly call her. Just bear with me. I really appreciate the Court's patience.

THE COURT: Go ahead.

(Pause in proceedings.)

MR. GRAZIANO: She's on now, Your Honor. Thank you.

THE COURT: Very good.

Ms. Sinderson, do you want to state your appearance?

MS. SINDERSON: Yes, Your Honor. Katie Sinderson from Bernstein, Litowitz, Berger & Grossmann for the Spectrum class counsel and the class. I apologize for my delay, technical issues.

THE COURT: That's all right.

All right. So we're here for a final hearing in these two cases. It's been a long journey, and I will tell you in advance that I don't have major concerns with the settlement here. I'm prepared to approve it. We have some issues with the attorney's fees to address, and I do have a couple of questions just to fill in a couple of little gaps. So I'll just tip my hand and tell you that I basically think that the settlement is sound and it's one I'll approve, but let me just raise my questions here.

First of all, with regard to the Jet class, I have

information that the administrator has received about 4,700 claims representing about 12 million shares, but I don't have an idea of what proportion of the potential claims and shares that represents.  For the Spectrum class, I'm told that that -- the claims that we have represents about 90 percent of the impaired shares, but I don't have that same comparator for the Jet class. So maybe counsel for that class can tell us.

Mr. Peller, I think that's going to be you.

MR. PELLER:  Yes, Your Honor.  I think there were approximately 200 million shares outstanding of HRG during the relevant period.

THE COURT:  Would all of the shares be subject to the class?  Because that's a tiny fraction then of the claim.  So I've got -- in the Spectrum class, I've got claims that represent 90 percent of the damaged shares.  I don't have that comparator here for the Jet class, and if I've got 47 -- 12 million shares out of 200 million, that's about 5 percent, and it's not --

MR. PELLER:  We will look into that, Your Honor, and get you that information.

THE COURT:  All right.  Okay.  I'll wait for that information.

There's a *cy pres* award here that's going to be contributed to a nonsectarian nonprofit 501(c)(3) organization subject to court approval.  I don't know if you have anything in mind.

Normally the *cy pres* recipient has to be somehow related to the class, so I don't have a hint about what that's going to be. It's not a huge concern here, but, you know, give me a hint if you have something in mind.

MS. SINDERSON:  Sure, Your Honor.  This is Katie Sinderson.

Typically we will choose a shareholder rights group would be the most appropriate recipient.  That might change from year to year depending on when the *cy pres* award actually comes due, but it would be something related to shareholder rights and investor rights.

THE COURT:  All right.  Sounds good.  All right.  You can let me know what it is and provide me the adequate information to approve the recipient when the time comes.

There's an agreement here, apparently, that -- there's an agreement with the defense that would allow the defense to terminate the settlement if the number of class members who request exclusion reaches a specified threshold.  I've kind of been assuming that that agreement is now moot, because I think I had only three requests for exclusion.  One of them was, I think, the -- was Jet, so I don't have a meaningful number of exclusions.  So can we confirm that that agreement is now moot and I don't have to worry about that?

MS. SINDERSON:  Correct, Your Honor.  That's confirmed.

THE COURT:  Very good.

MR. PELLER:  And the same for the HRG subclass.  There were no exclusions.  In an abundance of caution, the final judgment that we submitted excludes those individuals who requested exclusion from the prior settlement, but to the best of our knowledge, those individuals did not purchase HRG shares.

THE COURT:  Very good.

MS. SINDERSON:  And just one minor correction, Your Honor.  There were no exclusions from the settlement currently in front of Your Honor because --

THE COURT:  All right.

MS. SINDERSON:  -- those who had excluded themselves from the prior settlement were not counted as part of that threshold, and Jet Capital has now excluded them.

THE COURT:  Thanks for that clarification.  I did notice I thought the basis for exclusion was that they weren't in the class, which I thought was a little unusual but also comforting because I didn't really have to worry about them very much.

I have a question in the proposed judgments that have been submitted in both classes in that they give counsel the authority to modify the settlement agreement without leave of court so long as it's not materially inconsistent.  I'm a little uncomfortable with that, and so I wanted you to explain what you had in mind and what you anticipated there.

MS. SINDERSON:  Your Honor, that's sort of a catch-all

term.

And I apologize.  I'm holding the phone right now, so it might be a little bit shaky.

There's absolutely nothing that we're anticipating that we would be changing the judgment in any material terms.  It might be -- it would be only in response to perhaps allowing someone who had excluded themselves back into the class or to otherwise meet the goals of distributing this class fully and fairly to all Spectrum shareholders who have a claim here.

THE COURT:  All right.  Related to that question is I don't think there are deadlines for making the distributions here.  It's not a big concern because I think that, as I said, I think -- or as I will say, that the investors, I think, are highly motivated to get the thing accomplished promptly, but is that the kind of thing you anticipate being modified by stipulation?  Like I said, I don't see deadlines in the settlement agreement anyway but --

MS. SINDERSON:  So it wouldn't be part of what we would anticipate being modified.  What we would anticipate for a distribution motion, Your Honor, is we will make absolute best efforts to file our first distribution motion before you within nine months of the Court approving the settlement, which is allowing time for the claims administrator to verify and do the appropriate diligence on all claims, and, again, the idea is to maximize the recovery for everyone who potentially has a claim,

and it just takes the time to do that.

THE COURT:  All right.  I accept that you'll get this accomplished in due time.  I'm not going to include the sort of catch-all modifications, but I will say this, that if you need leave of court, I will do it promptly.  The questions like this come up and get resolved really quickly, so you're not going to be waiting for my approval on things.  So I'm not going to include that.  If you need a modification, get it to me, and we'll turn it around very promptly.

MS. SINDERSON:  Appreciate that, Your Honor.

THE COURT:  All right.  I think I will include -- you've given me draft orders.  I think I will include the details that I need to include in the written order, but just as a way of sort of a quick summary, I will certify the class.  I did so conditionally before, and I think that the reasons for my conditional certification are true here.  I think that the class is numerous, joinder of all members would be impractical.  There are questions of law or fact that are common to class members, and they predominate.  It meets the criteria for a class.  I will do that.

I think the settlement amount is reasonable.  We looked at a lot of comparator cases that were cited.  We did our own research, and so there's a very substantial discount from the maximum total recovery, but we recognize the uncertainty of securities class-action litigation, and the remedy of 10 percent

for the Spectrum class is consistent with litigation that we have -- that we reviewed and that you presented to us, so I'm satisfied that there were some substantial uncertainties that the class would face. We needed to have the substantial motion to dismiss. Although we never decided it on the merits, it did provide us with a pretty fulsome presentation of some of the difficulties that the class would face. The challenges that the Spectrum class would face, of course, are even less than the Jet class, which is to say the Jet class faced some additional uncertainties, and so a further discount for the recovery for the Jet class seems appropriate as well. I'm also satisfied by the arm's-length negotiation, but also we had as named plaintiff -- plaintiffs in both classes kind of major institutional investors who certainly were capable of looking out for their own interests here. So that's a long way of saying that I think the settlement is reasonable.

I also think the attorney's fees presentation persuades me that the amount that has so far been allocated toward attorney fees is reasonable. I will say that I look at the lodestar as a check on the reasonableness of the fees. If I were to be awarding a fee petition, I would find some inadequacies in the presentation of the lodestar. I won't detail all of those, but I would question whether that was not inflated to some degree by the amount of time that was spent on particular motions here and there, and I would look for more support for the hourly rates,

all that.  The hourly rates are just based on the Court's experience with various categories of litigation within the range of reasonableness, but, as I said, if this were a fee petition, you would have to make a more robust and pointed showing.  But as a check on the reasonableness of the contingency fee award, I'm satisfied that this isn't an unreasonable windfall.  I think the percentage of recovery is consistent with what has been awarded in other cases, and I find it to be -- I find it to be reasonable.

That really brings us to the ultimate issue that I think I need to decide, which really is the question about the recovery of attorney's fees for the -- what I've been calling the Jet class, what you referred to as the HRG subclass.  And my concern is this, is that I will say that the recovery of 15 percent for the Spectrum class, that seems appropriate.  Now, when I look at the recovery for the HRG subclass, what I see are a couple of issues.

One is when I look at the marginal return for the efforts of the HRG counsel, the requested recovery is about 60 percent of the marginal improvement that HRG's class counsel recovered, what I've been calling the Jet class.  So that seems like a lot of recovery based on the marginal improvement in the settlement position.  I recognize that your intervention did produce a benefit to the class.  You got, you know, more than $7 million instead of the 4 million that was there, so there is a

substantial improvement, but taking 60 percent of the improvement seems like a lot.

The second issue is that although the Spectrum class kind of had a stumble with the way the case was begun with the amendment and the treatment of the HRG subclass, which resulted in the second lawsuits being spun off, I recognize those difficulties, but, still, if not for the efforts of the Spectrum class counsel, the HRG subclass would have received nothing. So they preserved the rights. They did the initial investigation. So it seems to me appropriate to allocate some of the fees for the HRG recovery to the lawyers who did the work on the initial part of the case.

And so with that, let me hear from the parties about how I should accomplish that. I did look at your late-breaking supplemental authorities. Frankly, I didn't think it was that critical for me because it confirms for me that I have, guided by what I think are substantially equitable principles, the authority to do what I have proposed, which is to allocate some of the fees to the Spectrum lawyers. It confirms that that's possible, and I recognize that there are some distinctions between the case that you cited to me this morning and the case that is before me. So I did get the response to the supplemental authority too, but, again, I don't think there's anything that really tells me how to resolve the case there. It just tells me that I can do it.

So with that, let me hear from counsel on what I should do. So, Ms. Sinderson, why don't you start us out, and I'll give everybody a chance to be heard on the subject.

MS. SINDERSON:  Absolutely, Your Honor.

So, Your Honor, as far as our application for fees in the HRG subclass settlement, we do understand the concern expressed by Your Honor in its March 14th order that paying us the same fee as we had originally sought on that roughly $5 million pot that we created for the HRG class could be interpreted as incentivizing another counsel to take the same approach in another case, and we absolutely recognize Your Honor's concern with that.  But if Your Honor is inclined to impose some discount on our 15 percent fee request due to those concerns, I would respectfully submit that it should be a modest discount. We'd submit that 13.5 percent, which is a 10 percent discount to our request, is suitable here, and let me tell you why.

So, first, as Your Honor found, we didn't simply preserve the HRG investors' rights to bring their own claims, though we did do that.  We also performed a significant amount of the work that led to the settlement, and I think the numbers we had submitted to you on the amount of time we invested in investigating, analyzing, and pleading and defending those claims back that up.

Second, we're starting from the position of requesting a really modest 15 percent fee in the first instance, which the

lead plaintiffs here negotiated to be far lower than almost any fee request in a case like this of this size. We also really attempted to listen to Your Honor's concerns, and we exercised discretion in what we actually requested here. We could have had an argument that the entire HRG settlement or perhaps the $7 million part of the settlement is due to our efforts in prosecuting and preserving those claims, but we determined to request a fee only on the part of that settlement that HRG counsel itself attributed to our original settlement. So our request is already a modest percentage of a modest portion of the settlement.

And, last, Your Honor, we've already been disincentivized from taking this approach in another case. We did act in good faith. We were asserting claims that we believed were closely related to those claims that were on behalf of our lead plaintiffs, but we would never want to repeat this experience. The Court's February 2021 order is now a key precedent for objectors in these types of situations. We know that we would be putting any settlement at risk if we repeated this, at best delaying resolution for months or years. This is an extremely impactful case for our firm and for the bar at large. We did have to -- as Your Honor has acknowledged, we all had to work so much harder and longer to get this done than we otherwise would have done. We did, you know, bend over backwards to preserve those HRG claims, even though that potentially made the

settlement of the Spectrum claims more difficult, but I do want to make sure Your Honor understands that we have absolutely heard everything you've done in this case, and we take it very seriously.

But, lastly, at minimum, it doesn't seem fair to HRG shareholders to pay HRG counsel on top of anything that the Court awards us for that 4.785 million that was part of the original settlement. As Your Honor noted in its March 14th order, HRG counsel does stay in the position of an objector here, and really the appropriate incentives for objectors are to reward HRG counsel for the increase of the HRG settlement from the original settlement. So we just wanted to put in the word here about fairness to HRG shareholders as Your Honor exercises its discretion.

THE COURT: All right. Thank you.

Mr. Peller, I assume it's you but --

MR. PELLER: Yes, Your Honor.

THE COURT: -- speaking for your counsel team. Now is your chance.

MR. PELLER: It's somewhat surprising to hear Spectrum class counsel characterize the fee request here as modest. I don't think it can be characterized as that under any definition of the term. It's important to remember that Spectrum class counsel will be fully compensated for their time and then some even if they got nothing from the HRG settlement. Their total

lodestar is 3.123 million for work done in both cases.  Their fee request in Spectrum is 15 percent of that.  That's 4.8 million.  That's a multiplier of 1.53 even if they took nothing from the HRG class.

So what does Spectrum class counsel deserve here?  There's no debate that they never properly represented the HRG subclass, and even if they did provide a benefit for the HRG subclass, they didn't create the current $7.25 million common fund.  They created no common fund.  It's a construction of Spectrum class counsel to say that they created a $4.785 million common fund.  When this prior settlement was rejected, there was no settlement on the table.  There was no fund.  They provided a benefit in, you know, a benchmark, so to speak, or that sort of thing, but there was no common fund.  And as we put in our papers, and I won't belabor it, they engaged in conduct that was detrimental to the HRG subclass that at the same time enriched their lead plaintiff clients.

So we think it's more appropriate in terms of an award to go by the equitable principles of *quantum meruit,* and that's supposed to be the approximate values of one's time.  As Your Honor is aware, I'm sure, *quantum meruit* literally means "as much as he deserves."  So what is that amount?  We know that the original lodestar for the settlement that was rejected was a shade over 2 million.  It was 2 million and 26,000 about, and the original settlement provided a benefit of 12.2 percent to

the HRG subclass.  That's 4.785 million divided by 39 million.  So that's 12.2 percent.

So we believe that Spectrum class counsel should be awarded 12.2 percent of their original lodestar.  That's $247,201.  And if you add that up to the fee that they're getting in Spectrum class -- that's the 15 percent of 32 million, which is 4.8 -- that gives them a 2.49 lodestar on the original work that they did for the settlement.  No work after that should be compensated because the settlement -- you know, as Your Honor has recognized, no subsequent work benefited the HRG subclass, and Your Honor recognized that class counsel's failure to comply with the statutory notice requirements caused the original settlement to be scrapped, and the parties had to start over again, wasting significant time, effort, and resources.

So we would submit that you should take the original lodestar that's 2.026 and apply the percentage, 12.2 percent of what was attributable to the HRG class, and that's $247,201, and that will compensate Spectrum class counsel for the actual work that they did that benefited the HRG class.  They're not losing money on it.  They're getting exactly the amount of work that they put in, and we would submit that that's a fair and equitable result in light of the fact that Spectrum class counsel's conduct here caused, you know, basically a waste of resources, as Your Honor has pointed out: a million dollars in their own time; 650, about, in our time; plus court time; delay

for the class; et cetera.

THE COURT:  All right.  So I take your argument that there was no settlement on the table, but one of the proposals -- well, I guess you've just described it as a benchmark, that based on the 75 percent discount of the claims of the HRG subclass, there was, I don't know, call it about 4 million -- 4.785 million I'll say on the table at that time.  It still concerns me that your effort as counsel then produced still in some sort of common-sense view a net benefit of only about 2-and-a-half million dollars.  And so your fees seem pretty steep against that as a kind of a marginal benefit.

MR. PELLER:  But, Your Honor, we took on the full amount of risk.  I mean, it's just incorrect to characterize HRG lead counsel here as merely an objector.  We started as an objector, but then we took over the mantle of the HRG class, and we prosecuted the claim, and we took on that risk, and we got a better settlement after Spectrum class counsel settled around us.  And at that point we were facing a motion to dismiss and real exposure on the standing issue, and, you know, through the efforts of HRG lead counsel and the mediator, we were able to get defendants back to the bargaining table and to achieve a 51 percent better benefit than the previous settlement for the HRG class.  So unlike in the objector context, we took the ball and we ran with it, and, you know, we got the class a better result, and in doing so we faced acute risk.  And Spectrum class

counsel, you know, admits, can't deny, that the HRG claims were riskier than the Spectrum class claims, and that was the, you know, the reason for the discount in the original settlement.

THE COURT:  Ms. Sinderson, to make this an apples-to-apples comparison, you're asking for 13.5 percent of the original amount.  If you put that in dollar value, a dollar value, what does that come out to?

MS. SINDERSON:  Your Honor, just hold on one moment.  It's $645,975.

THE COURT:  All right.  Okay.  All right.  And so the -- on a percentage basis the -- and I had this at one point.  I think it's 22 percent I think is the percent recovery that the HRG subclass counsel is asking; is that right?

MR. PELLER:  Yeah.  It's 22 percent of the seven and a quarter.

THE COURT:  Okay.  All right.  So here's what -- my thinking as I was looking at this, the number that I had in mind, although it was calculated differently in terms of dollar values, was that what I thought would be equitable -- and the way I calculated it is not based on just the dollar value, although it produces a number that's kind of in the middle of the two of you -- is that I thought what would make sense to me would be to apply a contingency fee of 15 percent to both counsel and that that would be the percentage of recovery for Spectrum in the Spectrum case, it would be the -- counsel's

contingency fee in the Jet Capital case, 15 percent recovery, and then the difference between the 15 percent and the 22 percent would be the award that I would make to Spectrum's counsel for their work on behalf of the HRG class at the early phases of the case so that that would mean a recovery of about $500,000 for the -- for the Spectrum counsel from the settlement of the HRG class. And, honestly, I think that is -- I think that is about right. I think it's a little bit less than Ms. Sinderson is asking for. It's more -- it's twice what Mr. Peller is asking to be awarded, but I think that's appropriate.

I do think that the conduct -- I had my objections. I have already given voice to my concerns about the way counsel handled the amendment of the complaint and how that worked, so I don't need to rehearse all of those, but I don't think it rises to the level of unclean hands or fraud or any unethical conduct. I don't think it rises to that level, so I'm not interested in that level of punishment for what I think to be an unethical act. I don't see that. And I do recognize that the work of Spectrum made possible that the case would move forward, and if it had not been for the case filed by counsel, the HRG class could have been left with nothing because the statute of limitations would have precluded another class-action lawsuit filed on the basis of those claims. And so I think that's the fair amount, and I think there's something equitable about saying that the 15 percent contingency fee should apply across

the board with the additional 7 percent award for the HRG subclass for Spectrum Brands.  So it's about $500,000 in fees that I'm going to end up awarding to Spectrum.  I think that's an appropriate resolution here.

All right.  I think I've covered everything.  As I said, I will cover all of the bases so that there is a record of my compliance with the evaluation under Rule 23.  I think I've touched on most of the critical points, but I don't know that we need to take a lot of argument on points that I have agreed to. You have given me a lot of paper.  I appreciate your appearance here today, but I don't need you to repeat or summarize what you have so voluminously provided to me already.  It is a substantial case, so I understand the effort, but unless there are more things that people want to communicate to me, I think I have answered all my questions.

I will wait for Mr. Peller to provide me with the information about the proportion of the claimants as against the actual damaged shares, not just the outstanding shares but the ones that actually would be the basis for a claim, so that I have some confidence that we really have an adequate notice and process here.  I'm comfortable with the Spectrum case because we've got 90 percent of the impaired shares here, but I would like that comparator for the Jet class.  So as soon as I get that, assuming that it represents something that gives me confidence that we've actually gotten to the people who have a

right to recover, I will enter an order and a judgment, and the case will be, at least in terms of taking my attention, over, and then you can get on with the claims administration process.

So is there anything else we need to address today?

MS. SINDERSON:  Your Honor -- sorry.  This is Katie Sinderson.

I have nothing further substantive, Your Honor.  We just wanted to thank you for your careful and thoughtful oversight of this case and the complicated situation here.

THE COURT:  Very good.  Thank you.

Anyone else?

MR. EHRLICH:  Nothing for defendants, Your Honor. Thank you for your time.

THE COURT:  All right.  Thank you.

Mr. Peller, anything else?

MR. PELLER:  Nothing, Your Honor.  Thank you for your time.  We appreciate it.

THE COURT:  All right.  Thank you, all.  Have a good weekend.

THE CLERK:  This Honorable Court stands in recess.

(Proceedings concluded at 10:40 a.m.)

                              ***

I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit Reporter in and for the State of Wisconsin, certify that the foregoing is a true and accurate record of the proceedings held on the 18th day of March, 2022, before the Honorable James D. Peterson, Chief U.S. District Judge for the Western District of Wisconsin, in my presence and reduced to writing in accordance with my stenographic notes made at said time and place.

Dated this 1st day of April, 2022.

_____/s/ Jennifer L. Dobbratz_____

Jennifer L. Dobbratz, RMR, CRR, CRC
Federal Court Reporter

The foregoing certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.