**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
| | ) | |
| | ) | |

---

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

---

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the*
*Public School Teachers' Pension and*
*Retirement Fund of Chicago and the*
*Cambridge Retirement System*
*and the Spectrum Class*

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Katherine M. Sinderson
Jai Chandrasekhar
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public*
*School Teachers' Pension and Retirement*
*Fund of Chicago and the Cambridge*
*Retirement System and the Spectrum Class*

On October 27, 2022, the Court entered a Text Only Order (dkt. 128) requesting additional information in support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan (dkt. 125). The Order instructed Lead Plaintiffs to (1) explain why certain claims were rejected as ineligible because they "did not result in a recognized claim" and why so many claims fell into this category; (2) provide further documentation about the five (5) Claimants who withdrew their requests for Court review of their rejected Claims; and (3) define the term "cost-effective" as used by the Claims Administrator in describing when it will continue to conduct additional distributions of the Net Settlement Fund, prior to any donation of funds to the proposed *cy pres* recipient.[1] This Supplemental Memorandum, together with the accompanying Supplemental Declaration of Luiggy Segura ("Supplemental Segura Declaration" or "Supp. Segura Decl."), submitted by the Claims Administrator, JND Legal Administration ("JND"), provides responses to the Court's inquiries.

### 1.    Details on Claims Rejected for Lack of a "Recognized Claim"

As discussed in the Supplemental Segura Declaration, the 6,954 Claims that were recommended for rejection by JND because they did not calculate to a Recognized Claim under the Plan of Allocation fell into that category for one of four principal reasons:

| Reason for Rejection | Number of Claims |
|---|---|
| Shares were not held over a corrective disclosure | 5,583 |
| Transactions resulted in an overall Market Gain | 618 |
| All shares purchased in the Class Period were to cover short sales | 45 |

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of August 27, 2021 (dkt. 96-1) ("Stipulation") or the Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (dkt. 115).

| | |
|---|---|
| The Recognized Claim calculated to zero for a combination of a reasons under the Plan of Allocation | 708 |
| **Total** | **6,954** |

*See* Supp. Segura Decl. ¶¶ 3-8. The largest category, by far, was Claims that had purchases or acquisitions of Spectrum Brands shares during the Class Period, but in which none of the shares were held over either of the alleged corrective disclosure dates (April 26, 2018, and November 19, 2018). *See* Supp. Segura Decl. ¶ 5. Under the Plan of Allocation, Claimants who did not hold shares over one of these corrective disclosures (when the price of Spectrum Brands stock allegedly declined in response to revelation of the alleged fraud) are not entitled to any recovery. *See* Notice (Exhibit 1 to the Supp. Segura Decl.) at ¶¶ 62(a), 62(b)(1), 64(a). These "in-and-out" Claimants are not entitled to recovery because they could not establish "loss causation" for any damages they may have suffered. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-48 (2005).

The second largest group is Claims that had some shares held over one of the corrective disclosures but whose transactions during the Class Period resulted in an overall Market Gain. *See* Supp. Segura Decl. ¶ 6. These Claimants are also ineligible under the Plan of Allocation. *See* Notice ¶¶ 71-72. The other various reasons that Claims did not calculate to a Recognized Claim are discussed further in the Supplemental Segura Declaration. *See* Supp. Segura Decl. ¶¶ 7-8.

The Court also inquired as to why so many Claims were rejected for having no Recognized Claim in this case. Dkt. 128. In Lead Counsel's experience, as well as JND's experience, many filers who file on behalf of themselves (or others) in securities class actions identify only whether they have a <u>purchase</u> of an eligible security during the relevant Class Period.  The filers often do not review the full Plan of Allocation to determine whether they have an eligible Claim before filing (for example, they do not determine whether they held shares over a corrective disclosure

or if they had a Market Gain on their transactions). *See* Supp. Segura Decl. ¶ 9. This results in a substantial number of Claims being filed that are ultimately rejected once the terms of the Plan of Allocation are applied to the Claims. *Id*.

In addition, we believe that the increased use of electronic filing in these cases—while generally beneficial because it facilitates class participation—also increases the rate of filing these "no loss" Claims. In particular, "third-party filers" (such as custodian banks or professional filing services, which submit electronic claims on behalf of the beneficial owner of the shares) often programmatically submit claims on behalf of all their clients that had <u>any</u> purchases of the eligible stock during the relevant Class Period. These third-party filers often do not attempt to limit their submission only to claims for clients whose trades calculate to a Recognized Claim under the Plan. *See* Supp. Segura Decl. ¶ 10.

For these reasons, JND does not believe that the percentage of rejected Claims seen here is outside the normal range typically seen in these types of securities class actions in recent years, or presents any cause for concern. *See* Supp. Segura Decl. ¶ 11. Lead Counsel shares in that judgment based on its experience with other comparable distributions in recent years.

### 2.    Further Information and Documentation of Withdrawn Disputed Claims

As discussed in more detail in the Supplemental Segura Declaration, the five Claimants who initially sought Court review of the rejection of their Claims did not have deficiencies that could be cured through additional documentation—and, thus, they were ineligible for recovery. One had no Class Period purchases of Spectrum or Old Spectrum common stock and therefore was not a Spectrum Class Member. Another Claim only had purchases of Spectrum Brands stock that covered prior "short sales" of the stock, and those types of purchases are specifically excluded from recovery under the Plan of Allocation. The other three Claimants did not hold any shares

over a corrective disclosure and thus had no Recognized Claim under the Plan of Allocation for that reason.

All five of these Claimants withdrew their requests for Court review after receiving more detailed explanations from JND of the reasons for the rejection of their Claims. In all five cases, JND maintained email correspondence with the Claimants that confirm the Claimants' withdrawal of the dispute—either an email from the Claimant to JND directly withdrawing the request for Court review or an email from JND to the Claimant confirming that the Claimant agreed to withdraw the request for Court review, or both. Additional details and documentation regarding each of these five Claimants and the withdrawal of their requests for Court review are set forth in the Supplemental Segura Declaration. *See* Supp. Segura Decl. ¶¶ 12-44.

### 3.    Definition of the Term "Cost-Effective"

As discussed in the initial Declaration of Luiggy Segura in Support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan (dkt. 127) and the Supplemental Segura Declaration, under the proposed distribution plan, Lead Plaintiffs propose that JND conduct additional distributions of the Net Settlement Fund to eligible Claimants after the Initial Distribution until such time that Lead Counsel, in consultation with JND, determines than an additional distribution would not be "cost-effective." *See* Supp. Segura Decl. ¶ 45; *see also* Segura Decl. ¶ 45(d) and Notice ¶ 76. When Lead Counsel, in consultation with JND, determines that a subsequent distribution would not cost-effective, the remaining balance of the Net Settlement Fund will be distributed first to eligible Claimants who submitted their claims after September 15, 2022, and then to the proposed *cy pres* recipient, the National Consumer Law Center (if any funds still remain). *See* Segura Decl. ¶ 45(e).

The Court has requested that Lead Plaintiffs define the meaning of the term "cost-effective" in this context. Dkt. 128. Lead Plaintiffs and JND propose that the following definition be used:  a subsequent distribution will be considered no longer "cost-effective" if more than 50% of the remaining balance in the Net Settlement Fund would be consumed by the additional administrative costs to carry out that subsequent distribution (such as the costs of printing and mailing the checks for that additional distribution).

By way of background, the language that redistributions to class members be continued as long as they are "cost-effective" was included in the Plan of Allocation and in the proposed Order Approving Distribution Plan in an attempt to assure that Spectrum Class Members can receive the maximum possible per-share recovery. Limiting distributions of the Net Settlement Fund to a set number of distributions (such as only one or two) might leave funds in the distribution account for which additional distributions to Authorized Claimants could still be economically feasible. The number of re-distributions that will be cost-effective may vary depending on the amount of uncashed or otherwise returned payments that occur in this case and other factors.

The concept of conducting subsequent distributions to class members until further distributions to class members are no longer "economically feasible" or "cost effective" has been adopted by many courts in considering *cy pres* donations in the class action context. *See generally Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. Jan. 4, 2007) (approving rule limiting *cy pres* donations "to circumstances in which direct distribution to individual class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim."); *Klier v. Elf Atochem North America, Inc.,* 658 F.3d 468, 475, n.15 (5th Cir. Sept. 27, 2011) (explaining that "a cy pres distribution to a third party of unclaimed

settlement funds is permissible 'only when it is not feasible to make further distributions to class members'" and "there comes a point at which the marginal cost of making an additional pro rata distribution to the class members exceeds the amount available for distribution. [ ] It is only at this point that a district court has discretion to order a cy pres distribution." (internal citation omitted)); *In re Am. Tower Corp. Sec. Litig.,* 648 F. Supp. 2d 223, 224 n.1 (D. Mass. Aug. 26, 2009) ("The court understands the Motion's proviso limiting reallocation to circumstances where 'such reallocation is economical' to mean that residual funds will be donated to nonprofits only where the cost per class member of distributing the residual funds substantially outweighs the amount each class member would receive."); *In re Paracelsus Corp. Sec. Litig.,* 2007 WL 433281, \*2 (S.D. Tex. Feb. 6, 2007) (approving *cy pres* distribution when "it would be economically impracticable to allocate and distribute the remaining funds to the class members who had received and cashed the initial settlement checks."); *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010) ("the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair."); American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 cmt. b (2010) (explaining that *cy pres* awards are appropriate "only when direct distributions to class members are not feasible—either because class members cannot be reasonably identified or because distribution would involve such small amounts that, because of the administrative costs involved, such distribution would not be economically viable").

As these authorities recognize, there comes a point at which the administrative costs of making an additional further distribution to eligible Claimants (specifically, the costs of printing

and mailing another round of checks) will either (a) exceed the remaining amount of funds available for re-distribution or (b) will consume a very large proportion of the remaining funds available. At that time, a further distribution would be deemed to be no longer "cost-effective." As noted above, Lead Plaintiffs would specifically recommend the following as a concrete definition:  a further distribution will be considered no longer "cost-effective" if more than 50% of the remaining balance in the Net Settlement Fund would be consumed by the additional administrative costs to carry out that subsequent distribution.

In addition, if it wishes, the Court could set a maximum *cy pres* distribution amount, and Lead Plaintiffs would continue with subsequent distributions to eligible Claimants as long as the amount remaining in the Net Settlement Fund exceeded that amount. Here, JND anticipates that its fees and expenses for the work performed in conjunction with a distribution of the Net Settlement Fund subsequent to the Initial Distribution will be approximately $15,000 and that further distributions of the Net Settlement Fund will continue to be cost-effective until a balance of approximately $30,000 remains in the Net Settlement Fund. *See* Supp. Segura Decl. ¶¶ 47-48. Accordingly, if the Court wished, a maximum of $30,000 could be established for any *cy pres* distribution (although the actual amount donated may turn out, in fact, be substantially less than this).

For the reasons set out in the Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan (dkt. 126), and the supplemental support provided herein, Lead Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the proposed Order Approving Distribution Plan. We appreciate the Court's consideration of this matter.

Dated:  November 9, 2022

Respectfully submitted,

*/s/ Katherine M. Sinderson*
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Katherine M. Sinderson, admitted *pro hac vice*
Jai Chandrasekhar, admitted *pro hac vice*
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
KatieM@blbglaw.com
Jai@blbglaw.com

-and-

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public School
Teachers' Pension & Retirement Fund of Chicago
and the Cambridge Retirement System and the
Spectrum Class*

**STAFFORD ROSENBAUM LLP**
Douglas M. Poland
State Bar No. 1055189
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Telephone:  (608) 256-0226
Facsimile:  (608) 259-2600
dpoland@staffordlaw.com

*Liaison Counsel for Lead Plaintiffs the Public
School Teachers' Pension & Retirement Fund of
Chicago and the Cambridge Retirement System and
the Spectrum Class*

8

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine M. Sinderson, an attorney, hereby certify that a copy of the foregoing **"Supplemental Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan"** and its exhibits were served on counsel for all parties electronically via the CM/ECF system on November 9, 2022.

Dated:  November 9, 2022    By:    */s/ Katherine M. Sinderson*
                                         Katherine M. Sinderson