**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| IN RE SPECTRUM BRANDS SECURITIES LITIGATION | ) | No. 19-cv-347-jdp |
| | ) | |
| | ) | |

---

**SUPPLEMENTAL DECLARATION OF LUIGGY SEGURA IN SUPPORT OF LEAD
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

---

I, LUIGGY SEGURA, hereby declare as follows:

1.     I am the Vice President of Securities Class Actions at JND Legal Administration ("JND"). I am over 21 years of age and am not a party to the above-captioned action (the "Action").[1] I submit this declaration as a supplement to my October 14, 2022 Declaration in Support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan (dkt. 127) ("Segura Declaration" or "Segura Decl.") and to provide information requested in the Court's October 27, 2022 Order (dkt. 128). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

**<u>BREAKDOWN OF THE REASONS FOR REJECTION OF CLAIMS</u>**

2.     As discussed in the initial Segura Declaration, JND has recommended that a total of 17,433 Claims submitted in connection with the Spectrum Settlement be rejected as ineligible. *See* Segura Decl. ¶ 42. As set forth in Segura Declaration, the 17,433 Claims were recommended for rejection for the following reasons:

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of August 27, 2021 (dkt. 96-1) ("Stipulation"), or the Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees And Litigation Expenses (dkt. 115).

(a) **6,954** Claims were rejected because the Claims did not calculate to a "Recognized Claim" under the Court-approved Plan of Allocation. This Supplemental Declaration provides more detail about the various reasons why Claims fell into this category and why so many Claims were rejected for this reason.

(b) **3,742** Claims were rejected because they did not fit the definition of the Spectrum Class—specifically, these Claims did not include *any* purchases or acquisitions of Old Spectrum or Spectrum common stock during the Class Period—that is they included only purchases of Spectrum Brands stock before or after the Class Period, or did not include *any* purchases of Spectrum Brands stock. Included within this category are Claims that were submitted in connection with the Initial Settlement that included only purchases of HRG stock.

(c) **3,107** Claims were rejected because they had a deficiency such as lack of supporting documentation for the Claim that was never cured by the Claimant despite follow-up efforts from JND to Claimants requesting that they cure that deficiency;

(d) **3,546** Claims were rejected as duplicate Claims—that is, more than one Claim was submitted for the same shares. The number of duplicate Claims was made greater than usual here because certain electronic filers, who filed Claims on behalf of large numbers of Claimants, submitted revised electronic files correcting data for their Claims and rather than individually amend those Claims, these were treated as new Claims and the set of prior Claims that had been filed for the same Claimants were considered rejected as "duplicate Claims."

(e) **84** Claims were withdrawn by the Claimant.

*See* Segura Decl. ¶ 42.

### BREAKDOWN OF THE REASONS FOR REJECTION OF CLAIMS THAT DID NOT HAVE A "RECOGNIZED CLAIM"

3.        As noted above, JND recommended 6,954 Claims for rejection because they did not result in a "Recognized Claim" under the Court-approved Plan of Allocation. *See* Segura Decl. ¶ 42(a). The Plan of Allocation, set forth in the Notice mailed to Spectrum Class Members and approved by the Court (dkt. 121), provides a formula for calculating the value of the "Recognized Claim" for each Claimant. For the Court's convenience, a copy of the Notice is attached hereto as **Exhibit 1**. The Plan of Allocation is set forth at pages 12-16 of the Notice with relevant Tables at pages 21-22 of the Notice. Specifically, the Plan provides that formula for calculation of "Recognized Loss Amounts" for purchases of pre-Merger Spectrum common stock (referred to as

2

"Old Spectrum"), *see* Notice ¶¶ 61-62, and post-Merger Spectrum common stock (referred to as "Spectrum"), *see* Notice ¶¶ 63-64. The Plan provides that if any Recognized Loss Amount calculates to a negative number under the Plan, it is set to zero. *See* Notice ¶¶ 61, 63. The Plan further provides that a Claimant's "Recognized Claim" will be the sum of the Recognized Loss Amounts for all of that Claimants' purchases of Old Spectrum or Spectrum common stock during the Class Period. *See* Notice ¶ 65. The Plan also provides that a Claimant's Recognized Claim will be capped at the amount of the "Market Loss" that the Claimant suffered on its transactions in Spectrum Brands stock during the Class Period, *see* Notice ¶¶ 71-72, and set to zero if the Claimant has an overall "Market Gain" on those transactions, *see* Notice ¶ 72.

4.      Claims that were rejected because they did not calculate to a Recognized Claim under the Plan of Allocation fell into that category for one of four principal reasons:

| Reason for Rejection | Number of Claims |
|---|---|
| Shares were not held over a corrective disclosure | 5,583 |
| Transactions resulted in an overall Market Gain | 618 |
| All shares purchased in the Class Period were to cover short sales | 45 |
| The Recognized Claim calculated to zero for a combination of reasons under the Plan of Allocation | 708 |
| **Total** | **6,954** |

5.      **<u>Share Not Held Over a Corrective Disclosure</u>:** JND identified 5,583 Claims that had eligible purchases or acquisitions of Spectrum Brands shares during the Class Period but in which no shares were held through either of the alleged corrective disclosure dates (April 26, 2018, and November 19, 2018). Specifically, this includes Claim in which (a) Old Spectrum shares were purchased from January 26, 2017, through April 25, 2018, and then sold before April 26, 2018, *see* Notice ¶ 62(a); (b) Old Spectrum shares were purchased from April 26, 2018, though July 13,

3

2018, and then sold before November 19, 2018, *see* Notice ¶ 62(b)(i); or (c) Spectrum shares were purchased from July 13, 2018, through November 19, 2018, and then sold before November 19, 2018, s*ee* Notice ¶ 64(a). In all of those cases, the Claimant would have no Recognized Claim because—having not held their shares over one of the dates on which the price of Spectrum Brands stock was alleged to have declined as a result of the revelation of the alleged misstatements—they were not injured by Defendants' alleged misconduct in the Action.

6.    **Overall Market Gain:**  JND identified 618 Claims that included at least some shares that were held through a corrective disclosure, but nonetheless had no overall Market Loss, and therefore these Claims did not have a Recognized Claim. Under the Plan of Allocation, a Claimant must have incurred a Market Loss with respect to his, her, or its overall transactions in Spectrum Brands common stock in the Class Period in order to be eligible for payment. *See* Notice ¶¶ 71-72. If a Claimant had a Market Gain, the value of the Claimant's Recognized Claim will be zero, and the Claimant is not eligible to receive payment in the Settlement. *See* Notice ¶ 72.

7.    **Short Sales:**  JND identified 45 Claims where all purchases of Spectrum or Old Spectrum shares during the Class Period were purchases to cover a prior "short sale" of the stock. As stated in the Plan of Allocation, the Recognized Loss Amount on "short sales" and purchases covering a "short sale" is zero. *See* Notice ¶ 68.

8.    **Claims Rejected for a Combination of Reasons:** JND identified 708 Claims that calculated to a Recognized Claim of zero as the result of the application of different provisions of the Plan of Allocation to different transactions within the Claim. For example (and this was the most common scenario), the Claim may have contained one or more transactions where shares were purchased and sold prior to a corrective disclosure date (and there was no Recognized Loss Amount on those transactions for that reason) and a separate transaction in which shares were held

past a corrective disclosure but those shares were sold for a gain (and therefore that transaction also calculated to a Recognized Loss Amount of zero), so that the Claim as a whole had a Recognized Claim of zero.

## REASON FOR THE LARGE NUMBER OF CLAIMS
## REJECTED FOR LACK OF A "RECOGNIZED CLAIM"

9.      In JND's experience in this and similar cases, many filers who file on behalf of themselves or others in securities class actions identify only whether they have a purchase of an eligible security during the relevant Class Period, but do not review the full Plan of Allocation to determine whether they have an eligible Claim before filing (for example, they do not determine whether they held shares over a corrective disclosure date or if they had a Market Gain on their transactions). This results in a substantial number of Claims being filed that are ultimately rejected once the terms of the Plan of Allocation are applied to the Claims.

10.      In our experience, the increased use of electronic filing in these cases and, in particular, "third-party filing" in which a third-party company (such as a custodian bank or a professional filing service) submits an electronic claim on behalf of the beneficial owner of the shares has intensified this trend because these Electronic Filers can programmatically submit Claims on behalf of all their clients that had any purchases of the eligible stock during the relevant Class Period. For reasons of efficiency, they typically chose to do this, rather than attempting to filter and submit Claims only for those clients that calculate to a Recognized Claim under the Plan of Allocation. Thus, while increased electronic filing has been beneficial because it has facilitated claim filing and encouraged a greater percentage of a class as a whole to participate, it has also resulted in an increased number of ineligible Claims that are submitted by investors who are not eligible for payment. I believe that this general explanation is applicable here.

11. The percentage of rejected Claims seen in this Action (whether rejected for lack of a "Recognized Claim" or for the other reasons) is within the normal range that is typically seen in these types of securities class actions in recent years. For the reasons set forth above, JND does not believe that the percentage of rejected Claims seen here is a cause for concern.

## COMMUNICATIONS WITH DISPUTING CLAIMANTS

12. As discussed in the Segura Declaration, Claimants whose Claims to participate in the Settlement were rejected in whole or in part by JND were advised that they had the right to contest JND's administrative determination of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review. *See* Segura Decl. ¶¶ 20, 23(b). Specifically, Claimants were advised in the Deficiency Letter or Deficiency Email that, if they disputed JND's determination, they had to provide a statement of reasons indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Lead Counsel would thereafter present the request for review to the Court for a final determination. *See* Segura Decl. ¶ 31.

13. JND received a total of five (5) requests for Court review in this Action. *See* Segura Decl. ¶ 32. As part of its standard practices in these types of cases, JND attempted to resolve these disputes without necessitating the Court's intervention by reaching out to each of these Claimants in an attempt to answer all of their questions and fully explain JND's administrative determination of the Claim's status. *Id*.

14. As a result of these efforts, all five requests for Court review were withdraw by the Claimant after JND provided them with a more detailed explanation of the reason for rejection. In all five cases, email correspondence confirms the Claimants' withdrawal of the dispute—either an email from the Claimant directly withdrawing the request for Court review or an email from JND

to the Claimant confirming that the Claimant agreed to withdraw the request for Court review, or both.

15.    All five Claims in question were rejected because they were ineligible for recovery under the terms of the Settlement or the Plan of Allocation—they did not have deficiencies that could be cured through additional documentation. Specifically, one Claim (Claim DYTUZ-QL7V6) had no Class Period purchases of Old Spectrum or Spectrum common stock, only purchases of HRG stock. Another Claim (Claim D2HPK-R65X9) only contained "short sale" transactions, which calculate to a Recognized Loss Amount of zero under the Plan of Allocation. The three other Claims (Claim PMLUJ-HV4FY, Claim D5CQB-KPEY8, and Claim DLGDV-MJT2X) contained only shares that were not held over a corrective disclosure date and thus did not calculate to a Recognized Claim under the Plan of Allocation.

16.    More details on each of these Claims and the Claimants' withdrawal of their requests for Court review are set forth below.

### Claim DYTUZ-QL7V6—Claimant purchased only HRG stock

17.    By way of brief summary, Claim DYTUZ-QL7V6 was recommended for rejection because the Claim did not fit the definition of the Spectrum Class and a corresponding claim was processed separately in the HRG Settlement. The Claimant requested Court review of the rejection of the Claim in the Spectrum Settlement but withdrew the request after further explanation from JND about the reason for rejection.

18.    In particular, the Claimant submitted a timely Claim Form with supporting documentation, postmarked January 15, 2021. The Claim indicated that the Claimant had purchased 500 shares of HRG common stock on May 2, 2017, which were converted to 80 shares

of Spectrum common stock on July 13, 2018, and that the Claimant continued to hold those converted shares through February 15, 2019.

19.    Because the Claim was originally submitted in connection with the Initial Settlement and contained only purchases of HRG common stock, JND determined that the Claim should instead be considered for eligibility under the separate HRG Settlement. This Claim has been processed as part of the HRG Settlement and will be eligible for payment in the HRG Settlement. Because this Claim contained no purchases of Old Spectrum or Spectrum common stock, it was not eligible to participate in the recovery of the Spectrum Settlement.

20.    On May 6, 2022, JND mailed a notification to the Claimant that the Claim was not eligible under the Spectrum Settlement. On May 27, 2022, JND received the Claimant's response in which the Claimant requested review by the Court of the rejection of the Claim. After reviewing the Claimant's response, JND attempted to contact the Claimant to further explain the determination and inform the Claimant that a corresponding claim was being processed separately in the HRG Settlement. On June 28, 2022, JND left a voicemail for the Claimant requesting a call back to discuss the request for Court review.

21.    On June 30, 2022, JND sent an email to the Claimant with an explanation of the determination of the Claim and the fact that the Claim would be processed as part of the HRG Settlement. *See* **Exhibit 2**, at 1-2.

22.    On July 1, 2022, the Claimant responded by email, agreeing to withdraw the request for Court review. *Id*. at 1. JND responded with a confirmation email stating that "We have withdrawn your SPC Claim DYTUZ-QL7V6 and Court Review request for this claim." *Id*.

**Claim D2HPK-R65X9—All Purchases Matched with "Short Sales"**

23.    By way of brief summary, Claim D2HPK-R65X9 was rejected because all purchases of eligible shares in the Class Period were matched against short sales and those purchases are not eligible for a Recognized Loss Amount under the Plan of Allocation. The Claimant requested Court review of the rejection of the Claim but withdrew the request after speaking with JND about the reason for rejection.

24.    In particular, Claim D2HPK-R65X9 was a timely Electronic Claim submitted on February 24, 2021. On May 13, 2022, JND notified the Claimant by email about deficiencies on the Claim. Specifically, JND notified the filer that the Claim did not "balance" (that is, the number of shares held at the beginning of the Class Period, plus shares purchased during the Class Period, did not equal the number of shares sold during the Class Period or retained until the end) and that the Claim contained transactional information not within the expected range of market prices.

25.    On June 1, 2022, JND received the Claimant's emailed response in which the Claimant provided revised data for the Claim and requested review by the Court concerning the rejection of the Claim. These revisions cured the deficiencies about which JND had previously notified the Claimant. However, all shares of Spectrum Brands common stock purchased during the Class Period that were included in the Claim were shares that were matched against prior "short sales" of the stock (which is also referred to as purchases to "cover" a short sale). Under the Plan of Allocation, these transactions are not eligible for recovery. Specifically, under the Plan, the date of covering a "short sale" is deemed to be the date of purchase of the Spectrum Brands common stock and the date of a "short sale" is deemed to be the date of sale of the Spectrum Brands common stock. *See* Notice ¶ 68. In addition, under the Plan, "the Recognized Loss Amount on 'short sales' and the purchases covering 'short sales' is zero." *Id*. The Plan further states that "[i]n the event

9

that a Claimant has an opening short position in Spectrum Brands common stock, the earliest purchases of Spectrum Brands common stock during the Class Period will be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered." Notice ¶ 69.

26.     After confirming that the Claim did not calculate to a Recognized Claim under the Plan of Allocation, JND sent an email to the E-Claim Filer on August 11, 2022, explaining JND's determination that the transaction was ineligible. *See* **Exhibit 3**, at 1. On the same day, JND also called and spoke with the Claimant and provided a further explanation for the reason for the rejection. During the call, the Claimant agreed to withdraw the request for Court Review. JND sent a follow-up email to the Claimant on August 11, 2022, to serve as "confirmation that [Claimant] received the notice of ineligibility for this claim and that this request for court review can be withdrawn." The email stated that JND "will proceed to withdraw the request as discussed." *Id*.

### Claim D5CQB-KPEY8—No Shares Held Over a Corrective Disclosure

27.     By way of brief summary, Claim D5CQB-KPEY8 was rejected because the shares that the Claimant purchased during the Class Period were not held over a corrective disclosure, and thus the Claim did not calculate to a Recognized Claim under the Plan of Allocation. The Claimant requested Court review of the rejection of the Claim but withdrew the request after further explanation from JND about the reason for rejection.

28.     In particular, Claim D5CQB-KPEY8 was a timely submitted Claim Form postmarked January 28, 2021. The Claim originally did not contain any purchase transactions during the Class Period, and JND notified the Claimant by mail on May 6, 2022, that the Claim was ineligible for that reason. On May 16, 2022, JND received the Claimant's mailed response in

which the Claimant provided documentation with updated transaction information. The Claimant's response included a letter dated May 12, 2022, with Claimant's "request that the Court review the full or partial rejection of the Claim."

29.    Upon receiving the response, JND completed the processing and review of the Claim. Specifically, the Claim now showed that the Claimant purchased 23 shares of Old Spectrum common on May 29 or May 30, 2018, those shares were converted to Spectrum common stock on July 13, 2018, and then all 23 shares were sold on November 15, 2018. Under the Plan of Allocation, there is no Recognized Loss Amount on those transactions because the shares were not held through either of the alleged corrective disclosures (which occurred on April 26, 2018, and November 19, 2018). Specifically, the Plan provides that for each share of Old Spectrum common stock purchased from January 26, 2017, through July 13, 2018, inclusive, and sold on or after April 26, 2018, but before November 19, 2018, the Recognized Loss Amount per share is the lesser of: "(i) the amount of artificial inflation per share on the date of purchase as stated in Table A-1 *less* the amount of artificial inflation per share on the date of sale as stated in Table A-1; or (ii) the purchase price per share *less* the sales price per share." Notice ¶ 62(b). Here, because there was no intervening corrective disclosure, the amount of artificial inflation in the shares on both May 29 and 30, 2018, and November 15, 2018, was the same ($4.63) and thus, under ¶ 62(b)(i) of Plan, the Recognized Loss Amount for those transactions is zero.

30.    After reviewing the Claimant's deficiency response and confirming that the Claim did not calculate to a Recognized Claim under the Plan of Allocation, JND attempted to contact the Claimant to further explain the determination. On June 23, 2022, JND left voicemails requesting a call back to discuss the request for Court review and sent an email to the Claimant with a detailed explanation of the determination. *See* **Exhibit 4**, at 4-6. JND made multiple

11

attempts with voicemails and with additional follow-up emails on July 14 and August 3, 2022. *Id*. at 2-4. JND called back and left another voicemail, advising the Claimant to check for emails in their spam or junk folder, and sent another follow-up email. *Id*. at 1-2.

31.     On August 11, 2022, the Claimant responded by email, agreeing to withdraw the request for Court review. *Id*. at 1. JND sent a confirmation email stating that "We will withdraw the request for court review for this claim." *Id.*

### Claim PMLUJ-HV4FY— No Shares Held Over a Corrective Disclosure

32.     By way of brief summary, Claim PMLUJ-HV4FY was rejected because no shares were held over a corrective disclosure and thus the Claim did not calculate to a Recognized Claim. The Claimant requested Court review of the rejection of the Claim but withdrew the request after further explanation from JND about the reason for rejection.

33.     In particular, Claim PMLUJ-HV4FY was timely submitted online via the Settlement website on January 20, 2021. The Claim indicated that the Claimant purchased 22 shares of Old Spectrum common stock on May 9, 2018, those shares were converted to Spectrum common stock on July 13, 2018, and then all 22 shares were sold on October 23, 2018.

34.     Under the Plan of Allocation, there is no Recognized Loss Amount on those transactions because the shares were not held through either of the alleged corrective disclosure dates. Specifically, the Plan provides that for each share of Old Spectrum common stock purchased from January 26, 2017, through July 13, 2018, inclusive, and sold on or after April 26, 2018, but before November 19, 2018, the Recognized Loss Amount per share is the lesser of: "(i) the amount of artificial inflation per share on the date of purchase as stated in Table A-1 *less* the amount of artificial inflation per share on the date of sale as stated in Table A-1; or (ii) the purchase price per share *less* the sales price per share." Notice ¶ 62(b). Here, the amount of artificial inflation in the

shares on both May 9 and October 23, 2018, was the same ($4.63) and thus, under ¶ 62(b)(i) of Plan, the Recognized Loss Amount is zero.

35.    On May 6, 2022, JND mailed notification to the Claimant that the Claim did not calculate to a Recognized Claim under the Plan of Allocation. On May 31, 2022, JND received the Claimant's mailed response in which the Claimant requested review by the Court concerning the rejection of the Claim. After reviewing the response and confirming the determination, JND attempted to contact the Claimant to further explain the reasons for the rejection of the Claim.

36.    On June 28, 2022, JND sent an email to the Claimant with a detailed explanation of the reason for the rejection of the Claim. *See* **Exhibit 5**, at 3-4. On July 14, August 2, and August 11, 2022, JND sent additional follow-up emails to the Claimant. *Id*. at 1-3. On August 16, 2022, after performing a search for an applicable phone number, JND attempted to call the Claimant, left a voicemail, and sent an additional follow-up email. *Id*. at 1.

37.    On August 17, 2022, the Claimant responded by email and said that the "explanation [provided by JND in the email] satisfies my request for court review and you may withdraw the request." *Id*. at 1. Later the same day, JND sent a confirmation email stating that JND "will withdraw the court review request for this claim." *Id*.

### Claim DLGDV-MJT2X— No Shares Held Over a Corrective Disclosure

38.    By way of brief summary, Claim DLGDV-MJT2X was rejected because the Claimant purchased Spectrum common stock after the Merger, which Claimant then sold before the second disclosure date and therefore did not have a Recognized Claim under the Plan of Allocation. The Claimant requested Court review of the rejection of the Claim but withdrew the request after further explanation from JND about the reason for rejection.

13

39.    In particular, Claim DLGDV-MJT2X was a timely submitted Claim Form with supporting documentation signed and submitted to JND by email on January 18, 2021. The Claim indicated that the Claimant purchased 21 shares of Spectrum common stock on September 5, 2018, and sold those shares on November 15, 2018.

40.    Under the Plan of Allocation, there is no Recognized Loss Amount on those transactions because the shares were not held through an alleged corrective disclosure date. Specifically, the Plan provides that for each share of Spectrum common stock purchased after July 13, 2018, but before November 19, 2018, and sold before November 19, 2018, the Recognized Loss Amount is zero. *See* Notice ¶ 64(a). Accordingly, this Claim did not calculate to a Recognized Claim.

41.    On May 6, 2022, JND mailed notification to the Claimant that the Claim did not calculate to a Recognized Claim under the Plan of Allocation. On May 23, 2022, JND received the Claimant's mailed response in which the Claimant requested review by the Court of the rejection of the Claim. After reviewing the Claimant's response and confirming that the Claim did not calculate to a Recognized Claim, JND attempted to contact the Claimant to further explain the determination. On June 28 and June 30, 2022, JND left voicemails requesting a call back to discuss the request for Court review.

42.    On June 30, 2022, JND also sent an email to the Claimant with a detailed explanation of the determination. *See* **Exhibit 6**, at 3-5. On July 14, 2022, JND again attempted to call the Claimant. As the line was busy and a voicemail could not be left, JND sent another follow-up email. *Id.* at 2-3. On July 19, 2022, JND again left a voicemail. On August 3, 2022, JND again attempted to call and, as the line was busy, sent a follow-up email. *Id.* at 1.

43.     On August 4, 2022, the Claimant responded by email that the Claimant was "satisfied with the below explanation" from JND of the reason for rejecting the Claim, and JND followed up with a confirmation email stating that JND "will withdraw the request for Court Review for this claim." *Id*. at 1.

44.     In sum, in all five instances in which a Claimant requested Court review of the rejection of their Claim, the Claimant later withdrew that request after receiving a more detailed explanation of the reason for the rejection from JND, and the Claimants' withdrawal in all cases was confirmed in writing by email.

## "COST-EFFECTIVE" DISTRIBUTIONS

45.     As discussed in the Segura Declaration (*see* Segura Decl. ¶ 45(d)) and set forth in the Plan of Allocation (*see* Notice ¶ 76), under the plan of distribution proposed to the Court, JND will conduct additional distributions of the Net Settlement Fund after the Initial Distribution until such time that Lead Counsel, in consultation with JND, determines that an additional distribution would be no longer be "cost-effective." When Lead Counsel, in consultation with JND, determines that a further subsequent distribution would not be "cost-effective," the remaining balance of the Net Settlement Fund will be distributed first to any additional eligible Claimants who submitted their Claims after September 15, 2022, *see* Segura Decl. ¶ 45(d), (e), and then to the proposed *cy pres* recipient, the National Consumer Law Center. *See* Segura Decl. ¶ 45(e).

46.     The Court has inquired about the specific meaning of the phrase "cost-effective" with respect to determining whether to conduct these additional distributions. By way of background, the Plan of Allocation uses a "cost-effective" standard to assure a maximum per-share recovery for Spectrum Class Members. Limiting distributions of the Net Settlement Fund to a set number of distributions (such as only one or two) might leave funds in the distribution account for which additional distributions to Authorized Claimants would still be economically feasible. In

15

JND's experience, it is possible that as many as three or four distributions may prove to be "cost-effective" depending on the amount of uncashed or otherwise returned payments and other factors.

47.    However, there comes a point at which the administrative costs of making an additional distribution (specifically, the costs of printing and mailing another round of checks) will either (a) exceed the remaining amount available for re-distribution or (b) will consume a substantial proportion of the remaining funds available. JND anticipates that its fees and expenses for the work performed in conjunction with a distribution of the Net Settlement Fund subsequent to the Initial Distribution will be approximately $15,000. At that time, a further distribution would be deemed to be no longer "cost-effective." Specifically, JND would recommend the following as a concrete definition:  a further distribution will be considered no longer "cost-effective" if more than 50% of the remaining balance in the Net Settlement Fund would be consumed by the additional administrative costs to carry out that subsequent distribution.

48.    Based on the number of eligible Claimants here, JND anticipates that further distributions of the Net Settlement Fund will continue to be cost-effective until a balance of approximately $30,000 remains in the Net Settlement Fund. Accordingly, JND anticipates that no more than $30,000 would be distributed in any *cy pres* distribution (and the actual amount may turn out, in fact, be substantially less than this).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on November 9, 2022

_____
Luiggy Segura

16